## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § § § § § § | CASE NO. 19-50900-CAG-7 |
| LEGENDARY FIELD EXHIBITIONS, LLC, ET AL., | | |
| | | CHAPTER 7 |
| DEBTORS. | | |

| | | |
|---|---|---|
| RANDOLPH N. OSHEROW, Chapter 7 Trustee, and the Bankruptcy Estates of Legendary Field Exhibitions, LLC; AAF Players, LLC; AAF Properties, LLC; Ebersol Sports Media Group, Inc.; LFE 2, LLC; and We Are Realtime, LLC, | § § § § § § § § § § § § § § § § § | |
| PLAINTIFFS, | | |
| v. | | ADV. PROC. NO. 22-05078-CAG |
| THOMAS DUNDON; JOHN ZUTTER; and DUNDON CAPITAL PARTNERS, LLC, | | |
| DEFENDANTS. | | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO
### DEFENDANTS' MOTION TO DISMISS

Plaintiffs Randolph N. Osherow ("Trustee"), the Chapter 7 Trustee, and the consolidated bankruptcy estates of Legendary Field Exhibitions, LLC ("LFE"); AAF Players, LLC ("AAF Players"); AAF Properties, LLC ("AAF Properties"); Ebersol Sports Media Group, Inc. ("ESMG"); LFE 2, LLC ("LFE 2"); and We Are Realtime, LLC ("Realtime") (collectively "Plaintiffs") file this Response in Opposition to Defendants' Motion to Dismiss [ECF No. 18], (the "Motion") Plaintiffs' Original Complaint [ECF No. 1] (the "Complaint"), and would respectfully show this Court the following:[1]

---

[1] Capitalized terms not otherwise defined herein are defined in the Complaint.

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ........................................................................ 1

II. STANDARD OF REVIEW ........................................................................ 2

III. ARGUMENT AND AUTHORITIES ........................................................ 2

    A.    None of the Contract or Quasi-Contract Claims Should Be
Dismissed (Counts I-IV). ................................................................ 2

        1.    The Complaint states a claim for breach of the Oral Contract
(Count I). ................................................................................... 2

            a.    The allegations establish the statute of frauds does not
apply ................................................................................ 3

                i.    The statute of frauds does not apply because the
Oral Contract is an agreement for the sale of
securities. ...................................................... 4

                ii.    The Oral Contract would be enforceable under the
statute of frauds because it is possible for it to be
performed within one year. ................................... 4

                iii.    The Oral Contract is enforceable in equity. ........................ 6

            b.    The Oral Contract contains sufficiently definite terms. .................. 8

            c.    The Term Sheet does not supersede the Oral Contract, and
their terms are not in conflict. ........................................ 12

        2.    The Complaint states a claim for breach of the Term Sheet
(Count II). ................................................................................. 13

            a.    By $300,000 or $1.3 million, DCP fell short, breaching the
Term Sheet. .................................................................. 15

            b.    The Complaint sufficiently alleges ESMG's performance. .......... 15

         3.    The Complaint states a claim for breach of the duties of good faith
and fair dealing in the Term Sheet and Oral Contract (Count III). ............ 17

            a.    Dundon breached an implied covenant of good faith and
fair dealing in the Oral Contract. ................................... 17

            b.    DCP breached an implied covenant in the Term Sheet. ............... 20

4.      The Complaint states a claim—in the alternative to the contract claims—for promissory estoppel (Count IV). ............................................22

B.      None of the Breach of Fiduciary Duty Claims Should Be Dismissed (Counts V-VI). ..................................................................................................25

1.      The Complaint states a claim against Dundon and Zutter for breach of fiduciary duties owed to ESMG and its subsidiaries (Count V)............25

2.      The Complaint pleads plausible facts demonstrating breach by Dundon and Zutter of their fiduciary duties. ...............................................27

        a.      Dundon and Zutter breached their duty of loyalty........................ 27

        b.      Dundon and Zutter breached their duty of care. ........................... 30

3.      The business judgment rule is not grounds for dismissal. .........................35

4.      The breach of fiduciary duty claim is not duplicative. ..............................36

5.      The Complaint states a claim for aiding and abetting breach of fiduciary duty (Count VI). ..........................................................................37

C.      None of the Fraud Claims Should Be Dismissed (Counts VII-XII, XIV). ............40

1.      The Complaint states a fraud claim against Dundon (Count XI)...............40

        a.      The Complaint alleges facts that put Dundon on notice of the claims against him and the particular circumstances constituting fraud. ......................................................................... 41

                i.      Dundon made false representations amounting to fraudulent misrepresentation............................................... 41

                ii.     Dundon failed to disclose material facts, amounting to fraud by non-disclosure. ................................................ 43

                iii.    Dundon's actions were constructively fraudulent, regardless of intent............................................................. 45

        b.      The Term Sheet does not have an anti-reliance clause and does not negate justifiable reliance. ................................................ 45

        c.      The Complaint satisfies Federal Rule 9(b) by alleging the who, what, when, where, and how of the fraud. .......................... 46

        d.      The Complaint is not a "shotgun pleading," and the Fifth Circuit has not adopted this doctrine. ............................................ 48

2.      The Complaint states a claim for fraud in the inducement against Dundon and DCP (Count XII). ....................................................................50

3.      The Complaint states claims for fraudulent transfer against Dundon and DCP (Counts VII-X). ...........................................................................53

4.      The Complaint states a claim for civil conspiracy against DCP, Dundon, and Zutter (Count XIV)..............................................................54

D.      None of the Remaining Claims Should Be Dismissed (Count VIII, XV). ............55

1.      The Complaint states a claim for negligent misrepresentation (Count VIII). .................................................................................................55

2.      The Complaint states a claim for unjust enrichment (Count XV). ............56

3.      None of Plaintiffs' claims are barred by the economic loss rule. ..............57

4.      Plaintiffs are entitled to recover attorneys' fees. ......................................59

E.      Alternatively, Plaintiffs Request Leave to Amend. ...............................................59

IV. CONCLUSION................................................................................................................... 60

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*122261 Fondren, LLC v. Riverbank Realty GP, LLC*,
2010 WL 1741071 (S.D. Tex. Apr. 29, 2010) ................................................... 28, 30

*Ali v. Mohammad*, No. 04-17-00214-CV,
2018 WL 1176382 (Tex. App.—San Antonio Mar. 7, 2018, pet. denied) ................................. 9

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
910 A.2d 1020 (Del. Ch. 2006) ............................................. 38

*Americas Mining Corp. v. Theriault*,
51 A.3d 1213 (Del. 2012) ......................................... 30, 33, 35

*AmeriMark Interactive, LLC v. AmeriMark Holdings, LLC*, 12-175 MMJ CCLD,
2022 WL 16642020 (Del. Super. Ct. Nov. 3, 2022) ................................. 38

*Amirsaleh v. Bd. of Trade of City of New York, Inc.*, No. CIV.A. 2822-C,
2008 WL 4182998 (Del. Ch. Sept. 11, 2008) ......................................... 22

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*,
297 S.W.3d 768 (Tex. 2009) ......................................... 50

*Arete Partners, L.P. v. Gunnerman*,
594 F.3d 390 (5th Cir. 2010) ................................. 43, 50, 52

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................... 2

*B&W Supply, Inc. v. Beckman*,
305 S.W.3d 10 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ......................................... 2

*Baby Dolls Topless Saloons, Inc. v. Sotero*,
642 S.W.3d 583 (Tex. 2022) ......................................... 8

*Bank One, Tex., N.A. v. Stewart*,
967 S.W.2d 419 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ................................. 17

*Barcus v. Scharbauer*, No. 05-19-01121-CV,
2021 WL 1422716 (Tex. App.—Dallas Apr. 15, 2021, no pet.) ................................. 9

*Bates v. Laminack*,
938 F. Supp. 2d 649 (S.D. Tex. 2013) ......................................... 48

*Batto v. Gafford*,
    119 S.W.3d 346 (Tex. App.—Waco 2003, no pet.) ........................................................... 52-53

*Bay Center Apartments Owner, LLC v. Emery Bay PKI, LLC*,
    2009 WL 1124451 (Del. Ch. Apr. 20, 2009) ................................................................... 21

*Baylor Scott & White v. Project Rose MSO, LLC*,
    633 S.W.3d 263 (Tex. App.—Tyler 2021, pet. denied) ................................................. 38, 56

*Bayou Terrace Inv. Corp. v. Lyles*,
    881 S.W.2d 810 (Tex. App.—Houston [1st Dist.] 1994, no writ) ........................................ 54

*BBX Operating, L.L.C. v. Bank of America, N.A (Matter of Connect Transp., L.L.C.)*,
    825 Fed. App'x 150 (5th Cir. 2020) .............................................................................. 56

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 2

*Bent v. U.S. Bank N.A.*, No. 3:15-CV-340-N,
    2015 WL 3454226 (N.D. Tex. May 29, 2015) ................................................................. 56

*Berteau v. Glazek*, No. CV 2020-0873-PAF,
    2021 WL 2711678 (Del. Ch. June 30, 2021) ................................................................. 33

*Binh Hoa Le v. Exeter Fin. Corp.*,
    990 F.3d 410 (5th Cir. 2021) ....................................................................................... 50

*Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*,
    470 S.W.3d 636 (Tex. App.—Dallas 2015, no pet.) ......................................................... 24

*Bowman v. El Paso CGP Co., L.L.C.*,
    431 S.W.3d 781 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) .................................. 9

*Brand Servs., L.L.C. v. Irex Corp.*,
    909 F.3d 151 (5th Cir. 2018) ....................................................................................... 57

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) ............................................................................................ 30

*Capio Funding, LLC v. Rural/Metro Operating, LLC*,
    35 F.4th 353 (5th Cir. 2022) ......................................................................................... 9

*Cede & Co. v. Technicolor, Inc.*,
    634 A.2d 345 (Del. 1993) ............................................................................................ 28

*Chicago, T. & M.C. Ry. Co. v. Titterington*,
    84 Tex. 218, 19 S.W. 472 (1892) ................................................................................. 43

*Coffel v. Stryker Corp.*,
    284 F.3d 625 (5th Cir. 2002) ............................................................................ 52

*Cole v. Hall*,
    864 S.W.2d 563 (Tex. App.—Dallas 1993, writ dism'd w.o.j.)............................. 17

*Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
    341 S.W.3d 323 (Tex. 2011) .............................................................................. 51

*Crim Truck & Tractor Co. v. Navistar Intern. Transp. Corp.*,
    823 S.W.2d 591 (Tex. 1992) .............................................................................. 18

*Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*,
    576 S.W.3d 362 (Tex. 2019) .............................................................................. 17

*Dow Chem. Co. v. Buchanan Hauling & Rigging, Inc.*, No. 4:21-CV-2604,
    2022 WL 17406392 (S.D. Tex. Nov. 7, 2022) ....................................................... 12

*Dunlap v. State Farm Fire & Cas. Co.*,
    878 A.2d 434 (Del. 2005) ................................................................................... 21

*Durstcrew, LLC v. Tech21 UK Ltd*, No. A-17-CV-1055-LY,
    2018 WL 4343447 (W.D. Tex. July 2, 2018) ......................................................... 5

*Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, No. CV 2017-0500-JRS,
    2018 WL 2727542 (Del. Ch. June 6, 2018) ................................................... 22, 45

*Elliott v. Whitten*, No. 01-02-00065-CV,
    2004 WL 2115420 (Tex. App.—Houston [1st Dist.] Sept. 23, 2004, pet. denied) ................ 4, 5

*Elson v. Black*,
    56 F.4th 1002 (5th Cir. 2023) ........................................................................... 46

*English v. Fischer*,
    660 S.W.2d 521 (Tex. 1983) ........................................................................ 17, 23

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*,
    51 S.W.3d 573 (Tex. 2001) ............................................................................... 51

*Exxon Corp. v. Breezevale Ltd.*,
    82 S.W.3d 429 (Tex. App.—Dallas 2002, pet. denied) ........................................... 6

*Farone v. Bag'n Baggage, Ltd.*,
    165 S.W.3d 795 (Tex. App.—Eastland 2005, no pet.) .....................................10-11

*FdG Logistics LLC v. A&R Logistics Holdings, Inc.*,
    131 A.3d 842 (Del. Ch. 2016) ........................................................................... 45

*Fischer v. CTMI, L.L.C.*,
    479 S.W.3d 231 (Tex. 2016) ........................................................................ 8, 9, 11

*Fish v. Tandy Corp.*,
    948 S.W.2d 886 (Tex. App.—Fort Worth 1997, writ denied) ................................... 13

*Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*,
    55 F.3d 181 (5th Cir. 1995) ......................................................................... 5

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
    960 S.W.2d 41 (Tex. 1998) .............................................................. 43, 50, 58

*Fortune Prod. Co. v. Conoco, Inc.*,
    52 S.W.3d 671 (Tex. 2000) ........................................................................ 23

*Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.*,
    217 S.W.3d 653 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ................... 43

*Frank Investments Ranson, LLC v. Ranson Gateway, LLC*, No. 11-CV-101,
    2016 WL 769996 (Del. Ch. Feb. 26, 2016) ...................................................... 23

*Frederick Hsu Living Tr. v. ODN Hldg. Corp.*,
    2017 WL 1437308 (Del. Ch. Apr. 14, 2017), *as corrected* (Apr. 24, 2007) ............ 28

*Fuller v. Wholesale Elec. Supply Co. of Houston, Inc.*,
    631 S.W.3d 177 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) ................... 24

*Galderma Lab'ys LP v. Adams*, No. 4:20-CV-00260-P,
    2020 WL 10893186 (N.D. Tex. Dec. 8, 2020) .................................................. 57

*Gannon v. Baker*,
    830 S.W.2d 706 (Tex. App.—Houston [1st Dist.] 1992, writ denied) .................. 10-11

*Garfield on behalf of ODP Corp. v. Allen*,
    277 A.3d 296 (Del. Ch. 2022) ..................................................................... 36

*Genencor Int'l, Inc. v. Novo Nordisk A/S*,
    766 A.2d 8 (Del. 2000) .............................................................................. 23

*Gilbert v. El Paso Co.*,
    490 A.2d 1050 (Del. Ch. 1984) ............................................................... 21, 37

*Glaxo Group Ltd. v. DRIT LP*,
    248 A.3d 911 (Del. 2021) ........................................................................... 20

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ........................................................................ 2

*Grisel v. Everest Int'l, LLC*, No. 02-19-00401-CV,
2022 WL 714516 (Tex. App.—Fort Worth Mar. 10, 2022, pet. denied) ................................. 39

*Guth v. Loft, Inc.*,
5 A.2d 503 (Del. 1939) ............................................................................................................. 28

*Heller Healthcare Fin., Inc. v. Boyes*, No. CIV.A. 300CV1335D,
2002 WL 1558340 (N.D. Tex. July 15, 2002) ......................................................................... 55

*Herington v. Univar Sols. Inc.*, No. 4:20-3252,
2021 WL 3828702 (S.D. Tex. May 20, 2021) ......................................................................... 26

*H-M Wexford LLC v. Encorp, Inc.*,
832 A.2d 129 (Del. Ch. 2003) ................................................................................................. 14

*Hoffman v. L & M Arts*,
838 F.3d 568 (5th Cir. 2016) ............................................................................................50-51

*Hollis v. Hill*,
232 F.3d 460 (5th Cir. 2000) ................................................................................................... 26

*Hubacek v. Ennis State Bank*,
159 Tex. 166, 317 S.W.2d 30 (1958) ...................................................................................... 12

*Hutchinson v. Bank of Am., N.A.*, No. CIV.A. H-12-3422,
2013 WL 5657822 (S.D. Tex. Oct. 16, 2013) ......................................................................... 17

*Hux v. S. Methodist Univ.*,
819 F.3d 776 (5th Cir. 2016) ................................................................................................... 18

*Iacono v. Lyons*,
16 S.W.3d 92 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ................................................. 5

*IAS Services Group, L.L.C. v. Jim Buckley & Associates, Inc.*,
900 F.3d 640 (5th Cir. 2018) ................................................................................................... 46

*Ibe v. Jones*,
836 F.3d 516 (5th Cir. 2016) ................................................................................................... 58

*In re ALH Holdings*,
675 F. Supp. 2d 462 (D. Del. 2009) ........................................................................................ 28

*In re Cornerstone Therapeutics Inc, S'holder Litig.*,
115 A.3d 1173 (Del. 2015) ...................................................................................................... 33

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
888 F.3d 753 (5th Cir. 2018) ................................................................................................... 38

*In re Fedders N. Am., Inc.*,
  405 B.R. 527 (Bankr. D. Del. 2009) ...................................................................... 34

*In re Franchise Services of N. Am., Inc.*,
  891 F.3d 198 (5th Cir. 2018) .............................................................................. 26

*In re GGP, Inc. Stockholder Litig.*,
  282 A.3d 37 (Del. 2022) ..................................................................................... 32

*In re Harwood*,
  637 F.3d 615 (5th Cir. 2011) .............................................................................. 26

*In re Kellogg Brown & Root Inc.*,
  166 S.W.3d 732 (Tex. 2005) ............................................................................... 22

*In re Nantucket Island Associates Ltd. P'ship Unitholders Litig.*,
  810 A.2d 351 (Del. Ch. 2002) ............................................................................. 38

*In re Oracle Corp. Derivative Litig.*, No. CV 2017-0337-SG,
  2022 WL 3136601 (Del. Ch. May 20, 2022) ........................................................ 33

*In re Transamerica Airlines, Inc.*, No. 1039-N,
  2006 WL 587846 (Del. Ch. Feb. 28, 2006) .......................................................... 39

*In re Walt Disney Co. Derivative Litig.*,
  906 A.2d 27 (Del. 2006) ................................................................................31-32

*In re Xtreme Power Inc.*,
  563 B.R. 614 (Bankr. W.D. Tex. 2016)............................................................ 30, 35

*Inform Inc. v. Google LLC*, No. 21-13289,
  2022 WL 3703958 (11th Cir. Aug. 26, 2022) ...................................................... 49

*Jang Won Cho v. Kun Sik Kim*,
  572 S.W.3d 783 (Tex. App.—Houston [14th Dist.] 2019, no pet.)......................... 43

*Jim Walter Homes, Inc. v. Reed*,
  711 S.W.2d 617 (Tex. 1986) ............................................................................... 58

*Kahn v. Lynch Commc'n Sys., Inc.*,
  638 A.2d 1110 (Del. 1994) .................................................................................. 26

*Kaye v. Lone Star Fund V (U.S.,), LP*,
  453 B.R. 645 (N.D. Tex. 2011) ........................................................................... 25

*Kelly v. Blum*, No. CIV.A. 4516-VCP,
  2010 WL 629850 (Del. Ch. Feb. 24, 2010) .......................................................... 25

*King v. Baylor Univ.*,
46 F.4th 344 (5th Cir. 2022) ............................................................. 8, 22

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
160 S.W.2d 509 (Tex. 1942) ............................................................ 37-38

*Knowles v. Wright*,
288 S.W.3d 136 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) .................................... 10

*Kona Tech. Corp. v. S. Pac. Transp. Co.*,
225 F.3d 595 (5th Cir. 2000) .............................................................. 13

*L & C Consultants, LLC v. ASH Petroleum, Inc.*, No. CIV A 307-CV-1904-D,
2009 WL 3110200 (N.D. Tex. Sept. 29, 2009) ..................................... 52

*Laurence v. Atzenhoffer Chevrolet*,
281 F. Supp. 2d 898 (S.D. Tex. 2003) .............................................. 57

*Lee v. Samsung Elecs. Am., Inc.*, No. 4:21-CV1321,
2022 WL 4243957 (S.D. Tex. Sept. 13, 2022) .................................... 56

*Lipman v. GPB Capital Holdings LLC*, No. CV 2020-0054-SG,
2020 WL 6778781 (Del. Ch. Nov. 18, 2020) ...................................... 38

*London v. Tyrrell*, No. CIV.A. 3321-CC,
2010 WL 877528 (Del. Ch. Mar. 11, 2010) ....................................... 34

*Mack v. Newton*,
737 F.2d 1343 (5th Cir. 1984) ........................................................ 53-54

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) .............................................................. 37

*Manandhar v. Jamshed*, 02-11-00027-CV,
2011 WL 3835980 (Tex. App.—Fort Worth Aug. 31, 2011, no pet.) ....................................... 10

*McBeth v. Carpenter*,
565 F.3d 171 (5th Cir. 2009) ............................................................ 26

*McCalla v. Baker's Campground, Inc.*,
416 S.W.3d 416 (Tex. 2013) ............................................................ 9

*Meadows v. Hartford Life Ins. Co.*,
492 F.3d 634 (5th Cir. 2007) ......................................................... 37-38

*Med. Components, Inc. v. Osiris Med., Inc.*,
226 F. Supp. 3d 743 (W.D. Tex. 2016) .............................................. 13

*Metro Storage Int'l LLC v. Harron*,
   275 A.3d 810 (Del. Ch. 2022) .............................................................27-28, 34

*MetroplexCore, L.L.C. v. Parsons Transp., Inc.*,
   743 F.3d 964 (5th Cir. 2014) .................................................................. 23

*Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*,
   16 F. Supp. 3d 767 (S.D. Tex. 2014).......................................................... 24

*Miller v. HCP & Co.*,
   2018 WL 656378 (Del. Ch. Feb. 1, 2018) .................................................... 21

*Miller v. Riata Cadillac Co.*,
   517 S.W.2d 773 (Tex. 1974) ................................................................... 5

*Mims v. Fail, (In re VarTec Telecom, Inc.),* 04-81694-HDH-7,
   2007 WL 2872283 (Bankr. N.D. Tex. Sept. 24, 2007) ......................................... 25

*Natividad v. Alexsis, Inc.*,
   875 S.W.2d 695 (Tex. 1994) ................................................................... 17

*Neiger v. Cipla USA, Inc. (In re Achaogen, Inc.),* 19-10844 (BLS),
   2023 WL 1112904 (Bankr. D. Del. Jan. 30, 2023)............................................. 23

*New High-Tech Enter. Co. Inc. v. Interworks Unlimited, Inc.*, No. 4:18-CV-1962,
   2021 WL 4077818 (S.D. Tex. Apr. 8, 2021)................................................ 39, 54

*Ohio Gas, Inc. v. Mecom*,
   28 S.W.3d 129 (Tex. App.—Texarkana 2000, no pet.)......................................... 39

*Orman v. Cullman*,
   794 A.2d 5 (Del. Ch. 2002) .................................................................. 35

*Outdoor Techs. Inc. v. Allfirst Fin. Inc.*, No. 99C-09-151-WTQ,
   2000 WL 141275 (Del. Super. Ct. Jan. 24, 2000) ............................................ 38

*Page v. Crown Ranch Dev. Ltd. (In re Crown Ranch Dev. Ltd.*), No. 11-90052,
   2012 WL 1072221 (Bankr. E.D. Tex. Mar. 29, 2012) ........................................ 13

*PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*,
   857 A.2d 998 (Del. Ch. 2004) ................................................................ 21

*Penn Mart Realty Co. v. Becker*,
   298 A.2d 349 (Del. Ch. 1972) ................................................................ 37

*Polymer Int'l Corp. v. Hartz Mountain Corp.*,
   426 F. Supp. 3d 300 (E.D. Tex. 2019)........................................................ 23

*Prieto v. John Hancock Mut. Life Ins. Co.*, 3:97-CV-2441-H,
  1998 WL 34096745 (N.D. Tex. May 8, 1998) ........................................................ 13

*Pruitt v. Floyd*, No. 07-20-00166-CV,
  2021 WL 3857605 (Tex. App.—Amarillo Aug. 30, 2021, no pet.) ........................... 8

*Quadrant Structured Products Co., Ltd. v. Vertin*,
  102 A.3d 155 (Del. Ch. 2014) ............................................................................... 26

*R.P. Small Corp. v. Land Department, Inc.*,
  505 F. Supp. 3d 681 (S.D. Tex. 2020) ................................................................... 58

*RBC Capital Markets, LLC v. Jervis*,
  129 A.3d 816 (Del. 2015) ................................................................................. 34, 37

*Rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) ................................................................................. 46

*Renco Group, Inc. v. MacAndrews AMG Holdings LLC*, No. CV 7668-VCN,
  2015 WL 394011 (Del. Ch. Jan. 29, 2015) ............................................................. 20

*Renowned Chem. Sols. LLC v. CJ Chemicals LLC*, No. 4:21-CV-669,
  2022 WL 3566937 (S.D. Tex. Aug. 17, 2022) .................................................. 23, 57

*Ron v. Ron*,
  836 Fed. App'x 192 (5th Cir. 2020) .................................................................. 53-54

*Scooter Store, Inc. v. MRB Acquisition Corp.*, No. SA-09-CA-019-H,
  2009 WL 10669885 (W.D. Tex. Dec. 23, 2009) ..................................................... 49

*Shopoff Advisors, L.P. v. Atrium Circle, GP*,
  596 S.W.3d 894 (Tex. App.—San Antonio 2019, no pet.) ...................................... 57

*SightLine Health, LLC v. Hagemeier*, No. CIV.A. H-10-4661,
  2011 WL 3235695 (S.D. Tex. July 26, 2011) .................................................... 10-11

*Skin Care, L.L.C. v. Maesa*, CIV.A. H-12-1650,
  2014 WL 722870 (S.D. Tex. Feb. 20, 2014) .......................................................... 57

*Smith v. Smith*,
  794 S.W.2d 823 (Tex. App.—Dallas 1990, writ dism'd) .................................... 12-13

*Smith Intern., Inc. v. Egle Group, LLC*,
  490 F.3d 380 (5th Cir. 2007) ................................................................................... 2

*Spoljaric v. Percival Tours, Inc.*,
  708 S.W.2d 432 (Tex. 1986) ............................................................................. 52-53

*Stacks v. City of Bellmead*, No. 6:16-CV-140-RP,
2016 WL 6837167 (W.D. Tex. Nov. 21, 2016).....................................................36-37

*Stanfield v. O'Boyle*,
462 S.W.2d 270 (Tex. 1971) ......................................................................... 53

*Stanissis v. DynCorp Int'l LLC*, No. 3:14-CV-2736-D,
2015 WL 9478184 (N.D. Tex. Dec. 29, 2015) ............................................... 3

*Stauffacher v. Coadum Capital Fund 1, LLC*,
344 S.W.3d 584 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)...................... 57

*Steiner v. Southmark, Corp.*,
734 F. Supp. 269 (N.D. Tex. 1990) ............................................................ 48

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
911 A.2d 362 (Del. 2006)...........................................................................27-28

*STP Invs. LLC v. NeoTek Energy, Inc.*, No. 422CV00361SDJCAN,
2023 WL 2606584 (E.D. Tex. Mar. 2, 2023) ............................................... 57

*Straehla v. AL Glob. Services, LLC*,
619 S.W.3d 795 (Tex. App.—San Antonio 2020, pet. denied)................................. 38

*Sw. Bell Tel. Co. v. DeLanney*,
809 S.W.2d 493 (Tex. 1991) ...................................................................... 58

*Sw. Elec. Power Co.*,
925 S.W.2d 92 (Tex. App.—Texarkana 1996)................................................... 56

*T.O. Stanley Boot Co. v. Bank of El Paso*,
847 S.W.2d 218 (Tex. 1992) ........................................................................ 9

*Think3 Litigation Trust v. Zuccarello (In re Think3, Inc.)*,
529 B.R. 147 (Bankr. W.D. Tex. 2015)....................................................... 3, 31

*Thomas v. Miller*,
500 S.W.3d 601 (Tex. App.—Texarkana 2016, no pet.)....................................... 8

*Thompson v. City of Waco*,
764 F.3d 500 (5th Cir. 2014) ...................................................................... 2

*Tran v. Tran*, No. A-17-CV-510 LY,
2018 WL 3340581 (W.D. Tex. July 6, 2018)................................................. 10

*Trenwick Am. Litig. Tr. v. Ernst & Young, LLP*,
906 A.2d 168 (Del. Ch. 2006) ...................................................................26-27

*U.S. v. Lakeway Reg'l Med. Ctr., LLC,* 19-CV-00945-JRN,
 2020 WL 6146571 (W.D. Tex. Feb. 13, 2020) ........................................................ 48

*U.S. ex rel. Silingo v. WellPoint, Inc.,*
 904 F.3d 667 (9th Cir. 2018) ................................................................................... 48

*U.S. ex rel. Univ. Loft Co v. Blue Furniture Sols., LLC,* 1:15-CV-588-LY,
 2018 WL 4494999 (W.D. Tex. Sept. 18, 2018) ....................................................... 48

*United Food & Commercial Workers Union & Participating Food Indus. Employers Tri-State
 Pension Fund v. Zuckerberg,*
 262 A.3d 1034 (Del. Sept. 23, 2021) ................................................................ 27, 30

*United Teacher Assocs. Ins. v. Union Labor Life Ins.,*
 414 F.3d 558 (5th Cir. 2005) ............................................................................ 41, 43

*Universal Studios Inc. v. Viacom Inc.,*
 705 A.2d 579 (Del. Ch. 1997) .................................................................................. 38

*Vallez v. Harding,* No. SA-22-CV-01377-JKP,
 2023 WL 2583929 (W.D. Tex. Mar. 20, 2023) ....................................................... 59

*Vela v. Vela,* No. 14-12-00822-CV,
 2013 WL 6700270 (Tex. App.—Houston [14th Dist.] Sept. 24, 2013, no pet.) ........ 9

*Vibe Micro, Inc. v. Shabanets,*
 878 F.3d 1291 (11th Cir. 2018) ............................................................................... 50

*Voigt v. Metcalf,* No. CV 2018-0828-JTL,
 2020 WL 614999 (Del. Ch. Feb. 10, 2020) ............................................................. 26

*Walker v. Tafralian,*
 107 S.W.3d 665 (Tex. App.—Fort Worth 2003, pet. denied) ..................................... 5

*Weiland v. Palm Beach Cnty. Sheriff's Off.,*
 792 F.3d 1313 (11th Cir. 2015) ............................................................................... 49

*Weinberger v. UOP, Inc.,*
 457 A.2d 701 (Del. 1983) ........................................................................................ 28

*Welder v. Green,*
 985 S.W.2d 170 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied) ............ 45

*West v. Quintanilla,*
 573 S.W.3d 237 (Tex. 2019) .................................................................................... 12

*White Winston Select Asset Fuds, LLC v. Good Times Restaurants, Inc.,*
 2022 WL 13976042 (D. Del. May 5, 2022) ............................................................. 20

*Wiley v. Bertelsen*,
   770 S.W.2d 878 (Tex. App.—Texarkana 1989, no writ) ........................................ 6

*Young v. Ershick*, No. 4:21-CV-00644-ALM,
   2022 WL 3019744 (E.D. Tex. July 29, 2022) ...................................................... 9


## STATUTES

8 Del. C. § 102(b)(7) ............................................................................ 31-32, 34

11 U.S.C. § 544 ...................................................................................... 53

11 U.S.C. § 548 ...................................................................................... 53

TEX. BUS. & COM. CODE § 8.113 ................................................................ 4

TEX. BUS. & COM. CODE § 8.319 ................................................................ 10

TEX. BUS. & COM. CODE § 26.01(b)(6) ........................................................ 5

TEX. BUS. ORG. CODE §1.102 .................................................................... 26

TEX. BUS. ORG. CODE §1.105 .................................................................... 26

TEX. CIV. PRAC. REM. CODE § 38.001(8) .................................................... 59


## RULES

DEL. CT. CH. R. 8(e)(2) ............................................................................ 36

FED. R. CIV. P. 8(d)(3) ............................................................................ 36

FED. R. CIV. P. 9 .................................................................................... 46-47

TEX. R. CIV. P. 94 .................................................................................. 3


## OTHER AUTHORITIES

*Wright & Miller, Fed. Prac. & Proc. Civ.,* § 1326 ........................................ 48

# I. SUMMARY OF ARGUMENT

Despite the 63-page Complaint replete with factual detail filed by Plaintiffs, Defendants seek dismissal of *each and every one* of the Plaintiffs' claims except those for disallowance and equitable subordination (Counts XVI and XVII). For example, Defendants move to dismiss the claim for breach of the Term Sheet by DCP, while not disputing the enforceability of the Term Sheet or the well-pleaded allegations that DCP, at a minimum, failed to fund $300,000 of its Term Sheet obligation. Defendants also take issue with the well-accepted ability of Plaintiffs to plead alternative claims. The Motion performs contortions to avoid the pleaded (and in some cases, admitted) facts and, at times, misstates the applicable law. The Complaint more than sufficiently pleads claims for relief on all counts, including by detailing Defendants' own conduct and public statements.

As described more fully below, the Motion also misstates applicable law. Defendants invoke the statute of frauds as a defense for the breach of Oral Contract claim, even though it is a contract for the sale of securities and is exempt from the statute of frauds. They argue that good faith and fair dealing does not apply to the Term Sheet and Oral Contract, but Texas law implies a duty of good faith and fair dealing to the Oral Contract because Dundon is a fiduciary, and Delaware implies a duty of good faith and fair dealing to every contract. Dundon and Zutter cannot avoid their fiduciary duties to the Debtors—those duties existed because the Debtors were insolvent and Dundon and Zutter exerted control over the operations of all entities. And the exculpatory clause and business judgment rule should not be considered on a motion to dismiss, if applicable at all. The Plaintiffs' fraudulent transfer claim is properly pled because the Complaint alleges that, as part of the Release, Dundon received uncontested control of the League and a personal release. For these reasons, and all those set forth below, the Motion should be denied in its entirety.

## II. STANDARD OF REVIEW

Defendants have only moved to dismiss pursuant to Federal Rule of Civil Procedure ("Federal Rule") 12(b)(6) (incorporated by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b)). To survive a Rule 12 motion, a complaint need only contain sufficient facts to state a claim that is plausible on its face. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim for relief is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco*, 764 F.3d 500, 502-03 (5th Cir. 2014). Dismissal is only appropriate when a plaintiff can prove no facts that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).

## III. ARGUMENT AND AUTHORITIES

**A.    None of the Contract or Quasi-Contract Claims Should Be Dismissed (Counts I-IV).**

***1.    The Complaint states a claim for breach of the Oral Contract (Count I).***

To state a claim for breach of contract under Texas law, a plaintiff must allege (1) a valid contract, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained because of the breach. *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Smith Intern., Inc. v. Egle Group, LLC,*, 490 F.3d 380, 387 (5th Cir. 2007). There are factual allegations supporting each element against Dundon:

| Element | Allegation Summary | Compl. ¶ |
|---|---|---|
| **Valid Contract** | Dundon and ESMG reached an agreement for Dundon to provide $250 million to ESMG, in exchange for control of the League. | ¶¶ 61-63, 65-69, 77-80, 84-100, 141-142 |
| **Performance (ESMG)** | ESMG tendered full performance by giving Dundon-controlled DCP a 75% majority equity interest and making Dundon and | ¶¶ 72-73, 143 |

| Element | Allegation Summary | Compl. ¶ |
|---|---|---|
|  | Zutter the sole voting directors, with effective control of the League, at Dundon's directions. |  |
| **Breach (Dundon)** | Dundon refused to perform, providing at least $180.3 million less than agreed. | ¶¶ 120-137, 144 |
| **Damages** | Without the promised funding, the League could not complete its first season and filed bankruptcy, causing damages of at least $180.3 million to Plaintiffs. | ¶¶ 133-139 145 |

Dundon challenges only the first element, arguing that the Oral Contract is *invalid*—due to insufficiently definite terms and/or conflicts with the Term Sheet—and is *unenforceable*, under the statute of frauds. ECF No. 18 at 17-20. On both points, the Complaint satisfies the pleading requirements of Rule 8(a) and states a claim for breach of the Oral Contract.

> a.    *The allegations establish the statute of frauds does not apply.*

There is no basis to dismiss Count I based on the statute of frauds. An affirmative defense generally cannot be grounds for dismissal at the 12(b)(6) stage. *Think3 Litigation Trust v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 183 (Bankr. W.D. Tex. 2015). Affirmative defenses, such as the statute of frauds, only warrant dismissal "if [it] appears clearly on the face of the pleadings," and "the plaintiffs must normally plead themselves out of court." *Stanissis v. DynCorp Int'l LLC,* No. 3:14-CV-2736-D, 2015 WL 9478184, at *10 (N.D. Tex. Dec. 29, 2015) (cleaned up); *see also* TEX. R. CIV. P. 94.

Plaintiffs have not pled themselves out of court. The Complaint demonstrates three independently sufficient reasons to reject Dundon's statute of frauds argument: (1) the Oral Contract is an agreement regarding the sale of securities that is exempt from the statute of frauds; (2) the Oral Contract could have been performed within a year, so the statute of frauds does not apply; and (3) equity requires enforcement of the Oral Contract because ESMG performed.

i.    The statute of frauds does not apply because the Oral Contract is
an agreement for the sale of securities.

Dundon's argument ignores the fact that the Texas statute of frauds simply does not apply to contracts for the sale or purchase of securities. "A contract or modification of a contract for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party against whom enforcement is sought, even if the contract or modification is not capable of performance within one year of its making." TEX. BUS. & COM. CODE § 8.113. "A share or similar equity interest issued by a corporation . . . is a security." *Id.* at § 8.103(a); *see also id.* at § 8.102(15) (referencing § 8.103 in definition of "Security"). Where part of the consideration is an equity share, a contract falls within this exception. *See, e.g., Elliott v. Whitten*, No. 01-02-00065-CV, 2004 WL 2115420, at *5 (Tex. App.—Houston [1st Dist.] Sept. 23, 2004, pet. denied) (as an alternative basis for decision, finding that this exception would apply to transaction where part of the consideration was 25% equity interest in business stock).

The Complaint specifically alleges part of the consideration for the Oral Contract was Dundon receiving a majority equity interest in ESMG, which is also admitted in the Motion. ECF No. 1, ¶¶ 63, 69, 142-43; ECF No. 18 at 21 (acknowledging the Oral Contract was an agreement involving ESMG "giving Dundon (through DCP at his direction) a 75%-stake in the League plus control"). Therefore, the Oral Contract is a contract for the sale of securities within the meaning of the Texas Business and Commerce Code's exception, and the statute of frauds does not apply.

ii.    The Oral Contract would be enforceable under the statute of frauds
because it is possible for it to be performed within one year.

The Oral Contract also could have been performed within a year. Dundon argues the Oral Contract would need to specifically provide for performance within a year to be enforceable [ECF No. 18 at 21], but that is wrong. The question posed by the statute of frauds is not whether a contract specifically requires (or even contemplates) performance within a year, but whether

"performance can conceivably occur within one year." *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 186 (5th Cir. 1995) (applying Texas law).[2] "If performance within a year is a possibility . . . ***the fact that performance within one year is not required or expected does not bring the contract within the statute of frauds***." *Elliott*, 2004 WL 2115420, at *5 (quoting *Walker v. Tafralian*, 107 S.W.3d 665, 668-69 (Tex. App.—Fort Worth 2003, pet. denied)) (emphasis added). The statute "does not apply if the contract . . . could possibly be performed within a year, however improbable [that] might be." *Id.* (citing *Iacono v. Lyons*, 16 S.W.3d 92, 95 (Tex. App.—Houston [1st Dist.] 2000, no pet.)).

Here, the Complaint does not allege facts that rule out the possibility of performance of the Oral Contract within a year, and therefore the statute of frauds cannot apply at this stage. Dundon cites allegations that his investment would support the League for "years to come" and for "five years" [ECF No. 18 at 20-121], but that is sleight-of-hand. Dundon tries to use the timeframe for the ***duration of the benefit*** from his investment, which would have lasted years, instead of the time for the ***act of investing*** itself, which could have been completed in a single day. Because Dundon *could* have invested $250 million within a year, and because ESMG could have performed within one year, as well, the statute of frauds does not apply. Further, while the Motion claims performance within a year was impractical or impossible, the Complaint shows otherwise. In February 2019 – the same month as the Oral Contract – Dundon claimed the full investment was

---

[2] *See also Elliott*, 2004 WL 2115420, at *5 (citing *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex. 1974)); *Durstcrew, LLC v. Tech21 UK Ltd*, No. A-17-CV-1055-LY, 2018 WL 4343447, at *2-4 (W.D. Tex. July 2, 2018), report and recommendation adopted, No. A-17-CV-001055-LY, 2018 WL 4343432 (W.D. Tex. July 31, 2018) (rejecting motion to dismiss under statute of frauds where contract "could have conceivably been performed within a year"; "whether a contract can be performed within one year is a question of fact . . . best determined at summary judgment or trial"); TEX. BUS. & COM. CODE § 26.01(b)(6).

already "money [] in his bank," and thus, Dundon could have fully performed within the year. ECF No. 1, ¶ 95.

### iii. The Oral Contract is enforceable in equity.

Equity also requires enforcement of the Oral Contract. "Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002) (internal citation omitted). "The fraud arises when there is strong evidence establishing the existence of an agreement and its terms, the party acting in reliance on the contract has suffered a substantial detriment for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit." *Id.* "The partial performance must be 'unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Id.* (quoting *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ). Here, the allegations establish the existence of the Oral Contract, as well as ESMG's performance in reliance on that promise.

The Complaint alleges that on February 14, 2019, just one day after Dundon was introduced to the League as a potential investor, the parties agreed Dundon would invest $250 million, in exchange for 75% ownership of ESMG and control of the League, with an immediate initial investment of $5.1 million to alleviate the League's short-term financial distress. ECF No. 1, ¶¶ 61, 63-65. Dundon *did* cause $5.1 million to be transferred, and after Dundon said he needed something to paper his file for this immediate funding, DCP and ESMG executed the Term Sheet—which did not include a merger or integration clause. *Id.* at ¶¶ 65, 71 and ECF No. 1-2 (Ex. B.) at 4-6. That same day, ESMG reorganized the board to add Dundon and his associate, Zutter, as the sole voting members, and Dundon and Zutter immediately took control of the League. ECF No. 1,

¶¶ 75-80. This transfer of control was the principal performance required of ESMG, and the Complaint alleges that this was complete as of February 14, 2019. *Id.* at ¶¶ 18-20, 71-72.

The parties' performance was unequivocally referable to the Oral Contract, as alleged and specifically revealed by Dundon's contemporaneous remarks. Five days after the transfer, on February 19, 2019, Dundon's hockey team announced: "Carolina Hurricanes Chief Executive Officer and Owner Tom Dundon has committed $250 million to the Alliance of American Football and will serve as chairman of the Alliance's board of directors, ***effective immediately***." *Id.* at ¶ 87 and ECF No. 1-3 at 2. That same day Dundon gave a radio interview connecting the investment and change of control to his promise to fund the League, saying "I don't think they [the League] had a permanent solution . . . Like the one I provided . . . [.]" ECF No. 1, ¶ 25. In another interview later that week, Dundon responded to questions about rumors of the League's financial troubles: "It's been a little bit strange that people have focused in on the problem I already solved, we have the capital to do whatever we need to do[.]" *Id.* at ¶ 94.

Dundon demonstrated his unequivocal understanding and acceptance of the Oral Contract by, among other things, causing $5.1 million to be transferred to the League and immediately assuming control of the League (as tendered by ESMG). ECF No. 1, ¶¶ 69-72. Putting Dundon in control of the League, as it turned out, was extremely detrimental. After Dundon was given control, Ebersol repeatedly "presented Dundon with interest and commitments from other qualified investors," but Dundon and his team rejected these offers, including from JP Morgan Private Investment Bank, Remar Investments, LP, and a group of investors seeking to add a Mexico City team to the League. *Id.* at ¶¶ 105-113. Dundon's explanation was that (given his funding commitment) the League did not "need any capital." *Id.* at ¶¶ 108-109. Thus—after insisting on being the League's sole funder and leaving the League with *no* alternative source of funding—

Dundon cut off his promised funding and threw the companies into bankruptcy. ECF No. 1, ¶¶ 105-110, 120-121, 137-139. All of the elements of equitable enforcement are therefore met. *See, e.g., Thomas v. Miller*, 500 S.W.3d 601, 610-11 (Tex. App.—Texarkana 2016, no pet.) (affirming application of partial performance exception).

Dundon's argument that no "full performance" defense to the statute of frauds is available [ECF No. 18 at 21-22] fails. Equity requires enforcement due to partial performance, as set forth above, and the statute of frauds does not apply in the first place, as set forth in Section III.A.1.a, so no defense to the statute of frauds is required.

b.    *The Oral Contract contains sufficiently definite terms.*

Dundon argues the Oral Contract is invalid due to indefiniteness, but the Complaint sufficiently defines, and shows a meeting of the minds as to, the material and essential contract terms.

"The existence of an oral contract may be proved by circumstantial or direct evidence," including "the communications between the parties and the acts and circumstances surrounding those communications[.]" *Pruitt v. Floyd*, No. 07-20-00166-CV, 2021 WL 3857605, at *4 (Tex. App.—Amarillo Aug. 30, 2021, no pet.); *see also King v. Baylor Univ.*, 46 F.4th 344, 360 (5th Cir. 2022). Three principles guide a court's determination of whether terms are sufficient: (1) "courts cannot rewrite the parties' contract but must construe it as a whole to determine the parties' purposes when they signed it"; (2) "courts should construe contracts to avoid forfeitures . . . and instead find terms to be sufficiently definite whenever the language is reasonably susceptible to such an interpretation"; and (3) "when courts construe agreements to avoid forfeiture, they may imply terms that can be reasonably implied." *Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 587 (Tex. 2022) (*citing Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016));

*see also Capio Funding, LLC v. Rural/Metro Operating, LLC,* 35 F.4th 353, 356 (5th Cir. 2022) (describing Texas contract interpretation principles).

Texas law "favors finding agreements sufficiently definite for enforcement, particularly… where one of the parties has performed his part of the contract." *Fischer*, 479 S.W.3d at 237 (internal quotation omitted). The analysis is case-by-case, with "'each contract . . . considered separately to determine its material terms.'" *Id.* (quoting *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013), and *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). *Generally*, the material terms of a loan agreement consist of the amount loaned, the maturity date, the interest rate, and the repayment terms, [ECF No. 18 at 17 (citing *T.O. Stanley Boot,* 847 S.W.2d at 221)], but these terms are not mandated. Rather, Texas courts recognize the parties' freedom to contract: "Texas courts routinely hold that the manner of payment and performance are not essential terms" and "'the fact that the parties have left certain terms open for negotiation in an agreement that they intend to be binding does not make the agreement indefinite.'" *Young v. Ershick*, No. 4:21-CV-00644-ALM, 2022 WL 3019744, at *11 (E.D. Tex. July 29, 2022). Texas courts have repeatedly found oral loan agreements may be enforced despite lack of a stated interest rate, maturity date, or repayment terms. *Vela v. Vela,* No. 14-12-00822-CV, 2013 WL 6700270, at *5 (Tex. App. — Houston [14th Dist.] Sept. 24, 2013, no pet.); *see also Bowman v. El Paso CGP Co., L.L.C.,* 431 S.W.3d 781, 785 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (interest rate not a material term to loan agreements); *Ali v. Mohammad*, No. 04-17-00214-CV, 2018 WL 1176382, at *2 (Tex. App.—San Antonio Mar. 7, 2018, pet. denied) (loan contract without maturity date or repayment terms enforceable, where one party performed).[3]

---

[3] Where necessary, courts can and do imply default terms. *See, e.g., Vela*, 2013 WL 6700270 at *5 ("where no due date is specified in a written promissory note, payment is due on demand and demand may be made within a reasonable time"); *see also Barcus v. Scharbauer*, No. 05-19-

Dundon ignores this black-letter law, mistakenly claiming Texas law requires specific terms in debt and equity agreements. ECF No. 18 at 17 (quoting *SightLine Health, LLC v. Hagemeier*, No. CIV.A. H-10-4661, 2011 WL 3235695, at *4 (S.D. Tex. July 26, 2011)). An agreement to transfer stock, according to Dundon, "must include: (1) the identity of the company the equity interest would come from; (2) the price of the shares or the value of the equity ownership; (3) the specific quantity of shares and the percentage of ownership, and (4) when the shares would be transferred." *Id.* Dundon cites only one case—*Sightline*—for these rigid and allegedly necessary terms. But there is a reason *SightLine* stands alone—its list of "required terms" **is not good law**; the alleged requirements are lifted from a version of Texas's statute of frauds that was repealed nearly 30 years ago and cases applying that repealed statute. *See* Tex. Bus. & Com. Code § 8.319 (repealed).[4]

Until 1995, the Texas statute of frauds provided that a "contract for the sale of securities [was] ***not*** enforceable . . . unless" it was memorialized in writing and included very specific terms. *Id.* But this statute was repealed and replaced with Section 8.113, which implemented a complete policy reversal and wholly exempted the sale of securities from the statute of frauds.[5] Today, there

---

01121-CV, 2021 WL 1422716, at *8 (Tex. App.—Dallas Apr. 15, 2021, no pet.) ("The absence of an agreed maturity date makes the loans due on demand."); *Manandhar v. Jamshed*, 02-11-00027-CV, 2011 WL 3835980, at *3 (Tex. App.—Fort Worth Aug. 31, 2011, no pet.) (same).

[4] *Sightline* cites *Knowles v. Wright*, which states in dicta, in a footnote: "Additionally, '[w]ith respect to an oral agreement to transfer stock, terms must state the specific quantity of shares and the specific price in order to be considered 'clear, certain, and definite.'" 288 S.W.3d 136, 143 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied)). *Gannon,* a 1992 case quoted by *Knowles,* applies the now-repealed Section 8.319.

The only other authority in the Motion for the allegedly required terms, *Farone v. Bag'n Baggage, Ltd.*, 165 S.W.3d 795, 802 (Tex. App.—Eastland 2005, no pet.), only discusses the general requirements for an oral contract and does not provide the specific list of terms used in the Motion.

[5] *See Tran v. Tran,* No. A-17-CV-510 LY, 2018 WL 3340581, at *4 (W.D. Tex. July 6, 2018), report and recommendation adopted, 2018 WL 5733143 (W.D. Tex. Aug. 2, 2018) ("Given their

is no basis in Texas law for *Sightline*'s list of required terms as a requirement for a sufficiently definite contract for the sale of securities. Under current Texas law, courts must consider contracts on a case-by-case basis to determine the essential terms. *Fischer,* 479 S.W.3d at 237.

Dundon compares the Oral Contract to the purported agreement in *Farone v. Bag'n Baggage, Ltd.,* where the court found no evidence of an agreement between the parties at summary judgment, explaining:

> There is no contract between Farone and appellees. The only summary judgment evidence in this record is that Farone had a conversation with Bowen before Bowen died in which Bowen told Farone that he would be "compensated" for his unexercised stock options for Bag'n Baggage, Inc. stock. There is no summary judgment evidence of anything else relating to the "compensation" which Farone was to receive.

165 S.W.3d at 802. But here, in the earliest stages of a lawsuit, the Complaint provides significant allegations of the terms and existence of the contract. There are allegations regarding the contemporaneous statements and representations between the parties demonstrating a meeting of the minds, as well as allegations how, for weeks after the parties agreed on his $250 million investment, Dundon talked about the Oral Contract often and publicly. In the days and weeks after February 14, 2019, Dundon spread the news of his $250 million investment far and wide, announcing his investment in meetings with industry insiders, in media interviews and press releases, and through Twitter. ECF No. 1, ¶¶ 62, 84-98.

Under Texas law, the question that determines whether the material and essential terms are sufficiently defined is what terms the parties viewed as material and essential. *Fischer,* 479 S.W.3d at 237. The Trustee's allegations regarding Dundon and ESMG's conduct before, during, and after the formation of the Oral Contract show a meeting of the minds on the terms that were material

---

reliance on the now repealed statute, neither *Gannon* nor *Jacobs* have continuing applicability here.").

and essential to Dundon and ESMG: the amount of Dundon's investment, the equity he would receive, and the control Dundon and his affiliates would have over the League. ECF No. 1, ¶¶ 61, 65, 72, 79. Once those terms were agreed upon, ESMG transferred ownership interests and control, and Dundon began publicizing his $250 million investment. ECF No. 1, ¶¶ 62, 84-98. At this stage, the allegations regarding the terms of the Oral Contract have been sufficient pled.

        c.     *The Term Sheet does not supersede the Oral Contract, and their terms are not in conflict.*

Finally, Dundon argues the Complaint does not plausibly allege the existence of an Oral Contract because the Oral Contract's terms conflict with the Term Sheet. But Plaintiffs do not allege the parties intended the Term Sheet to extinguish the Oral Contract or for the Term Sheet to be a fully integrated contract. The allegations show instead that the parties intended the Oral Contract and Term Sheet would co-exist. Dundon's media statements about his $250 million investment, for instance, confirm that he saw the two agreements as symbiotic. *See* ECF No. 1, ¶¶ 61-62, 65, 72, 84-98.

It is only "[w]hen parties have concluded a valid integrated agreement with respect to a particular subject matter" that the parol evidence "rule precludes the enforcement of inconsistent prior or contemporaneous agreements." *Hubacek v. Ennis State Bank*, 159 Tex. 166, 170, 317 S.W.2d 30, 31 (1958)); *West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019). The parole evidence doctrine is a corollary of the merger doctrine, which, "with respect to the law of contracts, refers to the extinguishment of one contract by its absorption into another contract and is largely a matter of the intention of the parties." *Smith v. Smith*, 794 S.W.2d 823, 827–28 (Tex. App.—Dallas 1990, writ dism'd). For "the merger doctrine to be applicable . . . **both contracts must be between the same parties**, the contracts need to embrace the same subject matter, **and the parties must intend merger**." *Dow Chem. Co. v. Buchanan Hauling & Rigging, Inc.*, No. 4:21-CV-2604, 2022 WL

17406392, at *4 (S.D. Tex. Nov. 7, 2022), *report and recommendation adopted*, 2022 WL 17405832 (S.D. Tex. Nov. 29, 2022) (emphasis added).[6] When there is no merger, "the parol evidence rule will not bar admission of evidence of other agreements." *Fish*, 948 S.W.2d at 899.

Based on the well-pleaded facts, the Term Sheet does not merge with or extinguish the Oral Contract. The two agreements do not have the same parties – Dundon is the counter-party to the Oral Contract and DCP the counter-party to the Term Sheet. ECF No. 1, ¶¶ 141, 148; ECF No. 1-2 at 4-7. The Term Sheet does not include a merger or integration clause. ECF No. 1-2 at 4-7.[7] And the pleaded circumstances explain why these agreements were in place at the same time (i.e., that the parties did not intend merger). ECF No. 1, ¶¶ 53, 61, 66. Dundon and the League's conduct demonstrates that the parties did not believe that the Term Sheet had superseded the Oral Contract. ECF No. 1, ¶¶ 62, 65-66, 69, 72, 84-98. Therefore, there is no basis to dismiss Count I.

### 2. The Complaint states a claim for breach of the Term Sheet (Count II).

Defendants acknowledge that "Delaware law governs Count 2—breach of the term sheet," but they cite only Texas authority in support of their request to dismiss this claim. *Compare* ECF No. 18 at 16 and 23. This failure alone justifies denial of the Motion as to Count II.

---

[6] *See also Smith*, 794 S.W.2d at 828; *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898-99 (Tex. App.— Fort Worth 1997, writ denied) (agreements between different parties cannot merge); *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 612 (5th Cir. 2000) (no merger because different subject matter); *Prieto v. John Hancock Mut. Life Ins. Co.*, No. CIV.A.3:97-CV-2441-H, 1998 WL 34096745, at *4 (N.D. Tex. May 8, 1998).

[7] "An 'integration clause' is a contractual provision that prevents the inclusion of prior agreements because all such understandings have been merged into the written document." *Med. Components, Inc. v. Osiris Med., Inc.*, 226 F. Supp. 3d 743, 750 (W.D. Tex. 2016); *cf. Page v. Crown Ranch Dev. Ltd. (In re Crown Ranch Dev. Ltd.)*, No. 11-90052, 2012 WL 1072221, at *7 (Bankr. E.D. Tex. Mar. 29, 2012) ("where a contract contains a merger or integration clause, the contract's execution presumes that all prior negotiations and agreements relating to the transaction have been merged into the contract, and it will be enforced as written and cannot be added to, varied, or contradicted by parol evidence") (internal quotations omitted).

The argument also should be denied on its merits. To state a claim for breach of contract under Delaware law, a plaintiff must allege "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) resulting damage to the plaintiff." *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). The Motion challenges the elements of breach and performance (although performance is not an element under Delaware law[8]), but Plaintiffs have alleged facts supporting each element for breach of the Term Sheet by DCP, even performance, which is not required:

| Element | Allegation Summary | Compl. ¶ |
|---|---|---|
| **Valid Contract** | The Term Sheet [ECF No. 1-2] is a valid and binding contract between DCP and ESMG, regarding an initial transfer of funds and additional transfers up to $70 million, that was executed on February 14, 2019. | ¶¶ 70, 148 |
| **Performance (ESMG)** | On February 14, 2019, Dundon caused the transfer of $5.1 million to ESMG, and on the same day Dundon and Zutter took over effective control of the League. ESMG submitted funding requests in accordance with the Term Sheet thereafter. | ¶¶ 71, 73, 75-77 |
| **Breach (DCP)** | DCP denied funding requests by ESMG, ultimately causing only $69.7 million to be transferred to ESMG, with $1 million funded to bankruptcy professionals, despite no funding request having been made for that purpose and requests greater than $70 million having been made to fund ongoing League expenses that were not funded. | ¶¶ 75-77, 101-04, 150 |
| **Damages** | An amount not less than $300,000, and up to $1.3 million. | ¶ 151 |

The Complaint satisfies the pleading requirements of Rule 8(a) and states a claim for breach of the Term Sheet.

---

[8] *See H-M Wexford LLC,* 832 A.2d at 140.

        a.     *By $300,000 or $1.3 million, DCP fell short, breaching the Term Sheet.*

The Complaint alleges two breaches of the Term Sheet. First, "DCP was required to, upon the submission of funding requests, provide $70 million to ESMG." ECF No. 1, ¶¶ 63-64, 70, 150 and Ex. 1-2 at 4. ESMG submitted funding requests for the full $70 million, but DCP only provided $69.7 million, $300,000 less than it was obligated to provide. *Id.* at ¶¶ 101-104, 150 and Ex. 1-2 at 4. Second, DCP diverted $1 million of the $69.7 million and used the funds to prepare for bankruptcy, despite (a) ESMG never having submitted a funding request to fund expenditures toward a bankruptcy filing and (b) ESMG having previously submitted requests for the full $70 million to support League operations that were not fulfilled. *Id.* at ¶¶ 101-104, 133, 150. By diverting those funds from the uses identified in ESMG's funding request budgets, DCP breached the Term Sheet.[9]

Therefore, the Complaint plausibly alleges DCP breached the Term Sheet. It will be for the factfinder to later determine if spending $1 million on bankruptcy professionals—rather than the purpose identified in the ESMG funding requests—constitutes a breach of the Term Sheet. But even if it did not, the Complaint alleges (and DCP does not dispute) DCP still failed to satisfy its funding commitment by $300,000. This shortfall alone is sufficient to state a claim for breach of the Term Sheet.

        b.     *The Complaint sufficiently alleges ESMG's performance.*

Under the Term Sheet, "[u]pon the execution of this Agreement and Funding of the Initial Funding Amount" ESMG was required (among other things) to issue DCP "a number of shares of Series 2 such that immediately after the closing, [DCP] will own 75% of the Company's fully undiluted capital stock." ECF No. 1-2 at 4. DCP was then entitled to appoint the two voting

---

[9] For the reasons discussed in Section III.A.3, *infra*, this diversion is also a breach of the implied covenant of good faith and fair dealing.

members of the board (Dundon and Zutter) to make all business decisions on behalf of the League. ECF No. 1, ¶¶ 72-73, ECF No. 1-2 at 4-5.

DCP claims the Complaint makes only conclusory allegations. But the Complaint alleges that, after ESMG received the $5.1 million, ESMG "tendered full and complete performance of its obligations"; "Dundon's affiliate company (DCP) became the majority owner of ESMG"; and "Dundon and Zutter . . . became ESMG's only voting directors," taking over "operational control of the League" and "displac[ing] the control of other investors." *Id.* at ¶ ¶19, 72-73, 75-77, 142. These specific factual allegations support ESMG's performance (which is still not required under Delaware law).

DCP further argues that "right above the statement [that ESMG performed all obligations], the Trustee quotes the Debtors' bankruptcy filings as saying that Dundon (not DCP) acquired the right to 75% senior ownership and control of ESMG with documentation to be forthcoming." ECF No. 18 at 24. DCP cites Paragraph 148 of the Complaint for this claim but misrepresents what Paragraph 148 says. The Complaint states, "On February 14, 2019, Dundon Capital Partners, LLC acquired the right to 75% senior ownership…. ECF No. 1, ¶ 148. By claiming the bankruptcy filings say *Dundon* acquired the right to ownership, DCP gets the allegation exactly backwards.

DCP's complaint that the bankruptcy filings only reference DCP as having acquired the *right* to the ownership interest (and not the ownership interest itself) is equally disingenuous. Under the Term Sheet, the ownership transfer was to occur upon closing (not execution) and the Complaint alleges the transferred occurred after closing. ECF No. 1-2 at 4 ("immediately after closing, the Investor will own . . .").

Finally, DCP challenges EMSG's performance because the definitive documentation was not completed. ECF No. 18 at 22. The Term Sheet, attached to the Complaint, clearly provides

that DCP would "provide definitive documentation." ECF No. 1-2 at 4-5. It was never ESMG's obligation to prepare that documentation. Therefore, this argument is irrelevant to whether ESMG's performance of the Term Sheet was adequately pled, which it was, even though it was not required to do so.

### 3. The Complaint states a claim for breach of the duties of good faith and fair dealing in the Term Sheet and Oral Contract (Count III).[10]

#### a. Dundon breached an implied covenant of good faith and fair dealing in the Oral Contract.

Dundon argues that breach of the implied covenant of good faith and fair dealing in the Oral Contract is not available under Texas law and that the Complaint's allegations in support of the claim are conclusory. ECF No. 18 at 24-25. As Dundon acknowledges [*id.*], Texas implies a duty of good faith and fair dealing when there is a special relationship between the parties, and it is imposed to "protect parties who have a special relationship based on trust or unequal bargaining power." *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 697-98 (Tex. 1994); *Hutchinson v. Bank of Am., N.A.*, No. CIV. A. H–12–3422, 2013 WL 5657822, at *6 (S.D. Tex. Oct. 16, 2013) (quoting *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App.—Dallas 1993, writ dism'd w.o.j.)), *aff'd*, 575 Fed. App'x 443 (5th Cir. 2014); *English v. Fischer,* 660 S.W.2d 521, 524-25 (Tex. 1983) (Spears, J., concurring) (collecting cases). In other words, a contractual relationship, in and of itself, does not give rise to such a special relationship, but neither does it negate one. *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC,* 576 S.W.3d 362, 369 n. 13 (Tex. 2019) (explaining Texas law does not imply a covenant of good faith and fair dealing in every contract but "contracting parties

---

[10] Breach of an implied covenant of good faith and fair dealing is a tort action, but because it arises from the underlying contract, Plaintiffs include this discussion alongside the other contract claims. *See Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 441 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (citing *Cole v. Hall,* 864 S.W.2d 563, 568 (Tex. App.—Dallas 1993, writ dism'd w.o.j.)) ("A claim for breach of the duty of good faith and fair dealing is a tort action that arises from an underlying contract.").

owe a good-faith duty only if they expressly agree to act in good faith, a statute imposes the duty, or the parties have a "special relationship"). One context where good faith and fair dealing arises: "is when the parties are in a formal fiduciary relationship (e.g., principal-agent, attorney-client, or trustee-beneficiary); in such situations, the ordinary bundle of duties incumbent on a fiduciary includes a duty of good faith and fair dealing." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016) (citing *Crim Truck & Tractor Co. v. Navistar Intern. Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992)).

Applying this standard, there are sufficient allegations in the Complaint to withstand dismissal. The Complaint alleges, and the Defendants do not challenge, that Dundon was a fiduciary. ECF No. 1, ¶ 155, ECF No. 18 at 24-25. This formal fiduciary relationship triggers a duty of good faith and fair dealing under Texas law. *See Hux,* 819 F.3d at 781; *Crim Truck & Tractor Co.,* 823 S.W.2d at 594. The formal fiduciary duty—in contrast to an informal fiduciary duty—also does not require a pre-existing relationship. *See Id.*

The Complaint also alleges Dundon breached the covenant of good faith and fair dealing in his performance of the Oral Contract by engaging in arbitrary and unreasonable conduct as to the Oral Contract, engaging in conduct that frustrated the overarching purpose of the Oral Contract, acting oppressively or underhandedly to deny ESMG the fruits of the bargain for the Oral Contract, and using his position with the company to take advantage of the Debtors in dealings on the Oral Contract, all while assuring Ebersol and others that the full funding amount was secure. ECF No. 1, ¶¶ 154-55. Specifically, the Complaint alleges Dundon:

| Allegation Summary | Compl. ¶ |
|---|---|
| Tried to turn focus away from papering up the full investment commitment and toward giving Dundon's team complete control. Dundon and his team were in fact given such control. | ¶¶ 66, 75 |

| Allegation Summary | Compl. ¶ |
|---|---|
| Because "the entirety of Dundon's $250 million funding commitment had not been reduced to writing, Dundon, DCP, and Zutter had a controlling interest in both sides" and "Dundon repeatedly assured Ebersol and others that it was only a matter of time and formality before Dundon would reduce to writing his $250 million commitment[.]" | ¶ 79 |
| Dundon told the League that it did "not need to concern itself with finding additional financing because Dundon personally would provide all the funding the League would need." | ¶ 79 |
| "Dundon required the League to undertake expense and payable policy overhauls and to create a proposed priority scheme of payment, preferring certain tiers of creditors over others, the logic for each tier being seemingly arbitrary. And even when the League's employees complied and sought approval to pay expenses in a high priority bandwidth, Dundon, Zutter, or those acting in concert therewith questioned, postponed, revised, or denied the expenditures, even when funds were in place to make the requested expenditures." | ¶ 102 |
| Starting the day after Dundon took control of the League, he and his team instituted a policy of rejecting investments from other investors and directed the League to refuse other funding opportunities | ¶¶ 105, 107-110 |
| "Dundon engaged in actions for the benefit of himself and his affiliates rather than the League, including usurping or declining opportunities that were in the League's best interests[.]" | ¶ 114 |
| Dundon "forced the League's broadcast partners to use the League's prepaid commercial airtime inventory for his other ventures" for free. | ¶ 115 |
| Dundon forced ESMG to enter a release agreement with its former majority stakeholder, threatening to withhold future funding if it was not signed, that secured Dundon uncontested control of the League and a personal release. | ¶ 116 |
| While in control of the League, Dundon and others at his direction began researching ways that Dundon could personally gain from his investment. | ¶ 117 |
| Devoting time and resources to considering how to restructure the League's assets and contracts, to create tax benefits for Dundon and his corporate holdings. | ¶ 119 |
| "[R]efused to accept additional financing or investment . . . even as Dundon was considering a complete shut-down of the League" and was cutting budgets, declining funding requests, and cutting off all advertising expenses. | ¶¶ 121-122 |
| Choosing to "kill the League" despite the warnings that "failing to complete the season would result in a total loss of investment, bad publicity, loss of all national | ¶ 128 |

| Allegation Summary | Compl. ¶ |
|---|---|
| sponsorship revenue due to not fulfilling contract obligations, and likely would cause the League football players to be released from their contracts and non-competes, devaluing the League." | |
| Choosing to kill the league, even though the financial reports showed that "finishing the season would only cost $20 million to $40 million . . . well within Dundon's $250 million commitment" and finishing the season "was in the best interests of (indeed, vital to the future of) the League." | ¶ 130 |
| Even as he was engaging bankruptcy counsel (and diverting funds to those fees), refusing offers of financial support, including offers to purchase Dundon's position with the League and to renegotiate the League's TV contracts for the following years. | ¶ 134 |
| Favoring certain creditors, including DCP, over the League's other creditors, in preparing for bankruptcy. | ¶ 136 |

This non-exhaustive recitation of Dundon's bad faith conduct is sufficient to allege a breach of his covenant of good faith and fair dealing as it relates to the Oral Contract.

        b.      *DCP breached an implied covenant in the Term Sheet.*

With respect to DCP, Defendants argue Plaintiffs' claim must fail because the Term Sheet addresses "the amount of payment," which Defendants characterize as the "conduct at issue." ECF No. 18 at 25 (citing *Glaxo Group Ltd. v. DRIT LP*, 248 A.3d 911, 920 (Del. 2021)). But under "Delaware law, every contract contains an implied covenant of good faith and fair dealing, requiring the parties . . . to refrain from arbitrary or unreasonable conduct." *White Winston Select Asset Fuds, LLC v. Good Times Restaurants, Inc.,* 2022 WL 13976042, *2 (D. Del. May 5, 2022); *Renco Group, Inc. v. MacAndrews AMG Holdings LLC*,  No. CV 7668-VCN, 2015 WL 394011, at *6 (Del. Ch. Jan. 29, 2015) ("more recent authority teaches that a claim for violation of the implied covenant of good faith and fair dealing can survive if, notwithstanding contractual

language on point, the defendant failed to uphold the plaintiff's reasonable expectations under that provision").[11]

For instance, a breach of the implied covenant of good faith and fair dealing can be found "when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain." *PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*, 857 A.2d 998, 1016 (Del. Ch. 2004) (internal quotations omitted). Another example of a breach is where one party exercises its discretion either not in good faith or to decline to further the purpose of the agreement. *See, e.g., Gilbert v. El Paso Co.,* 490 A.2d 1050, 1055 (Del. Ch. 1984) ("[I]f one party is given discretion in determining whether the condition in fact has occurred that party must use good faith in making that determination."), *aff'd*, 575 A.2d 1131 (Del. 1990); *Bay Center Apartments Owner, LLC v. Emery Bay PKI, LLC,* 2009 WL 1124451, at *7-8 (Del. Ch. Apr. 20, 2009) (denying motion to dismiss claim under implied covenant where plaintiff adequately alleged managing entity used discretion to decline to cause entities it controlled to perform tasks in furtherance of agreement).

In considering this claim, the Court must "extrapolate the spirit of the contract from its express terms and determine the terms that the parties would have bargained for to govern the dispute had they foreseen the circumstances under which their dispute arose." *PAMI-LEMB I Inc.*, 857 A.2d at 1016. Here, the allegations include that, although the Term Sheet required DCP to fund $70 million in requests from ESMG, DCP failed to do so at ESMG's request and/or to use the funds for what ESMG had requested. ECF No. 1, ¶¶ 101-04 (describing how DCP did not fund all requests made by ESMG or use funds for the reason they were requested, such as the more than

---

[11] *See also Dunlap v. State Farm Fire & Cas. Co.,* 878 A.2d 434, 441-42 (Del. 2005). Parties cannot waive covenant of good faith and fair dealing. *Miller v. HCP & Co.*, 2018 WL 656378 (Del. Ch. Feb. 1, 2018).

$1 million paid to bankruptcy professionals); ECF No. 1-2 at 4 ("the Company will have the right to submit an equity funding request to the Investor, which shall state the amount of funding requested and include a supporting budget . . . within 5 calendar days . . . the Investor will invest into the Company the full funding amount listed on the request").

Further, the Complaint alleges DCP did not act in good faith generally in receiving, considering, or acting upon ESMG's funding requests under the Term Sheet, including by implementing intensive and onerous requirements upon both requests for funding and even approvals to use the funding once granted. ECF No. 1, ¶¶ 101-104.[12] All of these actions by DCP were a violation of the spirit of the Term Sheet, and, if not an outright breach of the Term Sheet, an exercise of DCP's discretion that was not in good faith and impeded upon the benefit of the bargain to ESMG. Therefore, a breach of the implied covenant of good faith and fair dealing as to the Term Sheet is sufficiently pleaded under Delaware law.

### 4. The Complaint states a claim—in the alternative to the contract claims—for promissory estoppel (Count IV).

Under Texas law, which Defendants concede applies,[13] promissory estoppel is a viable alternative theory to breach of contract where the defendant disputes the existence of an enforceable contract. *King*, 46 F.4th at 368 (quoting *In re Kellogg Brown & Root Inc.*, 166 S.W.3d

---

[12] *See Amirsaleh v. Bd. of Trade of City of New York, Inc.,* No. CIV.A. 2822-CC, 2008 WL 4182998, at *9 (Del. Ch. Sept. 11, 2008) ("[I]mplied covenant is particularly important in contracts that endow one party with discretion in performance; *i.e.,* in contracts that defer a decision at the time of contracting and empower one party to make that decision later. Simply put, the implied covenant requires that the 'discretion-exercising party' make that decision in good faith."); *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.,* No. CV 2017-0500-JRS, 2018 WL 2727542, at *8-*9 (Del. Ch. June 6, 2018).

[13] ECF No. 18 at 16 (stating that other than Counts II, III, and IV (in part), "Texas substantive law governs the remaining claims because the events complained of occurred in Texas and Texas has the most significant relationship to the transactions at issue").

732, 740 (Tex. 2005)).[14] Here, Dundon disputes the existence of the Oral Contract,[15] and therefore, promissory estoppel is an appropriate alternative claim under Texas law.[16] Promissory estoppel requires: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (quoting *English*, 660 S.W.2d at 524). The Complaint satisfies each element:

| Element | Allegation Summary | Compl. ¶ |
|---|---|---|
| Promise | Dundon promised to proceed with the $250 million financing. | ¶¶ 61, 65-66, 77, 79, 84-98, 161 |
| Foreseeability of Reliance | Dundon knew or could reasonably foresee that ESMG would rely on his promise. | ¶¶ 52-56, 59-62, 66, 69, 72, 74, 79-81, 162 |
| Substantial Reliance by | ESMG detrimentally relied on Dundon's statement, and Dundon's failure to provide the promised financing meant | ¶¶ 120-137, 144 |

[14] *See also Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000); *Renowned Chem. Sols. LLC v. CJ Chemicals LLC*, No. 4:21-CV-669, 2022 WL 3566937, at *8 (S.D. Tex. Aug. 17, 2022); *Nat'l Polymer Int'l Corp. v. Hartz Mountain Corp.*, 426 F. Supp. 3d 300, 310 (E.D. Tex. 2019).

[15] As to the Term Sheet, it does not appear that Defendants are disputing it is a valid contract, at least in the Motion.

[16] After admitting Texas law applies to this claim, Dundon cites Delaware law to argue "promissory estoppel is not appropriate to enforce a promise supported by consideration, i.e, a written contract." ECF No. 18 at 16 and 26 (citing *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 12 (Del. 2000)). This is inapplicable to the Oral Contract.

Even if Delaware law applied, the promissory estoppel claim would survive. Defendants' case (*Genencor*) dealt with equitable estoppel—not promissory estoppel—and there was no dispute that the contract was valid and enforceable. *Genencor*, 766 A.2d at 12. The court's focus on consideration in *Genencor* did not displace the longstanding rule that where "there is a genuine dispute about whether a contract was formed" promissory estoppel is "appropriately asserted in the alternative." *Frank Investments Ranson, LLC v. Ranson Gateway, LLC*, No. 11-cv-101, 2016 WL 769996, at *11 n. 99 (Del. Ch. Feb. 26, 2016) (discussing *Genencor* and confirming "a party asserting a breach of contract claim may plead promissory estoppel in the alternative"); *see also Neiger v. Cipla USA, Inc. (In re Achaogen, Inc.),* No. 19-10844 (BLS), 2023 WL 1112904, at *6 (Bankr. D. Del. Jan. 30, 2023) ("a claim of promissory estoppel can be pled in the alternative").

| Element | Allegation Summary | Compl. ¶ |
|---------|-------------------|----------|
| **Promisee to his Detriment** | ESMG lost the opportunity to find other financing and the League suffered substantial damage in reliance on Dundon's promises in the amount of at least $180.3 million. | |

These allegations are more than sufficient at the motion to dismiss stage. *See, e.g. Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.,* 16 F. Supp. 3d 767, 781 (S.D. Tex. 2014) (denying motion to dismiss promissory estoppel claim where the plaintiff alleged facts showing a promise, foreseeable reliance, and actual reliance to the promisee's detriment).

Defendants also attempt to subject the promissory estoppel claim to their statute of frauds argument. First, as set forth above in Section III.A.1.a, the statute of frauds either (1) does not apply to Dundon's alleged promise, or (2) there are facts sufficiently pled to avoid application of the statute of frauds *defense* by Defendants at this stage of the proceeding. Further, the requirement that Defendants reference, that the estoppel result from a promise to sign a pre-prepared contract, arises when promissory estoppel is asserted to estop an assertion of the statute of frauds,[17] ***not when it is asserted as a separate claim for relief***. The Dallas Court of Appeals in *Blackstone* explains the distinction:

> Although promissory estoppel is normally a counter-defensive theory, it is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise. Generally, promissory estoppel is a viable alternative to breach of contract. The promissory estoppel doctrine presumes that no contract exists. Although promissory estoppel is not applicable to a promise covered by a valid contract between the parties, promissory estoppel will apply to a promise outside a contract.

*Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 655 (Tex. App.—Dallas 2015, no pet.). This is how the Complaint asserts promissory estoppel; the claim is properly pled.

---

[17] Defendants' own authority shows this. *See Fuller v. Wholesale Elec. Supply Co. of Houston, Inc.*, 631 S.W.3d 177, 187 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) ("Promissory estoppel sufficient to remove a contract from the statute of frauds…").

**B.** **None of the Breach of Fiduciary Duty Claims Should Be Dismissed (Counts V-VI).**

Plaintiffs assert claims against both Dundon and Zutter for breaching their fiduciary duties of loyalty and care to the each of the Debtors and to the player creditors of the League.[18] ECF No. 1, ¶¶ 164-180. Defendants challenge the fiduciary duty claims on several bases that are not supported in law or in fact or, at best, on bases not ripe for consideration at the pleading stage.

### 1. The Complaint states a claim against Dundon and Zutter for breach of fiduciary duties owed to ESMG and its subsidiaries (Count V).

A claim was clearly stated for breach of fiduciary duty by Dundon and Zutter to ESMG. The Defendants do not challenge the allegation that Dundon and Zutter were directors of ESMG and owed fiduciary duties to ESMG, and the parties agree Delaware law governs. ECF No. 1, ¶¶ 72-73, 165-66; ECF No. 18 at 26. Under Delaware law, "an LLC's managers and controlling members in a manager-managed LLC owe the traditional fiduciary duties that directors and controlling shareholders in a corporation would." *Kelly v. Blum*, No. CIV.A. 4516-VCP, 2010 WL 629850, at *1 (Del. Ch. Feb. 24, 2010). Therefore, Count V should not be dismissed as to ESMG.

Dundon and Zutter do argue for dismissal of claims based on breach of fiduciary duty to the other Debtors (besides ESMG) because (a) Dundon and Zutter claim they do not owe duties to ESMG's subsidiaries or, alternatively, (b) the only duties that could have arisen to the other Debtors were owed on an informal basis, which is not plausible under Texas law under the facts pleaded. ECF No. 18 at 27-28. Neither argument supports dismissal of the breach of fiduciary duty

---

[18] "[W]hen a wholly owned subsidiary is insolvent, the fiduciary duties owed by its directors and officers no longer run just to the parent as sole shareholder, but also run to the subsidiary's creditors." *Kaye v. Lone Star Fund V (U.S.), LP,* 453 B.R. 645 (N.D. Tex. 2011); *Mims v. Fail, (In re VarTec Telecom, Inc.)*, No. 04-81694-HDH-7, 2007 WL 2872283, at *4 (Bankr. N.D. Tex. Sept. 24, 2007) (applying Delaware law). The Trustee has now been assigned the player creditors' claims. ECF No. 1, ¶¶ 9-13. Therefore, regardless of whether the player creditors' claims would have been derivative, the Trustee undisputedly holds those claims and has the right to assert them, in addition to the direct claims of the Debtors.

claims.

As an initial matter, each of the Debtors is a Delaware entity and their internal affairs—including the fiduciary duties owed to them—are governed by Delaware law. *Herington v. Univar Sols. Inc.*, No. 4:20-CV-3252, 2021 WL 3828702, at *2 (S.D. Tex. May 20, 2021) ("The internal affairs doctrine applies to breach of fiduciary duty claims.") (quoting *Hollis v. Hill*, 232 F.3d 460, 465 (5th Cir. 2000)); TEX. BUS. ORG. CODE §1.102 ("actions involving the internal affairs of a foreign corporation are governed by the law of the state of incorporation"); TEX. BUS. ORG. CODE §1.105 ("internal affairs of an entity" include "duties of its governing authority, governing persons, officers, owners, and members").

"Delaware law imposes fiduciary duties on those who effectively control a corporation." *Voigt v. Metcalf,* No. CV 2018-0828-JTL, 2020 WL 614999, at *11 (Del. Ch. Feb. 10, 2020) (quoting *Quadrant Structured Products Co., Ltd. v. Vertin*, 102 A.3d 155, 183-84 (Del. Ch. 2014)).[19] Defendants' reliance on *Trenwick* for the proposition that the "board of directors of a parent corporation does not owe a fiduciary to the parent's subsidiary," is misplaced.[20] *Trenwick* expressly recognized a board *can* owe fiduciary duties to a subsidiary *if* the board is controlling the subsidiary *or if* the parent and subsidiary are insolvent. 906 A.2d at 195. Only because the court

---

[19] *See also Kahn v. Lynch Commc'n Sys., Inc.,* 638 A.2d 1110, 1114 (Del. 1994) (holding 43% stockholder that exercised actual control over subsidiary could be liable for breach of fiduciary duty); *In re Franchise Services of N. Am., Inc.,* 891 F.3d 198, 211 (5th Cir. 2018), as revised (June 14, 2018) (under Delaware law, shareholder owes fiduciary duties if it "dominat[es]" the corporation "through *actual control* of corporation conduct").

The result would not be different under Texas law. *In re Harwood*, 637 F.3d 615, 621-25 (5th Cir. 2011) (citing *McBeth v. Carpenter*, 565 F.3d 171, 177-78 (5th Cir. 2009)) (applying Texas law and finding where a director or officer of a corporate parent acts in a position of control over a subsidiary entity, that control and the confidence and trust that the subsidiary places in that individual, creates fiduciary obligations to the subsidiary).

[20] ECF No. 18 at 27 (citing *Trenwick Am. Litig. Tr. v. Ernst & Young, LLP*, 906 A.2d 168 (Del. Ch. 2006), aff'd 931 A.2d 438 (Del. 2007)).

found neither scenario was adequately pleaded did it dismiss claims for breach by the parent's directors. *Id.* at 194-95 (finding the plaintiff did not allege facts in its complaint to support that the parent's board controlled the subsidiary and the pleadings did not raise a dispute as to insolvency).

Here, both situations recognized as giving rise to duties to subsidiaries by *Trenwick* exist. The Complaint alleges Dundon and Zutter had and exercised control over ESMG's subsidiaries. ECF No. 1, ¶¶ 72-76, 105-07. Unlike the separate corporate boards in *Trenwick*, the League was operated by a single board. *Id.* at ¶¶ 23-25, 72-75 (discussing the corporate structure of the League and Dundon's and Zutter's control over the entire League, including all debtor entities). Dundon and Zutter were the only voting members of ESMG's board. *Id.* at ¶ 73. Dundon and Zutter had the right to control the day-to-day operations of not just ESMG, but the entire League (*i.e.*, ESMG and all subsidiaries), pursuant to the Oral Contract and Term Sheet, and exercised that control. *Id.* at ¶ 75. Further, it is undisputed ESMG and its subsidiaries were insolvent from at least February 13, 2019, forward. *Id.* at ¶ 74. These allegations of control, and insolvency, are sufficient at the 12(b)(6) stage to claim that Dundon and Zutter breached fiduciary duties owed to each Debtor.

### 2. The Complaint pleads plausible facts demonstrating breach by Dundon and Zutter of their fiduciary duties.

#### a. Dundon and Zutter breached their duty of loyalty.

"The duty of loyalty 'requires an undivided and unselfish loyalty to the corporation' and 'demands that there shall be no conflict between duty and self-interest.'" *United Food & Commercial Workers Union & Participating Food Indus. Employers Tri-State Pension Fund v. Zuckerberg,* 262 A.3d 1034, 1049-50 (Del. Sept. 23, 2021). "The duty of loyalty includes a requirement to act in good faith, which is 'a subsidiary element, i.e., a condition, of the fundamental duty of loyalty.'" *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 842 (Del. Ch. 2022) (quoting *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 369-70 (Del.

2006)). "A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation." *Id.*

Corporate fiduciaries "are not permitted to use their position of trust and confidence to further their private interests." *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939). When a director is a dual fiduciary (*i.e.*, a director of two entities), they owe an "uncompromising duty of loyalty" to both entities without dilution. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983). The Complaint alleges Zutter and Dundon acted as fiduciaries to the League, as well as held positions with Dundon's other companies that would give rise to fiduciary duties to those companies. ECF No. 1, ¶¶ 63, 72-73, 75-77, 80, 155, 165-67, 172-173, 182-83.

Also, "[t]he duty of loyalty demands that the best interests of the corporation and its beneficiaries takes precedence over that of the individual director." *122261 Fondren, LLC v. Riverbank Realty GP, LLC*, No. CIV.A.H-09-4074, 2010 WL 1741071, at *3 (S.D. Tex. Apr. 29, 2010) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)). Corporate decisions involving either a direct or indirect interest on the part of a particular director may implicate the duty of loyalty. *Id.* (citing *In re ALH Holdings*, 675 F. Supp. 2d 462, 482 (D. Del. 2009)). A director breaches this duty by benefitting personally from transactions "involving a director appearing on both sides of a transaction and receiving a personal benefit from a transaction not received by the shareholders generally." *Id.* (quoting *Cede & Co.*, 634 A.2d at 361) (cleaned up); *See also Frederick Hsu Living Tr. v. ODN Hldg. Corp.*, 2017 WL 1437308, at *1, *39 (Del. Ch. Apr. 14, 2017), *as corrected* (Apr. 24, 2017) (denying motion to dismiss fiduciary duty claim).

The Complaint alleges facts that demonstrate both Dundon and Zutter breached their duties of loyalty to the Debtors. As to Dundon, the allegations include that he was "making decisions regarding finances and operations . . . motivated by his self-interest . . . rather than the interests of

the Debtors;" "misappropriating assets and resources of one or more Debtors for his personal benefit, such as television airtime; by self-dealing or failing to disclose his self-dealing from one or more debtors;" and "entering into contracts, such as the Release Agreement, that were in the best interest of Dundon" but not the Debtors. ECF No. 1, ¶¶ 77-79, 97, 101-102, 105, 114-117, 119, 121-123, 125, 172.

Dundon claims the Complaint is not specific enough in its allegations of self-dealing, but (among other things) the Complaint pleads that (i) Dundon made decisions to his own benefit, such as strong-arming the League to enter into the Release Agreement that benefitted Dundon personally and not the League, and (ii) he made decisions to benefit DCP (of which his is an owner and principal) at the expense of the League and its other investors and creditors, including by using League resources to make preferential payments and provide benefits to DCP. *Id.* at ¶¶ 115-116, 121-126, 133, 136. This is in addition to the core decision to repudiate his funding commitment, which was itself a decision by Dundon to benefit himself at the expense of his obligations to the League. *Id.* at ¶¶ 120-139.

As to Zutter, the Complaint alleges he breached his duty of loyalty by "making material decisions regarding finances and operations of one or more Debtors that were motivated by his self-interest and served his self-interests, including as a partner of Dundon in other ventures such as DCP, rather than the interests of the Debtors . . . voting for the Debtors to enter into contracts, such as the Release Agreement, that were in the best interests of himself and Dundon, and were not in the best interest of the Debtors and in fact were detrimental to the Debtors[.]" *Id.* at ¶ 173. Again, the Complaint sets forth specific examples of Zutter's conduct, including not acting as to Dundon as Zutter would to another director with which he did not have shared business ventures separate from the League. *Id.* at ¶¶ 77-79, 101-102, 116, 121-123, 125, 173.

Accordingly, Defendants' argument that the allegations in the Complaint "fail to make a plausible case for a breach of the duty of loyalty," as to either Dundon or Zutter, fails. ECF No. 18 at 31 (citing *In re Xtreme Power Inc.*, 563 B.R. 614, 632-33 (Bankr. W.D. Tex. 2016)).

> b.       *Dundon and Zutter breached their duty of care.*

The duty of care is "[p]redicated upon concepts of gross negligence," and "requires that fiduciaries inform themselves of material information before making a business decision and act prudently in carrying out their duties." *United Food,* 262 A.3d 1034, *1049-50.[21] It is important that Dundon and Zutter were not "independent," as that term is used under Delaware law—they were the controllers of the League, and also partners in a separate, non-debtor business that is a creditor of the League. *See Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1239 (Del. 2012) (noting requirement of "entire fairness" for interested party transactions involving controlling shareholders). The Complaint also clearly alleges Dundon and Zutter were both completely disloyal. *See* Section III.B.2.a, *supra*.

Specifically as to the duty of care, the Complaint alleges Dundon breached his duty of care to the debtors by "failing to employ a rational decision-making process in relation to the finances and operations" including failing to "follow-through and complete previously negotiated contracts . . . consider or accept additional investments or funding from sources other than himself . . . cease operations in the middle of the League's first season, breach contracts entered into by the League, and instead place the Debtors into bankruptcy[.]" ECF No. 1, ¶¶ 102, 107-08, 110, 121-24, 128, 130, 135-36, 172. And the Complaint alleges Zutter breached his duty of care by "failing to paper

---

[21] *See also 122261 Fondren*, 2010 WL 1741071, at *3 ("Directors…in properly fulfilling their duty of care, must consider all available information that is 'reasonably available,' and that process is 'actionable only if grossly negligent'.") (quoting *Brehm v. Eisner,* 746 A.2d 244, 259 (Del. 2000)).

up Dundon's $250 million funding commitment to AAF . . . and failing to do anything to address this situation with Dundon, disclose this information to the Debtors, or to make decisions in the best interest of the Debtors knowing this information" and "failing to employ a rational decision-making process in relation to the finances and operations of the Debtors, including but not limited to supporting, as the only other voting director of the Debtors, Dundon's irrational decisions to . . . follow-through and complete previously negotiated contracts . . . consider or accept additional investments or funding from sources other than himself . . . cease operations in the middle of the League's first season, breach contracts entered into by the League, and instead place the Debtors into bankruptcy." *Id.* at ¶¶ 77-79, 101-102, 116, 121-123, 125, 173.

Dundon and Zutter's primary argument is that the exculpatory provision in ESMG's certificate of incorporation compels dismissal of any claim for breach of the duty of care. ECF No. 18 at 29. But the extent and applicability of that provision of ESMG's restated certificate of incorporation is a matter that should not be determined at this pleading stage. "[C]orporate directors who assert an exculpatory provision defense under DGCL § 102(b)(7) are raising an 'affirmative defense,' and therefore, those corporate directors cannot obtain dismissal of duty of care claims under Rule 12(b)(6)." *Think3,* 529 B.R. at 183. As with other affirmative defenses, the only exception is where "the affirmative defense is clearly applicable on the face of a complaint." *Id.* Thus, it should not be considered at this time.

Further, even if the language of that purportedly exculpatory provision is now analyzed, it would not insulate Dundon and Zutter from the allegations of the Complaint. The Delaware Corporate Code permits corporations to insulate directors from liability "for conduct amounting to gross negligence," *i.e.*, breach of the duty of good care. *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 65, 67 (Del. 2006). But, as Defendants acknowledge [*see* ECF No. 18 at 30], directors

-31-

***cannot avoid liability*** for a claim based on an act or omission that was not made in good faith or involves intentional misconduct or a knowing violation of law. 8 Del. C. § 102(b)(7)9(i).[22] Failures to act in good faith have been found "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation . . . or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Disney,* 906 A.2d at 67.

The Complaint alleges facts supporting that each and every action of Dundon, and his DCP partner, Zutter, were made to benefit Dundon's ambition, Dundon's or DCP's pocketbook, or both, and that they were not made in good faith or "entire fairness" to the League. Dundon took many intentional actions to secure his control and drive away other funders that were not in the best interests of the League. ECF No. 1, ¶¶ 60, 62, 84-98, 105-110, 114-116. Zutter's decision not to appropriately protect the League against a repudiation of Dundon's commitment, and Dundon's decision to repudiate his commitment, were intentional and against the League's best interests as well. *Id*. at ¶¶ 133, 135, 137-39. Dundon and Zutter went on to preference DCP as a creditor, again intentional and against the best interests of the League. *Id*. at ¶ 136. These decisions of Dundon and Zutter were made with the knowledge that failing to enforce Dundon's commitment and finish the first season would essentially destroy the young League's principal asset (i.e., the players' contracts). *Id*. at ¶¶ 128-139.

---

[22] *See also In re GGP, Inc. Stockholder Litig.,* 282 A.3d 37, 63-64 (Del. 2022) (discussing exculpatory charter and noting that where a fiduciary duty sounds in both the fiduciary duties of care and loyalty, and "where a complaint alleges or pleads facts sufficient to support the inference that the . . . violation was made in bad faith, knowingly or intentionally, the alleged violation implicates the duty of loyalty and may not be exculpated"); *Disney,* 906 A.2d at 65 (discussing distinction between "bad faith and a failure to exercise due care").

In the situation pled in the Complaint – a simultaneous breach of the duty of loyalty and duty of care – Delaware law does not permit dismissal of the fiduciary duty breach claim based on the duty of care:

> When a director is protected by an exculpatory charter provision, a plaintiff can survive a motion to dismiss by that director defendant by pleading facts supporting a rational inference that the director harbored self-interest adverse to the stockholders' interests, acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith.

*In re Cornerstone Therapeutics Inc, S'holder Litig.*, 115 A.3d 1173, 1179-81 (Del. 2015). For example, despite an exculpation clause covering the duty of care, the Delaware Chancery Court has permitted a fiduciary duty claim to proceed where the record at *summary judgment* showed that a principal actor could be inferred to have been following personal ambition in undertaking certain actions connected with a business merger. *In re Oracle Corp. Derivative Litig.*, No. CV 2017-0337-SG, 2022 WL 3136601, at *13 (Del. Ch. May 20, 2022).[23] Further, "[w]hen a transaction involving self-dealing by a controlling shareholder is challenged, the applicable standard of judicial review is entire fairness, with the defendants having the burden of persuasion." *Americas Mining*, 51 A.3d at 1239. Thus, the burden is on Dundon and Zutter to show that the transactions challenged in the Complaint were entirely fair, which they cannot, and certainly cannot at this pleading stage.

Here, the allegations of the Complaint, described above and throughout this Section III.B, more than support the inference that Dundon and Zutter were following their own personal ambitions rather than acting in the best interests of or in "entire fairness" to the League. Thus, the

---

[23] In another case, the Chancery Court permitted a fiduciary duty claim to survive despite an exculpatory clause where dual fiduciary directors attempted to insulate their self-interest through a special committee, then interfered in the special committee. *Berteau v. Glazek*, No. CV 2020-0873-PAF, 2021 WL 2711678, at *19 (Del. Ch. June 30, 2021). Here, Dundon and Zutter did not even create an ostensibly independent committee.

Trustee pleads non-exculpated claims against Zutter and Dundon (*i.e.*, breach of the duty of loyalty), and the facts underpinning the duties of loyalty and care are inextricably intertwined, making dismissal of the duty of care claim at the pleading stage inappropriate.[24]

Finally, the exculpation clause has no applicability to non-monetary relief or related third-party claims. An exculpation clause applies only to damages liability. *London v. Tyrrell*, No. CIV.A. 3321-CC, 2010 WL 877528, at *18 (Del. Ch. Mar. 11, 2010) ("Under Delaware law, exculpatory provisions do not bar duty of care claims in remedial contexts, such as in injunction or rescission cases." (cleaned up)).[25] Here, Plaintiffs seek relief in the form of disallowance of Dundon's claims and equitable subordination, which have not been challenged. ECF No. 1, ¶¶ 246-49; *see generally* ECF No. 18. The aiding-and-abetting-type claims, such as those against DCP in Count VI, also are not affected by an exculpation clause. *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 874 (Del. 2015) (finding any protection ultimately afforded directors "from monetary damages stemming from a breach of the duty of care … does not apply to third parties"; the "literal language of Section 102(b)(7) only covers directors; it does not extend to aiders and abettors").

---

[24] Defendants point the Court to *In re Fedders N. Am., Inc.*, 405 B.R. 527, 540, 543 (Bankr. D. Del. 2009) in support of dismissal of a duty of care claim on a motion to dismiss. *See* ECF No. 18 at 30. But in that case, the court found the duty of care claim was not "inextricably intertwined with other well-pled claims for breach of fiduciary duty," and, in any event, the court was considering a transaction that had been approved by a majority of disinterested directors, without deception. *Id.* ("The 'change of control' agreements were each approved by a disinterested majority of Fedders' board of directors, and there is no specific allegation that any of the non-director, insider defendants misled the board….").

[25] *See also Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 847 (Del. Ch. 2022) ("Limiting or eliminating liability is different than limiting or eliminating the underlying duty. A provision that limits or eliminates liability only addresses one of the available remedies for breach of duty, i.e., liability for money damages. It does not limit or eliminate the duty itself.").

### 3.    The business judgment rule is not grounds for dismissal.

Defendants argue the business judgment rule "creates a presumption that directors act in a loyal manner" and bars claims for breach of fiduciary duty where such claims are "based on general accusations about the way a board runs a corporation" and/or facts are not alleged "indicating a director was either interested in the transaction at issue or lacked independence to oppose its consummation." ECF No. 18 at 31 (citing *In re Xtreme Power Inc.*, 563 B.R. at 632-33). The allegations in the Complaint show the business judgment rule does not apply, even under Defendants' articulated standard. As set forth in detail in Section III.B.2 above, there are many, and very specific, allegations that Dundon and Zutter were both interested in transactions at issue and lacked independence. *See, e.g.,* ECF No. 1, ¶¶ ¶¶ 63, 72-73, 75-77, 80, 155, 165-67, 172-173, 182-83. It is not a fair characterization of any of the allegations of the Complaint that they are directed at the "general…way a board runs a corporation."

Further, the business judgment rule has no applicability at this stage on these pleadings. As set forth above in Sections III.B.2, the Complaint sets forth facts of self-dealing and extensive breaches of the duty of loyalty by Dundon and Zutter. Thus, the standard of entire fairness governs the Court's analysis of these transactions, and entire fairness is a standard on which ***Defendants*** bear the burden of persuasion. *Americas Mining*, 51 A.3d at 1239 ("When a transaction involving self-dealing by a controlling shareholder is challenged, the applicable standard of judicial review is entire fairness, with the defendants having the burden of persuasion."). Thus, any business judgment rule presumption has been rebutted, and dismissal on this ground is not appropriate. *See Orman v. Cullman*, 794 A.2d 5, 21-23 (Del. Ch. 2002) (finding where the facts pleaded create the plausible inference that the entire fairness doctrine applies, the business judgment rule presumption is rebutted and normally precludes dismissal of a complaint).

### 4. The breach of fiduciary duty claim is not duplicative.

Defendants argue that the similarity of facts in the breach of fiduciary duty and breach of contract claims against Dundon and Zutter renders the breach of fiduciary duty claim duplicative and requires dismissal. ECF No. 18 at 28-29. Plaintiffs' claims are *not* duplicative,[26] but that is not something the Court even needs to consider at this juncture; Defendants' argument is wholly inconsistent with permissible pleading, pleading in the alternative. Both Federal and Delaware Rules permit claims which, if judgment was rendered on both, would be duplicative, since discovery may reveal which claims were ultimately correct. DEL. CT. CH. R. 8(e)(2); FED. R. CIV. P. 8(d)(3).

In *Garfield on behalf of ODP Corp. v. Allen*, the Delaware Chancery Court specifically rejected a pleading-stage argument that claims for breach of contract, breach of fiduciary duty, and unjust enrichment were duplicative. 277 A.3d 296, 357-62 (Del. Ch. 2022). The court criticized the attempted "throwback to common law pleading" by which the defendants argued that "because the plaintiff sought to plead a breach of contract, the plaintiff cannot maintain a claim for breach of fiduciary duty" and found "the current case does not warrant additional pleading stage pondering…plaintiff has alleged facts that support a claim for breach of contract, claims for breach of fiduciary duty, and a claim for unjust enrichment" and that all of these should be permitted to proceed even if "it seems highly likely that a victory for the plaintiff on the breach of contract would foreclose" the other remedies. *Id.* at 361-62; *see also Stacks v. City of Bellmead*, No. 6:16-CV-140-RP, 2016 WL 6837167, at *2 (W.D. Tex. Nov. 21, 2016) ("Plaintiff's allegations need

---

[26] *See, e.g.,* ECF No. 1, ¶¶ 172, 173 (describing breaches of fiduciary duty based on, among other things, decisions made based on self-dealing, misappropriation of assets and resources for personal use, and refusal to consider or accept additional funding opportunities, none of which is the subject of either breach of contract claim).

not be consistent under the federal rules so long as his different theories are plausible."). Therefore, Defendants' duplication argument is meritless.

### 5. The Complaint states a claim for aiding and abetting breach of fiduciary duty (Count VI).

A claim for assisting in a breach of fiduciary duty is recognized under either Delaware or Texas law, with different names, but similar concepts, and Plaintiffs have sufficiently pleaded both. ECF No. 1, ¶¶ 182-184 (titled "Aiding and Abetting Breach of Fiduciary Duty") and ¶ 185 (noting to the extent Texas law applies, titled "Knowing Participation in Breaches of Fiduciary Duty").

Under Delaware law, "[a] third party may be liable for aiding and abetting a breach of a corporate fiduciary's duty to the stockholders if the third party 'knowingly participates' in the breach." *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (quoting *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984), aff'd, 575 A.2d 1131 (Del. 1990)). "To survive a motion to dismiss, the complaint must allege facts that satisfy the four elements of an aiding and abetting claim: '(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants,' and (4) damages proximately caused by the breach." *Id.* (quoting *Penn Mart Realty Co. v. Becker,* 298 A.2d 349, 351 (Del. Ch. 1972)); *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015).

Defendants claim Texas does not recognize a claim for aiding and abetting a breach of fiduciary duty [ECF No. 18 at 32], but they are mistaken. "Under Texas law, 'where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such.'" *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (quoting *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509,

514 (Tex. 1942)).[27] The elements of aiding and abetting a breach of fiduciary duty are the same in

Texas as in Delaware. *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 284

(Tex. App.—Tyler 2021, pet. denied); *Straehla v. AL Glob. Services, LLC*, 619 S.W.3d 795, 804

(Tex. App.—San Antonio 2020, pet. denied).

The first and second elements – the existence of a fiduciary duty and a breach (by Dundon

and Zutter) were pleaded as shown above in Sections III.B.1 and B.2. Defendants do not challenge

the allegations regarding damages. Defendants challenge the remaining element by claiming the

"intra-corporate conspiracy doctrine … bars aiding and abetting claims directed at concerted effort

between an entity and its agents" under both Delaware and Texas law. ECF No. 18 at 32 (quoting

*AmeriMark Interactive, LLC v. AmeriMark Holdings, LLC, LLC,* No. N21C-12-175 MMJ CCLD,

2022 WL 16642020, at *12 (Del. Super. Ct. Nov. 3, 2022)). However, that doctrine is not

applicable on the facts as pleaded.[28]

To the extent the intra-corporate conspiracy doctrine applies (there is no consensus among

Delaware courts[29]), it is not a blanket prohibition or absolute rule. The doctrine only bars

---

[27] Defendants state that the "Fifth Circuit has criticized *Kinzbach Tool*," citing *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 782 (5th Cir. 2018). ECF No. 18 at 33. But in *DePuy,* the Fifth Circuit was looking at whether "Texas courts, if squarely presented with the question, would fashion an aiding-and-abetting cause of action, outside of the conspiracy context*, when the predicate offense sounds in strict liability*." *Id.* at 781 (emphasis added). The Court only decided that *Kinzbach,* which expressly approved of an aiding and abetting claim for breach of fiduciary duty claims, did not support an aiding and abetting claim where the predicate offense sounds in strict liability. *Id.*

[28] *See, e.g., Lipman v. GPB Capital Holdings LLC,* No. CV 2020-0054-SG, 2020 WL 6778781, at *13 (Del. Ch. Nov. 18, 2020) (denying motion to dismiss); *In re Nantucket Island Associates Ltd. P'ship Unitholders Litig.*, 810 A.2d 351, 376 (Del. Ch. 2002); *Universal Studios Inc. v. Viacom Inc.*, 705 A.2d 579, 593–94 (Del. Ch. 1997).

[29] The Delaware Supreme Court has never adopted the intra-corporate conspiracy doctrine, and there is no consensus among Delaware trial courts on whether it applies. *See, e.g., Allied Capital Corp. v. GC-Sun Holdings, L.P.,* 910 A.2d 1020, 1038 n. 37 (Del. Ch. 2006); *Outdoor Techs. Inc. v. Allfirst Fin. Inc.,* No. 99C-09-151-WTQ, 2000 WL 141275, at *6 (Del. Super. Ct. Jan. 24, 2000).

conspiracy or aiding and abetting claims where the agent is acting in its capacity as the conspiring entity's agent. Where the doctrine has applied in Delaware, if "the officer or agent … steps out of her corporate role" the claims are allowed to proceed. *In re Transamerica Airlines, In*c., No. CIV.A. 1039-N, 2006 WL 587846, at *6-7 (Del. Ch. Feb. 28, 2006). The Texas Supreme Court has not adopted the doctrine either, and Texas lower courts applying it are also clear on this point: "While corporate agents cannot form a conspiracy when acting in their corporate capacity, agents can be liable for conspiracy if they are acting outside their corporate capacity or for their personal purpose." *New High-Tech Enter. Co. Inc. v. Interworks Unlimited, Inc.,* No. 4:18-CV-1962, 2021 WL 4077818, at *5 (S.D. Tex. Apr. 8, 2021).[30]

Here, the Complaint alleges persons associated with DCP assisted the alleged breaches of fiduciary duty owed to the League by Dundon and Zutter. This includes Jeff Vanderbilt and Jason Kulas – both officers with DCP – who are specifically named in the Complaint as assisting Dundon and Zutter with their improper actions and therefore supporting an aiding and abetting or knowing participation claim against DCP. ECF No. 1, ¶¶ 66, 76, 80, 119, 136. Vanderbilt and Kulas— wearing their DCP "hats"—can aid and abet the improper conduct of Dundon and Zutter—who at least *should have been* wearing their League "hats" as fiduciaries to the League and also are alleged to have personal interests. To avoid liability on this claim under the intra-corporate conspiracy doctrine, Defendants would have to admit that Dundon and Zutter were always acting wholly as DCP agents and therefore Dundon and Zutter breached their fiduciary duties to the League, which

---

[30] *See also Tex.-Ohio Gas, Inc. v. Mecom,* 28 S.W.3d 129, 138 (Tex. App.—Texarkana 2000, no pet.) ("Although agents of a corporation cannot form a conspiracy while acting in their corporate capacity, agents can conspire with each other if they are acting in a different capacity or for a personal purpose of their own"); *Grisel v. Everest Int'l, LLC*, No. 02-19-00401-CV, 2022 WL 714516, at *15 (Tex. App.—Fort Worth Mar. 10, 2022, pet. denied) (citing *Mecom*).

DCP has not done. Otherwise, at least some agents of DCP were acting in a different capacity than

Dundon and Zutter, at least at certain times, barring the use of the doctrine at this pleading stage.

**C.     None of the Fraud Claims Should Be Dismissed (Counts VII-XII, XIV).**

Today, Dundon claims that the Term Sheet is the only agreement that he or any affiliate

entered into with ESMG or the League and that he never agreed to provide $250 million in funding.

ECF No. 18 at 20. In February and March 2019, however, Dundon told a very different story to

the League, its employees, agents, investors, and the public. Almost immediately after promising

a $250 million investment and obtaining ESMG's signature on the Term Sheet, Dundon took

control of the League and publicized his $250 million investment and majority ownership of the

League. ECF No. 1, ¶¶ 69, 72-73, 75, 84-98. In the days and weeks that followed, Dundon

continued to assure Charlie Ebersol and other League executives that they would paper up the Oral

Contract in time, that he would provide the promised funding, and that the League needed no other

funders. *Id.* at ¶ 79. If, as Dundon now claims, there was no Oral Contract and "without any

additional funding commitment . . . the League promised to transfer everything to DCP in the term

sheet for $70 million," then Dundon's public and private statements before, during, and after he

"agreed" to provide $250 million funding were false and constitute fraud. As such, the Plaintiffs

assert claims against Dundon for common law fraud and against both Dundon and DCP for

fraudulent inducement and fraudulent transfer, as well as a civil conspiracy claim against all three

Defendants. All of these claims are plausibly pled and should not be dismissed.

### 1.     *The Complaint states a fraud claim against Dundon (Count XI).*

The Plaintiffs assert three species of fraud: fraudulent misrepresentation, fraud by non-

disclosure, and constructive fraud. The Complaint sets forth a fraudulent inducement claim against

Dundon and DCP, but the claim against just Dundon focuses on what he said and did during the

45 days between February 14, 2019, and his disclosure on April 1, 2019, that there would be no

additional funding from either DCP or Dundon. Defendants assert several arguments applicable to each of the three theories, but before turning to those broader issues, the charts below summarize the elements for each claim and the Plaintiffs' allegations.

> a. *The Complaint alleges facts that put Dundon on notice of the claims against him and the particular circumstances constituting fraud.*

> > i. Dundon made false representations amounting to fraudulent misrepresentation.

The elements of common-law fraud or fraudulent misrepresentation under Texas law are: "(1) the defendant misrepresented a material fact; (2) the defendant knew the material representation was false or made it recklessly without any knowledge of its truth; (3) the defendant made the false material representation with the intent that it should be acted upon by the plaintiff; and (4) the plaintiff justifiably relied on the representation and thereby suffered injury." *United Teacher Assocs. Ins. v. Union Labor Life Ins.*, 414 F.3d 558, 566 (5th Cir. 2005). The Complaint sufficiently alleges each required element:

| Element | Allegation Summary | Compl. ¶ |
|---|---|---|
| **Misrepresentation of Material Fact** | Dundon made false representations of material facts, including that: <ul><li>He "was making and was going to follow through on his $250 million funding commitment";</li><li>"[W]ould be providing AAF with 'Series Infinity' funding";</li><li>"[I]ntended to keep AAF operating through" the first season and for years after;</li><li>"[W]as acting in the best interest of AAF in making operational decisions";</li><li>His $250 million commitment was not changed when he presented the Term Sheet; and</li><li>That after his investment, the AAF did not need additional capital and "would not be discussing or accepting additional funding . . . because he was providing all the necessary funding."</li></ul> Dundon first promised $250 million in funding on February 13, 2019. He reiterated that promise publicly and | ¶¶ 60-67, 79, 84-100, 108, 212 |

| Element | Allegation Summary | Compl. ¶ |
|---------|-------------------|----------|
| | privately in the weeks after, including promises that it was "only a matter of time and formality before Dundon would reduce the $250 million commitment to writing." | |
| **Knowledge of falsity or made recklessly without knowledge of truth** | Dundon knew that these representations were false when he made them.<br><br>Forty-five days after his initial promise, Dundon told AAF executives that "DCP has not made any further commitment after 70 and has made clear that there is no further capital from DCP, unless and until things change" and refused to fulfill his personal $250 million commitment. He later denied even making the promise | ¶¶ 61, 65-66, 77, 79, 84-98, 120, 125-26, 135, 137, 161, 213 |
| **Intent that misrepresentations be acted upon** | Dundon intended to deceive the debtors and to induce the Debtors from taking actions such as a breach of the agreements or "removing Dundon from his positions of ownership and control of the Debtors."<br><br>Dundon wanted to publicize his "$250 million commitment" and wanted that to be part of the AAF's communication strategy.<br><br>Dundon wanted complete operational control of the AAF and insisted that he and Zutter displace the control of other investors as the sole voting shareholders.<br><br>Dundon took control of the AAF on February 14, 2019. Dundon continued to promise that it was "only a matter of time and formality before Dundon would reduce the $250 million commitment to writing." | ¶¶ 72-73, 75, 79, 81, 85-86, 88, 97-98, 116, 214 |
| **Justifiable Reliance** | Because of the Debtors' fiduciary relationship with Dundon and his continued statements and conduct supporting those statements, and "lack of opportunities to equal to Dundon to discover" the falsity of those statements.<br><br>Relying on Dundon's misrepresentations, the Debtors did not declare a breach of the agreements, remove Dundon from his positions of ownership and control, or secure additional investors and funding for the League. | ¶¶ 65-66, 69, 72-73, 75-77, 79-80, 90, 96, 97-99, 105-110, 215 |

Confusing the requirements for fraud, generally, with the specific requirements regarding promises of future performance, Dundon wrongly claims: "Fraud requires intent to deceive" and "recklessness is insufficient." ECF No. 18 at 40. But recklessness *is* sufficient for fraud under

-42-

Texas law. *See United Teacher*, 414 F.3d at 566; *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010) ("fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth" (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). And "a promise to do an act in the future is an actionable misrepresentation when made with the intent to deceive and with no intention of performing the act." *Id.*; *Chicago, T. & M.C. Ry. Co. v. Titterington*, 84 Tex. 218, 223-24, 19 S.W. 472, 474 (1892). As noted above, the fraud claims against Dundon are focused on his statements and actions in the 45 days between the promise of funding and when Dundon suspended the League's season, with only weeks left to go, which shows the requisite intent and knowledge. The fraud claims are not based on any promise to do an act in the future—that issue will be addressed in connection with the fraudulent inducement claim, in Section III.C.3, *infra*.

ii. <u>Dundon failed to disclose material facts, amounting to fraud by non-disclosure.</u>

The non-disclosure theory also focuses on Dundon's actions after he became a director and took control of the League. "[F]raud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose." *United Teacher*, 414 F.3d at 567.[31] A duty to disclose may arise when the parties have a confidential or fiduciary relationship. *Four Bros. Boat Works, Inc. v.*

---

[31] The elements are "(1) the defendant deliberately failed to disclose material facts . . . that the defendant had a duty to disclose, (2) the defendant knew the plaintiff was ignorant of the facts and . . . did not have an equal opportunity to discover them, (3) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, and (4) the plaintiff relied on the nondisclosure and suffered injury as a result[.]" *Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 801 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

*Tesoro Petroleum Cos.,* 217 S.W.3d 653, 670-71 (Tex. App.—Houston [14th Dist.] 2006, pet.

denied). The Complaint sufficiently alleges each required element:

| Element | Allegation Summary | Compl. ¶ |
|---|---|---|
| **Duty to Disclose** | As a director, Dundon was a fiduciary to the Debtors and had a duty to disclose material facts. | ¶¶ 80-81, 216-17 |
| **Failure to disclose material facts** | Dundon concealed and failed to disclose that he was not going to follow through on his funding commitment, had caveats or conditions to funding, Dundon's use of assets and resources for his benefit and the benefit of DCP and friends, and was not acting in the best interest of AAF in operational and financial decisions.<br><br>These non-disclosures created false impressions regarding his intent and ability to finance the League and that he was acting in the League's best interests. | ¶¶ 60-62, 65-66, 77, 79, 84-98, 125-26, 137, 161, 216-17 |
| **Knowledge of ignorance and unequal opportunity to discover** | "Dundon knew that the Debtors lacked knowledge of these concealed and non-disclosed material facts" and would not have the opportunity to learn of them until the bankruptcy and, in some cases, discovery under Rule 2004.<br><br>Following his initial promise of $250 million in funding, Dundon reiterated this promise publicly and privately, without reservation, and never told ESMG or any of its representatives that this promise was conditional. In fact, Dundon refused investments from other sources and represented that he had provided a "permanent solution" and crafted the AAF's communications strategy to push the narrative that the League already had the necessary capital.<br><br>On April 1, 2019, 45 days after his initial promise, Dundon first told League executives that "DCP has not made any further commitment after 70 and has made clear that there is no further capital from DCP, unless and until things change" and he refused to fulfill his personal $250 million commitment. | ¶¶ 88, 91, 94-95, 97, 108-110, 121, 134-135, 218 |
| **Intent to induce action or refrain from action** | Dundon knew that Debtors would not approve of his conduct if they were aware of the concealed and non-disclosed facts and would declare a breach, remove him from his positions of ownership and control. Dundon intended to induce Debtors from this conduct by concealing and not disclosing the material facts. | ¶¶ 65, 67-69, 79, 86, 90-91, 94-95, 97-98, 105, 108, 110, 120-39, 218 |
| **Reliance and Injury** | Because Debtors were not aware of the concealed and non-disclosed facts (given his status as a fiduciary and continued conduct contradicting these facts), they did not declare a breach | ¶¶ 65, 69, 72-73, 75-77, 79-80, |

| Element | Allegation Summary | Compl. ¶ |
|---|---|---|
| | of the agreements or remove Dundon from his positions of ownership and control of the Debtors. Instead, Dundon placed the League in bankruptcy and it suffered losses | 96, 99, 108-10, 120-39, 219, 221 |

        iii.    <u>Dundon's actions were constructively fraudulent, regardless of intent.</u>

Dundon was acting as a fiduciary to the Debtors when he committed the acts supporting the Complaint's common-law fraud and fraud in the inducement claims. ECF No. 1, ¶ 220. Therefore, those actions constitute constructive fraud regardless of intent. *Welder v. Green*, 985 S.W.2d 170, 175 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied). Under Texas law, the Trustee is entitled to pursue a claim of constructive fraud alongside the breach of fiduciary duty claim. *Id.*

        b.    *The Term Sheet does not have an anti-reliance clause and does not negate justifiable reliance.*

Defendants argue the Term Sheet "negates justified reliance as a matter of law" and requires dismissal of the fraud claims. ECF No. 18 at 13, 35. This argument ignores the facts alleged in the Complaint. As explained above in Section III.A.1.c, the Complaint alleges that the Term Sheet was not intended as, and is not, a fully integrated contract. *See, e.g.,* ECF No. 1, ¶¶ 61-70, 79-80. The Term Sheet on its face does not contain any anti-reliance term. ECF No. 1-2 at 4-5. When a contract does not contain an anti-reliance clause, the parties may rely on extra-contractual representations as the basis for fraud claims, and courts will look to other circumstances to determine if that reliance was justifiable. *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.,* No. CV 2017-0500-JRS, 2018 WL 2727542, at *10 (Del. Ch. June 6, 2018); *FdG Logistics LLC v. A&R Logistics Holdings, Inc.,* 131 A.3d 842, 860 (Del. Ch. 2016), *aff'd*, 148 A.3d 1171 (Del. 2016) ("The Court will not bar a contracting party from asserting claims for fraud based

on representations outside the four corners of the agreement unless *that contracting party* unambiguously disclaims reliance on such statements."). Therefore, the Term Sheet provides no basis to dismiss the fraud claims. The alleged facts that Dundon continued to publicize his agreement to invest $250 million long after ESMG signed the Term Sheet (ECF No. 1, ¶¶ 84-98), demonstrates the reasonableness of ESMG's continued reliance on Dundon's representations and promises at this pleading stage.

   c. *The Complaint satisfies Federal Rule 9(b) by alleging the who, what, when, where, and how of the fraud.*

  Defendants also argue the Complaint falls short of Federal Rule 9(b)'s standard for fraud. Plaintiffs agree Federal Rule 9(b) applies to the fraud claims, but Dundon's arguments are not based on the allegations in the Complaint or the actual requirements of the rule.

  In cases of fraud, Federal Rule 9(b) generally requires the plaintiff to show "the who, what, when, and where" of a fraud. *Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir. 2023). The heightened standard "requires only simple, concise, and direct" allegations of the "circumstances constituting fraud" that "make relief plausible . . . when taken as true." *U.S. ex. Rel. Grubbs v. Kanneganti,* 565 F.3d 180, 186 (5th Cir. 2009) (cleaned up); *see also IAS Services Group, L.L.C. v. Jim Buckley & Associates, Inc.,* 900 F.3d 640, 648 (5th Cir. 2018) (reversing district court's dismissal of fraud claims where "the timing and content of the alleged misrepresentation support an inference of reliance; the complaint alleges that the "number one" vendor statement was made during the time in which the purchase agreement was being finalized and just months before it was executed").

  As described more fully in the charts above in Sections III.C.1.a.ii-iii, the Complaint satisfies Federal Rule 9(b) with respect to Count XI:

  **Who?**  Dundon to Ebersol and other League executives and employees. (ECF No. 1, ¶¶ 62, 65-66, 69, 79, 84-98)

| | |
|---|---|
| **What?** | Statements regarding, among other things, Dundon's intent to follow-through on the $250 million funding when he knew that this was not the case, as well as a failure to disclose his intent to halt funding. (*Id.* at ¶¶ 77-80, 84-98) |
| **When?** | Ongoing, between February 14, 2019, and April 1, 2019. (*Id.* at ¶¶ 62, 79-80) |
| **Where?** | Over phone calls, in-person meetings, and electronic communications. (*Id.* at ¶¶ 65-66, 69, 77-80, 84-98) |
| **How?** | By continuing to misrepresent his intentions and failure to disclose the actual facts, Dundon prevented the Debtors from discovering his fraud until after he suspended the League's operations on April 2, 2019, or taking other actions to protect the League if they had known. (*Id.* at ¶¶ 105-113, 116, 121-135) |

The Plaintiffs are not required to plead Dundon's intent with particularity under Federal Rule 9. But Dundon's denials that there was ever an agreement for $250 million in funding to the League—which he even stated in the Motion—is strong evidence Dundon did not believe he would ever paper up the Oral Contract or provide $250 million to the League, or that he had provided the League with all the capital it needed. As stated in the Complaint, Dundon had access to the League's financial information and was aware of its financial needs. ECF No. 1, ¶¶ 105-07. These allegations are more than sufficient for a reasonable inference that Dundon either knew what he was saying was false or made the statements recklessly without knowledge of truth.

Undeterred by the Complaint's detailed allegations—and despite being the only defendant to the common-law fraud claim (Count XI)—Dundon challenges the pleading on the grounds that it improperly attributes actions to more than one Defendant. ECF No. 18 at 37. But Dundon cites only one paragraph—Paragraph 242—that he claims "blam[es] defendants collectively." *Id.* That paragraph is not found in any of the fraud counts; it is part of the unjust enrichment count and is not even incorporated by reference in any of the fraud claims. ECF No. 1, ¶ 242. That Dundon is the only defendant named in Count XI and that he could only identify a single, irrelevant example

of "group pleading," stands in stark contrast to the case Dundon relies on—*U.S. v. Lakeway Reg'l Med. Ctr., LLC*—where there were six defendants (three business entities and three individuals) and the court found that the counts against them did "not distinguish between the Defendants even once." No. A-19-CV-00945-JRN, 2020 WL 6146571, at *2 (W.D. Tex. Feb. 13, 2020). Defendants' "group pleading" argument is without merit.[32]

> d.    The Complaint is not a "shotgun pleading," and the Fifth Circuit has not adopted this doctrine.

Defendants attempt to brand the Complaint as a "shotgun pleading" as grounds for dismissal. In addition to criticizing the Complaint for alleged "group pleading," Dundon claims that the fraud claims must be dismissed because the Complaint provides background information; incorporates factual allegations by reference in the counts; includes multiple claims under a single count; and asserts claims in the alternative. ECF No. 18 at 37.[33] Defendants do not argue that any

---

[32] Even if the Complaint did rely on group pleading in support of the fraud claims (it does not), nothing in Federal Rules 8(a) or 9(b) precludes referring to the conduct of multiple defendants at once. While it "is not enough to 'lump' together . . . *dissimilar defendants* and assert that 'everyone did everything,'" a complaint "need not distinguish between defendants that had the exact same role in a fraud." *U.S. ex rel. Silingo v. WellPoint, Inc.,* 904 F.3d 667, 677 (9th Cir. 2018) (citation omitted; emphasis added). The plaintiff need only "designate the nature of the defendant's relationship to a particular scheme and identify the defendant's role." *Steiner v. Southmark, Corp.,* 734 F. Supp. 269, 274 (N.D. Tex. 1990); *see also U.S. ex rel. Univ. Loft Co v. Blue Furniture Sols., LLC,* No. 1:15-CV-588-LY, 2018 WL 4494999, at *4 (W.D. Tex. Sept. 18, 2018) (denying motion to dismiss even though "many of the allegations" were "made against the defendants generally" because the complaint was "sufficient to put each [defendant] on notice of their role in the scheme"); *Bates v. Laminack,* 938 F. Supp. 2d 649, 668 (S.D. Tex. 2013) ("Multiple defendants' conduct may be lumped together if the plaintiff's allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants' role").

[33] There is nothing inherently nefarious about any of these. In fact, so long as the pleading otherwise complies with the rules, some are encouraged. For example, a complaint may—and generally should—incorporate allegations by reference into each cause of action. Wright and Miller, *Fed. Prac. & Proc. Civ.,* § 1326. This is "an extremely common practice," *id.,* and Federal Rule 10 expressly allows a party to adopt allegations by reference "elsewhere in the same pleading or in any other pleading or motion." Doing so furthers Federal Rule 8(a)'s "short and plain statement of the claim" requirement.

of these issues are confusing or impede their ability to ascertain the basis of the claims against them. They simply seize on the novel "shotgun pleading" doctrine in the Eleventh Circuit—a doctrine that has not been discussed or adopted by the Fifth Circuit and should not be applied here.

Further, the doctrine would not call for dismissal of the Complaint, even if applied. As the Eleventh Circuit explains it, all "shotgun pleadings" have a critical "unifying characteristic": they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Inform Inc. v. Google LLC*, No. 21-13289, 2022 WL 3703958, at *4 (11th Cir. Aug. 26, 2022). But even the Eleventh Circuit instructs that dismissal of a "shotgun pleading" is only "appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015).[34] Defendants have not claimed, and cannot credibly claim, that they cannot tell what the allegations of fact and law are against them. The Complaint contains detailed factual allegations that identify each Defendant by name, and each count further identifies the Defendants against which it is asserted.[35] The factual background, standard incorporation by reference clauses (to avoid repeating entire sections of the factual allegations in the counts), alternative claims, and related claims under one heading do not impede the Defendants' ability to understand the claims and answer them. *See Weiland*, 792 F.3d at 1324-25 (reversing non-merits dismissal where "the

---

[34] Courts in this circuit similarly focus on whether the defendants are on notice of the claims against them. *Scooter Store, Inc. v. MRB Acquisition Corp.,* No. SA-09-CA-019-H, 2009 WL 10669885, at *1-2 (W.D. Tex. Dec. 23, 2009) (rejecting a defendant's "nit-picking" argument that a complaint incorporated "all preceding 139 paragraphs into each count" because "it [was] apparent that the factual basis of the complaint as a whole support[ed] each claim").

[35] In fact, the word "Defendants" only appears in the Complaint 19 times and, in almost every instance, is followed immediately with the name of one or more of the Defendants. *See e.g.,* ECF No. 1, 42 (identifying the Defendants named in Count III) and 62-63 (asking, in the prayer for relief, that "Defendants be cited to appear" and for the Plaintiffs to be awarded "against Defendants"). By contrast, the word "Dundon" appears more than 450 times and "Zutter" more than 80.

district court could and did understand the claims" and the allegations "adequately put [the defendants] on notice of the specific claims against them and the factual allegations that support[ed] those claims").

Finally, even where this high standard is met to find a "shotgun pleading," the court **must** "*sua sponte* allow a litigant one chance to remedy such deficiencies . . . even if the parties do not request it," and in "the repleading order . . . explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings." *Vibe Micro, Inc. v. Shabanets,* 878 F.3d 1291, 1295-96 (11th Cir. 2018). Therefore, even if the "shotgun" pleading doctrine applied and the Court found the Complaint insufficient, the remedy would be a non-merits dismissal with an opportunity for Plaintiffs to replead.

### 2. The Complaint states a claim for fraud in the inducement against Dundon and DCP (Count XII).

"Under Texas law, a plaintiff claiming fraud in the inducement must show: (1) the defendant knowingly or recklessly made a material representation; (2) the representation was false; (3) the defendant intended the plaintiff to act on the representation; (4) the plaintiff actually and justifiably relied on the representation; and (5) the plaintiff thereby suffered an injury." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416 (5th Cir. 2021). Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform. *Formosa Plastics*, 960 S.W.2d at 47; *Arete Partners,* 594 F.3d at 394 ("A promise to do an act in the future is an actionable misrepresentation when made with the intent to deceive and with no intention of performing the act."); *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

"A representation of fact can constitute actionable fraudulent inducement . . . if it '(1) admits of being adjudged true or false in a way that (2) admits of empirical verification.'" *Hoffman*

*v. L & M Arts*, 838 F.3d 568, 579 (5th Cir. 2016) (internal quotations omitted). (internal quotations omitted). A misrepresentation is material if it is important to the party to whom it is made in making a decision regarding the particular transaction. *Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Reliance is established by showing that the defendant's actions and representations induced the plaintiff to act or to refrain from action. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

Applying these standards, the Complaint states a claim for fraud in the inducement:

| Element | Allegation Summary | Compl. ¶ |
|---|---|---|
| **Defendant knowingly or recklessly made a material representation** | Dundon individually, and separately on behalf of DCP, made false representations of material facts to the Debtors in connection with the Oral Contract and Term Sheet, including that he "was making and was going to follow through on his $250 million funding commitment to AAF"; "would be providing AAF with 'Series Infinity' funding"; "intended to keep AAF operating through the completion of its critical first season and for years following"; "was acting in the best interest of AAF in making operational decisions"; and that his $250 million commitment was not change when he presented the Term Sheet, "AAF would not be discussing or accepting additional funding . . . because he was providing all the necessary funding." | ¶¶ 60-67, 212, 225, 227 |
| **Representation was false** | Dundon knew that these representations were false or alternatively made them with reckless disregard to their truth. Later, Dundon not only failed to perform, he denied making the promises. | ¶¶ 61, 65-67, 77, 79, 84-98, 161, 226 |
| **Intent that the representation be relied upon** | The misrepresentations were made in connection with the Term Sheet and Oral Contract and were "intended to deceive ESMG and induce ESMG into agreeing to and complying with ESMG's obligations under the Oral Contract and the Term Sheet, as well as not taking further actions to fund or operate ESMG that would conflict with the ownership and control rights Dundon and DCP received pursuant to the Oral Contract and Term Sheet." Intent was shown by Dundon's multiple representations and actions over the relevant time that the League did not need further funding. | ¶¶ 65, 67, 72-73, 75, 79, 81, 85-86, 88, 97-98, 116, 214, 227 |

| Element | Allegation Summary | Compl. ¶ |
|---------|--------------------|----------|
| **Actual and Justifiable Reliance** | ESMG relied on the misrepresentations because of the fiduciary relationship with Dundon, his continued statements and conduct supporting those statements, and "lack of opportunities to equal to Dundon to discover" the falsity of those statements. Relying on those misrepresentations, ESMG entered into and complied with its obligations under the Oral Contract and Term Sheet "and did not take further actions to fund or operate ESMG that would conflict with" Dundon and DCP's ownership and control rights received under those agreements, including declaring a breach of the contracts, removing Dundon from control, or securing additional funding for the League. | ¶¶ 65, 69, 72-73, 75-77, 79-80, 90, 96, 97-99, 105-110, 228 |
| **Injury** | "ESMG suffered injuries as a direct and proximate result of Dundon's and DCP's fraudulent conduct in inducing ESMG to enter into the Oral Contract and Term Sheet, which Dundon and DCP breached[.]" Instead of the League taking other action, Dundon placed the League in bankruptcy and it suffered loss. | ¶¶ 72-73, 105-13, 116, 121-35, 137-138, 229 |

While it is the party's intent at the time the representation was made that must be determined, intent also may be inferred from the party's acts after the representation is made. *Batto v. Gafford*, 119 S.W.3d 346, 348 (Tex. App.—Waco 2003, no pet.). "Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made. However, that fact is a circumstance to be considered with other facts to establish intent." *Arete Partners*, 594 F.3d at 394-95 (quoting *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986)). "Even 'slight circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent." *Id.* ***A "party's denial that he ever made a promise is a factor showing no intent to perform when he made the promise." Id.;*** *see also L & C Consultants, LLC v. ASH Petroleum, Inc.*, No. CIV A 307-CV-1904-D, 2009 WL 3110200, at *7 (N.D. Tex. Sept. 29, 2009), *aff'd*, 464 Fed. App'x 199 (5th Cir. 2010) ("Irwin's unwillingness to admit that the guarantee was made—despite unmistakable evidence that it was—demonstrates his . . . willful intention not to perform the promise"); *Coffel v. Stryker Corp.,* 284 F.3d 625, 635 (5th Cir. 2002) ("immediate repudiation . . . is consistent with Stryker's lack of intent

to keep its promises"); *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971) ("Other evidence which furnishes support for the trial court's finding is found in O'Boyle's denial that he made the promise to convey…"). "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Batto*, 119 S.W.3d at 348 (citing *Spoljaric*, 708 S.W.2d at 434).

Applying these standards, looking to the allegations of the Complaint set forth above, and even the arguments in the Motion denying that these promises were ever made or intended to be delivered upon, the Complaint adequately states a claim from fraud in the inducement.

### 3. The Complaint states claims for fraudulent transfer against Dundon and DCP (Counts VII-X).

Defendants seek dismissal of the fraudulent transfer claims, incorrectly arguing that the Complaint does not allege that Dundon or DCP was an initial or subsequent transferee.[36] But the Complaint alleges that Dundon and DCP fraudulently transferred ESMG's assets and resources— *i.e.*, ESMG'S claims against Fowler and FO2, LLC—in order for Dundon and DCP to obtain releases and full control of the League *for Dundon and DCP*. Thus, the cases cited by Defendants are inapposite because Dundon and DCP—unlike the defendant in those cases—obtained something of value. ECF No. 18 at 34 (citing *Mack v. Newton,* 737 F.2d 1343, 1357 (5th Cir. 1984) and *Ron v. Ron*, 836 Fed. App'x 192, 195 (5th Cir. 2020)). Even the Defendants' cases recognize that fraudulent transfer claims are proper against a "person [that] does not actually directly receive

---

[36] Citing no authority, Defendants further assert these claims are barred because "ESMG agreed in the release not to file a suit to limit the effect of the release" [ECF No. 18 at 34], but the Trustee brings suit on behalf of the Estate. *See* ECF No. 1, ¶¶ 1-2; *see also* 11 U.S.C. §§ 544, 548.

the transferred property, but nevertheless indirectly receives it or receives its proceeds or value." *Mack,* 737 F.2d at 1358.[37]

Dundon and DCP benefited from the alleged fraudulent transfer: they *personally* received a release from Fowler of any claims he had against them, as well as his relinquishment of his voting rights and control over the League, which also inured to Dundon and DCP *personally*. ECF No. 18-2 at 1-8; ECF No. 1, ¶ 116. As the Fifth Circuit recognized in *Mack,* "one who takes active part in procuring [a fraudulent transfer] . . . must be liable for any part of the property which he actually receives[.]" 737 F.2d at 1358. Accordingly, a fraudulent transfer claim has been plausibly stated against Dundon and DCP.

### 4. The Complaint states a claim for civil conspiracy against DCP, Dundon, and Zutter (Count XIV).

The Complaint states a claim for civil conspiracy against DCP, Dundon, and Zutter regarding the fraudulent transfer, fraud, and fraudulent inducement claims. "To establish a civil conspiracy to defraud, a plaintiff must allege (1) two or more persons; (2) with a common purpose; (3) to undertake an action to defraud; (4) with each person having the intent to defraud; and (5) each person understanding that the co-conspirators share that common purpose." *New High-Tech*, 2021 WL 4077818, at *5 (citing *Bayou Terrace Inv. Corp. v. Lyles*, 881 S.W.2d 810, 815 (Tex. App.—Houston [1st Dist.] 1994, no writ)). The Complaint plausibly alleges a conspiracy claim against the Defendants. ECF No. 1, ¶¶ 235-240.

---

[37] The recent Fifth Circuit case of *Ron v. Ron*, cited by Defendants, stands for the unremarkable premise that fraudulent transfer claims are "[g]enerally restricted to parties to the transfer" and that someone who is not "a party to and did not benefit from the alleged fraudulent transfer," is not personally liable for the fraudulent transfer. 836 Fed. App'x at 195. That is not the case here where Defendants did benefit from the transfer.

Defendants argue the conspiracy claim fails because an agent cannot conspire with its principal, asserting that Dundon and Zutter were DCP's principals. ECF No. 18 at 32. But the capacity of Dundon and Zutter is squarely at issue in this case – were they acting as fiduciaries for the League (as they were supposed to be), were they acting for themselves, or were they acting for DCP (which is apparently going to be Defendants' position, which will admit other claims)? The allegations do not support Defendants' argument that it was necessarily as agents for DCP for all actions, and thus this is not an appropriate dismissal argument.

**D.     None of the Remaining Claims Should Be Dismissed (Count VIII, XV).[38]**

> *1.     The Complaint states a claim for negligent misrepresentation (Count VIII).*

Plaintiffs assert a negligent misrepresentation claim against Dundon, in the event that it is found his misrepresentations were not made intentionally and do not constitute constructive fraud. ECF No. 1, ¶¶ 230-32. The allegations regarding Dundon's misrepresentations, set forth above in Section III.C.1.a.i regarding the fraud claims, support the negligent misrepresentation claim as well. The Complaint also alleges facts to support the additional elements in a negligent misrepresentation claim,[39] that the communications were made in the course of Dundon's business and/or a transaction in which he had a pecuniary interest, and that the statements were made without reasonable care of competence. ECF No. 1, ¶¶ 79 (describing Dundon's dual interests and his assurances that it was only "a matter of time and formality" until the $250M commitment

---

[38] Defendants did not move for the dismissal of Counts XVI or XVII.

[39] The elements of negligent misrepresentation in Texas are: (1) the defendant made a representation in the course of business or a transaction in which the defendant had a pecuniary interest; (2) the defendant supplied false information for the guidance of others; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the representation; and (5) the negligent misrepresentation proximately caused injury. *Heller Healthcare Fin., Inc. v. Boyes,* No. CIV.A. 300CV1335D, 2002 WL 1558340, at *2 (N.D. Tex. July 15, 2002).

would be reduced to writing), 108-11 (describing Dundon's knowledge of the League's financial condition and statement that the League did not "need any capital"), 232. Accordingly, the Complaint plausibly alleges a claim for negligent misrepresentation.

### 2. The Complaint states a claim for unjust enrichment (Count XV).

"To survive a motion to dismiss on an unjust enrichment claim, a plaintiff must plead facts sufficient to lead to the plausible inference that the defendant obtained a benefit . . . by fraud, duress, or the taking of an undue advantage." *BBX Operating, L.L.C. v. Bank of America, N.A (Matter of Connect Transp., L.L.C.)*, 825 Fed. App'x 150, 154 (5th Cir. 2020) (quotations omitted).[40] "The unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties." *Bent v. U.S. Bank N.A.*, No. 3:15-CV-340-N, 2015 WL 3454226, at *3 (N.D. Tex. May 29, 2015) (quoting *Burlington N.R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex.1998)) (denying motion to dismiss unjust enrichment claim where plaintiff alleged defendants retained payments obtained by fraud).

As detailed above in Section III.C.1 (as to the fraud claims), the Complaint alleges facts showing the Defendants obtained benefits—including specifically (and at least) commercial airtime and the personal releases obtained from Fowler and FO2, LLC (in exchange for Debtors' claims)—from Debtors by fraud or taking an undue advantage, and it would be inequitable and unjust for Defendants to retain those benefits without compensation. ECF No. 1, ¶¶ 115-16, 242. These facts state a plausible claim for recovery under theory of unjust enrichment. Plaintiffs are

---

[40] *See also Lee v. Samsung Elecs. Am., Inc.*, No. 4:21-CV-1321, 2022 WL 4243957, at *17 (S.D. Tex. Sept. 13, 2022); *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 284 (Tex. App.—Tyler 2021, pet. denied) ("A party may recover under an unjust-enrichment theory if one party has obtained a benefit from another by fraud, duress, or the taking of unfair advantage").

not required to plead every evidentiary basis that they may ultimately rely upon at trial, and the Complaint's factual allegations establish a reasonable inference that the Defendants have obtained and retained additional benefits as a result of their fraud. *STP Invs. LLC v. NeoTek Energy, Inc.*, No. 422CV00361SDJCAN, 2023 WL 2606584, at *4 (E.D. Tex. Mar. 2, 2023), report and recommendation adopted, No. 4:22-CV-361-SDJ, 2023 WL 2601203 (E.D. Tex. Mar. 22, 2023).[41] The Complaint puts the Defendants on notice of the basis for the unjust enrichment claim, and that is all that is required at the pleading stage.

### 3. None of Plaintiffs' claims are barred by the economic loss rule.

Defendants' economic loss argument is not a basis for dismissal. The "***economic loss rule does not prevent parties from pleading multiple theories of liability***; it bars them from recovering economic losses caused by a breach of contract on a negligence theory." *Sunday Riley Mod. Skin Care, L.L.C. v. Maesa*, No. CIV.A. H-12-1650, 2014 WL 722870, at *5 (S.D. Tex. Feb. 20, 2014) (emphasis added).[42] This argument has no applicability at the motion to dismiss stage.

The "economic loss rule is not an affirmative defense; it 'is a consideration in *measuring damages.*'" *Shopoff Advisors, L.P. v. Atrium Circle, GP*, 596 S.W.3d 894, 908 (Tex. App.—San Antonio 2019, no pet.); *see also Stauffacher v. Coadum Capital Fund 1, LLC*, 344 S.W.3d 584, 591 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). In *Stauffacher*, for example, the trial court tried claims for breach of contract and breach of fiduciary duty in tandem, and expressly

---

[41] *See also Lee*, 2022 WL 4243957, at *17; *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 157 (5th Cir. 2018).

[42] *See also, e.g.*, *Galderma Lab'ys LP v. Adams*, No. 4:20-CV-00260-P, 2020 WL 10893186, at *6 (N.D. Tex. Dec. 8, 2020) (rejecting economic loss argument because "until an action has actually reached the point of entering a judgment, Rule 8 allows a plaintiff to explore alternative, mutually exclusive theories." (cleaned up) (quoting *Laurence v. Atzenhoffer Chevrolet*, 281 F. Supp. 2d 898, 900 (S.D. Tex. 2003))); *Renowned Chem.*, 2022 WL 3566937, at *7 (rejecting economic loss argument because of dispute of whether agreement exists).

recognized that "the two questions were alternative theories of the same case," which the plaintiff was entitled to pursue through trial. 334 S.W.3d at 591. The Court struck a portion of the jury's damages award only because the plaintiff offered no evidence that the damages that it suffered for breach of fiduciary duty were *separate and distinct* from those attributable to the breach of contract. *Id.* Nothing in the case suggests the plaintiff was somehow barred from presenting both theories to a jury, however, or from recovering under either theory where the damages overlapped. *See generally id.* The question is whether the tort claim exists independent of the contract at issue. *R.P. Small Corp. v. Land Department, Inc.*, 505 F. Supp. 3d 681, 708 (S.D. Tex. 2020) (refusing to dismiss fiduciary claim that "is alleged to have existed outside of the contract at issue").

Defendants' cases do not hold otherwise. *Ibe,* for example, recognizes that if a "plaintiff presents legally sufficient evidence on each of the elements of a fraudulent inducement claim, any damages suffered as a result of the fraud sound in tort because the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016) (quoting *Formosa Plastics*, 960 S.W.2d at 46–47). The problem for the plaintiffs in *Ibe* was that "there [was] no plausible case for fraudulent inducement[.]" *Id.* And *Sw. Bell Tel. Co. v. DeLanney*, recognizes that: "The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." 809 S.W.2d 493, 495 (Tex. 1991) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

Here, the Plaintiffs' tort claims arise from duties independent from the contract. Dundon and DCP had a legal duty not to fraudulently induce the Term Sheet, independent of the duties created by that contract itself. Dundon had an independent duty not to defraud the Debtors in his

dealings with them, independent of the duties created by the Term Sheet and Oral Contract. Dundon and Zutter owed fiduciary duties to the Debtors that were independent of the duties created by the Term Sheet and Oral Contract. Thus, even assuming the tort and contract claims were determined to have overlapping damages by the Court,[43] dismissal would not be appropriate at this time. The motion to dismiss on the ground of economic loss theory should be denied.

### 4. *Plaintiffs are entitled to recover attorneys' fees.*

Defendants do not deny that Plaintiffs would, if they prevailed, be entitled to attorneys' fees on their fraudulent transfer claims. ECF No. 18 at 56. While Defendants claim that Delaware law applies to a claim under the Term Sheet, and thus that attorneys' fees are not recoverable for Plaintiffs' contract claim, Plaintiffs' claim for breach of the Oral Contract sounds in Texas law (as explained in Section III.A.1), and thus attorneys' fees are available on that claim under Section 38.001(8) of the Texas Civil Practice & Remedies Code.

### E. Alternatively, Plaintiffs Request Leave to Amend.

Under Bankruptcy Rule 7015, applying Federal Rule 15(a)(2), the "court should freely give leave [to amend the pleadings] when justice so requires." In fact, "[a] Complaint should only be dismissed under Federal Rule 12(b)(6) after affording every opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile." *Vallez v. Harding*, No. SA-22-CV-01377-JKP, 2023 WL 2583929, at *2 (W.D. Tex. Mar. 20, 2023). For this reason, "when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint." *Id*. Plaintiffs contend that they have sufficiently alleged facts to support each of the

---

[43] Plaintiffs have set forth different theories of harm for the breach of contract and fraud or breach of fiduciary duty claims. *Compare* ECF No. 1, ¶¶ 144-145 (describing theory for breach of Oral Contract); 172-180 (breach of fiduciary duty); 221-223 (fraud).

causes of actions in the Complaint, but, in the event that the Court finds that the pleadings are insufficiently definite in any manner, Plaintiffs respectfully request leave to amend the Complaint within thirty (30) days of any such order to cure any failure found by the Court. There will be no prejudice to Defendants if the Complaint is amended, as no scheduling order has been entered and no other proceedings have taken place.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Original Complaint should be denied in its entirety, and, alternatively, for any claims on which this Court is inclined to grant Defendants' Motion, Plaintiffs request leave to amend such claims following this Court's order.

Dated: April 5, 2023                     Respectfully submitted,

*/s/ Katharine Battaia Clark*

**Nicole L. Williams** (SBN 24041784)
**Katharine Battaia Clark** (SBN 24046712)
**Thompson Coburn LLP**
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201
Phone: (972) 629-7100
Fax: (972) 629-7171
nwilliams@thompsoncoburn.com
kclark@thompsoncoburn.com

and

*/s/Jonathon Farahi (with permission)*

**Boris Treyzon** (CA SBN 18893)
(application for pro hac vice admission forthcoming)
**Jonathon Farahi** (CA SBN 324316)
(application for pro hac vice admission forthcoming)
**Abir Cohen Treyzon Salo, LLP**
16001 Ventura Boulevard, Suite 200
Encino, California 91436
Phone: (424) 288-4367
Fax: (424-288-4368
btreyzon@actslaw.com
jfarahi@actslaw.com

and

*/s/ Brian S. Engel (with permission)*

**Brian S. Engel** (SBN 00789279)
**Steve P. Turner** (SBN: (20314700)
**Barrett Daffin Frappier Turner & Engel, LLP**
580 La Ventana Blvd.
Driftwood, Texas 78619
Phone: (512) 687-2503
Fax: (512) 477-0008
brianen@bdfgroup.com
stevet@bdfgroup.com

**ATTORNEYS FOR PLAINTIFFS**
**RANDOLPH N. OSHEROW,**
**CHAPTER 7 TRUSTEE, DEBTORS' ESTATE**

## <u>CERTIFICATE OF SERVICE</u>

By my signature below, I hereby certify that on or before the 5th day of April 2023, a true and correct copy of the foregoing document was served to the below listed parties via electronic means as listed on the Court's ECF noticing system or by electronic mail.

*/s/ Katharine Battaia Clark*
Katharine Battaia Clark

Jeff Lowenstein, Esq.
Brent D. Hockaday, Esq.
Brent Turman, Esq.
Beverly A. Whitley, Esq.
Bell Nunnally Martin LLP
2323 Ross Avenue
Suite 1900
Dallas, TX 75201
214-740-1400
bhockaday@bellnunnally.com
jlowenstein@bellnunnally.com
bturman@bellnunnally.com
bwhitley@bellnunnally.com

Patrick H. Autry, Esq.
Branscomb PLLC
4630 N. Loop 1604 W.
Suite 206
San Antonio, TX 78249
(210) 598-5400 (main number)
(210) 598-5405 (fax)
pautry@branscomblaw.com