## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **IN RE** | § | |
| | § | |
| **LEGENDARY FIELD** | § | **CASE NO. 19-50900-CAG** |
| **EXHIBITIONS, LLC,** | § | |
| | § | **CHAPTER 7** |
| | § | |
| **DEBTOR.** | § | |

---

| | | |
|---|---|---|
| **RANDOLPH N. OSHEROW, Chapter 7** | § | |
| **Trustee, and the Bankruptcy Estates of** | § | |
| **Legendary Field Exhibits, LLC, AAF** | § | |
| **Players, LLC, AAF Properties, LLC,** | § | |
| **Ebersol Sports Media Group, Inc., LFE** | | |
| **2, LLC, and We Are Realtime, LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | **Adversary No. 22-05078-CAG-7** |
| | § | |
| **v.** | § | |
| | § | |
| **THOMAS DUNDON, JOHN ZUTTER,** | § | |
| **and DUNDON CAPITAL PARTNERS,** | § | |
| **LLC,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................................3

INTRODUCTION ......................................................................................................................7

REPLY POINTS ........................................................................................................................7

     A.     The parties did not form an enforceable oral agreement ...........................................7

          1.     The alleged oral contract is too indefinite to be enforced...............................7

          2.     The statute of frauds bars the oral contract claim because it applies to the debt component ........................................................................................12

          3.     Partial performance does not redeem the failed oral contract.........................13

     B.     The Court should dismiss the repackaged contract claims .....................................14

     C.     The Trustee failed to allege an injury independent of the contracts ......................15

     D.     The promissory estoppel claim is another repackaged contract claim ..................16

     E.     The Court should dismiss the fiduciary duty claims...............................................17

     F.     The aiding and abetting and conspiracy claims violate the intra-corporate conspiracy doctrine ................................................................................................18

     G.     The fraudulent transfer claims fail because Dundon and DCP received nothing of value ......................................................................................................19

     H.     The Trustee's fraud claims are naked assertions of wrongdoing...........................20

     I.     Amendment would be futile.................................................................................21

CERTIFICATE OF SERVICE ................................................................................................24

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*A-1 Am. Fence, Inc. v. Wells Fargo Bank, N.A.*,
    No. 1:20-CV-441, 2021 WL 7184973 (E.D. Tex. May 5, 2021) ...........................................15

*Ali v. Mohammad*,
    No. 04-17-00214-CV, 2018 WL 1176382 (Tex. App. — San Antonio 2018, pet.
    denied)....................................................................................................................................8, 9

*BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*,
    No. CIV.A. 20456, 2004 WL 1739522 (Del. Ch. Aug. 3, 2004)...........................................20

*Bailey v. Mansfield Indep. Sch. Dist.*,
    425 F. Supp. 3d 696 (N.D. Tex. 2019) .................................................................................22

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................14

*Bowman v. El Paso CGP Co., LLC*,
    431 S.W.3d 781 (Tex. App. — Houston [14th Dist.] 2014, pet. denied) .................................8

*Chapman v. Mitsui Eng'g & Shipbuilding Co.*,
    781 S.W.2d 312 (Tex. App. — Houston [1st Dist.] 1989, writ denied) ...........................11, 12

*City of Fort Myers Gen. Employees' Pension Fund v. Haley*,
    235 A.3d 702 (Del. 2020) .....................................................................................................18

*Crown Distrib. LLC v. Peacefull Choice Distribution LLC*,
    No. 3:20-CV-3404-K, 2023 WL 1997927 (N.D. Tex. Jan. 27, 2023), report and
    recommendation adopted, No. 3:20-CV-3404-K, 2023 WL 1997785 (N.D. Tex. Feb.
    14, 2023) ...............................................................................................................................15

*Curtis v. Cerner Corp.*,
    621 B.R. 141 (S.D. Tex. 2020) .......................................................................................15, 16

*Elliott v. Whitten*, No. 01-02-00065-CV, 2004 WL 2115420 (Tex. App. — Houston [1st
    Dist.] Sept. 23, 2004, pet. denied)........................................................................................13

*EZLinks Golf, LLC v. PCMS Datafit, Inc.*,
    No. CVN16C07080PRWCCLD, 2017 WL 1312209
    (Del. Super. Ct. Mar. 13, 2017) ......................................................................................16, 20

*Farah v. Mafrige & Kormanik, P.C.*,
    927 S.W.2d 663 (Tex. App. — Houston [1st Dist.] 1996, no writ)........................................10

**CASES** (continued)                                                                       **PAGE**

*Fischer v. CTMI, L.L.C.*,
  479 S.W.3d 231 (Tex. 2016) ................................................................................10, 12

*Foman v. Davis*,
  371 U.S. 178 (1962) ..............................................................................................21

*Fretz Const. Co. v. S. Nat. Bank of Houston*,
  626 S.W.2d 478 (Tex. 1981) ..................................................................................17

*Gannon v. Baker*,
  830 S.W.2d 706 (Tex. App. — Houston [1st Dist.] 1992, writ denied) ...................11

*Genencor In'l, Inc. v. Novo Nordisk A/S*,
  766 A.2d 8 (Del. 2000) .....................................................................................16, 17

*GWO Litig. Tr. v. Sprint Sols., Inc.*,
  No. CV N17C-06-356 PRW, 2018 WL 5309477 (Del. Super. Ct. Oct. 25, 2018).................14

*Hern Family Ltd. P'ship v. Compass Bank*,
  863 F.Supp.2d 613 (S.D. Tex. 2012) .................................................................13, 14

*In re ACM-Tex., Inc.*,
  430 B.R. 371, 408–09 (Bankr. W.D. Tex. 2010) ....................................................10

*In re Cornerstone Therapeutics Inc, Stockholder Litig.*,
  115 A.3d 1173 (Del. 2015) .....................................................................................17

*In re Fedders N. Am., Inc.*,
  405 B.R. 527 (Bankr. D. Del. 2009) .......................................................................17

*In re Think3, Inc.*,
  529 B.R. 147 (Bankr. W.D. Tex. 2015) ..................................................................17

*Iqbal v. Ashcroft*,
  556 U.S. 662 (2009) ...............................................................................................15

*Johnson v. Georgia Dep't of Veterans Serv.*,
  791 Fed. Appx. 113 (11th Cir. 2019) .....................................................................22

*King v. Whatley*,
  236 S.W.2d 186 (Tex. App. — Eastland 1951, writ ref'd n.r.e.) ......................12, 13

*Knowles v. Wright*.
  288 S.W.3d 136 (Tex. App. — Houston [14th Dist.] 2005, no pet.) .......................11

**CASES** (continued)                                                                 **PAGE**

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
  844 F. Supp. 2d 519 (D. Del. 2012) ...................................................................16

*LDGP, LLC v. Cynosure, Inc.*,
  No. 15 C 50148, 2016 WL 11706713 (N.D. Ill. Aug. 17, 2016) ...........................16

*Marshall v. Freedom Mortgage Corp.*,
  No. 3:22-CV-1084-K-BN, 2022 WL 14954831 (N.D. Tex. Oct. 3, 2022), report and
  recommendation adopted, No. 3:22-CV-1084-K-BN, 2022 WL 15089737 (N.D. Tex.
  Oct. 25, 2022) ...................................................................................................15

*Pine v. Gibraltar Sav. Ass'n*,
  519 S.W.2d 238 (Tex. App. — Houston [1st Dist.] 1974, writ ref'd n.r.e.) .................9, 10

*R.P. Small Corp. v. Land Dep't, Inc.*,
  505 F. Supp. 3d 681 (S.D. Tex. 2020) ...............................................................16

*SightLine Health, LLC v. Hagemeier*,
  No. CIV.A. H-10-4661, 2011 WL 3235695 (S.D. Tex. July 26, 2011) ....................10

*T.O. Stanley Boot Co., Inc. v. Bank of El Paso*,
  847 S.W.2d 218 (Tex. 1992) ...................................................................7, 9, 10, 11

*Tex. Commerce Bank Reagan Through Tex. Commerce Bank Nat. Ass'n v. Lebco
  Constructors, Inc.*,
  865 S.W.2d 68 (Tex. App. — Corpus Christi–Edinburg 1993, writ denied) ............12

*Tran v. Tran*,
  No. A-17-CV-510LY, 2018 WL 33405814 (N.D. Tex. 2018) ...............................11

*Upson v. Fitzgerald*,
  129 Tex. 211, 103 S.W.2d 147 (Comm'n App. 1937) .........................................12

*Vela v. Vela*,
  No. 14-12-00822-CV, 2013 WL 6700270 (Tex. App. — Houston [14th Dist.] 2013,
  no pet.) ...............................................................................................................8

*Weinberger v. UOP, Inc.*,
  457 A.2d 701 (Del. 1983) ...................................................................................18

*Wheeler v. White*,
  398 S.W.2d 93 (Tex. 1965) .................................................................................17

*Wiley v. Bertelsen*,
  770 S.W.2d 878 (Tex. App.—Texarkana 1989, no writ) ......................................12

**CASES** (continued)                                                                                          **PAGE**

*Young v. Ershick*,
    No. 4:21-CV-00644-ALM, 2022 WL 3019744 (E.D. Tex. 2022)............................................8

## STATUTES AND RULES

TEX. BUS. & COM. CODE § 26.01 ................................................................................................13

FED. R. BANK. P. 7007 ..............................................................................................................21

FED. R. CIV. P. 7 ......................................................................................................................21

W.D. TEX. BANKR. L. R. 7015.1 ..............................................................................................21

## OTHER AUTHORITIES

5A WRIGHT, CHARLES A., *et al.*, FED. PRAC. & PROC. § 1326 (3d ed. 2004).................................20

6 WRIGHT, CHARLES A., *et al.*, FED. PRAC. & PROC. § 1485 (3d ed. 2010)..................................22

Defendants Thomas Dundon, John Zutter, and Dundon Capital Partners, LLC ("DCP") offer this reply in support of their Motion to Dismiss [Docket No. 18] and to rebut arguments in the Response [Docket No. 30] filed by Plaintiff Randolph N. Osherow, Chapter 7 Trustee.

## INTRODUCTION

Regardless of what Tom Dundon said to Charlie Ebersol on February 13, 2019, and regardless of the after-the-fact media soundbites quoted in the Complaint, a contract requires an agreement (a meeting of the minds) to essential terms. Even if parties intend to form a binding agreement, courts cannot create a contract for them if they fail to agree to essential terms. The Trustee alleges an agreement that lacks essential terms, which makes the agreement unenforceable. He has sued for $180 million, the benefit of that unenforceable bargain. Based on what he pleaded, he has no path to an award of $180 million. There is no contract to that effect, and no reliance by the League that would justify that result, and that result is inconsistent with the term sheet, which he also seeks to enforce. The balance of his claims merely repackage the alleged contract claim, seeking the benefit of the unenforceable bargain by calling it a tort. Companies go out of business, and when they do, their creditors sometimes suffer. That context does not justify enforcement of an agreement that fails as a matter of law or enabling a party to avoid the requirements of contract law by using hindsight to spin a fraud where at best an almost contract occurred.

## REPLY POINTS

**A.     The parties did not form an enforceable oral agreement.**

**1.     The alleged oral contract is too indefinite to be enforced.**

In his response, the Trustee contests the simple proposition from *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992), that parties must agree on the material terms of a contract before a court can enforce it. *Id.* The Trustee first cites a case about enforcement of a settlement agreement (entered pursuant to Rule 11 of the Texas Rules of Civil

Procedure) for the proposition that the manner of payment and performance are not essential terms in contracts generally.  Response at 9 (citing *Young v. Ershick*, No. 4:21-CV-00644-ALM, 2022 WL 3019744, at *11 (E.D. Tex. 2022)).  *Young* discusses that proposition in the context of a Rule 11-settlement agreement because, in the case of a settlement, the time of payment is not ordinarily of the essence.  2022 WL 3019744, *11.  In its discussion of time and manner of performance, *Young* likewise relies on Rule 11 cases in determining that those terms are not essential in settlement agreements.  *Id.*  There is no settlement agreement at issue here, nor any reason that *Young* would apply by analogy.

In the same discussion, the Trustee cites a number of loan cases in which courts enforced obligations of repayment despite the lack of a maturity date, interest rate, and repayment terms.  Response at 9.  In each of the cases, the lender had made the loan, but the borrower had failed to repay it.  In *Vela v. Vela*, No. 14-12-00822-CV, 2013 WL 6700270 (Tex. App. — Houston [14th Dist.] 2013, no pet.), the court forced the borrower to repay the loan when he did not deny receiving the money, but argued that the lender failed to prove the maturity date, the interest rate, or the repayment terms.  The court held that the loan was due on demand, the interest rate would be the contract rate for Texas, and the repayment terms were a reasonable time.  *Id.*, *5–7.  In *Bowman v. El Paso CGP Co., LLC*, 431 S.W.3d 781 (Tex. App. — Houston [14th Dist.] 2014, pet. denied), relying on *Vela*, the court held that a company had made enforceable loans to its shareholder despite the lack of an agreement as to maturity date and repayment terms where the company proved it made transfers to the shareholder (the loans) and that the shareholder had repaid the loans, making the repayment terms and maturity date issues moot.  *Id.* at 785.  In *Ali v. Mohammad*, No. 04-17-00214-CV, 2018 WL 1176382 (Tex. App. — San Antonio 2018, pet. denied), the court enforced a borrower's obligation to repay a loan even though the parties failed to agree on a

maturity date or repayment terms. *Id*., *2 (collecting cases where courts enforced obligations to repay loans despite missing terms in the agreements).

In *Vela*, *Bowman*, and *Ali*, the lenders had fully performed by making the loans. That fact alone justified invocation of the rule that courts construe contracts to avoid forfeiture, and application of the rule "that the law favors finding agreements sufficiently definite for enforcement when one of the parties has fully performed his part of the contract." *Id.* Because this is not a suit for repayment of a loan already extended, those cases and rules do not apply.

This case is more like *T.O. Stanley Boot* in that the borrower is suing because the lender failed to make the loan. 847 S.W.2d at 221. In *T.O. Stanley Boot*, the borrower proved the amount of the would-be loan, but offered insufficient evidence of the interest rate or the repayment terms. The court held that it could not supply the missing terms. *Id.* at 222. In this case, the Trustee's Complaint lacks the elements for a suit on a failure to make a loan. He fails to allege the maturity date, the repayment terms, or the interest rate and, importantly, the Trustee fails to allege the *amount* that Dundon was supposed to loan to the League. The best case for the Trustee's allegations is that the $250 million commitment from Dundon was to be a combination of equity and debt. Compl. at 18 ¶ 65, 40 ¶ 142 [Docket No. 1]. There is nothing the Court can look at to decide — even if it could or wanted to do so — what combination to enforce.

Where borrowers have failed to show an agreement to a loan amount, Texas courts have found purported agreements to make loans too indefinite to be enforced. In *Pine v. Gibraltar Sav. Ass'n*, 519 S.W.2d 238 (Tex. App. — Houston [1st Dist.] 1974, writ ref'd n.r.e.), for example, the court held that a would-be borrower could not recover for a bank's failure to make two sets of loans. A purported agreement for construction financing left open the amount, repayment terms, and specifications for collateral. *Id.* at 243–44. A second purported loan — for permanent

financing—included no total amount and no terms. *Id.* at 243. The court held that the alleged agreements to make loans were too indefinite to be enforced. *Id.* at 243–44.

*Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663 (Tex. App. — Houston [1st Dist.] 1996, no writ), followed *Pine* and *T.O. Stanley Boot* in refusing to enforce a purported unlimited agreement to provide financing that failed to include "any of the material terms inherent in individual contracts to lend money" (*i.e.*, the total amount, the interest rate, or repayment terms). *Id.* at 678. The oral agreement alleged by the Trustee suffers from the same deficiencies — the Trustee has not alleged the total amount of the would-be loan, the interest rate, or any repayment terms. Not only that, the Complaint implies that the parties knowingly and purposely left those items for further negotiations and agreement. *See* Compl. at 18 ¶ 65, 40 ¶ 142.

By leaving essential terms open, the parties formed nothing more than an agreement to agree. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). In *Pine*, under similar circumstances, the court held that the agreement to agree was not binding and could not be enforced because it lacked essential terms. 519 S.W.2d at 21. *T.O. Stanley Boot* and *Farah* contain similar language. *T.O. Stanley Boot*, 847 S.W.2d at 221; *Farah*, 927 S.W.2d at 678 (quoting *Pine*); *see also In re ACM-Tex., Inc.*, 430 B.R. 371, 408–09 (Bankr. W.D. Tex. 2010) (quoting *T.O. Stanley Boot* and holding that a hard mineral lease was an unenforceable agreement to agree because it lacked a duration or start date, among other terms).

In discussing the equity piece of Dundon's alleged funding commitment, the Trustee's main point is criticism of *SightLine Health, LLC v. Hagemeier*, No. CIV.A. H-10-4661, 2011 WL 3235695, at *4 (S.D. Tex. July 26, 2011), cited in the motion for the material terms of an oral agreement to transfer stock. Response at 10. The Trustee claims *SightLine* is not good law because it cites *Knowles v. Wright*. 288 S.W.3d 136 (Tex. App. — Houston [14th Dist.] 2005, no pet.), for

10

the essential terms of a contract to sell stock. *Knowles* relies on *Gannon v. Baker*, 830 S.W.2d 706 (Tex. App. — Houston [1st Dist.] 1992, writ denied), for the essential terms of an agreement to sell stock. The Trustee's complaint is that *Gannon* applies a now-repealed statute of frauds for stock transactions.

The Trustee lifted his criticism of *SightLine* from *Tran v. Tran*, No. A-17-CV-510LY, 2018 WL 3340581, *4 (N.D. Tex. 2018), but *Tran* does not support the Trustee's position that the number of shares and price are not material. In *Tran*, the court held that a percentage of shares could substitute for a number of shares where the total number of shares in a newly-formed entity was undetermined. *Id. Tran* also held that the price was not undetermined where the parties agreed to pay a set percentage of determinable costs. *Id.* Neither holding from *Tran* helps the Trustee.

Every contract has some essential terms; where parties leave an essential term open, there is no binding contract. *T.O. Stanley Boot*, 847 S.W.2d at 221. The Trustee argues that what the parties viewed as essential is what they agreed on: the total investment, the equity Dundon would receive, and control. Response at 11–12. Those points of agreement — assuming they are true — do not demonstrate a meeting of the minds. The Trustee never alleges what number or percentage of shares ESMG promised to transfer to Dundon. Control could mean any amount from 51% to 100%. The Trustee never alleges what price Dundon agreed to pay for the shares. Based on the Trustee's allegations, the total price could range from $1 to $250 million — with the unapportioned balance making up the debt. Whether the parties' expressions alleged show that the parties *intended* to make a contract is generally a question of fact. *Chapman v. Mitsui Eng'g & Shipbuilding Co.*, 781 S.W.2d 312, 316 (Tex. App. — Houston [1st Dist.] 1989, writ denied). Whether the parties were successful in their intended endeavor, *i.e.*, to form a contract, is a question of law. *See id.* at 316. Determination of the latter question is necessary because a purported

11

"agreement" that lacks an essential element required to form a contract cannot support a claim for breach. *See Wiley v. Bertelsen*, 770 S.W.2d 878, 882–883 (Tex. App.—Texarkana 1989, no writ).

An agreement's terms must be sufficiently certain to enable the court to understand the parties' obligations and to give an appropriate remedy. *Fischer*, 479 S.W.3d at 231. In a suit for failure to loan money, a plaintiff can recover the difference between the interest on the loan not made and a loan the plaintiff obtained from another source. *Tex. Commerce Bank Reagan Through Tex. Commerce Bank Nat. Ass'n v. Lebco Constructors, Inc.*, 865 S.W.2d 68, 73–74 (Tex. App. — Corpus Christi–Edinburg 1993, writ denied). The would-be borrower cannot recover the amount of the loan not made because that loan would necessarily come with a corresponding obligation of repayment. Damages for breach of a contract to buy stock would be the price less the actual value. Neither measure would lead to a judgment for $180 million — the amount the Trustee seeks. Nor would either measure lead to a reasonably certain remedy in this case. When the remedy fails for lack of certainty in the contract terms, the claim cannot stand.

> **2.      The statute of frauds bars the oral contract claim because it applies to the debt component.**

The Court should reject the Trustee's argument that if any part of an oral agreement falls outside the statute of frauds, the statute does not apply. Resp. at 4. The applicability of the statute of frauds depends on whether the contract is entire or severable. *Upson v. Fitzgerald*, 129 Tex. 211, 215, 103 S.W.2d 147, 150 (Comm'n App. 1937). If a contract is susceptible of division and apportionment, it is severable. *Id.* at 150. When a contract is severable, a part that fails for lack of compliance with the statute of frauds does not prevent enforcement of the severable part. *Id.* If a contract is entire, the contract fails if it does not comply with the statute of frauds and any part of it falls within the statute. *Id.* The question—entire or severable—is one of intent. *King v. Whatley*, 236 S.W.2d 186, 191 (Tex. App. — Eastland 1951, writ ref'd n.r.e.). Intent may be

evidenced by whether the subject matter is divisible and whether the consideration is apportioned. *Id.*

Here, though the Complaint sets up a contract with two severable parts — one equity, one debt, ESMG's agreement to give Dundon control is not severable. Thus, regardless of Section 8.113 of the Texas Business and Commerce Code, because Section 26.01 (the general statute of frauds) applies to the debt piece and because the consideration is indivisible, the entire agreement is invalid under the statute.

Though the above cases do not address Section 8.113, their application of prior versions of Section 26.01 demonstrate the opposite of the point the Trustee drew from *Elliott v. Whitten*, No. 01-02-00065-CV, 2004 WL 2115420, at *5 (Tex. App. — Houston [1st Dist.] Sept. 23, 2004, pet. denied), which, in fact, never says or even implies the "rule" the Trustee claims.

To the above, the Trustee adds that it was possible for the oral agreement to have been performed in one year. Resp. at 4–5. Although it is possible to have an investment agreement that could be completed within one year, the agreement the Trustee alleges could not. The Trustee alleged that Dundon promised "to fully fund the League for years to come." Compl. at 19 ¶ 69. A promise that spans years falls within the statute of frauds. TEX. BUS. & COM. CODE § 26.01.

**3. Partial performance does not redeem the failed oral contract.**

Despite his pleading to the contrary, the Trustee continues to insist that the League partially performed its obligations imposed by the oral agreement, *i.e.*, by giving Dundon (through DCP at his direction) a 75%-stake in the League plus control. Resp. at 6–8. For partial performance to take an agreement out of the statute of frauds, the performance must be "unequivocally referable" to the alleged oral agreement and corroborate its existence. *Hern Family Ltd. P'ship v. Compass Bank*, 863 F.Supp.2d 613, 625 (S.D. Tex. 2012). The test is whether the actions claimed as performance "could have been done with no other design than to fulfill the particular agreement

13

sought to be enforced; otherwise they do not tend to prove the existence of the parol agreement relied upon by the plaintiff." *Id.* The term sheet calling for the performance alleged (a transfer of a 75% stake in the League plus control) negates the unequivocal reference to an oral agreement required in *Hern. See id.*

Ignoring the term sheet, the Trustee quotes a series of after-the-fact press comments made by Dundon or his companies. None of the comments reference an exchange of control for a $250 million commitment, whereas the term sheet unequivocally requires the exchange of control for a $70 million investment. Thus, the Trustee cannot rely on partial performance.

**B.      The Court should dismiss the repackaged contract claims.**

Consistent with the stereotypical shotgun pleading, the Trustee repackaged his main claims—for breach of contract—as tort claims and various related remedies. In his Response, as he did in his Complaint, the Trustee merely lists the elements of the repackaged claims with little factual matter to tie each one to the events described in the Complaint. *See, e.g.*, Resp. at 54–57 (listing elements of unjust enrichment, negligent misrepresentation, and civil conspiracy). A mere "formulaic recitation of the elements" of a claim does not satisfy Rule 8. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The good faith and fair dealing claim is one example. In it, the Trustee seeks damages for non-performance, not damages related to lack of good faith performance. Compl. at 43 ¶¶ 157–158. His arguments in the Response go mostly to whether a good faith and fair dealing claim could possibly exist, not whether he pleaded one capable of paving the way for benefit of the bargain damages. As a repackaged claim, it is not viable. *GWO Litig. Tr. v. Sprint Sols., Inc.*, No. CV N17C-06-356 PRW, 2018 WL 5309477, at *6 (Del. Super. Ct. Oct. 25, 2018) ("To maintain an implied covenant claim, the factual allegations underlying the implied covenant claim must differ

from those underlying an accompanying breach-of-contract claim."); *see also Crown Distrib. LLC v. Peacefull Choice Distribution LLC*, No. 3:20-CV-3404-K, 2023 WL 1997927, at *6 (N.D. Tex. Jan. 27, 2023) (denying motion for default judgment on negligence and negligent misrepresentation claims where the claims merely repackaged contract claims), report and recommendation adopted, No. 3:20-CV-3404-K, 2023 WL 1997785 (N.D. Tex. Feb. 14, 2023); *A-1 Am. Fence, Inc. v. Wells Fargo Bank, N.A.*, No. 1:20-CV-441, 2021 WL 7184973, at *6 (E.D. Tex. May 5, 2021) (dismissing negligence claim because plaintiff sought benefit of the bargain damages); *Curtis v. Cerner Corp.*, 621 B.R. 141, 171–76 (S.D. Tex. 2020) (dismissing negligence claims as repackaged contract claims).  As an attempt to repurpose allegations from other claims, it fails as not plausible.  Naked assertions—*e.g.*, that League resources were being used to prefer DCP over other creditors—do not state a stand-alone claim where the Complaint contains no factual allegations to sustain them.  *See Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009).

## C.    The Trustee failed to allege an injury independent of the contracts.

In defense of his repackaged claims, the Trustee incorrectly claims that the economic loss rule comes into play only at the judgment stage of a case.  Resp. at 57.  Under Texas law, the Trustee has the duty to affirmatively plead an independent injury.  *See A-1 Am. Fence, Inc.*, 2021 WL 7184973 at *5 (rejecting argument that economic loss rule is in the nature of an affirmative defense and placing burden on plaintiff to plead an independent injury).  Numerous courts have dismissed tort claims based on the economic loss rule when the plaintiff failed to allege damages independent from the breach of contract.  *See Marshall v. Freedom Mortgage Corp.*, No. 3:22-CV-1084-K-BN, 2022 WL 14954831, at *7 (N.D. Tex. Oct. 3, 2022) (dismissing credit-related tort claims barred by economic loss rule and denying leave to amend as futile), report and recommendation adopted, No. 3:22-CV-1084-K-BN, 2022 WL 15089737 (N.D. Tex. Oct. 25,

2022); *Curtis*, 621 B.R. at 176 (dismissing—on 12(b)(6) motion—negligent misrepresentation claim barred by economic loss rule); *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 526–28 (D. Del. 2012) (dismissing — on 12(b)(6) motion — negligent misrepresentation claim barred by economic loss rule); *LDGP, LLC v. Cynosure, Inc.*, No. 15 C 50148, 2016 WL 11706713, at *3 (N.D. Ill. Aug. 17, 2016) (dismissing — on 12(c) motion — negligent misrepresentation claim barred by Texas, Delaware, and Massachusetts economic loss rules); *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, No. CVN16C07080PRWCCLD, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017) (dismissing — on motion filed pursuant to Delaware version of Rule 12(b)(6) — fraudulent inducement claim where plaintiff sought same damages as it sought for breach of contract).

There is no non-economic claim in the Complaint.  The damages alleged arise from the Trustee's central claim that a failure to perform a contract caused the loss of the benefit of the bargain.  Thus, under both Delaware and Texas law, the tort claims—good faith and fair dealing, common law fraud, fraudulent misrepresentation, fraud by non-disclosure, constructive fraud, breach of fiduciary duty, negligent misrepresentation, and civil conspiracy — are subject to dismissal based on the economic loss rule.  *See R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 706–10 (S.D. Tex. 2020) (after extensive discussion of economic loss rule, dismissing — on 12(b)(6) motion — fiduciary duty and negligence claims barred by rule).

**D.     The promissory estoppel claim is another repackaged contract claim.**

Promissory estoppel is another repackaged claim.  In his discussion of promissory estoppel, the Trustee inappropriately criticizes the citation in the motion to *Genencor In'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8 (Del. 2000).  *Genencor* confirms the proposition stated — that promissory

estoppel is not applicable to a promise supported by consideration (*i.e.*, a written contract). *Id.* at 12. Thus, the promissory estoppel claim does not apply to the agreement set out in the term sheet.

As to the oral agreement, the Trustee argues that Texas law allows a cause of action for promissory estoppel; it is not just a defense to the statute of frauds. Resp. at 24. Though that may be correct in limited circumstances, it does not justify the Trustee's claim in this case. The Trustee cannot recover benefit of the bargain damages using a promissory estoppel claim. Promissory estoppel does not create a contract; it merely allows the promissee to recover reliance damages. *Fretz Const. Co. v. S. Nat. Bank of Houston*, 626 S.W.2d 478, 483 (Tex. 1981); *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965). Since the Trustee seeks only benefit of the bargain damages, this claim should be dismissed.

**E.     The Court should dismiss the fiduciary duty claims.**

In his fiduciary duty discussion, the Trustee urges the Court to ignore the exculpatory clause in ESMG's charter on a motion to dismiss, citing *In re Think3, Inc.*, 529 B.R. 147, 183-84 (Bankr. W.D. Tex. 2015), for the proposition that a motion to dismiss can be based on an affirmative defense only if the defense is clearly applicable on the face of the complaint. Resp. at 31. Other federal courts have dismissed duty of care cases based on exculpatory provisions at the Rule 12(b)(6) stage. *See, e.g.*, *In re Fedders N. Am., Inc.*, 405 B.R. 527, 540, 543 (Bankr. D. Del. 2009). Even *In re Cornerstone Therapeutics Inc, Stockholder Litig.*, 115 A.3d 1173 (Del. 2015), cited by the Trustee, dismissed duty of care claims at the outset of the case because the complaint contained no non-exculpatory claim against certain defendants. *Id.* at 1180–1181, 1187.

Also, the entire fairness standard invoked by the Trustee does not apply. It switches the burden to the fiduciary in interested transactions—like the stock purchase discussed in *Cornerstone*—not in ordinary misdoing cases such as what the Trustee has alleged. *See generally*

*Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983) (fairness encompasses fair dealing and a fair price).

The Trustee's defense of his duty of loyalty claims rests on his naked allegations that service to another master motivated Dundon and Zutter when they made decisions for the League. Resp. at 35.  In order to overcome the defense of the business judgment rule, a plaintiff "must adequately allege that (i) the director was materially self-interested in the transaction, (ii) the director failed to disclose his interest in the transaction to the board, and (iii) a reasonable board member would have regarded the existence of [the director's] material interest as a significant fact in the evaluation of the proposed transaction." *City of Fort Myers Gen. Employees' Pension Fund v. Haley*, 235 A.3d 702, 717 (Del. 2020) (internal quotes omitted).  The Trustee's allegations fall short in each category.  Regarding the Release, for instance, Dundon did not appear on both sides of the transaction, and there is no allegation that he failed to disclose his interest in the transaction to the rest of the board.

**F.      The aiding and abetting and conspiracy claims violate the intra-corporate conspiracy doctrine.**

In his discussion of aiding and abetting and conspiracy, the Trustee points to allegations that name Jeff Vanderbilt and Jason Kulas as sufficient to overcome the intra-corporate conspiracy doctrine because Vanderbilt and Kulas worked for DCP and, although Dundon and Zutter also worked for DCP, Dundon and Zutter were conspiring with DCP (through Vanderbilt and Kulas) when they (Dundon and Zutter) were acting as agents of ESMG.  Resp. at 39–40.  There is no mention of Vanderbilt or Kulas in either Count VI or Count XIV.  The recitations in those counts set out a classic situation for application of the intra-corporate conspiracy doctrine because they indicate that Dundon and Zutter steered DCP so that DCP took no independent step (through Vanderbilt or Kulas or otherwise).

**G.     The fraudulent transfer claims fail because Dundon and DCP received nothing of value.**

With respect to the fraudulent transfer claims, the Trustee insists that Dundon and DCP received valuable assets and resources from the Release Agreement the League entered with FO2, LLC. Resp. at 53. In the Release, the League releases Fowler and FO2, LLC from their investment commitments; Fowler and FO2, LLC release the League from all claims related to Fowler's investment and his subsequent potential equity dilution as a result of DCP and ESMG signing the term sheet. Docket No. 18, Ex. B ¶ 1(a) (Fowler release), ¶ 2(a) (ESMG release), ¶ 5 (dilution). Nowhere in the agreement does the League transfer anything to Dundon or DCP. The League had already agreed to transfer the 75% stake to DCP on February 14, 2019, nine days before the Release was signed (on February 23, 2019). The Trustee's argument is that the Release enabled Dundon and DCP to gain control of ESMG because Dundon and DCP — who were in control of ESMG — forced ESMG to give up claims against Fowler so that Dundon and DCP could gain control or ESMG. Resp. at 53. That argument makes no sense and is not supported by plausible, well-pleaded facts. There are no facts that tend to show that ESMG parted with claims of value and that DCP or Dundon obtained something of value as a result. There is no allegation that FO2, LLC had a claim against DCP or Dundon. The relinquishment of control benefited the League, not DCP and Dundon, because the League had promised control and a majority equity stake to DCP in the term sheet and could not deliver the equity without the Release.

In addition, regardless of the validity of the allegations, the League released any claim that would limit its effect—a point not rebutted in the response. *See* Mot. to Dismiss at 34. The Complaint's prayer asks for avoidance of the Release — relief the League waived in the agreement. The Court should dismiss that claim.

**H.**     **The Trustee's fraud claims are naked assertions of wrongdoing.**

As he did with his other repackaged claims, the Trustee merely recites the elements of the fraud claim, then spins a laundry list of "facts" in the Complaint as satisfying the elements.  The spin is chiefly evidenced in the Trustee's recitation of his allegation that "Dundon concealed and failed to disclose that he was not going to follow through on his funding commitment."  Resp. at 44.  In *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, No. CVN16C07080PRWCCLD, 2017 WL 1312209, at *5 (Del. Super. Ct. Mar. 13, 2017), the court expressly condemned bootstrapping a contract claim into a tort claim by merely claiming that the contracting party never intended to perform his obligations.  In *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*, No. CIV.A. 20456, 2004 WL 1739522, at *8 (Del. Ch. Aug. 3, 2004), the court called out the plaintiff for bootstrapping by couching an alleged failure to perform a contract as a failure to disclose an intention not to perform.  Even though Texas law governs the fraud claim against Dundon, the above cases demonstrate why none of the Trustee's fraud theories work.  Merely adding to a breach claim that after the fact the party did not disclose his later intent not perform does not make a breach a fraud, and it does not satisfy Rule 9(b).

**Shotgun pleadings.**  In the fraud discussion, the Trustee incorrectly cites *Wright and Miller* as endorsing the indiscriminate incorporation by reference that makes the Complaint a shotgun pleading.  Resp. at 48.  The section of *Wright and Miller* he cites actually warns *against* "[e]xcessive . . . and indiscriminate[] incorporat[ion]" because it results in an "unnecessarily long and confusing pleading and counts that contain irrelevant facts," and "it can prevent the opposing party from reasonably being able to prepare a response."   5A WRIGHT, CHARLES A., *et al*., FED. PRAC. & PROC. § 1326 at 428 (3d ed. 2004) (collecting cases criticizing shotgun pleadings).

**No justifiable reliance.**  Notably, in his discussion of fraud and fraudulent inducement, the Trustee does not respond to the argument that the term sheet negates reliance as a matter of law.  *See* Mot. to Dismiss at 35.

## I.    Amendment would be futile.

At the close of his response, the Trustee seeks leave to amend his Complaint to allow him to more carefully draft his claims.  Response at 59–60.  A motion for leave to amend is addressed to the trial court's discretion.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Reasons to deny a motion for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Id.* at 182.

In his one-paragraph conditional request for leave, the Trustee stands on his pleadings (contending that he has alleged sufficient facts to support his claims), then, almost as an afterthought, alternatively asks for leave to amend if the Court finds his pleading deficient.  Response at 59–60.  The Trustee did not attach a draft of the proposed amended pleading to his motion as required by local rule:

> **(a) Attachments.**  Any motions to amend or to supplement pleadings must attach a complete copy of the amended or supplemental pleading the movant proposes to file.  The failure to attach a copy may be grounds for denial of relief, without further hearing.

W.D. Tex. Bankr. L. R. 7015.1(a).  In addition to violating Local Rule 7015.1(a), failure to attach a proposed amendment violates Rule 7 of the Federal Rules, which requires every motion to state the precise nature of the relief requested.  *See* Fed. R. Civ. P. 7(b)(1)(C) ("The motion must . . . state the relief sought."); Fed. R. Bank. P. 7007 (incorporating Rule 7 in adversary proceedings);

*see also* 6 WRIGHT, CHARLES A., *et al.*, FED. PRAC. & PROC. § 1485 at 688 (3d ed. 2010) (citing numerous cases).

In *Bailey v. Mansfield Indep. Sch. Dist.*, 425 F. Supp. 3d 696 (N.D. Tex. 2019), the court addressed an "afterthought" motion for leave that used language almost identical to the Trustee's request. *See id.* at 727. The court denied leave because the plaintiff failed to attach a proposed amended complaint to her request, she identified no facts that could have been added to her case to fix the defects identified in the motion to dismiss, and her pleading defects were incurable based on the facts alleged in her original complaint. *Id.* at 727–28 (collecting Fifth Circuit cases affirming denials of leave in afterthought, tacked on general curative requests).

This case is similar to *Bailey*. As the party seeking leave, the Trustee had the burden to establish his entitlement to it. *Johnson v. Georgia Dep't of Veterans Serv.*, 791 Fed. Appx. 113, 116 (11th Cir. 2019). The Trustee failed to carry his burden because, like Bailey, he failed to attach an amended complaint to his request, he failed to identify facts that could be added to his Complaint to fix the defects identified in the motion to dismiss, and his defects are incurable based on the facts alleged. *See Bailey*, 425 F.Supp.3d at 727–728. The Trustee stood on his pleading. The Court should deny the request for leave.

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By:     /s/ *Beverly A. Whitley*
        Jeffrey S. Lowenstein
        Texas Bar No. 24007574
        jlowenstein@bellnunnally.com
        Beverly A. Whitley
        Texas Bar No. 21374500
        bwhitley@bellnunnally.com
        Brent D. Hockaday
        Texas Bar No. 24071295
        bhockaday@bellnunnally.com
        2323 Ross Ave., Ste. 1900
        Dallas, Texas 75201
        (214) 740-1400
        (214) 740-1499 Fax

        and

        Patrick H. Autry
        Texas Bar No. 01447600
        pautry@branscomblaw.com
        4360 North Loop 1604 W.
        Suite 206
        San Antonio, Texas 78249
        (210) 598-5400

        **ATTORNEYS FOR DEFENDANTS
        THOMAS DUNDON, JOHN ZUTTER,
        AND DUNDON CAPITAL PARTNERS
        LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing pleading was served by delivering the same to the person listed below in the manner and on the date indicated.

**VIA EFILETEXAS.COM**
Nicole L. Williams
Email: nwilliams@thompsoncoburn.com
Katherine Battaia Clark
Email: dkclark@thompsoncoburn.com
THOMPSON COBURN LLP
2100 Ross Avenue, Suite 3200
Dallas, TX 75201
*Counsel for Plaintiffs Randolph N. Osherow, Chapter 7 Trustee, Debtors' Estate*

**VIA EFILETEXAS.COM**
Boris Treyzon
Email: btreyzon@actslaw.com
Jonathon Farahi
Email: jfarahi@actslaw.com
ABIR COHEN TREYZON SALO, LLP
16001 Ventura Boulevard, Suite 200
Encino, CA 91436
*Counsel for Plaintiffs Randolph N. Osherow, Chapter 7 Trustee, Debtors' Estate*

**VIA EFILETEXAS.COM**
Brian S. Engel
Email: brianen@bdfgroup.com
Steve P. Turner
Email: stevet@bdfgroup.com
BARRETT DAFIN FRAPPIER TURNER & ENGEL, LLP
580 La Ventana Blvd.
Driftwood, TX 78619
*Counsel for Plaintiffs Randolph N. Osherow, Chapter 7 Trustee, Debtors' Estate*

Dated this the 5th day of May, 2023.

*/s/ Beverly A. Whitley*
Beverly A. Whitley

7221551_1.docx / 04251.00029