

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: November 13, 2023.**

_Craig A. Gargotta_

**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 19-50900-cag |
| LEGENDARY FIELD EXHIBITIONS, LLC, et al., | § | |
| | § | Chapter 7 |
| Debtors. | § | |

| | | |
|---|---|---|
| RANDOLPH N. OSHEROW, Chapter 7 Trustee, and the Bankruptcy Estates of Legendary Field Exhibitions, LLC; AAF Players, LLC; AAF Properties, LLC; Ebersol Sports Media Group, Inc.; LFE 2, LLC; and We Are Realtime, LLC, | § § § § § § § | |
| Plaintiffs, | § § | Adversary No. 22-05078-cag |
| v. | § § | |
| THOMAS DUNDON; JOHN ZUTTER; and DUNDON CAPITAL PARTNERS, LLC | § § § | |
| Defendants. | § | |

### ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT WITH PREJUDICE (ECF NO. 18)

Came on to be considered Defendants Thomas Dundon, John Zutter, and Dundon Capital

Partners, LLC's Motion to Dismiss and Brief ("Motion") (ECF No. 18).[1] Chapter 7 Trustee Randolph N. Osherow ("Plaintiffs" or "Trustee") filed his Response on April 5, 2023 (ECF No. 30) and Defendants filed their Reply on May 5, 2023 (ECF No. 36). The Court has carefully considered the parties' pleadings without convening a hearing on the Motion. For the reasons stated herein, the Court grants in part and denies in part the Defendants' Motion.

## JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334(b). Trustee's claims are core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (C), (H), and (K). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for relief is Federal Rule of Civil Procedure ("Rule(s)") 12(b)(6), made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7012 and Local Rule 7012. This matter is referred to this Court pursuant to the District Court's Order of Reference.

## BACKGROUND

This case arises from the creation and dissolution of an alternative professional football league called the Alliance of American Football ("AAF"). According to Plaintiff's Complaint, the idea for the AAF was first conceived in 2017 by Charles Ebersol and others as a developmental football league for highly touted collegiate players and former NFL players to gain exposure and garner interest from NFL teams.

The AAF sought to improve upon previously unsuccessful alternative professional football leagues in innovative and creative ways. For example, the AAF aspired to be a true developmental partner to the NFL like other professional league relationships such as the National Basketball Association's "G-League" and Major League Baseball's minor league system. Negotiations

---

[1] "ECF" denotes electronic filing docket number. Unless otherwise indicated, Defendants refers to Thomas Dundon, John Zutter, and Dundon Capital Partners, LLC ("DCP").

between the AAF and the NFL regarding a potential partnership began as early as October 2018. Additionally, the AAF was designed to introduce cutting-edge technology that would allow for instantaneous metric data from the games to be collected and viewed by fans via the AAF's app. The AAF envisioned that this data—in addition to being used by the teams for scouting and player evaluation—would be used to create enhanced wagering opportunities to fans. These new ideas made the AAF attractive to potential investors.

Initially, the AAF had financial backing from Reginald Fowler, a former part owner of the Minnesota Vikings of the NFL. During the pendency of the AAF's first season, Fowler's investment commitment fell through because of accusations of financial crimes against him. In the market for new investors, Ebersol, on behalf of the AAF engaged Erik Anderson[2] about potential investment. The Complaint alleges that Anderson, instead of investing in AAF himself, told Thomas Dundon about the investment opportunity. Dundon allegedly called Ebersol to discuss the details of a potential Dundon investment in AAF.

Ultimately, the Complaint alleges that Ebersol and Dundon agreed that Dundon would provide $250 million to fund the AAF for the rest of the first season and beyond. This alleged agreement was never reduced to writing. Plaintiffs purport that Dundon made several public statements confirming his intention to invest $250 million in the AAF over the course of at least five years.

Within days, Dundon allegedly sent Ebersol a term sheet that provided for Dundon to immediately send the AAF an investment of $5.1 million and up to $70 million upon request. Ebersol purportedly inquired about the discrepancy between the term sheet and the $250 million investment they had allegedly agreed upon. The Complaint states that Ebersol received assurances

---

[2] According to the Complaint, Erik Anderson owned a large stake in Top Golf with Defendant Dundon.(ECF No. 1 at ¶¶ 50–51).

from Dundon that the deal had not materially changed and that he still intended to invest $250 million. Once the term sheet was executed, Dundon and his business partner John Zutter became controlling members of the AAF.

Throughout the following weeks, Dundon—as sole manager of DDFS Partnership, LP— wired a total of $69,719,190 to the AAF. The Complaint states that this amount was not sufficient to keep the AAF operating and that the success of the League was dependent on the full $250 million commitment from Dundon. Despite this, Dundon purportedly received calls from interested investors, but declined to accept new funding. Dundon was allegedly unhappy with how the AAF was operating and began implementing cost-saving measures. After purportedly laying off employees and declining to fund marketing efforts, Dundon allegedly directed Zutter to engage bankruptcy counsel for the AAF.

The AAF and its associated corporate entities ("Debtors") filed for chapter 7 bankruptcy protection on April 17, 2019. All the entities' bankruptcy cases were consolidated. Randolph Osherow was appointed the Trustee to administer the consolidated debtors' estates. This adversary was initiated on November 14, 2022, with the filing of the Complaint. (ECF No. 1). In lieu of filing an answer to the Complaint, the Defendants filed this Motion to Dismiss. (ECF No. 18).

MOTION TO DISMISS STANDARD

**Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

4

at 678. A court should not accept "threadbare recitals of a cause of action's elements supported by mere conclusory statements." ***Hershey v. Energy Transfer Partners, LP***, 610 F.3d 239, 245–46 (5th Cir. 2010) (quoting ***Iqbal***, 556 U.S. at 678). In other words, legal conclusions are not enough; the complaint must allege facts that support its claims for relief. ***See Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555 (2007). In reviewing whether the complaint sufficiently states a claim on which relief may be granted, the Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. ***See Thompson v. City of Waco, Tex.***, 764 F.3d 500, 502–03 (5th Cir. 2014). In addition to insufficiency of facts, courts can also dismiss claims for insufficient legal grounds "if the complaint lacks an allegation regarding a required element necessary to obtain relief." ***Blackburn v. Marshall***, 42 F.3d 925, 931 (5th Cir. 1995).

### Rule 9

Most causes of action are subject to Rule 8(a)'s pleading standard. ***Iqbal***, 566 U.S. at 677–78. Rule 9(b) establishes a heightened pleading standard for cases where the plaintiff alleges fraud. Rule 9 is made applicable to bankruptcy adversary proceedings under Federal Rule of Bankruptcy Procedure 7009. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud. Fed. R. Civ. P. 9(b). Rule 9(b) requires the plaintiff to "plead the who, what, when, where, and why as to the fraudulent conduct." ***Life Partner Creditors' Tr. v. Crowley (Matter of Life Partners Holdings, Inc.)***, 926 F.3d 103, 117 (5th Cir. 2019). Accordingly, the Court will analyze the claims involving fraud using the heightened pleading standard under Rule 9.

DISCUSSION

I.    **Count I: Breach of Oral Contract Against Defendant Dundon**

A.    **Parties' Arguments**

5

Plaintiffs allege Defendant Dundon breached a valid oral contract with Ebersol Sports Media Group, Inc. ("ESMG") by failing to provide the League with $250 million of promised funding. (ECF No. 1 at 40). Plaintiffs also allege that ESMG performed all its obligations, specifically giving Dundon a 75% majority stake in the AAF, appointing Dundon and Zutter as sole voting directors of ESMG, and granting them control of the entirety of AAF operations. (*Id.*). According to Plaintiffs, Dundon breached the Oral Contract by only providing $69.7 million in equity from DDFS Limited Partnership ("DDFS"). (*Id.*). Plaintiffs claim they suffered harm as a proximate result of the alleged breach and that Dundon still owes at least $180.3 million to ESMG pursuant to the Oral Contract. (*Id.*).

Defendants argue that Plaintiffs have failed to state a breach of oral contract claim against Dundon. (ECF No. 18 at 16). Defendants first argue that the contract is unenforceable because it is indefinite. (*Id.*). Defendants claim the Oral Contract contradicts the Term Sheet such that there is a lack of clarity and definitiveness required to state a plausible claim. (*Id.* at 19–20). Specifically, Defendants argue that the proposed debt transaction contains no specifics about the proposed terms of the debt transaction: the amount of the loan, the maturity date, the interest rate, or the payments terms. (*Id.* At 17). Defendants further argue for dismissal by asserting that the Statute of Frauds bars the claim because the Oral Contract calls for performance over multiple years. (*Id.* at 20–22). Defendants point to Dundon's commitment to fund the League for "years to come," rather than the inaugural season, to allege that performance within a one-year period is impossible. (*Id.* at 20).

In the Response, Plaintiffs reiterate that the Complaint states a valid claim for breach of oral contract by alleging the Statute of Frauds does not apply and that the Oral Contract contains sufficiently definite terms. (ECF No. 30 at 18–24).

Finally, in their Reply, Defendants state that the Statute of Frauds further bars the Oral

Contract because of the agreement's debt component. (ECF No. 36 at 12). Defendants allege the Complaint divides the Oral Contract with two severable parts—one in equity and the other in debt. (*Id*. at 13). Defendants posit that ESMG's agreement to Dundon's control is not severable and thus, the entire agreement is invalid under the Statute of Frauds. (*Id*. at 12).

## B. Analysis

For Count I, there are two main questions. First, whether Plaintiffs pleaded the existence of an oral contract. Under this question there are two sub-questions: 1) if so, have Plaintiffs identified sufficiently definite terms; and 2) does the Statute of Frauds apply, requiring a writing? If the Court determines Plaintiffs sufficiently pleaded the existence of an oral contract, the Court must then determine whether Plaintiffs adequately allege a breach. For the foregoing reasons, the Court finds that Plaintiffs have pleaded breach of an oral contract.

## C. Plaintiff Sufficiently Pleaded the Existence of an Oral Contract between Defendant Dundon and ESMG.

To show the existence of a valid contract, Plaintiffs must plead: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. ***See Beverick v. Koch Power, Inc.***, 186 S.W.3d 145, 150 (Tex. App.—Houston [1st Dist.] 2005, no pet.). When determining the existence of an oral contract, courts also consider the parties' communications, acts, and circumstances. ***See Wiley v. Bertelsen***, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no pet.).

The focus of the Motion to Dismiss relates to the existence of an oral contract and an alleged breach. The parties do not dispute an agreement existed; rather they dispute whether it carries the force of law. For this reason, the Court will determine whether the alleged oral contract was sufficiently definite to be valid and enforceable.

### a. The Oral Contract as Pleaded is not Barred by the Statute of Frauds.

The Statute of Frauds, found in § 26.01 of the Texas Business and Commerce Code, requires kinds of contracts to be reduced to writing:

> (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
> > (1) in writing; and
> > (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
> (b) Subsection (a) of this section applies to:
> > (1) a promise by an executor or administrator to answer out of his own estate for any debt or damage due from his testator or intestate;
> > (2) a promise by one person to answer for the debt, default, or miscarriage of another person;
> > (3) an agreement made on consideration of marriage or on consideration of nonmarital conjugal cohabitation;
> > (4) a contract for the sale of real estate;
> > (5) a lease of real estate for a term longer than one year;
> > (6) an agreement which is not to be performed within one year from the date of making the agreement;
> > (7) a promise or agreement to pay a commission for the sale or purchase of:
> > > (A) an oil or gas mining lease;
> > > (B) an oil or gas royalty;
> > > (C) minerals; or
> > > (D) a mineral interest; and
> > (8) an agreement, promise, contract, or warranty of cure relating to medical care or results thereof made by a physician or health care provider as defined in Section 74.001, Civil Practice and Remedies Code. This section shall not apply to pharmacists.

Tex. Bus. & Com. Code Ann. § 26.01 (West 2023).

In other words, contracts for the kinds of transactions listed in subsection (b) must be in writing to be enforceable.

### i. The Complaint Does not Allege a Debt Component that is Barred by the Statute of Frauds

Defendants argue that the alleged oral contract must be in writing. Specifically, Defendants argue:

The Trustee consistently describes the alleged oral agreement as contemplating an

8

investment of $250,000,000 comprised of some combination of equity and debt. Compl. at 18 ¶ 65, 40 ¶ 142. Any part of the investment in the form of debt would necessarily impose a corresponding obligation on the part of the League to repay the debt —which the Trustee does not allege occurred and the allegations of the Complaint negate.

(ECF No. 18, at 22).

Essentially, Defendants argue that the Complaint states the purchase of both debt and equity but provides no further detail about the purchase of the debt. Because the alleged oral contract involves debt, Defendants argue it must be reduced to writing under the Statute of Frauds.

Specifically, Defendants argue the applicability of the Statute of Frauds depends on whether the contact is severable. (ECF No. 36 at 12). Furthermore, Defendants argue that the Oral Contract is not severable because the consideration given was indivisible. (*Id.* at 13). Dundon only promised to pay money, and that money was in exchange for all things given by ESMG; so, the exchange cannot be divided into smaller, component exchanges.

The Statute of Frauds lists two kinds of transactions involving debts which must be reduced to writing to be valid. Tex. Bus. & Com. Code Ann. § 26.01 (West 2023). Of the two subsections pertaining to debt, (b)(1) does not apply here because no party acts as executor or administrator of a personal estate. Therefore, the Court considers (b)(2): "a promise by one person to answer for the debt, default, or miscarriage of another person." *Id.* When determining if a promise to pay another must be in writing, courts consider whether the promisor has agreed to be a surety or has accepted primary responsibility for the debt. ***See Gulf Liquid Fertilizer Co. v. Titus***, 354 S.W.2d 378, 382 (Tex. 1962). If the promise creates a surety known to the creditor-promisee, then the promise must be in writing. ***See id***. at 384. Conversely, if the promise merely created primary responsibility, it falls outside the Statute of Frauds, so the contract need not be in writing to be enforced. ***See id***.

Here, the Complaint does not allege that Dundon promised to answer for the debt, default, or miscarriage of another person when he agreed to provide funding to the League. Additionally, the Motion never claims the promise created a surety. Assuming, arguendo, that the contract does involve debt as Defendants contend, this is not the kind of transaction involving debt that the Statute of Frauds requires to be written.

### ii. As Pleaded, the Oral Contract Does not Call for Performance Over Multiple Years.

The Complaint sufficiently pleaded that the Oral Contract does not call for performance over multiple years. Whether the Statute of Frauds applies depends on a bright line of impossibility, not improbability. Defendants rely on Dundon's commitment to "fund the league for years to come" as demonstrative of the impossibility to perform the contract within a one-year period. (ECF No.18 at 21). Defendants are mistaken. Plaintiffs allege that the reference to a multiple year commitment stemmed from conversations with Dundon informing him of the expected timeline before the League was cash-flow positive. (ECF No. 1 at 16). Thus, although the funding would assist the League's operations for "years to come," Dundon's performance was possible within one year. (ECF No. 30 at 25). Dundon could have performed in one day because his performance was the act of investing, not the length of the investment's benefits. As a result, the Statute of Frauds does not apply.

### iii. The Oral Contract Fits an Exception to the Statute of Frauds.

Furthermore, even if the Statute of Frauds applies, § 8.113 creates an exception to the Statute of Frauds for contracts for the sale of securities:

> A contract or modification of a contract for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party against whom enforcement is sought, even if the contract or modification is not capable of performance within one year of its making.

10

Tex. Bus. & Com. Code Ann. § 8.113 (West 2023).

Defendants argue the agreement was more akin to a loan rather than Plaintiffs' description of a sale of securities (ECF No. 18 at 17). In Texas, "a share or similar equity interest issued by a corporation, business trust, joint stock company, or similar entity" is a security. Tex. Bus. & Com. Code Ann. § 8.103 (West 2023). The Complaint alleges ESMG exchanged 75% of equity interest for the $250 million. (ECF No. 1 at 40). Purchasing equity is purchasing as security. Furthermore, at the motion to dismiss stage, the Court must accept all well-pleaded facts as true. Plaintiffs have not alleged that Dundon loaned the League money. Arguments about the character of the investment are not ripe now and are better suited for a motion for summary judgment. Even if the Court had determined the Statute of Frauds applied, the Court would also need to find that the alleged Oral Contract fits the exception created by § 8.103. As a contract for securities, no writing is required. In conclusion, all of Defendants' arguments regarding the Statute of Frauds fail.

### b.  As Pleaded, the Oral Contract is Sufficiently Definite.

An oral contract must express its terms with "sufficient certainty" so that there is "no doubt as to what the parties intended." *Copeland v. Alsobrook*, 3 S.W.3d 598, 605 (Tex. App.—San Antonio, 1999, pet. denied). For most contracts, courts decide material terms are on a "case-by-case basis" *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013). As a result, the oral contract must only be "sufficiently definite to confirm that both parties actually intended to be contractually bound," and contain terms sufficiently definite to "enable a court to understand the parties' obligations and to give an appropriate remedy" if breached. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016); RESTATEMENT (SECOND) OF CONTRACTS § 33(2) (1981). In other words, a court must be able to reasonably understand the material terms of a deal for a valid contract to exist. This remains true even if some non-material terms are disputed, absent from the

agreement, or not reasonably understandable.

Not all contracts fall under the reasonableness standard for definitiveness of material terms. Some contracts must contain specific terms to which the parties must mutually assent to be enforceable. *See T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. App.—El Paso 1992, no writ). For example, "[i]n a contract to loan money, the material terms will generally be: the amount to be loaned, maturity date of the loan, the interest rate, and the repayment terms." *Id*. Previously in Texas, contracts for the transfer of stock had material terms. *See SightLine Health, LLC v. Hagemeier*, No. CIV.A. H-10-4661, 2011 WL 3235695 (S.D. Tex. July 26, 2011) (relying on a repealed statute).

Defendants argue that Oral Contract is a loan, so Plaintiffs have not alleged required material terms. (ECF No. 18 at 19). Again, at the motion to dismiss stage, the Court must accept all well-pleaded facts as true. Plaintiffs do not allege Dundon *loaned* the League money; rather, Plaintiffs allege Dundon *bought* control of the League. (ECF No. 1 at 20) (emphasis added). The Court recognizes that Defendants may later be able to prove Dundon promised to loan the League money and the League obliged itself to repay Dundon. Yet, this is not the correct procedural posture to make that argument.

Defendants also assert the Oral Contract is an agreement to transfer stock, which requires more specific material terms. (ECF No. 36 at 7). Defendants rely on the case *SightLine* to support this assertion. (ECF No. 30 at 10). There, the Southern District of Texas held that oral agreements to transfer stock should include certain specific terms. *See id*. But the reasoning in *Sightline* heavily depended on caselaw that applied a now repealed statute. Tex. Bus. & Com. Code Ann. § 8.319, *repealed by* Acts 1995, 74th Leg., ch. 962, §1 eff. Sep. 1, 1995. This Court will not rely upon a repealed statute to impose additional pleading requirements. Because Defendants have not

successfully convinced the Court that a heightened standard applies, the Court will determine whether it can reasonably understand the terms of the deal.

Here, the Complaint alleges the parties entered an oral contract where Dundon was to fund $250 million to the League in exchange for 75% majority equity interest and voting privileges. (ECF No. 1 at 40). This deal is definite enough for the Court to understand the assurances and expectation made. For instance, Ebersol signed the proposed Term Sheet because Dundon told him he "needed something to paper his file regarding an initial transfer of funds." (ECF No. 1 at 18). Following Dundon's request, the deal continued and eventually the parties reviewed and signed the "Binding Term Sheet for Series 2 preferred Stock Financing." Taking these allegations as true and viewing all facts in the light most favorable to the Plaintiffs, the Court can reasonably understand the parties' obligations and their intent to be bound. Plaintiffs have sufficiently pleaded that the Oral Contract contained definite terms.

**D. Plaintiffs Have Pleaded a Breach of Oral Contract.**

"A party breaches a contract when he fails to perform an act that he has expressly or impliedly promised to perform." *Cox Paving of Texas, Inc. v. H.O. Salinas & Sons Paving, Inc.*, 657 S.W.3d 756, 769 (Tex. App.—El Paso 2022, no pet.). Breach is failure to perform when performance is due. *See id.* The Complaint alleges Dundon promised to fund $250 million to the League and that he failed to do so by only providing $69.7 million. (ECF No. 1 at 40). Accepting these allegations as true, the Complaint sufficiently pleaded that Dundon failed to perform his promise.

**E. Plaintiffs Sufficiently Pleaded Damages**

Plaintiffs allege Dundon's failure to perform proximately caused damages of at least $180.3 million. (ECF No. 1 at 41). The Complaint alleges the completion of the first season was

13

dependent on the promised funding and its failure to receive the money resulted in the League having to cease operations. (*Id.* at 40). Accepting Plaintiffs allegations as true, Plaintiffs have sufficiently pleaded in the Complaint the damages element in a breach of oral contract claim.

## II.    COUNT II: Breach of Contract Against Defendant DCP

### A.  Parties' Arguments

The Plaintiffs allege that Dundon Capital Partners ("DCP") breached a contract when they failed to provide $70 million, as set out in the Term Sheet. (ECF No. 1 at 41). Plaintiffs contend that the Term Sheet constitutes a valid and binding contract between DCP and ESMG. (*Id.*). Plaintiffs also allege that ESMG performed all its obligations under the Term Sheet and that DCP breached when it only provided approximately $69.7 million. (*Id.*). Furthermore, Plaintiffs claim that Dundon used over $1 million of these funds to prepare for bankruptcy. (*Id.* at 42). Plaintiffs allege that, instead of fulfilling funding requests so the League could survive, Dundon spent the money preparing for the League's demise. (*Id.*). According to Plaintiffs, Dundon's breach proximately caused damage to ESMG that includes, but is not limited to, actual damages in the amount of at least $1,280,000. (*Id.*).

Defendants assert that the contract is not enforceable because it is too indefinite. (ECF No. 18 at 16–19). Defendants first argue that the claim for breach of contract is not supported by plausible, well-pleaded facts and further posit that Plaintiffs seek $1 million that the Trustee admits DCP contributed. (*Id.* at 22). Additionally, Defendants argue that the Trustee has failed to allege performance by the League. (*Id.*).

In their Response, Plaintiffs reiterate DCP fell short of funding and that the Complaint sufficiently alleges ESMG's performance. (ECF No. 30 at 15). In their Reply, Defendants accuse the Trustee of repackaging his breach of contract claims as tort claims and various related

remedies. (ECF No. 36 at 14–16).

## B. Analysis

Unlike in Count I, Defendants do not dispute the existence of a legally binding agreement in Count II, but rather contest its enforceability. The Court will analyze Count II under Delaware law because the Term Sheet explicitly states Delaware law governs the document. (ECF No. 1 at Ex. B.).

To plead a valid breach of contract under Delaware law, the plaintiff must show: (1) the existence of a contract, express or implied, (2) the breach on an obligation imposed by that contract, and (3) resulting damage to the plaintiff. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). To show the existence of a valid contract, the plaintiff must demonstrate (1) intent of the parties to be bound, (2) sufficiently definite terms, and (3) consideration. *See Carlson v. Hallinan*, 925 A.2d 506, 524 (Del. Ch. 2006). "When the terms are so vague that a Court cannot determine the existence of a breach, then the parties have not reached a meeting of the minds and a Court should deny the existence of a contract." *Continental Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1230 (Del. Ch. 2000). Lastly, dismissal is proper for a breach of contract claim if the defendant's interpretation is "the only reasonable construction as a matter of law." *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996).

### a. The Term Sheet is Sufficiently Definite to be Enforceable.

Of the three required elements for a valid contract under Delaware law, the parties only contest element (2): sufficiently definite terms. There is no dispute that the Term Sheet was a binding agreement given the language of the document (ECF No. 1 at Ex. B). Nor is there a dispute that the parties provided consideration given the initial funding amount.

Plaintiffs have adequately pleaded that the Term Sheet has sufficiently definite terms and thus is an enforceable contract. (ECF No. 1 at 41). The Complaint alleges the Term Sheet discussed funding commitments, available equity, liquidation preference, dividends, and more. (ECF No. 1 at Ex. B). Unlike a contract that is so vague that a court cannot determine the existence of a breach, the Complaint has sufficiently pleaded facts that allow this Court to do so.

### b.  Plaintiffs Have Adequately Pleaded a Breach of the Term Sheet.

Like the allegations in Count I, Plaintiffs contend that they fully performed through the exchange of majority ownership and voting privileges after the transfer of the initial funding amount. (ECF No. 1 at 41). Additionally, Plaintiffs accuse DCP of breaching the Term Sheet by failing to perform, as DCP only provided $69.7 million, over $1 million of which was for Dundon to pay bankruptcy fees and for professionals he hired. (ECF No. 1 at 41–42). In essence, Dundon allegedly breached because he did not provide the full $70 million, as promised by the Term Sheet. Accepting these allegations as true, Plaintiffs have sufficiently pleaded the existence of a breach.

### c.  Plaintiffs Have Adequately Pleaded Damages as a Result of the Breach.

Plaintiffs claim to have suffered damages because of DCP's failure to perform. (ECF No. 1 at 41). The Complaint alleges that the completion of the first season was dependent on the promised funding and its failure to receive the money resulted in the League having to cease operations. (*Id.* at 46). Accepting Plaintiffs' allegations as true, the Plaintiffs have sufficiently pleaded in their Complaint the damages element in a breach of oral contract claim.

Taking these allegations as true and viewing all facts in the light most favorable to the Plaintiffs, the Court concludes that the Complaint adequately pleaded a breach of contract for the Term Sheet under Delaware law.

## III.  COUNT III: Breach of Covenant of Good Faith and Fair Dealing Against Defendants Dundon and DCP

## A. Parties' Arguments

Plaintiffs allege that Defendants Dundon and DCP breached the covenant of good faith and fair dealing in relation to the Oral Agreement. (ECF No. 1 at 42). Furthermore, Plaintiffs argue that Dundon had a fiduciary relationship with the Debtors, which gave him the opportunity to take advantage of the Debtors in dealings on the Oral Agreement.

Plaintiffs also allege that DCP's breach of the covenant of good faith and fair dealings arose from its performance, or lack thereof, of the Term Sheet. (*Id.*). Plaintiffs contend that DCP engaged in arbitrary and unreasonable conduct that frustrated the purpose of the Term Sheet and acted oppressively or underhandedly to deny ESMG the fruits of the bargain for the Term Sheet. (*Id.* at 42–43).

According to the Plaintiffs, Dundon's breach proximately caused damage to ESMG that includes, but not limited to, actual damages in the amount of at least $180.3 million. (*Id*. at 41).

Defendants argue that the breach of contract claim is not supported by plausible, well-pleaded facts. (ECF No. 18 at 22). Defendants also assert that the claim fails under either Texas or Delaware law because neither support an independent claim for breach of the duty of good faith and fair dealings in either ordinary commercial context (Texas) nor in a contract that addresses the conduct at issue (Delaware). (*Id.* at 24).

In the Response, Plaintiffs reiterates that the existence of a fiduciary relationship, which Dundon acknowledges, implicates a special relationship and thus, the covenant of good faith and fair dealing is applicable. (ECF No. 30 at 17).

Defendants' Reply suggests that the Trustee fails to allege a non-economic claim in the Complaint because the alleged damages arise from the Trustee's central claim that failure to perform caused the loss of the benefit of the bargain. (ECF No. 36 at 16). Defendants contend that

this is subject to dismissal based on the economic loss rule. (*Id.*).

## B. Analysis

As an initial matter, the Court finds it prudent to establish the governing law for this count in the Complaint. Because Count III pertains to both the Oral Contract, governed by Texas law, and the Term Sheet, governed by Delaware law, the Court will separate the analysis in two parts. First, the Court will consider the alleged breach of good faith and fair dealing under Texas law regarding the Oral Contract, followed by the alleged breach under Delaware law regarding the Term Sheet.

### a. The Oral Contract Contained an Implied Covenant of Good Faith and Fair Dealing.

Although the Supreme Court of Texas has declined to impose an implied covenant of good faith and fair dealing in every contract, it has recognized that such a duty may arise from the presence of a special relationship between parties governed or created by a contract. *Arnold v. National Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Texas often recognizes special relationships as either 1) fiduciary relationships arising from an element of trust necessary to accomplish the goals of the contract or 2) relationships based on extra-contractual duties arising from an imbalance of bargaining power as special relationship that imply a covenant of good faith and fair dealing. *Prime Prods v. S.S.I. Plastics*, 97 S.W.3d 631, 638 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

The Complaint alleges that Defendant Dundon had a fiduciary duty with the Debtors that allowed him to take advantage of the Debtors in dealings of the Oral Agreement. (ECF No. 1 at 42). Plaintiffs assert that Dundon's role as investor, majority owner, and voting director demonstrates that he was a fiduciary. (ECF No. 1 at 35). Furthermore, Plaintiffs allege that this role would position Dundon within a special relationship that implies a duty of good faith and fair

dealing under Texas law. (ECF No. 30 at 17). Lastly, the Complaint alleges that Dundon breached the covenant of good faith and duty that was born out of his position as a fiduciary when his actions frustrated the overall purpose of the Oral Contract. (ECF No. 1 at 42). More specifically, Plaintiffs contend that Dundon's demands for price reductions, contract revisions, and changes within vendor policies were counter to those expected. (ECF no. 1 at 35). Taking these allegations as true and viewing all facts in the light most favorable to the Plaintiffs, the Complaint has sufficiently pleaded that a special relationship existed between Plaintiffs and Dundon and that the special relationship created an implied covenant of good faith and fair dealing in the Oral Contract.

### b. The Economic Loss Rule Does not Apply to the Oral Contract but Applies to Plaintiffs' Tort Claims.

Defendants request dismissal of Count III under the economic loss rule.[3] The economic loss rule states that a plaintiff cannot maintain a tort action against a defendant if the plaintiff only seeks to recover for the loss or damage to the subject matter of a contract. *Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A party states a tort claim when "the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). Furthermore, the economic loss rule is a "legal consideration of what should and should not be part of the proper measure of damages . . . ." *Shopoff Advisors, LP v. Atrium Circl, GP*, 596 S.W.3d 894, 908 (Tex. App. 2019).

Defendants argue in their Motion that the economic loss rule precludes recovery in tort

---

[3] In reading the Motion to Dismiss, Reply, and Response, Defendants' argument that the Economic Loss Rule is applicable seems to pertain to the Oral Contract, although it is never clarified. Each of these documents cite only to Texas caselaw on this point. Because the Oral Contract is the agreement governed by Texas Law, the Court will not address the Economic Loss Rule as it relates to the Term Sheet.

when the loss is the subject matter of the contract. (ECF No. 18 at 45). Further, Defendants maintain that Plaintiffs' claims either seek the same damages as its contract claims or are silent on damages. (*Id.*) Further, Defendants maintain that there are no allegations that the damages sought are independent of Plaintiffs' contract claims. (*Id.*).

Plaintiffs assert that the Defendants' economic loss argument is not a basis for dismissal because the economic loss rule should not be considered at the motion to dismiss stage of this litigation. (ECF No. 30 at 57). Plaintiffs state that "[t]his argument has no applicability at the motion to dismiss stage." (*Id.*)*. Plaintiffs further suggest that they are permitted to pursue alternative theories of recovery at this stage of the litigation. (*Id.* at 58). In support of their position, Plaintiffs argue that "Dundon and DCP had a legal duty not to not to fraudulently induce the Term Sheet, independent of the duties created by the contract itself." (*Id.*).

In their Reply, Defendants argue that Plaintiffs have an independent duty to plead an independent injury. (ECF No. 36 at 15). Moreover, Defendants note that courts have dismissed tort claims based upon the economic loss rule when a plaintiff has failed to allege damages independent from a breach of contract. (*Id.*).

The Court finds the recent Fifth Circuit decision in ***Golden*** instructive on the economic loss rule. ***Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sol, Inc.***, 954 F.3d 804 (5th Cir. 2020). The Fifth Circuit found:

> Under Texas law, the economic loss rule generally prevents recovery in tort for purely economic damage unaccompanied by injury to persons or property. *See LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 235 (Tex. 2014); *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011); *see also Am. Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 144 (5th Cir.), *on reh'g*, 51 F.3d 468 (5th Cir. 1995). There are two principal rationales for the rule: (1) Purely economic harms proliferate widely and are not self-limiting in the way that physical damage is, possibly leading to indeterminate liability and pressure to avoid economic activity altogether; and (2) the risks of economic harms are better suited to allocation by contract because (a) the parties usually have a full

opportunity to consider their positions and manage risks ahead of time, and (b) pecuniary remedies are fungible. *LAN/STV*, 435 S.W.3d at 240–41 (quoting Restatement (Third) of Torts: Liability for Economic Harm § 1 cmt. c (Am. Law Inst., Tentative Draft No. 1, 2012)). "The rule is based on the proposition that commercial parties may negotiate for whatever warranty or liability limits they choose, and adjust their price accordingly." *Equistar Chems., L.P. v. Dresser-Rand Co.*, 123 S.W.3d 584, 590 (Tex. App.—Houston [14th Dist.] 2003), *rev'd on other grounds*, 240 S.W.3d 864 (Tex. 2007). Thus, the economic loss rule also serves to enforce the boundary between tort and contract, encouraging parties to contract ahead of time how to allocate risks, and to ensure that those allocations will not be undone later by the application of tort law. *See LAN/STV*, 435 S.W.3d at 240; Restatement (Third) of Torts: Liability for Economic Harm § 3 cmt. b. "In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12–13 (Tex. 2007).

*Id*. at 808.

Defendants argue that there are no independent damages alleged separate and apart from the contract damages for all of Plaintiffs' tort claims. (ECF No. 18 at 45). The Court agrees. Plaintiffs do not allege with particularity how damages accrue for tort claims independent of contract damages. While the Court acknowledges that somewhere in the Complaint, damages *might* be separately alleged, it is not apparent upon a reading of the Complaint. As such, Plaintiffs tort claims are dismissed under the economic loss rule, but Plaintiffs are granted the ability to amend their Complaint to allege separate damages for all tort claims.[4]

### c. The Term Sheet Had an Implied Covenant of Good Faith and Fair Dealing.

Under Delaware law, "every contract contains an implied covenant of good faith and fair dealing . . . ." **TL of Fla., Inc. v. Terex Corp**., 54 F. Supp. 3d 320, 329 (D. Del. 2014). The implied covenant of good faith and fair dealing requires a party in a contractual agreement to "refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract

---

[4] The Court finds it must determine the sufficiency of the remaining counts in the Complaint under Fed. R. Civ. P. 12 to foreclose further argument about whether the Complaint should be further amended if Plaintiffs sufficiently allege independent tort damages.

from receiving the fruits of the bargain." ***Am. Healthcare Admin. Servs v. Aizen***, 285 A.3d 461, 479 (Del. Ch. 2022). Furthermore, when conducting the analysis for an alleged breach of the covenant of good faith and fair dealing, Delaware courts "assess the parties' reasonable expectations at the time of contracting" instead of rewriting a contract to "appease a party who later wishes to rewrite a contract he now believes to have been a bad deal." ***Nemec v. Shrader***, 991 A.2d 1120, 1126 (Del. 2010).

Plaintiffs allege that the Term Sheet contained an implied covenant of good faith and fair dealing because it was a contract governed by Delaware law. (ECF No. 30 at 20). Furthermore, Plaintiffs allege that Defendants breached the covenant by acting arbitrarily and unreasonably when receiving, considering, or acting upon ESMG's funding request under the Term Sheet. (*Id.* at 22)*.* These allegations are sufficient to pass muster on this claim.

## IV.     COUNT IV: Promissory Estoppel Against Defendant Dundon

### A. Parties' Arguments

Plaintiffs seek recovery under the doctrine of promissory estoppel if neither a valid nor enforceable oral contract exists. (ECF No. 1 at 43). Plaintiffs also allege that Dundon promised ESMG to finance $250 million to the League, despite there only being a written agreement with DCP to provide up to $70 million of funding. (*Id*.). Plaintiffs contend that ESMG acted in substantial reliance of Dundon's promise, that ESMG's reliance was reasonable and foreseeable to Dundon, and that ESMG's suffered substantial detrimental reliance and damage as a result. According to Plaintiffs, Dundon's breach caused detrimental reliance in the amount of at least $180.3 million and alleged that injustice is avoidable only by enforcing Dundon's promises.

Dundon requests dismissal of Count IV, promissory estoppel, for failure to state a claim. Defendant further argues that the Trustee has failed to allege the existence of a writing that satisfies

the Statue of Frauds and that under Delaware law, promissory estoppel is not appropriate to enforce promises supported by consideration. (ECF No. 18 at 25).

In their Response, Plaintiffs reiterate that promissory estoppel applies here because Dundon disputes the existence of the Oral Contract. Therefore, if no contract exists, promissory estoppel is the appropriate remedy.

The Reply alleges that the promissory estoppel claim is another repackaged contract claim and that the Trustee cannot recover benefit of the bargain.

## B. Analysis

Like Count III, the Court finds it prudent to establish the governing law for this count in the Complaint. Because the Complaint makes Count IV in the alternative to Counts I, governed by Texas law, and the Count II, governed by Delaware law, the Court will separate the analysis in two parts. First, the Court will consider promissory estoppel under Texas law, followed by the claim under Delaware law.

While promissory estoppel is typically a defensive theory, it is also an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise. *See Frost Crushed Stone Co. v. Odell Geer Const. Co.*, 110 S.W.3d 41, 44 (Tex. App.—Waco 2002, no pet.). Additionally, promissory estoppel becomes applicable if injustice can be avoided only by the enforcement of the promise. *See City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 136 (Tex. App.—Beaumont 1993, writ denied). Although Defendants argue that a promissory estoppel claim fails under Delaware law, however, Count IV relates to the Oral Contract, where Texas law governs. For this reason, the Court will examine Count IV against the Texas requirements for a valid promissory estoppel claim. To successfully bring a promissory estoppel claim in Texas, a plaintiff must show that: 1) the defendant made a promise to the plaintiff,

23

2) there is foreseeability of reliance thereon by the promisor, and 3) substantial reliance by the promise to his detriment. *See Eng. V. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

Here, Plaintiffs accuse Dundon of promising specific amounts of funding to the League. (ECF No. 1 at 18). The Complaint discusses communication, both private and public, between Ebersol and Dundon to allege the making of a promise. (ECF No. 1 at 14–19). Second, the Complaint alleges that given the League's financial position and their search for investors, ESMG foreseeably relied on Dundon's promise and continued assurances. (*Id.* at 28). Dundon's awareness that his funding was vital to the completion of the inaugural season makes it is foreseeable that ESMG would reasonably rely on his assurances. (*Id.* at 15). Third, the Complaint alleges detrimental reliance by pointing to the incomplete inaugural season and the lack of obtaining more funding from other investors after repeated assurances by Dundon. (*Id.* at 37–39).

### a.  The Statute of Frauds is Inapplicable to the Promissory Estoppel Claim.

Dundon argues that the Statute of Frauds bars the promissory estoppel claim because the Oral Agreement contained no writing. Defendants rely on *Fuller* to argue that an agreement to sign a document that had already been prepared, or whose wording the parties already had agreed was required to satisfy the Statute of Frauds. *See Fuller v. Wholesale Elec. Supply Co. of Houston, Inc.*, 631 S.W.3d 177, 187 (Tex. App.—Houston [14th Dist.] 2020, pet. Denied). This additional element is not required here because unlike *Fuller* or the cases it relied upon, the agreement at issue is not a lease or loan. *Fuller*, 631 S.W.3d at 187 (citing *1001 McKinney Ltd. V. Credit Suisse First Bos. Mortg. Cap.*,192 S.W.3d 20, 29 (Tex. App.—Houston [14th Dist.] 2005, pet. Denied)). Like the Statute of Frauds analysis in Count I, no writing is required here as Plaintiffs have sufficiently alleged that the agreement is a sale of securities, thus falling within the exception of the Statute of Frauds. Tex. Bus. & Com. Code Ann. § 8.103; Tex. Bus. & Com. Code Ann. § 8.113. Therefore, taking all Plaintiffs' assertions as true, the Complaint pleaded sufficient

facts to allege promissory estoppel if neither a valid nor enforceable oral contract exists under Texas law.

      **b. Plaintiffs Sufficiently Pleaded a Promissory Estoppel Claim Against Defendant Dundon Under Delaware Law.**

As explained earlier, the Complaint makes Count IV in the alternative to Counts I and/or II. Nevertheless, Dundon claims promissory estoppel is inappropriate here because of the presence of consideration. (ECF No. 18 at 12). This argument misses the point. Plaintiffs assert promissory estoppel if a contract is not found to exist. Therefore, the defense that promissory estoppel does not apply because there was a contract does not address the alleged claim appropriately.

To show promissory estoppel in Delaware, the plaintiff must show: 1) a promise was made; 2) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promise; 3) the promisee reasonably relied on the promise and took action to his or her detriment; and 4) such promise is binding because injustice is avoidable only by enforcement of the promise. *See Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 822 (Del. Super. Ct. 2009).

Here, Dundon promised funding that ESMG and the League relied upon to continue operations. (ECF No. 1 at 28). Furthermore, the Complaint alleges that ESMG reasonably relied upon Dundon's promise because of his continued reassurances (ECF No. 1 at 18). Additionally, the Complaint alleges that because of these assurances and Dundon's position as a fiduciary, ESMG relied on Dundon's promise to its detriment. (*Id.* at 55). Lastly, Plaintiffs allege that because of the damages suffered, injustice is avoidable only through enforcing Dundon's promise. (*Id.* at 44). Taking all of Plaintiffs' assertions as true, the Complaint pleaded sufficient facts to allege promissory estoppel under Delaware law if neither a valid nor enforceable oral contract exists.

**V.**    **COUNT V: Breach of Fiduciary Duty by Defendants Dundon and Zutter**

## A. Parties' Arguments

Plaintiffs allege that Defendant Dundon breached his fiduciary duty to Debtors by: 1) failing to provide the promised funding to the League, and 2) making financial decisions for Debtors' entities motivated by self-interest. Plaintiffs also allege that Dundon misappropriated assets and resources of Debtors, committed self-dealing, and entered contracts that were in the best interest of Dundon and not Debtors. Plaintiffs contend that Dundon failed to employ a rational decision-making process in relation to the operations of Debtors. (*Id.*).

Plaintiffs also allege that Defendant Zutter breached his fiduciary duty to Debtors by failing to commit Dundon's promised funding to writing, and failing to disclose that Dundon was not going to fulfill his funding commitment. In addition, Plaintiffs allege that Zutter made financial decisions for Debtors' entities that were motivated by self-interest, and that Zutter voted to enter contracts that were in the best interest of Dundon and not Debtors. Also, Plaintiffs allege that Zutter (like Dundon) failed to employ a rational decision-making process in relation to the operations of Debtors. (*Id*. at 46).

Plaintiffs further accuse Defendants Dundon and Zutter of breaching their fiduciary duties to the players of the AAF by failing to provide the promised funding to the League, misappropriating assets and resources of Debtors, and failing to employ a rational decision-making process in relation to the operations of Debtors. (*Id*. at 47).

According to Plaintiffs, each of Defendants' breaches were intentional, grossly negligent, and/or made with reckless indifference to the ramifications on Debtors. Plaintiffs state that they have suffered harm as a direct and proximate result of the breach. (*Id*. at 49).

Defendants argue that no claim has been properly presented against any of the defendants on the breach of fiduciary duty claims. (ECF No. 18 at 26). Defendants first argue that the claims

26

for fiduciary duty brought by the players should be dismissed as a matter of law because Delaware law applies to the fiduciary duty claims and that under Delaware law, directors of an insolvent corporation do not owe a duty to creditors. (*Id*.).

Defendants further posit that claims for fiduciary duty brought by Debtors that are subsidiaries of Ebersol Sports Media Group, Inc. should be dismissed as a matter of law because the board of directors of a parent corporation does not owe a fiduciary duty to the subsidiaries of the parent company. Alternatively, Defendants disagree with the Trustee that informal fiduciary duties arose because of the subsidiary's relationship of trust with both Dundon and Zutter. (*Id*. at 27). Defendants state that Delaware law should not apply to those claims, and that instead, Texas law should apply. Defendants argue that no informal fiduciary principle exists under Texas law.

Regarding the Plaintiffs' claims against Dundon and Zutter personally, the Defendants argue that any claim for breach of fiduciary duty against Dundon for failure to provide the promised funding is wholly a contractual claim not a breach of fiduciary duty claim. (*Id*. at 28). Further, Defendants claim that the basis for the breach of fiduciary duty claim is the same as the basis for the breach of contract claims, and therefore, the breach of fiduciary duty claims must be dismissed. In addition, Defendants argue that any breach of fiduciary duty claims against Zutter are breach of contract claims against Dundon.

Finally, the Defendants ask for dismissal of the breach of fiduciary duty claims because the certificate of incorporation of Ebersol Sports Media Group, Inc. contains an exculpatory clause stating that "a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director." (ECF No. 18 at 29). Defendants assert that the business judgment rule bars any claims for the remaining breach of fiduciary allegations from the Trustee regarding allegations that business decisions made by either

Dundon or Zutter were motivated by self-interest, misappropriating funds, and entering contracts that were not in the best interest of the Debtors.

**B. Analysis**

As an initial matter, the Court finds it prudent to establish the governing law for this count in the Complaint. The parties seem to agree that the Delaware law applies to the breach of fiduciary duty claim, but argument in the Motion to Dismiss indicates that there is some dispute about whether Delaware law applies or Texas law applies. *Compare* (ECF No. 18 at 16 and ECF No. 30 at 26) with (ECF No. 18 at 27). The Court will analyze the cause of action under Delaware law because the parties state that Delaware law should apply to this claim. The Court will not analyze the cause of action—for purposes of deciding the Motion to Dismiss—differently for each argument the Defendants make against the Complaint. If the parties agree that Delaware law applies, it applies throughout the analysis.

Plaintiffs argue that there is a claim for breach of fiduciary duty by Dundon and Zutter to ESMG. (ECF No. 30 at 25). Further, Plaintiffs maintain that under Delaware law, "an LLC's managers and controlling members in a manager-managed LLC owe the traditional fiduciary duties that directors and controlling shareholders in a corporation would." ***Kelly v. Blum***, No. CIV.A. 4516-VCP, 2010 WL 629850, at *1 (Del. Ch. Feb. 24, 2010). In addition, Plaintiffs note that "Delaware law imposes fiduciary duties on those who effectively control a corporation." ***Voigt v. Metcalf***, No. CV 2018-0828-JTL, 2020 WL 614999, at *11 (Del. Ch. Feb. 10, 2020) (quoting ***Quadrant Structured Products Co., Ltd. v. Vertin***, 102 A.3d 155, 183-84 (Del. Ch. 2014)). Moreover, Defendants' reliance on ***Trenwick*** for the proposition that the "board of directors of a parent corporation does not owe a fiduciary to the parent's subsidiary," is misplaced. ***Trenwick Am. Litig. Tr. v. Ernst & Young, LLP***, 906 A.2d 168 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007)). That said, the Complaint alleges Dundon and Zutter had and exercised control over ESMG's subsidiaries. (ECF No. 1, ¶¶ 72–76, 105–

28

07).

Plaintiffs argue that corporate fiduciaries "are not permitted to use their position of trust and confidence to further their private interests." *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939). When a director is a dual fiduciary (*i.e.*, a director of two entities), they owe an "uncompromising duty of loyalty" to both entities without dilution. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983). The Complaint alleges Zutter and Dundon acted as fiduciaries to the League, as well as held positions with Dundon's other companies that would give rise to fiduciary duties to those companies. (ECF No. 1, ¶¶ 63, 72–73, 75–77, 80, 155, 165–67, 172–173, 182–83).

Dundon claims that the Complaint is not specific enough in its allegations of self-dealing, but the Complaint pleaded that (i) Dundon made decisions to his own benefit, such as strong-arming the League to enter into the Release Agreement that benefitted Dundon personally and not the League, and (ii) he made decisions to benefit DCP (of which his is an owner and principal) at the expense of the League and its other investors and creditors, including by using League resources to make preferential payments and provide benefits to DCP. (*Id.* at ¶¶ 115–116, 121–126, 133, 136).

As to Zutter, the Complaint alleges that he breached his duty of loyalty by "making material decisions regarding finances and operations of one or more Debtors that were motivated by his self-interest and served his self-interests, including as a partner of Dundon in other ventures such as DCP, rather than the interests of the Debtors . . . . voting for the Debtors to enter into contracts, such as the Release Agreement, that were in the best interests of himself and Dundon, and were not in the best interest of the Debtors and in fact were detrimental to the Debtors[.]" (*Id.* at ¶ 173).

Finally, Plaintiffs dispute Defendants' argument that the business judgment rule "creates a presumption that directors act in a loyal manner" and bars claims for breach of fiduciary duty where such claims are "based on general accusations about the way a board runs a corporation" and/or facts are not alleged "indicating a director was either interested in the transaction at issue or lacked independence to oppose its consummation." (ECF No. 18 at 31). Plaintiffs argue that the allegations in

29

the Complaint show the business judgment rule does not apply, even under Defendants' articulated standard. Plaintiffs argue that Dundon and Zutter were both interested in transactions at issue and lacked independence. (ECF No. 1, ¶¶ ¶¶ 63, 72–73, 75–77, 80, 155, 165–67, 172–173, 182–83).

Defendants contend that Plaintiffs urge the Court to ignore the exculpatory clause in ESMG's charter on a motion to dismiss, citing *In re Think3*, for the proposition that a motion to dismiss can be based on an affirmative defense only if the defense is clearly applicable on the face of the complaint. (ECF No. at 31); ***see In re Think3, Inc.***, 529 B.R. 147, 183–84 (Bankr. W.D. Tex. 2015). Other federal courts have dismissed duty of care cases based on exculpatory provisions at the Rule 12(b)(6) stage. ***See In re Fedders N. Am., Inc.***, 405 B.R. 527, 540, 543 (Bankr. D. Del. 2009).

In sum, both parties spend considerable time arguing as a matter of law that the breach of fiduciary claim should or should not be dismissed as a matter of law. A facial reading of the Complaint supports the Court finding that a breach of fiduciary duty by Dundon and Zutter are clearly delineated in the Complaint. Further, the Complaint is replete with allegations surrounding Dundon's and Zutter's alleged breach of fiduciary duties to Debtors and the players. The parties have presented conflicting interpretation of the applicable law that are best reserved for summary judgment (if at all) or after trial. The Court is not convinced at this juncture that the Defendants' cited authorities support the inescapable conclusion that Plaintiffs' breach of fiduciary duties warrant dismissal.

## VI. COUNT VI: Aiding and Abetting Breach of Fiduciary Duty Against Defendant Dundon Capital Partners, LLC

### A. Parties' Arguments

The Complaint asserts a cause of action for aiding and abetting a breach of fiduciary duty against Defendant Dundon Capital Partners. (ECF No. 1 at 49). Plaintiffs allege that Dundon

Capital Partners knowingly participated and substantially assisted Dundon and Zutter in breaching their fiduciary duty to Debtors. Plaintiffs contend that Dundon Capital Partners assisted Dundon and Zutter in misappropriating funds, self-dealing, and misleading Debtors'officers . Lastly, Plaintiffs allege that Dundon Capital Partners knew of Dundon's intention to renege on the promised funding. The Complaint states that if Texas law applies, then the cause of action is no longer aiding and abetting, but rather is "Knowing Participation in Breaches of Fiduciary Duties." (ECF No. 1 at 50). If Delaware law applies, however, Plaintiffs' cause of action remains aiding and abetting breach of fiduciary duty.

Defendants contend that regardless of whether Texas or Delaware law applies, this count should be dismissed. (ECF No. 18 at 31). Defendants first argue that the intra-corporate conspiracy doctrine bars aiding and abetting claims between an entity and its agents. Defendants state that a similar doctrine bars a cause of action under Texas law and that none of the exceptions to the doctrine apply in this case. Further, Defendants contend that Texas does not recognize a cause of action for aiding and abetting. (*Id*. at 32–33). Lastly, Defendants claim that the only case to establish a claim for knowing participation is inapposite.

In its Response to the Motion to Dismiss, Plaintiffs insist that they have asserted a valid claim for aiding and abetting under both Texas and Delaware law. Plaintiffs cite a variety of cases to support their position. Plaintiffs argue that to the extent the intra-corporate conspiracy doctrine applies, it is not a blanket rule and does not absolutely bar the causes of action brought here. Specifically, Plaintiffs mention that the aiding and abetting complained of occurred between other employees of Dundon Capital Partners, namely Jeff Vanderbilt and Jason Kulas. Defendants reply by noting that Plaintiffs never mentioned Vanderbilt of Kulas in the Complaint and reiterating that the intra-corporate conspiracy doctrine should apply to Vanderbilt and Kulas.

31

## B. Analysis

Before analyzing this cause of action, the Court notes that there is a question regarding the governing law of this cause of action. In their briefing, both parties provided argument under both Texas law and Delaware law. Both parties agree, however, that the breach of fiduciary duty claims are governed by Delaware law. (ECF No. 18 at 16; ECF No. 30 at 26). Because aiding and abetting a breach of fiduciary duty is necessarily dependent on the success of a breach of fiduciary duty claim, the breach of fiduciary duty claim, as well as the aiding and abetting claim, should be governed by the same law. Although the Texas and Delaware standards for an aiding and abetting claim are substantially similar, the Court will nonetheless analyze the claim using Delaware law.

In Delaware, a plaintiff may assert a valid claim for aiding and abetting a breach of fiduciary duty by proving "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *In re Draw Another Circle*, 602 B.R. 878, 904 (Bankr. D. Del. 2019) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001)). The scienter element of this cause of action requires "that the third-party act with the knowledge that the conduct advocated or assisted constitutes a breach." *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 861-62 (Del. 2015) (citing *Malpiede*, 780 A.2d at 1097).

Delaware courts "generally prohibit aiding and abetting claims against parties that already stand in direct fiduciary relationships." *Draw Another Circle*, 602 B.R. at 905. Additionally, "a corporation cannot be deemed to have conspired with its officers and agents." *River Valley Ingredients, LLC v. American Proteins, Inc.*, 2021 WL 598539 at *6 (Del. 2021). This doctrine exists because the "acts of an agent or officer of a corporation are deemed to be the actions of the corporation. Thus, in essence, any agreement would be between only one 'person.'" *Id.* A valid

aiding and abetting claim can be pled, however, if the plaintiff can show that the alleged aider and abetter "steps out of her corporate role and acts pursuant to personal motives." *In re Transamerica Airlines, Inc.*, 2006 WL 587846 at *6 (Del. Ch. 2006).

The Court dismisses this cause of action for two reasons. First, the allegations made in the Complaint assert that Vanderbilt and Kulas's actions (on behalf of Dundon Capital Partners) aided and abetted the alleged breach of fiduciary duty by Dundon and Zutter. In this way, the Complaint reads more as asserting a claim against Vanderbilt and Kulas themselves, who are not Defendants in this adversary proceeding. (ECF No. 36 at 18). Trustee cannot assert claims against parties who are not Defendants to the lawsuit.

Alternatively, Plaintiffs push for an interpretation that Dundon Capital Partners itself, via Vanderbilt and Kulas as its officers, is the entity aiding and abetting the breach of fiduciary duty. If this interpretation prevails, then the intra-conspiracy doctrine applies barring the claim. As Delaware courts have held, corporations cannot conspire with its agents or officers. Here, the Plaintiffs allege that Dundon Capital Partners aided and abetted Dundon and Zutter to breach their fiduciary duty. Dundon Capital Partners, as the principal, cannot aid and abet Dundon and Zutter who are agents of the company, because any actions taken by Dundon or Zutter would be imputed to the company itself. Thus, there is no third party with whom to conspire.

The Trustee urges the Court not to view the intra-corporate conspiracy doctrine as dispositive of the issue because the doctrine is inapplicable where an officer is not acting for the corporation, but instead for his own personal reasons. Plaintiffs contend that is the case here. This theory suffers similar problems. First, this exception to the doctrine applies where an officer is the person involved in the alleged aiding and abetting, but here, the corporation is the entity alleged to have aided and abetted the breach of fiduciary duty. The exception only works when the cause

of action involves an individual because a corporation can only act through one of its officers. Second, the officers the Plaintiffs accuse of aiding and abetting the breach are Vanderbilt and Kulas, who are not defendants to this adversary proceeding. Accordingly, Plaintiffs' cause of action for aiding and abetting a breach of fiduciary duty is dismissed with prejudice.[5]

## VII. COUNTS VII, VIII, IX, and X: Fraudulent Transfer Claims Against Defendant Dundon and Dundon Capital Partners, LLC

### A. Parties' Arguments

Plaintiffs next seek to avoid a transfer between FO2, LLC and Ebersol Sports Media Group, LLC. All four fraudulent transfer causes of action arise from the same transaction. Plaintiffs contend that Dundon, personally and on behalf of Dundon Capital Partners, LLC caused Fowler to enter into an agreement entitled "Release Agreement" wherein Fowler (as representative of FO2) and Ebersol (as representative of ESMG) agreed to release Fowler from any responsibilities and liabilities he had towards ESMG. Plaintiffs allege that Dundon threatened to pull his committed funding unless Ebersol signed the release agreement on behalf of Ebersol Sports Media Group. The motive for this transaction—according to the Trustee—was for Dundon to shift tax credits, income, and liabilities among Dundon's many corporate holdings. As a result, Plaintiffs ask the court to invalidate the release agreement and issue an injunction against the enforcement of the release. Notably, the Release Agreement was not appended to the Complaint or otherwise brought to the Court's attention by the Trustee.

Defendants—in their Motion to Dismiss—attach the Release Agreement. The Release Agreement states that Fowler and ESMG mutually agree to release all claims the parties have against each other. Defendants argue that all four counts should be dismissed because the statutory

---

[5] The Fifth Circuit has resolved the issue of whether an aiding and abetting claim is valid under Texas law. The Fifth Circuit determined in *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Liability Litigation*, 888 F.3d 753, 782 (5th Cir. 2018) that aiding-and-abetting claims do not exist in Texas.

predicates for the causes of action only impose liability on the initial transferee or any subsequent transferee. Additionally, Defendants point out that the Release Agreement disallows any suit by ESMG to limit the effect of the release.

In response, the Trustee clarifies that the cause of action rests on the theory that Dundon and Dundon Capital Partners released any claims ESMG may have had against Fowler in exchange for Fowler giving up his ownership interest in ESMG, thus giving full control of the AAF to Dundon and Dundon Capital Partners.

Defendants' Reply reiterates that the Trustee's legal theory is unsupported and notes that the Trustee did not address Defendants' argument that the Release Agreement itself bars what relief the Trustee is seeking on these counts.

## B. Analysis

At the outset, the Court notes that it will disregard any argument regarding the substance of the Release Agreement because—although referenced—it was not attached to the Complaint. Defendants insist that this Court may consider the Release Agreement because it was mentioned in the Complaint. In the Fifth Circuit, courts evaluating motions to dismiss "must limit their inquiry to facts stated in the complaint and documents either attached or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Indeed, there may be an open question regarding whether the Trustee's mention of the Release Agreement in his Complaint constitutes "incorporation," but the Court need not consider the Release Agreement to make the appropriate determination here.

The four fraudulent transfer allegations all bear similar elements to prove the claim. The Court dismisses all four claims for different reasons. Regarding Count VII, the Trustee's cause of action for Fraudulent Transfer under § 548(a)(1)(A) fails to meet the required pleading standard.

Trustee's legal theory is not readily apparent from the text of the Complaint because it does not allege sufficient facts to show an "actual intent to hinder, delay, or defraud" any creditors as required by the Bankruptcy Code. 11 U.S.C. § 548(a)(1)(A). The Trustee further falls short of Federal Rule of Civil Procedure 9's heightened pleading standard, which requires the Complaint to plead the "who, what, when, where, and why" of the claim for relief. ***Matter of Life Partners Holdings, Inc.***, 926 F.3d at 1017.

For the same reasons, Count VIII is also dismissed. A fraudulent transfer claim under Tex. Bus. & Com. Code § 24.005(a)(1) also requires a showing of "actual intent to hinder, delay, or defraud" a creditor. The Trustee similarly fails to satisfy Rule 9's pleading standards on this count.

Count IX is also dismissed. A fraudulent transfer claim under § 548(a)(1)(B) requires the Trustee to show that ESMG received "less than reasonably equivalent value" as consideration for the Release Agreement. 11 U.S.C. § 548(a)(1)(B). The Trustee's Complaint is deficient because the Trustee has failed to allege sufficient facts to support a theory that ESMG received less than reasonably equivalent value. Rule 9's standard is exacting, and the Trustee's Complaint falls short on this count.[6]

Similarly, a constructive fraudulent transfer claim under Texas law requires the Trustee to show that ESMG entered into the Release Agreement "without receiving a reasonably equivalent value." Tex. Bus. & Com. Code § 24.005(a)(2). Thus, Count X is also dismissed for the same reasons that Count IX is dismissed. In sum, Plaintiffs only pled the elements of a fraudulent transfer under bankruptcy law and Texas law without citation to the allegations in the Complaint or complying with Rule 9's requirements in specifying fraud. Plaintiffs will have 14 days in which to replead the fraudulent conveyance actions in the Complaint (Counts VII-X), otherwise Counts

---

[6] This Court has previously considered whether a release of claims may constitute reasonably equivalent value in ***Osherow v. Zehr (In re FWLL)***, Adv. No. 16-05023, 2018 WL 1684308 (Bankr. W.D. Tex. Apr. 5, 2018).

VII-X are to be considered dismissed with prejudice.

## VIII.  COUNT XI: Common Law Fraud

In the moving papers, the Parties debate three kinds of common law fraud: (1) fraudulent misrepresentations; (2) fraud by nondisclosure; and, (3) constructive fraud. Plaintiffs only need to sufficiently plead one kind of fraud to survive the Motion to Dismiss. The Court will analyze each fraud theory in turn.

### A. Fraudulent Misrepresentation

In their Complaint, Plaintiffs assert Dundon made false representations of material facts regarding the following: Dundon's unfulfilled $250 million commitment to AAF; the promise of "Series Infinity" funding; Dundon's intention to maintain operation of AAF through the first season and years thereafter; the status of Ebersol and Dundon's Oral Contract and whether the deal changed after the presentation of the Term Sheet; the reality that AAF would be declining additional funding from outside investors; and, Dundon's intention to act in the best interest of AAF. (ECF No. 1 at 54–55). Plaintiffs further argue Dundon either knew these representations were false or made them in reckless disregard for the truth. (ECF No. 1 at 55). Plaintiffs contend Dundon intended to deceive the Debtors, who justifiably and detrimentally relied on Dundon's misrepresentations. (ECF No. 1 at 55).

Defendants first asserts that the Term Sheet negates justifiable reliance because a written contract prevails over an oral representation when the two contradict one another. (ECF No. 18 at 35). Defendants further contend Plaintiffs failed to plead adequately the requisite scienter to prove fraudulent intent. (ECF No. 18 at 36). More specifically, Defendants argue that Plaintiffs failed to allege facts in support of their allegation that Dundon knew he would not perform the alleged promises. (ECF No. 18 at 38). Plaintiffs cited to news and social media to allege that Dundon

intended to profit from AAF's failure. However, Defendants point out that these reports occurred after the alleged fraud and thus cannot support any state of mind allegations for the relevant time. (ECF No. 18 at 39). Defendants also argue that Dundon's statements cannot be fraudulent because these statements constituted mere promises of future acts, and fraud requires misrepresentation of present fact. (*Id.* at 38). Defendants also assert that Plaintiffs' recklessness claims are insufficient because fraud requires intent to deceive.. (*Id.* at 40). Finally, Defendants contend Plaintiffs haphazardly strung together conclusory allegations into a "shotgun pleading," which is insufficient under Rule 9(b)'s heightened standard. (ECF No. 18 at 36–37).

In their Response to the Motion to Dismiss, the Plaintiffs argue recklessness is sufficient. (ECF No. 30 at 42). Plaintiffs argue the misrepresentations occurred between the promise of funding and Dundon's suspension of the AAF. (ECF No. 30 at 41). Dundon's misrepresentation while the league was running, Plaintiffs contend, demonstrate Dundon's intent. (*Id.*). Dundon's intent also rebuts Defendants' position that the statements were merely promises of future action. (*Id.*).[7]

The elements of a fraudulent misrepresentation claim are as follows: "(1) the defendant misrepresented a material fact; (2) the defendant knew the material misrepresentation was false or made it recklessly without any knowledge of its truth; (3) the defendant made the false material representation with the intent that it should be acted upon by the plaintiff; and (4) the plaintiff justifiably relied on the representation and thereby suffered injury." ***United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.***, 414 F.3d 558, 566 (5th Cir. 2005) (citing ***Ernst & Young, L.L.P., v.***

---

[7] Defendants' Reply seeks to dispose of all of Plaintiffs' fraud claims because Plaintiffs' allegations are subject to the economic loss rule and the Complaint did not allege any tort damages independent of contract damages (ECF No. 36 at 16). As noted herein, the Court finds that all tort claims are subject to dismissal under the economic loss rule, subject to further amended pleading. Nonetheless, to avoid having to reconsider the tort claims at a subsequent amended complaint, the Court will address if the Complaint's tort claims survive the Motion to Dismiss now.

*Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). At this procedural juncture, Plaintiffs only need to assert sufficient facts as to each element. *See Gonzalez*, 577 F.3d at 603 (citing *Ashcroft*, 566 U.S. at 678). Moreover, under Rule 9(b)'s heightened standard, Plaintiffs must further "plead the who, what, when, where, and why as to the fraudulent conduct." *Matter of Life Partners Holdings, Inc.*, 926 F.3d at 117.

Here, Defendants do not challenge Plaintiffs' assertions that they made false representations. Defendants maintain, however, Plaintiffs failed to properly allege the intent or scienter and justifiable reliance elements. (ECF No. 18 at 35–36). The Court will only address these disputed allegations.

## B. State of Mind

First, the Court must determine whether Plaintiffs sufficiently alleged Defendants either knew of the falsity or acted recklessly without regard for the truth. "'A misrepresentation is fraudulent if the maker . . . knows or believes . . . the matter is not as' represented, or 'does not have the confidence in the accuracy of his representation' as stated or implied, or 'knows . . . he does not have the basis for his representation' as stated or implied." *In re Mercer*, 246 F.3d 391, 407 (5th Cir. 2001).If a defendant represents that he will do something but has no intention to do so, his representation is fraudulent. *Id.*at 407–08. "The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show a defendant's motive to commit . . . fraud. Where a defendant's motive is not apparent, a plaintiff may adequately plead scienter by identifying circumstances that indicate conscious behavior of the defendant[.]" *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (citation omitted).

## C. Inconsistent Representations

Defendants take inconsistent positions on Dundon's state of mind. With respect to other

counts, Defendants do not dispute Dundon reached an oral agreement to fund AAF $250 million. (ECF No. 18 at 19). Rather, the Parties debate whether that oral agreement is a binding contract. (*Id.*). But for this count, Defendants insist "[the Term Sheet] transaction came together quickly," too quickly for either party to "justifiably rely on the other party's prior inconsistent representations." (ECF No. 18 at 35). A key theme to Defendants' overall argument is that the Term Sheet "contradicts" the Oral Agreement. (*See, e.g.* ECF No. 18 at 19 (heading reads: "The Trustee's oral contract claim is not plausible because it contradicts the term sheet.")). Later, Defendants also concede that the Court can infer a defendant's state of mind if Plaintiffs allege sufficient facts to warrant concluding fraud occurred. Because Defendants expressly argue Dundon made prior inconsistent representations that directly contradict one another, Defendants admit Dundon made a representation about funding the League he did not intend to honor. The Court, therefore, struggles to understand how Defendants argue in good faith that the Trustee has not pled scienter sufficiently. Scienter has been adequately pled.

**D. Future Acts**

Defendants also argue that Plaintiffs' fraudulent misrepresentation claim must be dismissed because Plaintiffs allege future promises. (ECF No. 18 at 44). A false promise of future performance is actionable as a misrepresentation "if the promise was madewith no intention of performing at the time itwas made. ***Aquaplex, Inc. v. Rancho La Valencia, Inc.***, 297 S.W.3d 768, 774 (Tex. 2009).

Defendants argue that Dundon's alleged promise to invest $250 million was a promise of future performance. (ECF No. 18 at 38).

**E. Justifiable Reliance**

Defendants also rely on the $70 million figure in the Term Sheet to challenge allegations

of justifiable reliance. Texas courts repeatedly hold that "a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 658 (Tex. 2018) (quotations and citations omitted). For a contract to sufficiently contradict a representation and render reliance unjustified as a matter of law, the "contract must conflict with the earlier representation such that a reasonable person could not read the agreement and still plausibly claim to believe the earlier representation." *Id.* (quotations omitted). Stated differently, "there is no direct contradiction if a reasonable person can read the writing and still plausibly claim to believe the earlier representation." *Id.* at 659. The question before the Court, then, is whether Plaintiffs have alleged sufficient facts to find that a reasonable person could believe that Dundon promised both $250 million in the Oral Agreement and $70 million in the Term Sheet.

Defendants focus on the Term Sheet's language providing that Dundon's investment was a "maximum cumulative commitment of $70,000,000." (ECF No. 18 at 35).Defendants argue that no reasonable person could justifiably rely on a $250 million promise when reading the Term Sheet. (*Id.*).

But by focusing on that clause, the Defendants ignore the rest of the Term Sheet. The entire sentence Defendants cite reads:

> During the period from the effectiveness of this Binding Term Sheet through June 30, 2019, the Company will have the right to submit an equity funding request to the Investor, which shall state the amount of funding requested and include a supporting budget, subject to a maximum cumulative commitment of $70,000,000.

(ECF No. 1, Ex. B at 4).

Reading the whole sentence clarifies that the "maximum cumulative commitment of $70,000,000" is limited in time from effective date until June 30, 2019. Plaintiffs have not alleged any similar time constraints on the $250 million promise. A reasonable person could conclude that

41

Dundon would not invest more than $70 million between the Term Sheet's effective date and June 30, 2019, and still invest a total of $250 million at some other point(s) in time. Therefore, the oral representation does not contradict the written contract, and so reliance is not unjustified as a matter of law.

Additionally, Plaintiffs' Complaint is replete with detailed explanations of how Plaintiffs relied on Dundon's $250 million promise. For example, Plaintiffs stress numerous times that AAF did not seek additional funding in reliance on Dundon's promised $250 million investment. At this procedural stage, the Court finds Plaintiffs have met their burden on reliance.

**F. Fraud by Non-Disclosure**

The Complaint alleges that Dundon concealed or failed to disclose the following material facts: Dundon would not follow through with the $250 million funding commitment; the existence of caveats to Dundon's performance of the said commitment; Dundon used AAF assets and resources for himself, his company, and his friends; Dundon was not acting in the best interest of AAF. (ECF No. 1 at 56). Plaintiffs posit that, as a fiduciary of Debtors, Dundon owed Debtors a duty to disclose these facts and that Debtors lacked knowledge of the concealed facts. (*Id.*). In turn, Debtors justifiably relied on Dundon's nondisclosures to their own detriment. (*Id.* at 57).

Defendants maintain that the Complaint relies on a pre-agreement failure to disclose, which is not actionable. Defendants' Motion also argues that parties dealing at arm's length do not have a duty to disclose. (EFC No. 18 at 40); *see also **In re ACM-Tex, Inc.**,* 430 B.R. 371, 418–19 (Bankr. W.D. Tex. 2010) (discussing fraud by non-disclosure). Moreover, Defendants argue that Plaintiffs' contention that Dundon failed to act in Debtors' best interests constitutes a mere statement of opinion, so it cannot be the basis of a fraud claim. (ECF No. 18 at 40–41).

Plaintiffs' Response clarifies that the "non-disclosure theory . . . . focuses on Dundon's

actions after he became director and took control of the League." (ECF No. 30 at 43). Plaintiffs contend that Dundon owed a fiduciary duty to Debtors, so Dundon had a duty to disclose all material facts. (*Id*.). Concealing material facts would breach that duty. Plaintiffs argue that, had they known the undisclosed facts, Debtors would have declared a breach of the agreements and removed Dundon from a position of control. (*Id*. at 44.). Instead, Dundon placed Debtors into bankruptcy. (*Id*. at 60).

"Fraud by non-disclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it." ***CBE Grp., Inc. v. Lexington L. Firm***, 993 F.3d 346, 353 (5th Cir. 2021) (quoting ***Bombardier Aerospace Corp. v. SPEP Aircraft Holdings***, ***L.L.C.***, 572 S.W.3d 213, 219 (Tex. 2019)). To demonstrate Defendants engaged in fraud by non-disclosure, Plaintiffs would need to prove the following elements:

> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure, which resulted in injury. In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship . . . . [But] [t]here may [] be a duty to disclose when the defendant . . . made a partial disclosure that created a false impression . . . .

*Id*. (quoting ***Bombardier***, 572 S.W.3d at 219–20) (internal citations omitted).

According to the Complaint, in addition to misrepresentations outlined in the previous subsection, Dundon also failed to disclose material facts to Plaintiffs. In addition to his concealment of his true intentions regarding the $250 million promise, Dundon allegedly concealed the fact that he was using AAF assets and resources for his own gain, thereby not acting in the best interest of the League. (ECF No. 1 at 56). This fact, Plaintiffs contend, was material, as it would have been dispositive in Debtors' decision to relinquish control to Dundon. (*Id.* at 20).

As analyzed for Count III, the Complaint sufficiently pleaded a special relationship existed

between Plaintiffs and Dundon as to their Oral Agreement, giving rise to an implied covenant of good faith and fair dealing. (*Id*. at 16–18). The existence of this special relationship gave rise to a duty to disclose any material facts. *See **Lang v. Lee***, 777 S.W.2d 158, 164 (Tex. App.—Dallas 1989, no writ) ("Where there is a relationship of trust or confidence, as in this case, the defendant is under a duty to make a full disclosure of the facts so that the fraud may be discovered."); *see also **Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.***, 181 S.W.3d 879, 888 (Tex. App.—Dallas 2006, no pet.) ("The duty to disclose arises when one party knows that the other party is ignorant of the truth and does not have an equal opportunity to discover the truth. A fact is material if it would likely affect the conduct of a reasonable person concerning the transaction in question."). Plaintiffs pleaded that they would have altered their course and opted out of any contractual agreements with Defendants had they known of the undisclosed material facts.

Regarding Plaintiffs' knowledge element, Plaintiffs contend that it was Defendants, with 75% interest in and voting control over AAF, rather than Debtors, who were privy to information regarding League funding. (ECF No. 1 at 40). The Complaint pleads this point. (*Id.* at 56–57).

Similarly, Plaintiffs sufficiently pleaded reasonable reliance. Dundon not only rejected investment offers, but he also reassured Debtors that additional funding would not be necessary. Based on these representations, Debtors did not pursue these opportunities. (*Id.* at 19). Finally, in failing to disclose the League's true financial condition, AAF did not receive enough funding to make it through the season and was, therefore, terminated. (*Id.* at 38).

While Defendants argue that the Complaint relies solely on pre-agreement failures to disclose, Plaintiffs specifically pleaded that Dundon continued to reassure Ebersol that the League did not need additional funding even after the Term Sheet was signed. *Compare* (ECF No. 1 at 20)

44

with (ECF No. 1 at 22). The nondisclosure, as it pertains to the true financial condition of the League, occurred both post-Oral Agreement and post-Term Sheet.

Defendants further contend that a failure to disclose information is not actionable, because the parties were dealing at arm's length. (ECF No. 18 at 40). However, "even in arms-length transactions, a duty to disclose arises if a party knows, or should have known, its prior statement was false." ***Ralston Purina Co. v. McKendrick***, 850 S.W.2d 629, 635 (Tex. App.—San Antonio 1993, writ denied) (citing ***Susanoil, Inc. v. Cont'l Oil Co.***, 519 S.W.2d 230, 236 (Tex. App.—San Antonio 1975, writ ref'd n.r.e.)). The Complaint sufficiently pleaded that Dundon knew of his misrepresentations and non-disclosures, thereby triggering an obligation to disclose them to the Debtors. For these reasons, the Court concludes Plaintiffs properly pleaded fraud by non-disclosure.

## G. Constructive Fraud

Plaintiffs argue that, regardless of his intent, Dundon deceived Debtors, and they suffered as a result. (ECF No. 1 at 57). This alone, they argue, constitutes constructive fraud. (*Id.*).

Defendants argue that—because constructive fraud is, at its core, a breach of an informal fiduciary duty—Plaintiffs' constructive fraud claims should be dismissed for the same reasons their fiduciary duties claims should be dismissed. (ECF No. 18 at 41).

The Supreme Court of Texas has defined constructive fraud as follows: "the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." ***Archer v. Griffith***, 390 S.W.2d 735, 740 (Tex. 1964). What differentiates constructive fraud from actual fraud is intent, or the lack thereof. *See **In re Soza***, 542. F.3d 1060, 1072 (5th Cir. 2008) (Wiener, J., concurring).

Defendants maintain Plaintiffs' constructive fraud claim should be dismissed because it merely duplicates the breach of fiduciary duty claim. (ECF No. 18 at 41).[11] This argument is incorrect. While Texas courts split regarding whether constructive fraud necessarily *requires* a fiduciary relationship, none seem to contend that the two are the same. ***See id***. at 1072–75 (collecting Texas courts' varied interpretations as to whether a fiduciary duty is a prerequisite to a constructive fraud claim). At this procedural juncture and viewed in a light most favorable to the Plaintiffs, the Complaint has adequately pleaded that, whether wittingly or not, Dundon made false representations that tended to deceive Plaintiffs and cause them injury. Accordingly, Defendants' Motion to Plaintiff's constructive fraud argument is denied.

## IX. COUNT XII: Fraud in the Inducement by Defendants Dundon and Dundon Capital Partners, LLC

### A. Parties' Arguments

Plaintiffs again argue Dundon and DCP made false representations, which Dundon either knew were false or made in reckless disregard of the truth. (ECF No. 1 at 58). Dundon intended these misrepresentations to deceive Debtors, induce them to perform the Oral Agreement, and turn down alternative sources of funding. (*Id.*). As a result, Debtors justifiably and detrimentally relied on Dundon's alleged misrepresentations. (*Id.*). Dundon's misrepresentations, as is alleged by Plaintiffs, induced Debtors to enter into the Oral Agreement and Term Sheet, rather than consider alternative options, which ultimately caused them to suffer injury. (ECF No. 1 at 58–59).

In their Motion to Dismiss, Defendants argue Plaintiffs could not have justifiably relied on the Oral Agreement. (ECF No. 18 at 35). Defendants argue the written Term Sheet controlled and replaced the Oral Agreement. Therefore, any reliance on the Oral Agreement is not justified as a

---

[11] The Court recognizes that Plaintiffs generally cannot plead both actual and constructive fraud. As the Court understands Defendants' argument, Plaintiffs cannot assert both a constructive fraud claim and breach of fiduciary duty claim.

matter of law. (*Id.*).

Defendants further contend that Plaintiffs' Complaint relies on a pre-agreement failure to disclose, which cannot stand because no duty to disclose exists before the agreement. (*Id.*). Moreover, Debtors could not have been induced to enter an agreement by misrepresentations made after the agreement. (*Id.* at 41–42). Lastly, Defendants argue that Plaintiffs' fraudulent inducement argument is merely a veiled breach of contract claim. (*Id.* at 42).

Plaintiffs' Response posits that Dundon's denial of promising the full $250 million commitment is evidence of his intent to circumvent the commitment entirely from the inception of the agreement. (ECF No. 30 at 48). Thus, in misrepresenting that he would fund the League, Dundon induced Debtors into entering into an agreement. (*Id.* at 44–45). Debtors were unable to declare a breach of the agreements because Dundon concealed and non-disclosed facts. (*Id.* at 44). This reliance, Plaintiffs' Response reiterates, caused Debtors injury. (*Id.* at 67).

**B. Analysis**

The Complaint alleges that Dundon fraudulently induced Debtors to enter both the Oral Agreement and the Term Sheet. (ECF No. 1 at 58). While it is unclear which of the two agreements—the Oral Agreement or the Term Sheet—Defendants refer to, the Motion to Dismiss applies Texas law for its first two arguments (pre- and post-agreement disclosures) and Delaware law for the third. (ECF No. 18 at 41–42).

### a. Fraudulent Inducement as to the Oral Agreement.

"Fraudulent inducement is a particular species of fraud that arises only when in the context of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." ***Bohnsack v. Varco, L.P.***, 668 F.3d 262, 277 (5th Cir. 2012) (internal quotations omitted). Stated differently, "the plaintiff

must show that he would not have entered into a contract in the absence of the misrepresentation." *Id.* "Under Texas law, . . . . parties challenging contracts as fraudulently induced may rely on evidence of oral promises or agreements to support their claims." ***LeTourneau Techs. Drilling Sys., Inc. v. Nomac Drilling, L.L.C.***, 676 F. Supp. 2d 534, 542 (S.D. Tex. 2009). Although Texas courts have generally allowed for plaintiffs to introduce evidence of oral agreements and representations made prior to the formation of a contract, they have also held that where such evidence "is directly contradicted by the express terms of the written agreement the plaintiff will fail to prove the element of justifiable reliance." ***See id.*** (citing ***Schlumberger Tech. Corp. v. Swanson***, 959 S.W.2d 171, 179 (Tex. 1997)).

Because the Court already found Plaintiffs adequately pleaded fraud, the question becomes whether Dundon fraudulently induced Plaintiffs into entering into the Oral Agreement. The Court further finds Plaintiffs adequately alleged that, but for Dundon's misrepresentations, Debtors would not have entered into the Oral Agreement. Plaintiffs justifiably relied on Dundon's representations to their detriment. Accordingly, Plaintiffs adequately alleged that Defendants fraudulently induced them into the Oral Agreement.

Defendants maintain that the Complaint also relies on a pre-agreement failure to disclose, when Defendants had no duty to disclose, because the parties had not yet entered into any agreement. (ECF No. 18 at 41). While Defendants are not clear whether they are referring to the Oral Agreement or the Term Sheet here, they cite to Texas law. (*Id.*). Regardless of which agreement, this argument fails. Parties can rely on pre-agreement representations in fraudulent inducement claims, so long as Plaintiffs demonstrate justifiable reliance. ***See LeTourneau***, 676 F. Supp. 2d at 542. As with the previous count, Plaintiffs properly pleaded facts to support their assertion that Debtors relied on and never would have entered into either the Oral Agreement or

Term Sheet but for Dundon's misrepresentations. (ECF No. 1 at 58). Specifically, Plaintiffs allege:

> "[i]n reliance on Dundon's personal and specific representations regarding the amount of his investment in AAF, and his intention to be a long-term, 'Series Infinity' financial partner with the AAF, Ebersol, ESMG, and the AAF accepted Dundon's offer to become the League's financial partner and majority shareholder. But for Dundon's promise to fully fund the League for years to come, the AAF, Ebersol, and ESMG would otherwise have continued with incremental fundraising and discussions with other interested investors."

(ECF No. 1 at ¶ 169).

This detailed recitation sufficiently alleges inducement and explains how Debtors detrimentally relied on Dundon's pre-agreement statements.

Defendants further argue that post-agreement statements logically cannot induce assent to a contract. (ECF No. 18 at 41). Whether this argument has merit is irrelevant at this procedural juncture, as the Court has already concluded Plaintiffs adequately pleaded that Defendants fraudulently induced them into entering into the Oral Agreement and made continuous fraudulent misrepresentations thereafter.

### b. Fraudulent Inducement as to the Term Sheet.

Although Delaware law applies to the Term Sheet, the elements of fraudulent inducement are virtually the same. To prove fraudulent inducement in Delaware, just as in Texas, Plaintiffs must first properly allege all the elements of fraud:

> (1) (a) a misrepresentation or (b) a concealment;(2) which is material to the transaction at hand; (3) (a) made with knowledge of its falsity or recklessness as to whether it is true or false (for a misrepresentation), or (b) calculated to deceive (for a concealment); (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) a resulting injury proximately caused by such reliance.

*SodexoMAGIC, L.L.C. v. Drexel Univ.*, 24 F.4th 183, 197 (3d Cir. 2022).

In addition to these six elements, a plaintiff must demonstrate that they were deceived into entering a contract. *See id*. at 206 ("A claim for fraudulent inducement requires proof of the six

elements and is available when a person under no duty to enter a contract was deceived into doing so.").

Plaintiffs allege that, through Dundon's reckless and ongoing misrepresentations, particularly those regarding funding, Dundon induced Ebersol and ESMG into entering the Term Sheet, upon which they relied to their detriment. (ECF No. 1 at 58). The Complaint states that "[i]f Ebersol and ESMG had known Dundon was not providing the full, $250 million commitment, ESMG would not have entered into the Term Sheet providing DCP with majority ownership and would not have allowed Dundon and Zutter to take effective control of the AAF." (*Id.* at 20).

In response to Plaintiffs' allegations regarding the Term Sheet, Defendants argue that "couching a breach of contract as a fraud claim based on a failure to disclose an intention not to perform is bootstrapping a breach of contract claim into a fraud claim," rendering the fraud claim subject to dismissal. (ECF No. 18 at 42). Here, Defendants correctly interpret Delaware law: "For both a breach-of-contract claim and a tort claim to coexist in a single action, 'the plaintiff must allege the defendant breached a duty that is independent of the duties imposed by the contract.'" ***EZLinks Golf, L.L.C. v. PCMS Datafit, Inc.***, No. N16C-07-080-PRW, 2017 WL 1312209, at *3 (Del. Super. Ct. Mar. 13, 2017) (quoting ***Brasby v. Morris***, No. C.A. 05C-10-022-RFS, 2007 WL 949485, at *7 (Del. Super. Ct. Mar. 29, 2007)). A plaintiff must also allege distinct damages to bring both a breach of contract and a tort claim. ***See id***. at *6.

The Term Sheet merely states that DCP invest $70 million in exchange for 75% ownership of and complete control of the League. (ECF No. 1 at 4). The Term Sheet does not, however, include the various promises Dundon allegedly made to Debtors: to fund the League for five years, to serve as the "Series Infinity" investor, to invest $250 in AAF, and to act in the best interests of Debtors. (ECF No. 1 at 54–55). These promises, which were subsequently breached, were made

50

in both the Oral Agreement, as well as throughout Dundon's operation of the AAF, rather than stipulated in the written contract. (ECF No. 1 at 23). These alleged breaches are distinct from those arising under the Term Sheet. With regard to damages, Plaintiffs also properly alleged distinct damages. Namely, Plaintiffs assert that, by allowing the League to enter a "financial tailspin" and failing to fund it through the end of the season, Dundon not only caused pecuniary damages, but also devalued the League in terms of public reputation and chances of success in future seasons. (*Id.* at 37). These damages are distinct from those Plaintiffs alleged they suffered because of the breach of the Term Sheet.

Accordingly, Plaintiffs adequately alleged fraudulent inducement as to this component only for fraudulent inducement, as it pertains to both the Oral Agreement and the Term Sheet.

## X.    COUNT XIII: Negligent Misrepresentation Against Defendant Dundon

The elements of negligent misrepresentation under Texas law are:

(1) the representation is made by the defendant in the course of his business, or in a transaction in which he has a pecuniary interest;
(2) the defendant supplies "false information" for the guidance of others in their business;
(3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and
(4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Dundon contends that Plaintiffs' Complaint lacks factual basis for this count and merely asserts a conclusory adaptation of the elements of negligent misrepresentation. (ECF No. 18 at 43). Defendants argue that the Complaint fails to explain how Dundon made the alleged misrepresentations during his business. (*Id.*). Dundon argues that Plaintiffs have not alleged a statement about a present fact upon which Debtors could have relied. (*Id.* at 43–44). Instead, Defendants maintain that Dundon only made statements regarding future conduct. (*Id.* at 44). For

that reason, Dundon's statement cannot support a negligent misrepresentation claim. (*Id.*).

Here, Plaintiffs allege that:

[a]fter the Term Sheet was signed, Dundon and his affiliates took immediate effective control of all the Debtor entities by controlling all operations and material decisions of the League. AAF business executives proceeded to provide Dundon and others at his direction with access and control of AAF's operations that was only warranted by and due to Dundon's full financial commitment.

(ECF No. 1 at 21).

The Complaint also pleaded that the Oral Agreement gave "DCP (controlled by Dundon) a 75% majority equity interest in the AAF and ma[de] Dundon and Zutter the sole voting directors, who then had effective control of not only ESMG, but also the AAF as a whole." (*Id.* at 40). The degree of control Dundon exercised over the League prevented Debtors from discovering the League's financial status. (*Id.* at 55). Further, Plaintiffs allege that Dundon continued to assure Ebersol that the League did not need additional funding. (*Id.* at 22). Debtors did not seek alternative investment sources because of Dundon's assurances. (*Id.* at 55). Without additional funding, the League failed. (*Id.*). The Court finds these allegations are well-pleaded and are not mere conclusions.

Defendants also assert that the Complaint alleges Dundon misrepresented facts about what he would do in the future. (ECF No. 18 at 44). Though Defendants' argument is cursory, the Court infers that Defendants focus on when Dundon told Ebersol he intended to continue to fund the League. A negligent misrepresentation claim must assert the defendant misrepresented a present fact. As such, Defendants argue that the Court should dismiss this count. (*Id.*).

While the Complaint contains details about Dundon's promises to fund the League in the future, the Complaint alleges other representations also. Dundon repeatedly told Ebersol that the League was financially stable and did not need outside investment. Describing the League's

financial condition is a statement of present fact. Therefore, the Complaint sufficiently alleges negligent misrepresentation.

**XI.    COUNT XIV: Civil Conspiracy Against All Defendants**

Civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (quoting *Great Nat'l Life Ins. Co. v. Chapa*, 337 S.W.2d 632, 635 (Tex. 1964)). Plaintiffs must prove the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id.*

Issues often arise over the two or more persons requirement. Principals and agents of corporations cannot conspire with one another. *Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 138 (Tex.App.—Texarkana 2000, no pet.). Further, corporate agents cannot conspire with each other when they participate in corporate action. *Couch v. Trinque*, 262 S.W.3d 417, 427 (Tex.App.—Eastland 2008, no pet.). Agents can conspire, however, when they act in a different capacity or for personal gain. *Mecom*, 28 S.W.3d at 138.

Defendants argue that the intra-corporate conspiracy doctrine bars Plaintiffs' civil conspiracy claim. Because Dundon and Zutter are both agents and directors of DCP, Dundon and Zutter could not possibly have conspired with DCP. (ECF No. 18 at 32). As such, Defendants argue that the Court should dismiss the conspiracy claim. (*Id.*).

Plaintiffs' Response narrows the issue to capacity. (ECF No. 30 at 55). Plaintiffs note that Defendants assume Dundon and Zutter acted in their capacity as DCP's agents. (*Id.*). But Plaintiffs believe Dundon, Zutter, and other agents of DCP acted for their own benefit, beyond the scope of their agency. (*Id.*).

Here, Plaintiffs allege that Dundon personally benefited from his course of conduct: Dundon used Debtors' money to pay for commercials advertising his other business ventures. (ECF No. 1 at 34). Dundon also researched how he and/or his other companies could capitalize on tax losses stemming from the League's failure. (*Id.*). Because Dundon acted for his personal benefit, the Court concludes that Plaintiffs correctly categorized Dundon as a separate mind than the League. Therefore, whether Dundon and DCP or Dundon and Zutter (as DCP's agent) reached an agreement, Plaintiffs have pleaded a meeting of the minds.

The Court recognizes that the Parties debated in their papers exactly who the Complaint alleges participated in the conspiracy. The Court can piece together facts to support a conspiracy as described here. Whether and how other parties may have participated in the conspiracy, however, is not sufficiently clear. The Court therefore grants Plaintiffs leave to amend within 14 days in accordance with this Order.

Further, the Complaint is replete with examples of overt acts. Plaintiffs allege that Dundon and Zutter acted in concert in the following instances: they memorialized Dundon's personal funding of the League, they represented they would commit the Oral Agreement to writing, they threatened to withhold further funding to the League if Ebersol refused to sign the Release Agreement, they laid off AAF staff members, they warned they would retain vendors' pay, etc. (*Id.* at 21–22; 34 –35). Plaintiffs contend that Defendants here acted outside their corporate capacities and intended to benefit themselves, not the Debtors. (*Id.* at 33, 35).

"[T]he gist of a civil conspiracy is the damage resulting from commission of a wrong which injures another, not the conspiracy itself." ***Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.***, 435 S.W.2d 854, 856 (Tex. 1968). Therefore, civil conspiracy is a derivative tort. ***See Tilton v. Marshall***, 925 S.W.2d 672, 681 (Tex. 1996). Liability for civil conspiracy depends on

liability for the underlying tort. *Id.*; *see also Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930-31 (Tex. 2020) (no liability for civil conspiracy where underlying tort failed).

At this procedural juncture, alleging an underlying tort and damages is sufficient. Because the Court concludes that Plaintiffs sufficiently pleaded breach of fiduciary duty and fraud, the Court must also conclude Plaintiffs adequately pleaded unlawfulness and damages. Accordingly, Plaintiffs adequately pleaded that Defendants, while acting outside the scope of their corporate capacity, together conspired towards a common purpose to defraud and breach their fiduciary duties to Debtors, for their own personal gain.

## XII.  COUNT XV: Unjust Enrichment Against All Defendants

### A. Parties' Arguments

The Complaint argues that Defendants obtained benefits—namely, a 75% interest in AAF, commercial airtime for other ventures, and tax benefits—because of their fraudulent conduct. (ECF No. 1 at 33–35). Affording Defendants said benefits at Debtors' expense, Plaintiffs allege that would contradict principles of equity. (ECF No. 1 at 60–61).

Defendants argue that Plaintiffs have no actionable unjust enrichment claim because a valid contract—the Term Sheet—governs this dispute. (ECF No 18 at 44–45). Defendants also assert that DCP gained nothing more than an interest in an insolvent entity, and Dundon and Zutter gained nothing from the transaction. (*Id.* at 45). Seeing as the DCP gained no value from its 75% interest and Dundon and Zutter obtained no measurable enrichment, a claim for unjust enrichment must fail, according to Defendants. (*Id.*).

Plaintiffs' Response argues, contrary to Defendants' denial, that Defendants did, indeed, benefit from their fraudulent acts. (ECF No. 30 at 56). More specifically, Defendants obtained commercial airtime and personal releases from Fowler as to the AAF. (*Id.*). Plaintiffs maintain that these facts affirmatively support a finding for unjust enrichment. (*Id.*).

Defendants' Reply asserts that Plaintiffs' allegations, including unjust enrichment, consist merely of conclusory recitations of their respective elements. (ECF No. 36 at 14).

**B. Analysis**

Under Texas law, "[a] party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citations omitted). Typically, Texas courts have held that unjust enrichment claims cannot stand when a valid contract exists between the parties; however, Texas jurisprudence has recognized quasi-contractual claims, such as unjust enrichment, when pleaded in the alternative to a breach of contract claim. *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 552 (N.D. Tex. 2021). Although the Complaint does not explicitly state whether Plaintiffs intended to plead this count in the alternative, seeing as a breach of a valid contract claim cannot coexist with an unjust enrichment claim, the Court will view this argument in a light most favorable to Plaintiffs by construing this count as an alternative argument.

Thus, Defendants' first argument, which asserts Plaintiffs breach of contract claim and unjust enrichment claim are mutually exclusive, is denied. With regards to Defendants' two other arguments, Plaintiffs did indeed plead that Defendants were enriched because of their fraudulent activity and breaches of fiduciary duties. (ECF No. 1 at 33–35). As mentioned, Plaintiffs pleaded DCP received a 75% interest in AAF, Dundon's other business ventures benefitted from commercial airtime at the Debtors' expense, and both Dundon and Zutter received tax benefits because of the dissolution of the League. (*Id.*). For the foregoing reasons, Plaintiffs adequately pleaded that Defendants were unjustly enriched as a result of their unlawful conduct.

**XIII. COUNT XVI: Disallowance of Defendants' Claims on the Bankruptcy Estate Under 11 U.S.C. § 502(d) Against Defendants Dundon and Dundon Capital Partners, LLC**

The Trustee's cause of action under § 502(d) for disallowance of Defendants' claims on the bankruptcy estate was not contested by the Motion to Dismiss, therefore the parties will proceed to trial on this count.

## XIV.  COUNT XVII: Equitable Subordination Under 11 U.S.C. § 510(c) Against Defendants Dundon and Dundon Capital Partners, LLC

The Trustee's cause of action under § 510(c) for equitable subordination was not contested by the Motion to Dismiss, therefore the parties will proceed to trial on this count.

### A. Shotgun Pleading

Finally, Defendants argue Plaintiffs' Complaint constitutes a "shotgun pleading." (ECF No. 18 at 36). "What makes a pleading an objectionable 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Martinez v. Nueces Cnty., Tex.*, No. 2:13-CV178, 2013 WL 6190519, at *3 (S.D. Tex. Nov. 26, 2013).

Defendants argue the Complaint is a "shotgun pleading" because:

(i) it contains interwoven contract and tort claims; (ii) it contains multiple counts and each count adopts the allegations of all preceding counts …, (iii) it is replete with immaterial facts, including references to an all-star list of football-related personalities that are alleged to have supported the League and been ignored by Dundon, Zutter, and DCP …, (iv) it combines multiple claims into several counts …, and (v) it attributes actions to groups by blaming defendants collectively or making claims that certain actions occurred with respect to all Debtors simultaneously with no explanation.

(ECF No. 18 at 37).

Each of these reasons is unavailing. First, Plaintiffs are permitted to bring both contract and tort claims in the same lawsuit. Second, adopting preceding allegations is standard practice. Third, the allegations about well-known figures in the sports industry are far from immaterial.

Third parties' interest in the League lends credence to Plaintiffs' proposition that the League had tremendous potential, particularly in terms of outside investment, before Defendants took control of it and turned down alternative funding. Plaintiffs use these allegations to plead elements of their claims. Fourth, Defendants' suggestion that Plaintiffs combined claims (for example the Oral Agreement and the Term Sheet into fraudulent inducement) does not accurately reflect what the Complaint pleads. Though Plaintiffs sometimes refer to multiple events in one count, Plaintiffs explain how those events work together to support one cause of action. Plaintiffs are permitted to look the series of interactions between Plaintiffs and Defendant when pleading. Finally, Defendants' suggestion that the Complaint does not adequately identify which cause of action Plaintiffs bring against which Defendant is meritless. The heading for each count states directly who the defendants are. The allegations in each count explain which plaintiff(s) was harmed by the defendant(s)' actions.

The Fifth Circuit has not adopted the "shotgun" pleading standard. Plaintiffs only need to allege who the various Defendants are, what those parties did, when they did it, and why. Adding detail to tell a complete story does not turn a complaint into a shotgun pleading. Accepting Plaintiffs' allegations as true, the Complaint has sufficiently pleaded fraudulent misrepresentation. As the court in *Martinez v. Nueces County* noted, a complaint is a shot gun pleading if it includes irrelevant facts not tied to claims and that the claims are in determinative. *Martinez*, 2013 WL 6190519, at *3. That is not the case here.

## CONCLUSION

Because Count XVI and Count XVII were not contested, those counts survive dismissal. Finally, the parties both submitted argument regarding Plaintiffs' entitlement to attorney's fees. This issue will be reserved for trial because the allowance of attorney's fees is generally governed

under Federal Rule of Civil Procedure 54 and Federal Rule of Bankruptcy Procedure 7054, which provide for the consideration of attorney's fees after trial.

It is therefore ORDERED. ADJUDGED, and DECREED that Plaintiffs shall have 14 days from date of entry of this Order in which to amend Counts V, XI, XII, XIII, and XIV to show that these Counts are not barred under the economic loss rule. Should no timely amended complaint be filed, these Counts are DISMISSED WITH PREJUDICE.

It is further ORDERED. ADJUDGED, and DECREED that Plaintiffs shall have 14 days from date of entry of this Order in which to amend Counts VII–X to show that these Counts comply with Rule 12 and state a plausible claim. Should no timely amended complaint be filed, these Counts are DISMISSED WITH PREJUDICE.

It is further ORDERED. ADJUDGED, and DECREED that Plaintiffs shall have 14 days from date of entry of this Order in which to amend Count XIV to show that this Count complies with Rule 12 and states a plausible claim. Should no timely amended complaint be filed, Count XIV is DISMISSED WITH PREJUDICE.

It is further ORDERED. ADJUDGED, and DECREED that Count VI is DISMISSED WITH PREJUDICE.

It is further ORDERED. ADJUDGED, and DECREED that Counts I–IV, XVI, and XVII require no further amendment and will require an answer in accordance with this Order.

It is further ORDERED. ADJUDGED, and DECREED that should a timely Amended Complaint be filed, then Defendants shall have 14 days in which to file a responsive pleading under Fed. R. Bankr. P. 12(a).

It is further ORDERED. ADJUDGED, and DECREED that should no timely amended complaint be filed, Defendants shall have 28 days from entry of this Order to file their Answer

pursuant to Fed. R. Bankr. P. 12(a).[12]

# # #

---

[12] The parties are admonished that any subsequent Rule 12 motion, response, and reply will be strictly governed by Local Rule 7007(a). The Court will not grant any requests for leave to exceed the page limits under Rule 7007(a).