# EXHIBIT B

Page 1

```
          IN THE UNITED STATES BANKRUPTCY COURT
               WESTERN DISTRICT OF TEXAS
                  SAN ANTONIO DIVISION

IN RE:                           )
                                 )
RANDOLPH N. OSHEROW, IN HIS      )
CAPACITY AS CHAPTER 7 TRUSTEE,   )
ET AL.                           ) ADV. PROC. NO. 22-05078-CAG
         PLAINTIFFS              ) CASE. NO. 19-50900-CAG
                                 ) CHAPTER 7
V.                               )
                                 )
THOMAS G. DUNDON, ET AL.         ) JUNE 10, 2024
         DEFENDANTS              )
```

************************************************************

TRANSCRIPT OF HEARING AND JUDGE'S RULING ON ECF #70,
ECF#71, ECF#73, ECF#82, ECF#90 AND ECF#95
BEFORE THE HONORABLE JUDGE CRAIG A. GARGOTTA
UNITED STATES DISTRICT JUDGE

************************************************************

Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

1  wondered before we got to today what was the level of
2  inquiry?  What -- what went through each person's mind in
3  terms of deciding I need money and I'll go to Mr. Dundon
4  because he's an individual of means, he's a very respected
5  businessperson.
6              And it seems to me, if we're talking about
7  misrepresentation or we're talking about fraud or we're
8  talking about breach of fiduciary duty and Texas Capital
9  Bank has this information that could answer any of those
10 questions, that information should come in.  And so I
11 looked at these.  I don't think that they're overly broad
12 as it relates to Texas Capital Bank.
13             I understand the need behind the annualized
14 statements.  You explained that to me, Mr. Treyzon.
15             I think the periods in question are
16 appropriate under the circumstances.  I frankly didn't
17 understand why you wanted to go out to 2019.  And then
18 Mr. Treyzon said well, Judge, that's depending on when the
19 annualized statements or financial records are produced,
20 it's probably gonna have a 2019 date.
21             There's nothing in here that strikes the
22 Court as overly broad or burdensome or unnecessary.  In
23 fact, I think this goes to the heart of whether or not did
24 Mr. Dundon -- what was his purpose, which I'm curious to
25 know when we get to trial, what was the purpose of this

1  investment?  Why did he do it?  You know, what was the
2  motivation behind it?  Was it for tax reasons?
3                  You know, you guys have shifted the whole
4  discussion.  You remember what the discussion was at the
5  beginning?  The technology, the marvelous technology, where
6  we could all sit at our homes and bet, right, on is Number
7  46 gonna catch a pass on third and ten, is the quarterback
8  too tired, that kind of stuff.
9                  That was kind of -- one of the things I
10 heard a lot about at the beginning of the case was it's
11 this technology.  They're gonna use it in hockey.  Now, I
12 watch a fair amount of hockey games and I haven't seen that
13 being used yet.  Maybe it will come up.
14                  But the whole focus of this case has shifted
15 from that the real reason that Mr. Dundon wanted to get
16 involved was he wanted to buy this technology.  I haven't
17 heard squat on that in some time.
18                  What I'm hearing from the parties is well,
19 there's -- there were other reasons for it and they were
20 financially motivated.  We'll see what the evidence proves
21 on that.
22                  But I'm satisfied, particularly as it
23 relates to the Texas Capital Bank, that the requests relate
24 to -- they're relevant because they're gonna go to the
25 issue of whether -- what was the motivation behind him in

```
 1                MR. TREYZON:  Of course, your Honor.  We --
 2   one thing I'll represent, it's a pleasure to have this
 3   opposing counsel against us.
 4                If they have any difficulties, we actually
 5   have gone through the exercise with the document production
 6   of things like that, how can we help you, let us narrow it
 7   down for you, let us help you find the documents we seek.
 8   And the cooperation has been nothing but wonderful.
 9                THE COURT:  And that's been the litany
10   throughout this case.  So who wants to prepare the form of
11   order on this?
12                MS. WILLIAMS:  Your Honor, we'll do the
13   order.
14                THE COURT:  All right.
15                MS. WILLIAMS:  Nicole Williams.
16                THE COURT:  And this is on -- this is ECF
17   Number 70.  And Ms. Williams will be responsible for the
18   order.
19                Okay.  This goes to -- and the last one, ECF
20   Number 82, which is the Pricewaterhouse subpoena, we'll
21   kinda go through this one by one.
22                So I -- number one, documents,
23   communications that contain the analysis, evaluation of
24   reports and summaries PWC made concerning tax attributes,
25   it says January 2019 to the present.  That -- that -- I
```

```
 1   can't conceive of why that would have to be the present.
 2                 So at some point they had to stop working
 3   for -- for the debtor.  So we're gonna cap it on
 4   December 31st of 2020.  I think that's sufficient because I
 5   do think it's overly broad.  So limit that through 12/31 of
 6   '19 -- or, excuse me, 2020.
 7                 Number two has been withdrawn.  Number three
 8   on the Project Football, I think that's been specifically
 9   articulated that those documents need to be produced.
10                 Number four, the documents and
11   communications including emails that detail potential tax
12   attributes discussed under Project Football, I think you
13   need to use the same scope that you used in two and three.
14   So I'm gonna confine it from January -- well, let's see.
15   You used two different dates there but I'm gonna use it
16   from January 1st of 2019 until December 31st of 2020.  And
17   that'll be the scope on that.
18                 On five and six, there has been no scope
19   identified.  I think it is overly broad.  So to the extent
20   there's a request to produce those documents, I don't think
21   this has been sufficiently narrowed.  So the objections on
22   five and six are sustained.
23                 Seven and eight, communications and
24   documents relating to any advice or discussion between PWC
25   and DCP on managing financial risk and also eight on
```

1  documents and communications discuss impact of Dundon's AAF
2  investment, those are not sufficiently narrow.  I agree
3  with the defendants.  Those objections are sustained.
4              And, Mr. Farahi, I understand, again, from
5  your perspective you had to think of everything but
6  these -- this is just too broad and I think under the
7  circumstances of the case it puts too much of a burden on
8  the parties.
9              Number nine, Dundon's financial standing or
10 liquidity, bank statements, financial statements from
11 January 1, 2018 to 2020, that's fine.  That's acceptable.
12 Same thing for ten.  Same thing for 11.
13             So this is interesting.  So this is news to
14 me that you all are of the opinion that Mr. Anderson, who
15 was identified until he got into, I'll just, my words,
16 trouble with the law, was -- you assert had conversations
17 with Mr. Dundon in terms of maybe his interest in -- in
18 investing in the league.  So I'm satisfied, based upon that
19 explanation, there may not be anything there.  Did you want
20 to say something?
21             MR. ENGEL:  I did.
22             THE COURT:  Mr. Fowler, I'm sorry.
23             MR. ENGEL:  Mr. Fowler's a different
24 person.
25             THE COURT:  Sorry.  Thank you.  I needed

```
 1   that clarification.
 2               MR. ENGEL:  I didn't know if that affected
 3   it.
 4               THE COURT:  It does not other than I
 5   misstated who the -- but -- but there were -- forgive me.
 6   Sometimes there's a lot of names to keep track of.
 7               But I am satisfied as it relates to number
 8   12, number 13, number 14 that I better understand now
 9   potentially what Mr. Dundon's involvement might have been
10   as a precursor to the league getting started.  I think
11   that's appropriate.  There may not be anything, I don't
12   know, but I think it's appropriate.
13               Number 15, documents, communications
14   reflecting, referencing or related to any financial advice,
15   analysis or recommendations to Dundon or DCP regarding the
16   debtors from January 1st, 2019 to the present, we're gonna
17   cap that at December 31st of 2020.
18               Number 16 is fine.  I think it's sufficient
19   under the purposes.
20               Number 17, it says communications exchanged
21   with Dundon from October 28 -- I'm gonna round off,
22   October 2018 to December 2020 related to debtors, that's
23   fine.  Because it relates to the debtors.  It's
24   specifically identified.  And I think any conversations
25   that Mr. Dundon had with the debtors or the defendants is
```

Page 173

1  deficit of information. But that's just too broad under
2  the circumstances.
3              MR. TREYZON: Thank you, your Honor. We'll
4  limit it.
5              THE COURT: Two years. 32 was withdrawn or
6  at least acceded to.
7              Number 33, documents created, sent or
8  received that contain, relate to or refer to any studies or
9  analysis performed on behalf of Dundon, DCP or any person
10 associated with DCP regarding Dundon's financial commitment
11 in investing 250 and then it cites -- I think you've got to
12 limit that to the extent that it's applicable, I'll be
13 curious to see what you all turn up, but for that two year
14 period as well.
15             MR. TREYZON: Your Honor, on that one, we
16 need actually then go to 1/1/18 because of Dundon
17 incorporated. So if we can go from '18, we're okay.
18             THE COURT: Right. Because of the
19 following year.
20             MR. TREYZON: Right.
21             THE COURT: That's fine. Okay. 34,
22 documents, contracts, agreements, engagement letters and
23 retainer arrangements made between you and the debtors
24 regarding your advisory services related to the bankruptcy
25 proceedings of the debtors including the preparation of

Page 174

```
 1   the bankruptcy petitions and schedules, I think that needs
 2   to be limited to the case.
 3               MR. TREYZON:  Your Honor, I believe it is
 4   intended to be limited to the case.
 5               THE COURT:  All right.
 6               MR. TREYZON:  Because --
 7               THE COURT:  But you don't say that in
 8   there.  So can we add a date?
 9               MR. TREYZON:  Well, sure, your Honor.  We
10   can actually say it's in the -- well, we can say it's
11   either April 2019, because that's the date of the filing,
12   or we can do for the year of 2019.
13               THE COURT:  2019.
14               MR. TREYZON:  But because we're relating to
15   the debtor, I'm not aware of any other bankruptcy
16   proceedings.
17               THE COURT:  Right.  So let's limit it to
18   2019.
19               MR. TREYZON:  Sure.
20               THE COURT:  Mr. Hockaday said number 35
21   that that's already been produced.  Is that correct?  Or
22   is that the other engagement letter that you were hoping
23   to get?
24               MS. WILLIAMS:  That's what I was
25   referencing, your Honor.  I don't think we have 35.
```

Page 174

1  the bankruptcy petitions and schedules, I think that needs
2  to be limited to the case.
3          MR. TREYZON:  Your Honor, I believe it is
4  intended to be limited to the case.
5          THE COURT:  All right.
6          MR. TREYZON:  Because --
7          THE COURT:  But you don't say that in
8  there.  So can we add a date?
9          MR. TREYZON:  Well, sure, your Honor.  We
10 can actually say it's in the -- well, we can say it's
11 either April 2019, because that's the date of the filing,
12 or we can do for the year of 2019.
13         THE COURT:  2019.
14         MR. TREYZON:  But because we're relating to
15 the debtor, I'm not aware of any other bankruptcy
16 proceedings.
17         THE COURT:  Right.  So let's limit it to
18 2019.
19         MR. TREYZON:  Sure.
20         THE COURT:  Mr. Hockaday said number 35
21 that that's already been produced.  Is that correct?  Or
22 is that the other engagement letter that you were hoping
23 to get?
24         MS. WILLIAMS:  That's what I was
25 referencing, your Honor.  I don't think we have 35.

Page 234

1                        CERTIFICATE

2    UNITED STATES DISTRICT COURT   )

3    WESTERN DISTRICT OF TEXAS      )

4    SAN ANTONIO DIVISION           )

5    I, Christine M. Sitzes, Court approved transcriber, certify
     that the foregoing is a correct transcript from the official
6    electronic sound recording of the proceedings in the
     above-entitled matter.
7

8    /s/ Christine M. Sitzes                    June 26, 2024
     Signature of Approved Transcriber          Date
9

10

11   Christine M. Sitzes
     Typed or Printed Name
12

13

14

15

16

17

18

19

20

21

22

23

24

25