**EXHIBIT 2**

# RELEASE AGREEMENT

This Release Agreement (this "*Agreement*") is made and entered into effective as of February 23rd 2019 (the "*Effective Date*") by and between Ebersol Sports Media Group, Inc., a Delaware corporation (the "*Company*"), and FO2 LLC, a Delaware limited liability company (the "*Investor*").

## RECITALS

Reference is hereby made to (a) the Series 1 Preferred Stock Purchase Agreement dated November 21, 2018 (the "*Purchase Agreement*") between the Company and Investor, (b) the letter sent by the Company to Investor on February 18, 2019, notifying Investor that it is in breach of the Purchase Agreement, (c) the Line of Credit Agreement dated November 21, 2018 (the "*Credit Agreement*") and (d) the Warrant to Purchase Stock dated November 21, 2018 (the "*Warrant*").

The Company and Investor wish to release one another from any claims relating to the Purchase Agreement, Credit Agreement and Warrant and provide a covenant not to sue in exchange in accordance with the terms set forth herein. Any capitalized terms not defined herein will have the meaning as set forth in the Purchase Agreement.

NOW THEREFORE, the parties hereby agree as follows:

1. **Release of Claims and Covenants Not to Sue by Investor.**

(a) On behalf of itself and its Affiliates, Investor hereby fully and forever releases and discharges the Company and the Company's directors, officers, stockholders, employees, agents, attorneys, representatives, predecessors, successors and assigns, and any person acting by or through any of them (collectively, the "*Company Released Parties*"), of and from any and all claims, actions, causes of action, losses, debts, judgments, awards, guarantees, warranties, express or implied, balances, damages, compensation, royalties, agreements, promises liabilities, demands, obligations, costs, expenses, damages and liens of every nature, kind and character whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, and whether sounding in contract or tort, or amounts of any nature whatsoever (collectively "*Claims*") which Investor now has, ever has had, or ever claimed to have had against the Company and/or any of the released parties, including (but not limited to) Claims arising out of, based upon or related in any manner whatsoever to (a) the Purchase Agreement, the Transaction Agreements, the Credit Agreement, the Warrant, or any transaction contemplated thereunder, (b) contributions made by Investor to the Company's business, (c) equity, rights to acquire equity or other ownership interests with respect to the Company, (d) the Recapitalization (as defined below), any transaction contemplated thereunder or any action taken in connection therewith, (e) control, approval or others similar rights related to Investor's prior investments in the Company (collectively, the "*Company Released Matters*").

(b) Investor acknowledges that it may hereafter discover facts in addition to, or different from, those which they now know or believe to be true with respect to the releases given in this Agreement, that it may have sustained or may yet sustain damages, costs or expenses that are presently unknown and that relate to the releases given in this Agreement. Investor acknowledges, however, that it has negotiated, agreed upon, and entered into this Agreement in light of such possibilities. It is Investor's intention that the foregoing release shall be effective as a bar to any and all Claims herein above specified to be so barred. In furtherance of this intention, Investor waives any and all rights that they have under state or federal statute or common law principles that would otherwise limit the effect of this Agreement to claims known or suspected as of the Effective Date. Specifically, Investor waives the effect and protections of Section 1542 of the California Civil Code which provides:

**EXHIBIT B**

34405/00600.FV

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Investor acknowledges, warrants and represents that it is familiar with Section 1542 of the California Civil Code, and that the effect and import of that provision has been fully explained to them by its attorneys. Investor further acknowledges that the foregoing waiver of the provisions of Section 1542 of the California Civil Code is part of the consideration hereunder. Investor expressly consents that the releases set forth herein shall be given full force and effect in accordance with each and all of its express terms and provisions, including those terms and provisions relating to unknown or unsuspected claims, demands, and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands, and causes of action hereinabove specified. Investor further agrees and covenants that if the facts to which this Agreement is executed are found to be different from the facts now believed to be true, Investor expressly accepts and assumes the risk of such possible difference in the facts and agrees that this Agreement shall be and remain fully effective notwithstanding such difference in facts.

(c) On itself and its Affiliates, Investor hereby covenants not to sue the Company Released Parties for any Claims arising out of, based upon or related in any manner whatsoever, to the Company Released Matters on or after the Effective Date. In the event any such suit is instituted, this Agreement may be pleaded as a defense.

2. **Release of Claims and Covenants Not to Sue by Company.**

(a) On behalf of itself and successors and assigns, the Company hereby releases and forever discharges Investor and the Investor's officers, members, employees, agents, attorneys, representatives, predecessors, successors and assigns, and any person acting by or through any of them (collectively, the "*Investor Released Parties*"), from any and all Claims which the Company now has, ever has had, or ever claimed to have had against Investor, based upon or related in any manner whatsoever to the Purchase Agreement, the Transaction Agreements, or any transaction contemplated thereunder (collectively, the "*Investor Released Matters*").

(b) The Company acknowledges that it may hereafter discover facts in addition to, or different from, those which they now know or believe to be true with respect to the releases given in this Agreement, that it may have sustained or may yet sustain damages, costs or expenses that are presently unknown and that relate to the releases given in this Agreement. The Company acknowledges, however, that it has negotiated, agreed upon, and entered into this Agreement in light of such possibilities. It is the Company's intention that the foregoing release shall be effective as a bar to any and all Claims herein above specified to be so barred. In furtherance of this intention, the Company waives any and all rights that they have under state or federal statute or common law principles that would otherwise limit the effect of this Agreement to claims known or suspected as of the Effective Date. Specifically, the Company waives the effect and protections of Section 1542 of the California Civil Code which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

34405/00600/FW/10594127.4

The Company acknowledges, warrants and represents that it is familiar with Section 1542 of the California Civil Code, and that the effect and import of that provision has been fully explained to them by its attorneys. The Company further acknowledges that the foregoing waiver of the provisions of Section 1542 of the California Civil Code is part of the consideration hereunder. The Company expressly consents that the releases set forth herein shall be given full force and effect in accordance with each and all of its express terms and provisions, including those terms and provisions relating to unknown or unsuspected claims, demands, and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands, and causes of action hereinabove specified. The Company further agrees and covenants that if the facts to which this Agreement is executed are found to be different from the facts now believed to be true, the Company expressly accepts and assumes the risk of such possible difference in the facts and agrees that this Agreement shall be and remain fully effective notwithstanding such difference in facts.

(c) The Company hereby covenants not to sue Investor for any Claims arising out of, based upon or related in any manner whatsoever, to the Investor Released Matters on or after the Effective Date. In the event any such suit is instituted, this Agreement may be pleaded as a defense.

3. **Mutual Non-Disparagement.** Investor agrees that it will not, and will cause its Affiliates to not, disparage the Company Released Parties or their products, services, agents, representatives, directors, officers, shareholders, attorneys, employees, vendors, affiliates, successors or assigns, or any person acting by, through, under or in concert with any of them. The Company will direct its directors and officers not to disparage Investor or its products, services, agents, representatives, directors, officers, shareholders, attorneys, employees, vendors, affiliates, successors or assigns, or any person acting by, through, under or in concert with Investor. Notwithstanding the foregoing, statements made in the course of sworn testimony in administrative, judicial or arbitral proceedings or required for legitimate business purposes (including, without limitation, depositions in connection with such proceedings) shall not be subject to this paragraph.

4. **Confirmation; Assignment of Voting Rights.** The Company and Investor hereby confirm that (a) Investor has fully paid for, and currently owns 5,153,759 shares of the Company's Series 1 Preferred Stock (the "*Shares*"), (b) the Shares are the only ownership interests that Investor holds in the Company, (c) Investor has not funded any amounts and there is no outstanding balance under the Credit Agreement and (d) the Warrant is not exercisable for any shares of the Company's capital stock. The Company and Investor hereby agree that Investor has no further obligation or right to buy from the Company, and the Company has no further obligation to sell to Investor, any Shares under the Purchase Agreement and the Purchase Agreement is hereby terminated. The Company and Investor hereby agree that Investor has no further obligation to fund, and the Company has no further right to borrow, any amounts under the Credit Agreement and the Credit Agreement is hereby terminated. The Company and Investor hereby agree that Investor has no further right to exercise, and the Company has no further obligation to issue shares of capital stock upon exercise, of the Warrant and the Warrant is hereby terminated. Investor hereby agrees it has no rights to designate any directors to the Company's Board of Directors, and that Section 1.2(b) of the Amended and Restated Voting Agreement dated November 21, 2018 between the Company, Investor and certain of the Company's stockholders (the "*Voting Agreement*"), is hereby terminated. Investor hereby agrees it has no right or obligation to confer with Charlie Ebersol ("*Ebersol*") on any matter presented for a vote of the Company's stockholders, and that Section 4 of the Voting Agreement is hereby terminated. Investor hereby agrees it has no rights to designate (i) any officers or other service providers of the Company (including without limitation the Company's Chief Financial Officer and Vice President of Legal Affairs/Corporate Counsel) or (ii) any member of any of the Company's committees (including without limitation any committee relating to the American Alliance of Football), and that Sections 5.6 and 5.7 of the Amended and Restated Investors' Rights Agreement dated November 21, 2018 between the Company, Investor and certain of the Company's stockholders, is hereby terminated. Pursuant to this Agreement and the Holder Voting Agreement attached hereto as Exhibit A, Investor hereby agrees to assign all voting rights associated with the Shares to Ebersol.

5. **Recapitalization.** Investor understands that the Company is currently in negotiations regarding a new investment in and recapitalization of the Company in accordance with the Binding Term Sheet (the "*Term Sheet*") signed by the Company on February 14, 2019 (the "*Recapitalization*"). In connection with the Recapitalization, the Company expects that all existing investors in the Company, including Investor, will lose significant (and potentially all) economic, control and other rights associated with their prior investments and current ownership interests in the Company. The Company has limited bargaining power in its negotiations with the new investor regarding the Recapitalization, and there is no guarantee that the Company will be able to arrange a satisfactory outcome for its current investors and stockholders, including Investor. With a full acknowledgment of the Company's situation with respect to the Recapitalization, Investor hereby agrees to approve, vote in favor of, and enter into (as applicable) any amendments to the Company's Restated Certificate of Incorporation, Bylaws or Transaction Agreements, any resolutions or consents, resignations or any other agreements required to bring the Recapitalization into effect, as determined in the sole discretion of the Company; provided that Investor's economic rights will not be impacted in a disproportionately adverse manner as compared to other holders of the Company's Series Seed Preferred Stock or Series 1 Preferred Stock.

6. **Authority; Covenant.** Investor confirms that Investor has the sole authority to enter into and perform all of its obligations under this Agreement, including releasing the Claims. Investor is the sole and lawful owner of the Claims, and has not assigned or transferred any right, title or interest in the Claims. Investor will not bring or voluntarily aid any legal or equitable action or proceeding against or otherwise sue the Company or any successor to the Company with respect to any Claims. Investor hereby represents and warrants that the execution, delivery and performance of all of its obligations under this Agreement will not violate any agreement or other obligation which Investor may be subject to. Investor further confirms and agrees that other than as expressly set forth in this Agreement, the Company does not have any liability or obligation to Investor relating to or arising in connection with the Company Released Matters or otherwise.

7. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.

8. **Governing Law; Injunctive Relief.** This Agreement will be governed by and construed in accordance with the laws of the State of California, without giving effect to that body of laws pertaining to conflict of laws. Investor understands that in the event of a breach or threatened breach of this Agreement by Investor, the Company may suffer irreparable harm and other damage that cannot be remedied through the payment of money, and will therefore be entitled to injunctive relief.

9. **Entire Agreement.** This Agreement and the documents referred to herein, including but not limited to the Holder Voting Agreement, constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof.

10. **Successors and Assigns; Assignment.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives. The Company may assign any of its rights and obligations under this Agreement. No other party to this Agreement may assign, whether voluntarily or by operation of law, any of its rights and obligations under this Agreement, except with the prior written consent of the Company.

11. **Severability.** If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision

cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

12. **Amendment and Waivers.** This Agreement may be amended only by a written agreement executed by each of the parties hereto. Any amendment effected in accordance with this section will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

13. **Confidentiality.** Each party agrees that it shall not publicly disclose this Agreement or the terms hereof; provided that, to the extent required by applicable law, judicial, administrative, tax or audit process or otherwise compelled by any governmental or regulatory authority, or reasonably necessary to conduct the Company's business, this Agreement and the content herein may be disclosed accordingly.

14. **Construction.** Investor and the Company acknowledge that each of them and its respective counsel have reviewed this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendment or exhibits hereto.

15. **Understanding of Terms.** The parties each hereby affirm and acknowledge that they have read this Agreement, they know and understand its terms, and they have signed it voluntarily, after having been advised by counsel. The parties have had a full and unhindered opportunity to consult with their attorneys, accountants, financial advisors and such other consultants as they may have desired prior to executing this Agreement.

[remainder of page intentionally left blank]

IN WITNESS WHEREOF, the undersigned have executed this Agreement effective as of the date and year first above written.

**COMPANY**
EBERSOL SPORTS MEDIA GROUP, INC.

*DocuSigned by:*
/s/ Charlie Ebersol
—A0ECD4DEC0E44F2...
Charlie Ebersol, CEO
Address:

**INVESTOR**
FO2 LLC

/s/ Reginald D. Fowler
Name: Reginald D. Fowler
Address: █████████████

# EXHIBIT A

## HOLDER VOTING AGREEMENT

34405/00600/FW/10594127.4

February 23, 2019

Ebersol Sports Media Group, Inc.

Dear Board of Directors:

    Effective immediately, I hereby voluntarily resign from any and all positions that I may hold as a director, manager, officer, employee or consultant of Ebersol Sports Media Group, Inc., a Delaware corporation (the "**Company**"), and any subsidiary of the Company, including, without limitation, my position as a member of the Board of Directors of the Company and any committees thereof.

*[signature]*

Reginald D. Fowler