**EXHIBIT**

**5**

| | |
|---|---|
| **From:** | Charlie Ebersol |
| **Sent:** | Monday, February 25, 2019 11:45 AM CST |
| **To:** | John Zutter |
| **CC:** | Tom Dundon; Dawn Belt; Kevin Freedman |
| **Subject:** | Re: |
| **Attachments:** | attachment_1[2].pdf, SSpiral_Cop19022315200.pdf, FW_10603030_1_ESMG_ Board Meeting Minutes (2019-02-24)[2].DOCX |

See attached.

Charlie Ebersol
**Founder & CEO**


AAF.com



DISCLAIMER:
This e-mail is only intended for the person(s) to whom it is addressed and may contain confidential information. Unless stated to the contrary, any opinions or comments are personal to the writer and do not represent the official view of the company. If you have received this e-mail in error, please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

---

**From:** John Zutter <jz@dundon.co>
**Date:** Monday, February 25, 2019 at 9:09 AM
**To:** Charlie Ebersol <ce@aaf.com>
**Cc:** Tom Dundon <td@dundon.co>
**Subject:** RE: Re:

Following up on documentation.

**John Zutter**
Dundon Capital Partners LLC
2100 Ross Avenue, Suite 550
Dallas, Texas 75201
Phone



**From:** Charlie Ebersol [mailto:ce@aaf.com]
**Sent:** Sunday, February 24, 2019 6:58 PM
**To:** John Zutter <jz@dundon.co>
**Cc:** Tom Dundon <td@dundon.co>
**Subject:** Re: Re:

Yes. I'm at the game so I'll send all to you tonight.


Charlie Ebersol
Founder & CEO



AAF.com




DISCLAIMER:
This e-mail is only intended for the person(s) to whom it is addressed and may contain confidential information. Unless stated to the contrary, any opinions or comments are personal to the writer and do not represent the official view of the company. If you have received this e-mail in error, please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.


On Feb 24, 2019 at 4:57 PM, <John Zutter> wrote:

Can you provide us with documentation on both the Reggie thing and the board resolutions. Thanks Charlie – this is important. Now we just need to get to MGM to have them subordinate to DCP and we are back on track.

**From:** Charlie Ebersol [mailto:ce@aaf.com]
**Sent:** Sunday, February 24, 2019 6:56 PM
**To:** John Zutter <jz@dundon.co>
**Cc:** Tom Dundon <td@dundon.co>
**Subject:** Re:

Yes and we had the board resolution vote and it was approved. So i have the votes and voting authority.


Charlie Ebersol

Founder & CEO



AAF.com



DISCLAIMER:
This e-mail is only intended for the person(s) to whom it is addressed and may contain confidential information. Unless stated to the contrary, any opinions or comments are personal to the writer and do not represent the official view of the company. If you have received this e-mail in error, please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

On Feb 24, 2019 at 6:26 AM, <John Zutter> wrote:

Did you get Reggie signatures yesterday?

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

HOLDER VOTING AGREEMENT

This Holder Voting Agreement (this "*Agreement*") is made as of the ⌐23⌐ day of February, 2019, by and among Ebersol Sports Media Group, Inc., a Delaware corporation (the "*Company*"), FO2 LLC, a Delaware limited liability company (together with its successors, "*Stockholder*"), and Charlie Ebersol ("*Proxyholder*").

RECITALS

A.       Stockholder currently holds shares of capital stock of the Company and/or securities convertible into shares of capital stock of the Company.

B.       Stockholder is entering into that certain Release Agreement dated on the date hereof by and among the Company and Stockholder (the "*Release*") pursuant to which the Company and Investor are agreeing, among other things, to enter into a mutual release.

C.       This Agreement, among other things, requires Stockholder to vote all shares of capital stock of the Company which Stockholder currently owns or hereafter acquires or as to which Stockholder otherwise exercises voting or dispositive authority (together, all such shares referred to in this sentence and any securities of the Company issued with respect to, upon conversion of, or in exchange or substitution of such shares, and any other voting securities of the Company subsequently acquired by Stockholder, the "*Shares*") in the manner set forth herein.

D.       This Agreement is being entered into as a condition to the consummation of the transactions described in the Release, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged and agreed.

AGREEMENT

The parties agree as follows:

1.       **Voting Arrangements.** Stockholder hereby agrees that Proxyholder shall have the right to vote the Shares, in his sole discretion, on all matters submitted to a vote of stockholders of the Company at a meeting of stockholders or through the solicitation of a written consent of stockholders (whether of any individual class of stock or of multiple classes of stock voting together) other than Excluded Stockholder Matters. "*Excluded Stockholder Matters*" include:

(a)       approvals required by the terms of Section 280G(b)(5)(B) of the Internal Revenue Code of 1986, as amended (the "*Code*"), regarding any Proxyholder payments and/or benefits that may separately or in the aggregate, constitute "parachute payments" pursuant to Section 280G of the Code.

2.       **Stockholder to Abstain from Voting**.       Stockholder agrees that, unless Proxyholder provides explicit written instruction to vote the Shares under this Agreement or Proxyholder provides explicit written notice that Stockholder shall be permitted by Proxyholder

CLASSIFIED                                                           DCP Parties0243

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

to vote in a manner other than as Proxyholder instructs, Stockholder shall abstain from voting any of the Shares (in person, by proxy or by action by written consent, as applicable) on all matters that are not Excluded Stockholder Matters.  For clarity, each of the parties hereto agrees and acknowledges that nothing in this Agreement limits, modifies or abridges Stockholder's rights to vote or consent with respect to Excluded Stockholder Matters, which rights Stockholder shall fully retain with respect to the Shares.

3.      **Irrevocable Proxy and Power of Attorney**.  To secure Stockholder's obligations to vote the Shares in accordance with this Agreement and to comply with the other terms hereof, Stockholder hereby appoints Proxyholder, or his designees, as Stockholder's true and lawful proxy and attorney, with the power to act alone and with full power of substitution, to vote or act by written consent with respect to all the Shares in accordance with the provisions set forth in this Agreement, and to execute all appropriate instruments consistent with this Agreement on behalf of Stockholder. The proxy and power granted by Stockholder pursuant to this Section 3 are coupled with an interest and are given to secure the performance of Stockholder's duties under this Agreement. The proxy and power will be irrevocable for the term hereof. The proxy and power will survive the merger, consolidation, conversion or reorganization of Stockholder or any other entity holding the Shares.

4.      **Additional Representations, Covenants and Agreements**.

4.1      *Transfers by Stockholder*. Stockholder may not transfer, assign, pledge or otherwise dispose of or encumber the Shares (collectively, a "*Transfer*") until the pledgee, transferee or donee of such Shares (the "*Transferee*") furnishes Proxyholder and the Company with a written agreement to be bound by the terms of this Agreement (an "*Assumption Agreement*") and any additional agreement required under any other applicable agreements between the parties hereto, it being understood and agreed that the Company shall be entitled to issue stop transfer instructions in respect of such Shares to preclude any transfer of Shares in contravention of the foregoing. Upon satisfaction of the provisions of this Section 4.1, such pledgee, transferee or donee shall be treated as a "Stockholder" for purposes of this Agreement.

4.2      *No Revocation*.  The voting agreements contained in this Agreement are coupled with an interest and may not be revoked during the term of this Agreement.

4.3      *Legends.*  The Company shall cause each certificate representing the Shares to bear the following legend, in addition to any legends that may be required by state or federal securities laws or the terms of any voting or other agreements that apply:

> THE SHARES EVIDENCED HEREBY ARE SUBJECT TO A HOLDER VOTING AGREEMENT BY AND AMONG THE COMPANY AND CERTAIN STOCKHOLDERS OF THE COMPANY, DATED AS OF FEBRUARY [ 2 ], 2019 (COPIES OF WHICH MAY BE OBTAINED FROM THE COMPANY) WHICH INCLUDES PROVISIONS POTENTIALLY RESTRICTING THE STOCKHOLDER'S RIGHT TO VOTE OR TRANSFER AN INTEREST IN THE SHARES EVIDENCED HEREBY, AND BY ACCEPTING ANY INTEREST IN SUCH SHARES THE PERSON ACCEPTING SUCH INTEREST SHALL BE DEEMED

2

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

TO AGREE TO AND SHALL BECOME BOUND BY ALL THE PROVISIONS OF SAID HOLDER VOTING AGREEMENT.

4.4 ***Stock Splits, Dividends, Etc.*** In the event of any issuance of shares of the Company's voting securities hereafter to Stockholder (including, without limitation, in connection with any stock split, stock dividend, recapitalization, reorganization, or the like), such shares shall automatically become subject to this Agreement and shall be endorsed with the legend set forth in Section 4.3.

4.5 ***Specific Enforcement.*** It is agreed and understood that monetary damages would not adequately compensate an injured party for the breach of this Agreement by any party, that this Agreement shall be specifically enforceable, and that any breach or threatened breach of this Agreement shall be the proper subject of a temporary or permanent injunction or restraining order. Further, each party hereto waives any claim or defense that there is an adequate remedy at law for such breach or threatened breach.

4.6 ***Securities Laws, Rules and Regulations***. Stockholder, the Company and Proxyholder agree and understand that Stockholder, the Company and/or Proxyholder may become subject to the registration and/or reporting requirements, rules and regulations of the Securities Exchange Act of 1934, as amended (the "***Exchange Act***"), the Securities Act of 1933, as amended (the "***Securities Act***") and/or any state and federal securities laws (collectively with the Exchange Act and the Securities Act, the "***Securities Laws***"). Stockholder, the Company and Proxyholder agree to use their respective commercially reasonable efforts to comply with the Securities Laws and to reasonably assist each other in complying with the Securities Laws in a timely and prompt manner. Such compliance may include, for example and without limiting the foregoing, the filing and updating and maintaining of Form 13G and/or Form 13D under the Exchange Act.

4.7 ***Proxyholder's Liability.*** In voting the Shares in accordance with Section 1 hereof, Proxyholder shall not be liable for any error of judgment nor for any act done or omitted, nor for any mistake of fact or law nor for anything which Proxyholder may do or refrain from doing in good faith, nor shall Proxyholder have any accountability hereunder, except for his own bad faith, fraud or willful misconduct. Furthermore, upon any judicial or other inquiry or investigation of or concerning Proxyholder's acts pursuant to his rights and powers as Proxyholder, such acts shall be deemed reasonable and in the best interests of Stockholder unless proved to the contrary by clear and convincing evidence.

4.8 ***No Ownership Interest.*** Except as expressly provided for in this Agreement, nothing herein shall be deemed to vest in any party other than Stockholder any direct or indirect ownership, or incidence of ownership of, or with respect to, any of the Shares held by the Stockholder and all rights, ownership and economic benefits of and relating to such Shares shall remain vested in and belong to the Stockholder.

5. **Termination**.

5.1 ***Termination Events.*** This Agreement shall automatically and immediately terminate:

3

DCP Parties0245

        (a)     upon the liquidation, dissolution or winding up of the business operations of the Company; or

        (b)     in the sole discretion of Proxyholder, upon the express written consent of Proxyholder (which Proxyholder shall be under no obligation to provide).

    5.2    ***Legends Following Termination of Agreement***.  At any time after termination of any of the Agreement, any holder of a stock certificate may surrender such certificate to the Company for appropriate modifications to the legend, and the Company shall, as promptly as reasonably practicable, reissue a new certificate with any legends that may be required by state or federal securities laws or the terms of any voting or other agreements that remain applicable.

    5.3    ***Survival.***  Section 5.2 shall survive the termination of this Agreement.

6.    **Miscellaneous**.

    6.1    ***Successors and Assigns.***  The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the Company, Stockholder and Proxyholder. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or the respective successors and assigns of the Company, Stockholder and Proxyholder any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement. Except for an assignment by the Company (i) by operation of law, or (ii) in connection with an acquisition, consolidation or merger of the Company or sale of all or substantially all of the Company's assets (which shall be permitted with only the written consent and notice of the Company), this Agreement (or any of the rights hereunder) may not be assigned (by any party) without the written consent of Proxyholder, the Company and Stockholder.

    6.2    ***Amendments and Waivers.***  Any term hereof may be amended or waived only with the written consent of Stockholder, Proxyholder and the Company; provided any consent of the Company shall require the prior approval of the Board of Directors of the Company. Any amendment or waiver effected in accordance with this Section 6.2 shall be binding upon the Company, Proxyholder and Stockholder, and each of the respective successors and assigns to the Company or Proxyholder.

    6.3    ***Notices.***  Notwithstanding anything to the contrary contained herein, any notice required or permitted by this Agreement shall be in writing and shall be deemed sufficient and received on the earlier of (a) the date of delivery, when delivered personally, by overnight mail, courier or sent by electronic mail (e-mail) or fax, or (b) forty-eight (48) hours after being deposited in the U.S. mail, as certified or registered mail, with postage prepaid, and addressed to the party to be notified at such party's address, e-mail address or fax number as set forth on the signature page hereto, or as subsequently modified by written notice. Any electronic mail (e-mail) communication shall be deemed to be "in writing" for purposes of this Agreement.

    6.4    ***Severability.***  If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for

4

        DCP Parties0246

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

such provision, then (a) such provision shall be excluded from this Agreement, (b) the balance of the Agreement shall be interpreted as if such provision were so excluded, and (c) the balance of the Agreement shall be enforceable in accordance with its terms.

6.5     ***Governing Law; Jurisdiction; Venue.*** This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Delaware, without giving effect to conflict of law principles. In addition, each of the parties hereto (i) consents to submit itself to the exclusive jurisdiction of the Court of Chancery or other courts of the State of Delaware in the event any dispute arises out of this Agreement or any of the transactions contemplated by this Agreement, (ii) agrees that it will not attempt to deny or defeat such jurisdiction by motion or other request for leave from such court, (iii) agrees that it will not bring any action relating to this Agreement or any of the transactions contemplated by this Agreement in any court other than the Court of Chancery or other courts of the State of Delaware, and (iv) hereby waives, and agrees not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim that it is not subject to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court.

6.6     ***Counterparts.*** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

6.7     ***Titles and Subtitles.*** The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

6.8     ***Counsel to the Company.*** Each party to this Agreement acknowledges and agrees that Fenwick & West, LLP is acting as counsel solely to the Company and does not represent either Stockholder or Proxyholder in connection with this Agreement or any other agreement. Each party to this Agreement has had the opportunity and has been encouraged to consult with the own independent counsel.

*[Signature page follows]*

5

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

IN WITNESS WHEREOF the parties have executed this Holder Voting Agreement as of the date first set forth above.

**THE COMPANY**

Ebersol Sports Media Group, Inc.

By: Charlie Ebersol

Title: CEO

Address: _____

_____

Email: ce@aaf.com

**PROXYHOLDER**

By: Charlie Ebersol

Address: _____

_____

Email: ce@aaf.com

[SIGNATURE PAGE TO HOLDER VOTING AGREEMENT]

CLASSIFIED

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

IN WITNESS WHEREOF the parties have executed this Holder Voting Agreement as of the date first set forth above.

**STOCKHOLDER**

FO2 LLC

By: _____

Name: _Reggie Finley_

Title: _____

Address ████████████████

Email: ████████████████

[SIGNATURE PAGE TO HOLDER VOTING AGREEMENT]

CLASSIFIED

DCP Parties0249

**MINUTES OF A SPECIAL MEETING
OF THE BOARD OF DIRECTORS OF
EBERSOL SPORTS MEDIA GROUP, INC.**

| | |
|---|---|
| DATE: | February 24, 2019 |
| TIME: | 4:00 PM PST |
| DIRECTORS PRESENT: | Charlie Ebersol<br>Dick Ebersol<br>Jeff Moorad |
| DIRECTORS ABSENT: | Keith Rabois |
| OTHERS PRESENT | Kevin Freedman<br>Alan Kantowitz<br>Dawn Belt, Fenwick & West LLP |

A telephonic meeting of the Board of Directors (the "**Board**") of Ebersol Sports Media Group, Inc. (the "**Company**") was called to order with a quorum of the Board present, at approximately 4:00 p.m. Pacific time. The meeting was held pursuant to notice duly given or waived. Mr. Ebersol acted as the Chairman and called the meeting to order. Ms. Belt acted as the Secretary of the meeting and kept the minutes. Mr. Ebersol covered the agenda for the meeting.

1. **Update on FO2 LLC**

Mr. Charlie Ebersol updated the Board on the current status of the Company's relationship with FO2 LLC ("*FO2*") and Mr. Reggie Fowler, and confirmed that: (a) Mr. Fowler has resigned from the Board, effective February 23, 2019; (b) FO2 signed and delivered a Release Agreement to the Company, in the form attached hereto as Exhibit A, pursuant to which the Company and FO2 agreed to a mutual release of claims in exchange for termination of the Series 1 Preferred Stock Purchase Agreement and certain other rights and obligations under the related financing agreements; and (c) FO2 signed and delivered the Holder Voting Agreement, in the form attached to the Release Agreement, whereby FO2 assigned its voting rights to Mr. Charlie Ebersol. Following further discussion and motion duly made and seconded, the Board unanimously approved the following resolutions:

> **RESOLVED**, that the Board hereby accepts Mr. Reggie Fowler's resignation from the Board, effective February 23, 2019.

> **RESOLVED FURTHER,** approves and ratifies the Release Agreement and the Holder Voting Agreement.

2. **Fundraising Update**

**CLASSIFIED**

Mr. Charlie Ebersol and Ms. Belt presented a summary of the Series 2 Preferred Stock binding term sheet negotiated and signed with Dundon Capital Partners LLP ("***DCP***"), as well as an update on the funding to date from DCP and ongoing negotiations regarding the detailed terms for such financing. In particular, the Board discussed the need to offer existing investors an opportunity to participate in the new financing, with Mr. Charlie Ebersol confirming that Tom Dundon has verbally indicated that he will offer such an opportunity to the Company's existing stockholders, with details to be negotiated and confirmed. The Board directed management to continue discussions with DCP accordingly. Following further discussion and motion duly made and seconded, the Board unanimously approved the following resolutions:

**WHEREAS**, the Binding Term Sheet for Series 2 Preferred Stock Financing attached hereto as Exhibit A (the "**Term Sheet**") was previously circulated and discussed by the Board and management.

**WHEREAS,** the Term Sheet provides for an investment of up to $70,000,000 from Dundon Capital Partners LLC, on terms that significantly dilute the ownership and significantly impact the economic and control rights of the Corporation's existing stockholders, and the Corporation has already received over $12,000,000 from Dundon Capital Partners under these terms.

**WHEREAS,** given the Corporation's financial position, cash reserves, accrued but unpaid liabilities, near and long-term prospects, strategic goals and objectives, current product development and business development efforts, financing alternatives and other relevant considerations, the Board believes that it is advisable and in the best interests of the Corporation and its stockholders to raise additional working capital and effect a recapitalization of the Corporation's capital stock in accordance with the Term Sheet.

**NOW, THEREFORE, BE IT RESOLVED**, that the Board hereby approves and ratifies the Term Sheet.

**RESOLVED FURTHER**, that the officers of the Corporation, and each of them with full authority to act without the others, are hereby authorized, in the name of and on behalf of the Corporation, to execute and deliver, and to cause the Corporation to enter into and perform all its obligations under, the Term Sheet, together with such changes therein and to the schedules and exhibits thereto as any officer may in his or her discretion approve (such approval being conclusively evidenced by such officer's execution thereof).

**RESOLVED FURTHER,** that the officers of the Corporation, and each of them with full authority to act without the others, are hereby authorized, in the name of and on behalf of the Corporation, to negotiate the definitive agreements reasonably necessary or advisable to implement the transactions contemplated by the Term Sheet.

**RESOLVED**, that the Board hereby ratifies, confirms, approves and adopts all actions previously taken by officers or directors of the Corporation that are

approved by the foregoing resolutions, including without limitation the negotiation and preparation of the Term Sheet.

**RESOLVED**, that each of the officers of the Corporation is authorized to do or cause to be done any and all such further acts and to execute and deliver any and all such additional documents as such officer may deem necessary or appropriate in order to carry into effect the purposes and intent of the foregoing resolutions.

3.    **Adjournment**

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned.

_____
Dawn Belt, Secretary of the Meeting

## EXHIBIT A

### TERM SHEET

CLASSIFIED

# EXHIBIT B

## RELEASE AGREEMENT

CLASSIFIED

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

## RELEASE AGREEMENT

This Release Agreement (this "*Agreement*") is made and entered into effective as of February 23 *rd* 2019 (the "*Effective Date*") by and between Ebersol Sports Media Group, Inc., a Delaware corporation (the "*Company*"), and FO2 LLC, a Delaware limited liability company (the "*Investor*").

## RECITALS

Reference is hereby made to (a) the Series 1 Preferred Stock Purchase Agreement dated November 21, 2018 (the "*Purchase Agreement*") between the Company and Investor, (b) the letter sent by the Company to Investor on February 18, 2019, notifying Investor that it is in breach of the Purchase Agreement, (c) the Line of Credit Agreement dated November 21, 2018 (the "*Credit Agreement*") and (d) the Warrant to Purchase Stock dated November 21, 2018 (the "*Warrant*").

The Company and Investor wish to release one another from any claims relating to the Purchase Agreement, Credit Agreement and Warrant and provide a covenant not to sue in exchange in accordance with the terms set forth herein. Any capitalized terms not defined herein will have the meaning as set forth in the Purchase Agreement.

NOW THEREFORE, the parties hereby agree as follows:

### 1. Release of Claims and Covenants Not to Sue by Investor.

(a)     On behalf of itself and its Affiliates, Investor hereby fully and forever releases and discharges the Company and the Company's directors, officers, stockholders, employees, agents, attorneys, representatives, predecessors, successors and assigns, and any person acting by or through any of them (collectively, the "*Company Released Parties*"), of and from any and all claims, actions, causes of action, losses, debts, judgments, awards, guarantees, warranties, express or implied, balances, damages, compensation, royalties, agreements, promises liabilities, demands, obligations, costs, expenses, damages and liens of every nature, kind and character whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, and whether sounding in contract or tort, or amounts of any nature whatsoever (collectively "*Claims*") which Investor now has, ever has had, or ever claimed to have had against the Company and/or any of the released parties, including (but not limited to) Claims arising out of, based upon or related in any manner whatsoever to (a) the Purchase Agreement, the Transaction Agreements, the Credit Agreement, the Warrant, or any transaction contemplated thereunder, (b) contributions made by Investor to the Company's business, (c) equity, rights to acquire equity or other ownership interests with respect to the Company, (d) the Recapitalization (as defined below), any transaction contemplated thereunder or any action taken in connection therewith, (e) control, approval or others similar rights related to Investor's prior investments in the Company (collectively, the "*Company Released Matters*").

(b) Investor acknowledges that it may hereafter discover facts in addition to, or different from, those which they now know or believe to be true with respect to the releases given in this Agreement, that it may have sustained or may yet sustain damages, costs or expenses that are presently unknown and that relate to the releases given in this Agreement. Investor acknowledges, however, that it has negotiated, agreed upon, and entered into this Agreement in light of such possibilities. It is Investor's intention that the foregoing release shall be effective as a bar to any and all Claims herein above specified to be so barred. In furtherance of this intention, Investor waives any and all rights that they have under state or federal statute or common law principles that would otherwise limit the effect of this Agreement to claims known or suspected as of the Effective Date. Specifically, Investor waives the effect and protections of Section 1542 of the California Civil Code which provides:

CLASSIFIED

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Investor acknowledges, warrants and represents that it is familiar with Section 1542 of the California Civil Code, and that the effect and import of that provision has been fully explained to them by its attorneys. Investor further acknowledges that the foregoing waiver of the provisions of Section 1542 of the California Civil Code is part of the consideration hereunder. Investor expressly consents that the releases set forth herein shall be given full force and effect in accordance with each and all of its express terms and provisions, including those terms and provisions relating to unknown or unsuspected claims, demands, and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands, and causes of action hereinabove specified. Investor further agrees and covenants that if the facts to which this Agreement is executed are found to be different from the facts now believed to be true, Investor expressly accepts and assumes the risk of such possible difference in the facts and agrees that this Agreement shall be and remain fully effective notwithstanding such difference in facts.

(c)     On itself and its Affiliates, Investor hereby covenants not to sue the Company Released Parties for any Claims arising out of, based upon or related in any manner whatsoever, to the Company Released Matters on or after the Effective Date. In the event any such suit is instituted, this Agreement may be pleaded as a defense.

2.     **Release of Claims and Covenants Not to Sue by Company.**

(a)     On behalf of itself and successors and assigns, the Company hereby releases and forever discharges Investor and the Investor's officers, members, employees, agents, attorneys, representatives, predecessors, successors and assigns, and any person acting by or through any of them (collectively, the "*Investor Released Parties*"), from any and all Claims which the Company now has, ever has had, or ever claimed to have had against Investor, based upon or related in any manner whatsoever to the Purchase Agreement, the Transaction Agreements, or any transaction contemplated thereunder (collectively, the "*Investor Released Matters*").

(b) The Company acknowledges that it may hereafter discover facts in addition to, or different from, those which they now know or believe to be true with respect to the releases given in this Agreement, that it may have sustained or may yet sustain damages, costs or expenses that are presently unknown and that relate to the releases given in this Agreement. The Company acknowledges, however, that it has negotiated, agreed upon, and entered into this Agreement in light of such possibilities. It is the Company's intention that the foregoing release shall be effective as a bar to any and all Claims herein above specified to be so barred. In furtherance of this intention, the Company waives any and all rights that they have under state or federal statute or common law principles that would otherwise limit the effect of this Agreement to claims known or suspected as of the Effective Date. Specifically, the Company waives the effect and protections of Section 1542 of the California Civil Code which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

34405/00600/FW/10594127.4

CLASSIFIED

DCP Parties0257

The Company acknowledges, warrants and represents that it is familiar with Section 1542 of the California Civil Code, and that the effect and import of that provision has been fully explained to them by its attorneys. The Company further acknowledges that the foregoing waiver of the provisions of Section 1542 of the California Civil Code is part of the consideration hereunder. The Company expressly consents that the releases set forth herein shall be given full force and effect in accordance with each and all of its express terms and provisions, including those terms and provisions relating to unknown or unsuspected claims, demands, and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands, and causes of action hereinabove specified. The Company further agrees and covenants that if the facts to which this Agreement is executed are found to be different from the facts now believed to be true, the Company expressly accepts and assumes the risk of such possible difference in the facts and agrees that this Agreement shall be and remain fully effective notwithstanding such difference in facts.

(c)     The Company hereby covenants not to sue Investor for any Claims arising out of, based upon or related in any manner whatsoever, to the Investor Released Matters on or after the Effective Date. In the event any such suit is instituted, this Agreement may be pleaded as a defense.

**3.     Mutual Non-Disparagement.** Investor agrees that it will not, and will cause its Affiliates to not, disparage the Company Released Parties or their products, services, agents, representatives, directors, officers, shareholders, attorneys, employees, vendors, affiliates, successors or assigns, or any person acting by, through, under or in concert with any of them. The Company will direct its directors and officers not to disparage Investor or its products, services, agents, representatives, directors, officers, shareholders, attorneys, employees, vendors, affiliates, successors or assigns, or any person acting by, through, under or in concert with Investor. Notwithstanding the foregoing, statements made in the course of sworn testimony in administrative, judicial or arbitral proceedings or required for legitimate business purposes (including, without limitation, depositions in connection with such proceedings) shall not be subject to this paragraph.

**4.     Confirmation; Assignment of Voting Rights.** The Company and Investor hereby confirm that (a) Investor has fully paid for, and currently owns 5,153,759 shares of the Company's Series 1 Preferred Stock (the "*Shares*"), (b) the Shares are the only ownership interests that Investor holds in the Company, (c) Investor has not funded any amounts and there is no outstanding balance under the Credit Agreement and (d) the Warrant is not exercisable for any shares of the Company's capital stock. The Company and Investor hereby agree that Investor has no further obligation or right to buy from the Company, and the Company has no further obligation to sell to Investor, any Shares under the Purchase Agreement and the Purchase Agreement is hereby terminated. The Company and Investor hereby agree that Investor has no further obligation to fund, and the Company has no further right to borrow, any amounts under the Credit Agreement and the Credit Agreement is hereby terminated. The Company and Investor hereby agree that Investor has no further right to exercise, and the Company has no further obligation to issue shares of capital stock upon exercise, of the Warrant and the Warrant is hereby terminated. Investor hereby agrees it has no rights to designate any directors to the Company's Board of Directors, and that Section 1.2(b) of the Amended and Restated Voting Agreement dated November 21, 2018 between the Company, Investor and certain of the Company's stockholders (the "*Voting Agreement*"), is hereby terminated. Investor hereby agrees it has no right or obligation to confer with Charlie Ebersol ("*Ebersol*") on any matter presented for a vote of the Company's stockholders, and that Section 4 of the Voting Agreement is hereby terminated. Investor hereby agrees it has no rights to designate (i) any officers or other service providers of the Company (including without limitation the Company's Chief Financial Officer and Vice President of Legal Affairs/Corporate Counsel) or (ii) any member of any of the Company's committees (including without limitation any committee relating to the American Alliance of Football), and that Sections 5.6 and 5.7 of the Amended and Restated Investors' Rights Agreement dated November 21, 2018 between the Company, Investor and certain of the Company's stockholders, is hereby terminated. Pursuant to this Agreement and the Holder Voting Agreement attached hereto as Exhibit A, Investor hereby agrees to assign all voting rights associated with the Shares to Ebersol.

3

34405/00600/FW/10594127.4

CLASSIFIED                                                                                                    DCP Parties0258

**5.** **Recapitalization.** Investor understands that the Company is currently in negotiations regarding a new investment in and recapitalization of the Company in accordance with the Binding Term Sheet (the "*Term Sheet*") signed by the Company on February 14, 2019 (the "*Recapitalization*"). In connection with the Recapitalization, the Company expects that all existing investors in the Company, including Investor, will lose significant (and potentially all) economic, control and other rights associated with their prior investments and current ownership interests in the Company. The Company has limited bargaining power in its negotiations with the new investor regarding the Recapitalization, and there is no guarantee that the Company will be able to arrange a satisfactory outcome for its current investors and stockholders, including Investor. With a full acknowledgment of the Company's situation with respect to the Recapitalization, Investor hereby agrees to approve, vote in favor of, and enter into (as applicable) any amendments to the Company's Restated Certificate of Incorporation, Bylaws or Transaction Agreements, any resolutions or consents, resignations or any other agreements required to bring the Recapitalization into effect, as determined in the sole discretion of the Company; provided that Investor's economic rights will not be impacted in a disproportionately adverse manner as compared to other holders of the Company's Series Seed Preferred Stock or Series 1 Preferred Stock.

**6.** **Authority; Covenant.** Investor confirms that Investor has the sole authority to enter into and perform all of its obligations under this Agreement, including releasing the Claims. Investor is the sole and lawful owner of the Claims, and has not assigned or transferred any right, title or interest in the Claims. Investor will not bring or voluntarily aid any legal or equitable action or proceeding against or otherwise sue the Company or any successor to the Company with respect to any Claims. Investor hereby represents and warrants that the execution, delivery and performance of all of its obligations under this Agreement will not violate any agreement or other obligation which Investor may be subject to. Investor further confirms and agrees that other than as expressly set forth in this Agreement, the Company does not have any liability or obligation to Investor relating to or arising in connection with the Company Released Matters or otherwise.

**7.** **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.

**8.** **Governing Law; Injunctive Relief.** This Agreement will be governed by and construed in accordance with the laws of the State of California, without giving effect to that body of laws pertaining to conflict of laws. Investor understands that in the event of a breach or threatened breach of this Agreement by Investor, the Company may suffer irreparable harm and other damage that cannot be remedied through the payment of money, and will therefore be entitled to injunctive relief.

**9.** **Entire Agreement.** This Agreement and the documents referred to herein, including but not limited to the Holder Voting Agreement, constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof.

**10.** **Successors and Assigns; Assignment.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives. The Company may assign any of its rights and obligations under this Agreement. No other party to this Agreement may assign, whether voluntarily or by operation of law, any of its rights and obligations under this Agreement, except with the prior written consent of the Company.

**11.** **Severability.** If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision

4

**CLASSIFIED**

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

**12.** **Amendment and Waivers.** This Agreement may be amended only by a written agreement executed by each of the parties hereto. Any amendment effected in accordance with this section will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

**13.** **Confidentiality.** Each party agrees that it shall not publicly disclose this Agreement or the terms hereof; provided that, to the extent required by applicable law, judicial, administrative, tax or audit process or otherwise compelled by any governmental or regulatory authority, or reasonably necessary to conduct the Company's business, this Agreement and the content herein may be disclosed accordingly.

**14.** **Construction.** Investor and the Company acknowledge that each of them and its respective counsel have reviewed this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendment or exhibits hereto.

**15.** **Understanding of Terms.** The parties each hereby affirm and acknowledge that they have read this Agreement, they know and understand its terms, and they have signed it voluntarily, after having been advised by counsel. The parties have had a full and unhindered opportunity to consult with their attorneys, accountants, financial advisors and such other consultants as they may have desired prior to executing this Agreement.

[remainder of page intentionally left blank]

34405/00600/FW/10594127.4

CLASSIFIED

DCP Parties0260

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement effective as of the date and year first above written.

**COMPANY**
EBERSOL SPORTS MEDIA GROUP, INC.

DocuSigned by:

Charlie Ebersol, CEO
Address:

**INVESTOR**
FO2 LLC

Name: Reginald D. Fowler
Address: 9920 S. Rural Rd. #108-95
Tempe, AZ 85284

6

34405/00600/FW/10594127.4

DCP Parties0261

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

EXHIBIT A

HOLDER VOTING AGREEMENT

34405/00600/FW/10594127.4

CLASSIFIED

DCP Parties0262

DocuSign Envelope ID: 4F7ACB55-E71A-45BE-901E-09FCE6CC885B

February 23, 2019

Ebersol Sports Media Group, Inc.

Dear Board of Directors:

Effective immediately, I hereby voluntarily resign from any and all positions that I may hold as a director, manager, officer, employee or consultant of Ebersol Sports Media Group, Inc., a Delaware corporation (the "*Company*"), and any subsidiary of the Company, including, without limitation, my position as a member of the Board of Directors of the Company and any committees thereof.

_____

Reginald D. Fowler

23769/00600/FW/10602870.1

CLASSIFIED

DCP Parties0263