## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| **LEGENDARY FIELD** | § | **CASE NO. 19-50900-CAG** |
| **EXHIBITIONS, LLC,** | § | |
| | § | **CHAPTER 7** |
| | § | |
| **DEBTOR.** | § | |

| | | |
|---|---|---|
| **RANDOLPH N. OSHEROW, Chapter 7** | § | |
| **Trustee, and the Bankruptcy Estates of** | § | |
| **Legendary Field Exhibits, LLC, AAF** | § | |
| **Players, LLC, AAF Properties, LLC,** | § | |
| **Ebersol Sports Media Group, Inc., LFE** | § | |
| **2, LLC, and We Are Realtime, LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | **Adversary No. 22-05078-CAG-7** |
| | § | |
| **v.** | § | |
| | § | |
| **THOMAS DUNDON, JOHN ZUTTER,** | § | |
| **and DUNDON CAPITAL PARTNERS,** | § | |
| **LLC,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' RESPONSE TO TRUSTEE'S MOTION FOR RECONSIDERATION OF DENIAL OF MOTION TO STRIKE CERTAIN TESTIMONY OF DEFENDANTS' EXPERT ERICA BRAMER

Defendants Dundon Capital Partners LLC, Thomas Dundon, and Jonathan Zutter hereby respond to Trustee's Motion for Reconsideration of Denial of Motion to Strike Certain Testimony of Defendants' Expert Erica Bramer [ECF 399].

## SUMMARY OF ARGUMENT

The Trustee urges an untimely *Daubert* motion related to portions of Bramer's testimony. The Court previously found Defendants properly disclosed Bramer and allowed her testimony at

trial, including testimony related to the League's liabilities prior to February 14, 2019, and QuickBooks. The Trustee has failed to, and cannot, establish any prejudice or surprise in allowing her testimony as these opinions were timely disclosed and included in the Joint Pretrial Order, and Bramer was deposed at length on these issues. As to QuickBooks specifically, the Trustee deposed Bramer at length about QuickBooks, Bramer disclosed that she intended to rely on QuickBooks when and if she was ever given access (as the Trustee's experts had been given months earlier), and the Trustee had access to the data in QuickBooks from the beginning of this case, years before Bramer did.

## ARGUMENTS AND AUTHORITIES

### A.     The Trustee's motion is untimely.

The Trustee's deadline to file *Daubert* motions was January 13, 2025. *See* ECF 165-1 at 2. During trial on June 6, 2025, the Trustee made two separate oral motions to strike Bramer's testimony related to (1) the undisclosed league liabilities as of February 13, 2019, and (2) information obtained from QuickBooks. Ex. F at 6:22-16:2; 50:13-21.[1] The Court denied both motions. *Id.* at 16:3-8; 52:7-10. The Court permitted the Trustee to submit briefing on the QuickBooks issue to preserve it for the record. *See* Ex. G at 6:19-8:8.[2] The Trustee did not take any action prior to trial to raise these issues. Instead, the Trustee waited until Bramer's testimony at trial to make a motion and now seeks reconsideration of that motion. Both the oral motions and this motion are untimely pursuant to the Parties' Stipulation [ECF 165-1] and should be denied.

---

[1] True and correct highlighted excerpts from Ms. Bramer's testimony at trial on June 6, 2025, are attached hereto as Exhibit F, and incorporated by reference.
[2] True and correct highlighted excerpts from the addendum to Ms. Bramer's testimony at trial on June 6, 2025, are attached hereto as Exhibit G, and incorporated by reference.

**B.** **Defendants properly disclosed Bramer.**

1. Defendants disclosed Bramer's opinions on the League's liabilities as of February 13, 2019.

The Trustee argues that Bramer disclosed her opinions regarding her calculation of the AAF's liabilities as of February 13, 2019, in Adversary Proceeding No. 19-05078 as a rebuttal expert witness. *See* Mot. at 2-3. In support of this argument, Trustee incorrectly states that Adversary Proceeding Nos. 19-05078 and 22-05077 "have at all times remained substantively separate." *Id.* at 1. The Joint Agreed Motion to Enter Scheduling Order dated January 31, 2024 [ECF 66] in Adversary Proceeding Nos. 19-05078 and 22-05077 consolidated the cases for pre-trial purposes. It states that the Parties "conferred in good faith and reached an agreement concerning the coordinated conduct of pretrial proceedings" and agreed to "consolidate the pretrial discovery" as to the two Adversary Proceedings. ECF 66 ¶ 1; ECF 66-1 at 1. The parties conducted discovery in a consolidated manner. All witnesses were deposed simultaneously by all parties in both Adversary Proceedings. Discovery responses were always served on counsel for all parties in both Adversary Proceedings. The Trustee's contention that pre-trial matters were "substantively separate" is incorrect.

Plaintiff's deadline to disclose expert witnesses in both matters was December 2, 2024. ECF 66-1. Defendants' deadline to disclose expert witnesses in both matters was December 31, 2024. ECF 66-1. On December 2, 2024, Defendants designated Bramer as an expert witness pursuant to Rule 26 and served Bramer's expert report, dated December 2, 2024. In the December 2 designations, Defendants designated Bramer as an expert witness opining on analyses "relevant to DCP's claim it would not have made its $70 million investment into AAF on February 14, 2019, had Mr. Ebersol [. . .] made accurate financial representations and made full and proper

disclosure." <u>Ex. A</u> at 3.[3]

On December 31, 2024, Defendants also designated Bramer as a rebuttal expert witness pursuant to Rule 26 and served Bramer's expert rebuttal report, dated December 30, 2024. In the December 31 designations, Defendants designated Bramer as an expert witness opining on the flaws in Sonia Desai's and Joseph Petrucelli's reports. <u>Ex. B</u> at 3.[4] Bramer incorporates the findings of her December 2 report in her December 30 report. In her December 30 report, Bramer explicitly references her December 2 report and summarizes her findings from the December 2 report relating to the undisclosed liabilities that existed as of February 13, 2019. <u>Ex. C</u> ¶ 1.[5] Defendants properly disclosed Bramer as an expert witness that would proffer affirmative testimony as to Defendants' fraud defense.

Bramer's December 2 and December 30 reports include both Adversary Proceeding case styles on the first page. Both were served to all parties in both matters, including the Trustee. On February 19, 2025, Bramer was deposed in both Adversary Proceedings at the same time. During the deposition, the Trustee's counsel extensively questioned Bramer. He and counsel for other parties questioned Bramer about both of her reports with the Trustee's counsel present at all times. *See* <u>Ex. H</u> at 3-4.[6] The Trustee was aware of Bramer's affirmative and rebuttal designations, as well as the opinions in both of her reports, and had adequate opportunity to question her regarding those opinions.

Bramer is also included, without objection, in the Parties' Joint Pretrial Order. Her

---

[3] A true and correct copy of Defendants' December 2 expert disclosures is attached as <u>Exhibit A</u>, and incorporated herein by reference.

[4] A true and correct copy of Defendants' December 31 rebuttal expert designations is attached as <u>Exhibit B</u>, and incorporated herein by reference.

[5] A true and correct copy of relevant highlighted portions of Bramer's December 2 report, are attached as <u>Exhibit C</u>, and incorporated herein by reference.

[6] True and correct highlighted excerpts from Erica Bramer's deposition, held on February 19, 2025, are attached as <u>Exhibit H</u>, and incorporated herein by reference.

proposed testimony is described as follows:

> **13.  Erica Bramer – Retained Expert**
>
> > a.  <u>Concise statement of proposed testimony:</u> Ms. Bramer is the Managing Partner of BVA Group, a business consulting and advisory firm. Ms. Bramer will testify in rebuttal to Ms. Desai and Mr. Petrucelli relating to their opinions on the value of the League, the calculation of damages related to the alleged breach by DCP of the Term Sheet, and Dundon's ability to fund the alleged $250 million oral agreement. Ms. Bramer will also testify concerning the financial obligations of the League as of February 13, 2019, and the impossibility of $70 million being sufficient to complete the 2019 season following DCP's investment.

ECF 300-2 at 6. The description of Bramer's proposed testimony references both her affirmative opinions as to Defendants' fraud defense (*i.e.,* "the financial obligations of the League as of February 13, 2019, and the impossibility of $70 million being sufficient…") and her rebuttal opinions (*i.e.,* "in rebuttal to Ms. Desai and Mr. Petrucelli relating to their opinions on the value of the League…"). Defendants sufficiently disclosed Bramer in both Adversary Proceedings as to her opinions in both the December 2 and December 30 reports. There was no prejudice or surprise to Trustee in allowing her testimony at trial concerning the AAF's liabilities on February 13, 2019.

  2.  Trustee is not unfairly surprised by Bramer's testimony related to QuickBooks.

  Throughout discovery, Defendants requested, but were denied, access to QuickBooks. <u>Ex. F</u> at 25:9-26:2. In her December 2 report, Bramer states that her "opinions are preliminary and based on information I have had the opportunity to analyze," and, "[i]n particular, I may supplement my analysis if I am provided access to Quickbooks transaction-level data for AAF and/or affiliated companies that would allow me to analyze transactions in more detail." <u>Ex. C</u> ¶ 35. She also references the "absence of Quickbooks data" in Exhibit 4 to her report—Undisclosed Paid Liabilities by Invoice. *Id.* at Ex. 4. The Trustee knew from at least December 2, 2024, that Bramer's opinions could change if and when she gained access to QuickBooks.

  In her December 30 report, Bramer also refers to Quickbooks access in rebuttal to Desai's

opinion that $37.8 million should be added to the value for the February 13, 2019, valuation of the AAF. Specifically, Bramer states that "Ms. Desai's sole support is an obscure reference to a QuickBooks file" and reiterates that QuickBooks "has been inaccessible [to Defendants] in discovery thus far." Ex. D ¶ 15.[7] As of December 31, 2024, the Trustee knew that Bramer and Defendants still did not have access to QuickBooks and that Bramer intended to incorporate QuickBooks data into her analyses when and if she was given access.

Additionally, and importantly, Desai admitted at trial that she was aware the $37.8 million in "debt" that she relied upon, which came from QuickBooks, was not, in fact, entirely debt but also inappropriately included equity. See Ex. E at 213:23-217:12.[8] She also testified that she made no adjustment or correction to resolve this issue. The magnitude of this error, as Bramer points out in her December 30 rebuttal report, was unknown to Defendants without QuickBooks access. The Trustee was aware that Bramer had raised this issue. It cannot now claim surprise.

The Trustee argues that Defendants' failure to supplement Bramer's disclosures as it relates to QuickBooks caused Trustee substantial prejudice. See Mot. at 9. But the Trustee had notice that Bramer would utilize QuickBooks if she had access over a month prior to her deposition in February 2025. In fact, the Trustee's counsel fully deposed Bramer on the topic of QuickBooks. Below are a few examples of these questions and elicited testimony:

**Q.**    **Have you been provided access to QuickBooks prior to today's date?**

A.    That's a funny question. I've asked a whole lot of times for QuickBooks. Originally it just took a very long time to get a password. Once I got a password, it was suspended for nonpayment. So I think we got in for, like, a minute and then the nonpayment issue happened. I don't know where it stands now.

---

[7] A true and correct copy of relevant highlighted portions of Bramer's December 30 report, are attached as Exhibit D, and incorporated herein by reference.
[8] True and correct highlighted excerpts from Ms. Desai's testimony at trial on May 30, 2025, are attached hereto as Exhibit E, and incorporated by reference.

Ex. H at 99:25-100:7.

> **Q.** **In preparation of your report, have you – have you interrogated any of the QuickBooks data?**
>
> A. So, for my first report, we had asked and I understood y'all had not provided it. For the Desai reports, we had asked, same answer. I think we finally got it -- I don't remember exactly when, late December, early January.

*Id.* at 100:8-14.

> **Q.** **Prior to today's date, have you done any investigation of QuickBooks data?**
>
> A. Well, yes, kind of, for a few days, yes. And then I tried when I was preparing for deposition and we've been locked out again.

*Id.* at 100:15-19.

> **Q.** **Do you know one way or another the 17.9 was reflected on the 2-14-19 balance sheet?**
>
> [ . . . ]
>
> A. So I don't believe that that was provided. There wasn't access to the data room. There wasn't access to QuickBooks. There was a representation of 5.1.

*Id.* at 113:17-23.

> **Q.** **Have you ever run a report in QuickBooks?**
>
> A. Yes.
>
> **Q.** **How long does it take to go reports, company financial, balance sheet?**
>
> A. Getting a password for QuickBooks out of you guys, also not pejorative, months.
>
> **Q.** **What does that have to do with February 14th, 2019?**
>
> A. Because you have to have a password to get into QuickBooks.

*Id.* at 115:13-22.

> **Q.** **How do you know when the invoice was, in fact, received?**
>
> A. By the entry date recorded in QuickBooks.

> **Q.**    So is it your testimony that by February 14th, $17.9 million of invoices were already entered into QuickBooks?

> A.    That is my understanding, yes.[9]

*Id.* at 126:18-24.

> **Q.**    Sure. I want you to assume for this question, February, that somebody goes in and runs an account payable aging report on February 14th, 2019. Based on your previous testimony, did the entirety of $17.9 million was already entered into the books on such a day, that if you run an accounts payable aging report, every single one of these invoices would appear, true?

> [ . . . ]
> A.    So I believe everything I've just told you is correct and true. But I think the footnote I just want to make sure to disclose is that while that is how QuickBooks works and it is the way I interpret the information that we have, we did not have QuickBooks for purposes of this report, and therefore we had to rely on these rog responses. And then I think there's another list that was provided by your clients or produced in this case that's listed in Exhibit 3, so just my one small footnote being because we didn't actually get to run these reports ourselves, everything I said is how I think it would work and how I interpret the rog responses, what I interpret them to mean. That being said, I'm not the person -- neither I nor anyone from my team is the one who actually pulled them from QuickBooks and put it in the rogs of course because those came from your side of the case, not ours, but that is what I would expect.

*Id.* at 127:13-19, 128:13-129:5.

The first time Bramer had the opportunity to substantively access QuickBooks was after her deposition in late February. Ex. F at 25:14-26:2. The Trustee had its opportunity to cross examine Bramer at trial as to whether any of her opinions had changed or been supplemented after

---

[9] As explained further below, Bramer's understanding as of the time of her deposition was that the Trustee's interrogatory answers were accurate and truthful. When she eventually accessed QuickBooks, Bramer later learned that (1) accounts payable as of February 14, 2019, was actually higher than the Trustee's interrogator answers indicated ($21.1 million rather than $17.9 million), and (2) only $9.2 million of the $21.1 million in total accounts payable was properly reflected in QuickBooks on that date. For example, more than 700 invoices totaling $29 million were input into QuickBooks on February 15, 2019, the day after Dundon Capital Partners, LLC's first funding, and many more in the days and weeks thereafter (totaling an additional $8.9 million).

she ultimately gained access to QuickBooks. The Trustee has not suffered any prejudice.

Lastly, but importantly, while Defendants did not have meaningful access to QuickBooks until late February, the Trustee and its experts had access to all of the information Bramer relied on. This is not a situation where Defendants' expert witness supplemented her opinions based on undisclosed or newly disclosed data. The Trustee had access to all of the data and information contained in the QuickBooks files. The Trustee first provided access to Bramer shortly before her deposition for a very brief period and then that access was quickly lost. *See* Ex. F at 25:9-26:2; 33:5-34:1. She was then not given access for any meaningful amount of time until after her deposition in late February 2025. *Id.* The Trustee knew Bramer intended to analyze QuickBooks and to rely on QuickBooks data in her testimony. The Trustee took no action prior to trial to object to or challenge that testimony. The Trustee cannot claim unfair prejudice or surprise by Bramer's testimony concerning her factual observations concerning what she discovered in QuickBooks.

**C.      Bramer's testimony regarding QuickBooks is relevant fact testimony.**

Throughout discovery, Defendants requested, but were denied, access to QuickBooks until after Bramer's deposition. In lieu of access, Trustee provided answers to Interrogatories referencing QuickBooks reports. In those answers, Trustee reported that there were $17.9 million of accounts payable due before February 14, 2019. When Bramer finally accessed QuickBooks, she identified additional invoices that were not included in the Trustee's Interrogatory answers, revealing that accounts payable due before February 14, 2019, actually totaled more than $21 million. *See* Ex. F at 47:17-50:7. Bramer's testimony regarding this discrepancy is fact testimony based on her personal knowledge gained from reviewing QuickBooks once she had access. The information did not change her opinions. It simply corrects the Trustee's incorrect Interrogatory answers.

At trial, the Trustee asked multiple witnesses questions related to the AAF's balance sheet as of the time of DCP's investment. The Trustee also suggested that a push of a button in QuickBooks by DCP at the time of the investment would have revealed the status of the league's accounts payable. That assertion was simply untrue. Once she gained access to QuickBooks, Bramer discovered that less than one-third of the invoices that comprise the current accounts payable as of February 13, 2019, had actually been entered into QuickBooks. *See* Ex. F at 52:20-53:18. Pushing the balance sheet button on February 13 would have shown accounts payable of $9 million, not $21 million. *Id.* at 52:12-19. Bramer testified regarding the dates on which certain invoices had been inputted into QuickBooks during trial:



Defs.' Trial Ex. 275 at 11; Ex. F at 52:20-53:18.

Bramer's discovery belied Trustee's contention that quick diligence would have revealed the true financial peril of the league, supported Defendants' position concerning the chaotic mess that was the league's accounting practices, supported Defendants' position that Ebersol lacked the ability to accurately represent to a potential investor the league's finances, and supported the position that the AAF's capital needs for the 2019 season were far greater than the $55 to $70 million represented to Dundon. Bramer's testimony regarding the accounts payable was directly relevant to Defendants' fraud defense and was supported by the information discovered in QuickBooks and undermined the Trustee's contention that quick diligence would have revealed the substantial past-due unpaid vendor obligations. Bramer's testimony is relevant, admissible fact and opinion testimony.

**PRAYER**

**WHEREFORE,** Defendants Dundon Capital Partners LLC, Thomas Dundon, and Jonathan Zutter pray the Court deny the Trustee's Motion for Reconsideration of Denial of Motion to Strike Certain Testimony of Defendants' Expert Erica Bramer in its entirety, and grant such other and further relief, legal or equitable, to which Defendants may be justly entitled or the Court deems proper.

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By:     */s/ Jeffrey S. Lowenstein* _____
            Jeffrey S. Lowenstein
            Texas Bar No. 24007574
            jlowenstein@bellnunnally.com
            Beverly A. Whitley
            Texas Bar No. 21374500
            bwhitley@bellnunnally.com
            Gwen I. Walraven
            Texas Bar No. 24047065
            gwalraven@bellnunnally.com
            Brent A. Turman
            Texas Bar No. 24077506
            bturman@bellnunnally.com
            Laura K. Lavernia
            Texas Bar No. 24126586
            llavernia@bellnunnally.com
            2323 Ross Avenue, Suite 1900
            Dallas, TX 75201
            (214) 740-1400 – Telephone
            (214) 740-1499 – Facsimile

**K&L GATES LLP**

            Brent D. Hockaday
            Texas Bar No. 24071295
            Brent.hockaday@klgates.com
            1717 Main Street, Suite 2800
            Dallas, TX 75201
            (214) 939-5677 – Telephone
            (214) 939-5849 – Facsimile

**ATTORNEYS FOR DUNDON CAPITAL PARTNERS LLC, THOMAS DUNDON, AND JONATHON ZUTTER**

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 7, 2025, a true and correct copy of the foregoing Notice was served on the counsel identified below via the court's ECF filing system and email as indicated below:

Nicole L. Williams
Katharine Battaia Clark
Thompson Coburn LLP
2100 Ross Avenue, Suite 3200
Dallas, TX 75201
nwilliams@thompsoncoburn.com
dkclark@thompsoncoburn.com

***Counsel for Plaintiff's Randolph N. Osherow, Chapter 7 Trustee, Debtor's Estate***

Boris Treyzon
Jonathon Farahi
ABIR COHEN TREYZON SALO, LLP
16001 Ventura Boulevard, Suite 200
Encino, CA 91436
btreyzon@actslaw.com
jfarahi@actslaw.com

***Counsel for Plaintiffs Randolph N. Osherow, Chapter 7 Trustee, Debtors' Estate***

Brian S. Engel
Steve Turner
Barrett Dafin Frappier Turner & Engel, LLP
580 La Ventana Blvd.
Driftwood, TX 78619
brianen@bdfgroup.com
stevet@bdfgroup.com

***Counsel for Plaintiff's Randolph N. Osherow, Chapter 7 Trustee, Debtor's Estate***

*/s/ Laura K. Lavernia*
Laura K. Lavernia