IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 19-50900-cag |
| | § | |
| LEGENDARY FIELD | § | |
| EXHIBITIONS, LLC, et al., | § | |
| | § | Chapter 7 |
| Debtors. | § | |
| | § | |
| | § | |
| RANDOLPH N. OSHEROW, | § | |
| Chapter 7 Trustee, and the Bankruptcy | § | |
| Estates of Legendary Field Exhibitions, LLC; | § | |
| AAF Players, LLC; AAF Properties, LLC; | § | |
| Ebersol Sports Media Group, Inc.; | § | |
| LFE 2, LLC; and We Are Realtime, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Adversary No. 22-05078-cag |
| | § | |
| THOMAS DUNDON; JOHN ZUTTER; | § | |
| and DUNDON CAPITAL PARTNERS, LLC, | § | |
| | § | |
| Defendants. | § | |

**CHAPTER 7 TRUSTEE'S RESPONSE TO DEFENDANTS' AMENDED PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

TO THE HONORABLE CRAIG A. GARGOTTA, CHIEF U.S. BANKRUPTCY JUDGE:

Plaintiff Randolph N. Osherow ("Trustee"), respectfully submits this Response to Defendants Thomas Dundon ("Dundon"), John Zutter ("Zutter"), and Dundon Capital Partners, LLC's ("DCP") (collectively, the "Defendants") Amended Proposed Findings of Fact and Conclusion of Law (ECF 428).

Defendants make several factual assertions that are incorrect:

| Defendants' Assertion | Case Record |
|---|---|
| **AAF was inevitably doomed; proper diligence would have shown collapse** (ECF 428 ¶ 76; 9TR 184-185). | • Defendants **did no diligence yet knowingly accepted the risk.**[1]<br>• AAF was operational; had solid business plan and product.[2]<br>• **Defendants created instability**: new accounting, starved cash, vendor renegotiations, threatened shutdown.[3]<br>• Dundon leaked the "missed-payroll" story.[4] |
| **Only Ebersol claims a $250 million commitment; no corroboration** (ECF 428 ¶¶ 71, 77-78, 123). | **Six AAF witnesses and contemporaneous (written) statements and emails confirm $250 million commitment.**[5] |
| **Ebersol contradicted himself on any oral deal for equity/control** (ECF 428 ¶¶ 69-70). | **Record is consistent**; deposition limited to the first call.[6] |
| **Farrell/Kantowitz hid accounts payable; books unreliable** (ECF 428 ¶¶ 96, 184, 187). | Defendants had full access to AAF records; **no bills hidden**.[7] |

---

[1] **Day 9, 26:21-27:6**; **Day 8, 27:16-22, 92:20-24, 93:13, 113:10-11**; **Day 15, 70:16-72:21**; **Day 16, 310:25-311:8**.

[2] ECF 427 ¶¶ 19-30, 33-41, 61.

[3] ECF 427 ¶¶ 242-48, 251-63, 307.

[4] **Day 8, 72:17-75:19**; TR. EX. 0008.0003-4.

[5] **Day 8, 253:20-256:12** (D. Johnston asking when $250 million became 70 million); **Day 11, 7:15-8:5, 12:8-18** (K. Vugrincic "putting in 250"); **Day 6, 223:13-224:19, 267:25-268:20** (M. Hanson "he was investing $250 million"); **Day 12, 124:4-13, 203:18-23, 385:2-7** (K. Freedman recalls Dundon saying "$250 million"); **Day 13, 68:20-22** (K. Farrell heard Dundon would "provide $250 million to make the league last"); **Day 19, 200:23-201:8** (A. Kantowitz meetings where "$250 million number was thrown out"); *see also* ECF 427 ¶ 185 (citing **TR. EX. 0052**, correctly cited as **TR. EX. 1452**).

[6] **Day 4, 325:4-15** (First call: "no specific amount of equity or board control . . ."); **Day 4, 15:6-20:3**; **Day 2, 156:2-158:20** (**Later calls** (Feb. 14, 2019) **locked 75 % equity, $82.5 M valuation**, **board seats**).

[7] **Day 19, 215:2-21**; *see also* ECF 428 ¶¶ 228-263.

| Defendants' Assertion | Case Record |
|---|---|
| **Dundon urged Ebersol to seek outside capital** (ECF 428 ¶ 189). | Dundon **barred outside investment until one week before shutdown**, then publicly disparaged the league.[8] |
| **Ebersol misled the NFL and investors about funding** (ECF 428 ¶ 38). | **Post-statement events, not deceit, exposed Fowler**.[9] |
| **Trustee already recovered Fowler's $53.2 M judgment** (ECF 428 ¶ 37). | Restitution judgment in criminal matter (brought by the DOJ) in 2023 has been entered **but zero collected**.[10] |
| **Thank-you email plus three-and-a-half-year silence proves no $250 M deal** (ECF 428 ¶ 211). | • **Gratitude coexisted with disappointment.**[11]<br>• Trustee has exclusive standing to bring the claims, not Ebersol; trustee controlled timing.[12]<br>• **Dundon admitted in June 2021** he "had a commitment of **$250 million**" to the AAF.[13] |
| **Press mentions of $250 M were confined to Feb. 17-24, 2019 "marketing window"** (ECF 428 ¶ 124). | • Feb. 28, 2019 - Rich Eisen show.[14]<br>• Mar. 4, 2019 - Dan Kaplan interview.[15] |

---

[8] ECF 427 ¶¶ 281, 316-329.

[9] **Fowler's funds confirmed**. **Day 6, 12:15-14:9** (banker screenshots); **Day 2, 29:4-25** (JPMorgan debit confirmation); **Day 2, 35:9-24** (Spanish bank balances); **Day 2, 34:12-35:24** (physical bank visits). **AAF actually received $13.4 M and $1.75 M**. **Day 2, 7:17-8:15** (12/25/18); **Day 6, 24:22-25:17** (2/13/19). **NFL leadership vetted Fowler**. **Day 18, 317:19-318:8**. Unbeknownst to AAF, **FBI asset seizures caused Fowler's eventual default. Day 2, 110:14-112:9**.

[10] ECF 428 ¶ 37; **Day 5, 56:11-57:23**; **D-208.1**.

[11] **Day 6, 170:18-172:11**; **D-202**.

[12] Dundon Capital Partners LLC and the Trustee entered Tolling Agreements on February 9, 2022, May 10, 2022, and June 6, 2022 regarding the claims that each held against the other.

[13] **Day 7, 184:15-19**; *see also* ECF 427 ¶¶ 152, 180, 215;. Dundon testified he took board control to fund "all the capital the company needed." **Day 7, 187:6-11**.

[14] **TR. EX. 1002 at 9, 20** ("We don't have to talk about the money anymore" and league is "100 percent . . . their deal").

[15] **TR. EX. 0381, at 1-2** ("I bought the league . . . there never will be a scenario that we need capital.").

***Res judicata and the law of the case bar each of the Defendants' attempts to render the Term Sheet effective***. DCP, represented by the same counsel as here in adversary proceeding No. 22-05077, lost on the merits on the effectiveness of the Term Sheet and failed to raise arguments like ratification, waiver of signature requirement, estoppel, or other alternative arguments to render the Term Sheet enforceable. *See* ECF 427 ¶¶ 638-50, 654, 669.[16] Raising these arguments now constitutes an improper collateral attack on a final judgment. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1052-54 (5th Cir. 1987). These matters were all already "decided by necessary implication." ECF 427 ¶ 654.

***Defendants' prior material breach, ratification, estoppel, and waiver arguments are all attempts to evade liability through conduct Defendants themselves compelled or prevented***. Ratification, waiver, and estoppel all require voluntary action. ECF 427 ¶ 666. The undisputed timeline is dispositive: On February 14, 2019, Dundon and Zutter immediately declared themselves ESMG's only voting board members and seized control of all operations. ECF 427 ¶¶ 228, 232, 237; *see also* **D-182**. Under Delaware law, acts forced on a business by those who control it are actionable if those acts arise out of a breach of fiduciary duty. *Sample v. Morgan*, 914 A.2d 647, 673-74 (Del. Ch. 2007). Defendants cannot cure their breach through documents they forced ESMG to create, even as they were breaching their fiduciary duties.

A party also cannot claim prior material breach, and in fact breaches a contract, when it prevents the other side from performing. ECF 427 ¶ 678. Defendants controlled the AAF and its board, including issuance of equity in the AAF, after February 14, 2019. ECF 427 ¶¶ 113-117, 228-29, 240, 249. Because Defendants controlled whether and how shares would be issued,

---

[16] Defendants also failed to plead various of their defenses in this matter. *See* ECF 427 ¶¶ 663, 693.

AAF's duty to perform by issuing shares was contingent on work DCP never did. *Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 81 n. 10 (Tex. App.—Austin 2003, pet. denied) (rejecting argument defendant's prior breach prevented plaintiff from tendering performance where alleged breach was of a contractual requirement that was not yet due).[17]

*The parol evidence rule and merger fail*. *See* ECF 196 at 13-16. ***Any argument as to the waiver of the signature requirement on the Term Sheet also fails***. Any such argument fails due to law of the case and res judicata as noted above. Defendants also acknowledge a "waiving party" must have "intended to waive the requirement or condition," but fail to demonstrate any intent by ESMG whatsoever. ECF 428 ¶ 297. ESMG was unaware DCP had not executed the Term Sheet. ESMG could not make a knowing and voluntary waiver of the signature requirement without knowledge. Defendants argue the Term Sheet's signature requirement was rendered immaterial and unnecessary by DCP's conduct, principally relying on *Thompson St. Capital Ptrs. IV, LP v. Sonova Hearing Instrs.*, No. 166, 2024, 2025 WL 1213667, ___ A.3d ___ (Del. April 28, 2025). Defendants omit that the rule against forfeiture identified in *Thompson Street* is (1) not applicable, as there is no risk of forfeiture of contract considerations here, and (2) "a flexible one, and its application is within the sound discretion of the court." *Id.* at *17. Such discretion is not warranted here. *Compare id.* at *1 (reversal of dismissal of complaint to allow factual development).

***Defendants' authority arguments also fail for three reasons***. First, Defendants lack standing to allege breach of corporate rules before Dundon's investment. *See Leung v. Schuler*, No. 17089, 2000 WL 264328, at *7 (Del. Ch. Feb. 29, 2000) (question of standing turned on

---

[17] For this same reason, nothing with respect to the AAF's performance remained "executory" at the time the AAF went into bankruptcy. ECF 427 ¶ 440(f).

whether, at time of transaction complained of, complaining party was a shareholder). Second, Ebersol received authority to enter the Oral Agreement from the ESMG Board of Directors. ECF 427 ¶¶ 109, 119. Finally, Ebersol had apparent authority [ECF 427 ¶¶ 689-692], which is sufficient to make the Oral Agreement enforceable against Dundon. *See* 2 Williston on Contracts § 35:13 (4th ed.) (quoting Restatement (Third) Of Agency § 2.03 (2006)) ("when an agent acting with apparent authority enters into a contract with a third party that purports to bind the principal, the principal may enforce the contract against the third party . . . The third party, by entering into the contract, has manifested assent to be bound by its terms to the principal.").

***Dundon's attempts to walk back his Oral Agreement breached good faith***. The duty of good faith and fair dealing prevents one party from "injur[ing] the right[] of the other party to receive[] the benefits of the agreement." *Aetna Cas. & Sur. Co. v. Marshall*, 699 S.W.2d 896, 901 (Tex. App.—Houston [1st Dist.] 1985), *aff'd*, 724 S.W.2d 770 (Tex. 1987). Dundon exercising his control to cause the AAF to "ratify" the Term Sheet and thus prevent the AAF from enjoying the benefit of its $250 million deal is precisely such a breach.

***Defendants committed fraud or negligent misrepresentation***. Defendants rely on *In re Verestar, Inc.* to contend the Trustee disguised its fiduciary duty claims as fraud and misrepresentation claims to circumvent the exculpatory provision in ESMG's articles of incorporation. ECF 428 ¶ 373 (citing 343 B.R. 444, 477 (Bankr. S.D.N.Y. 2006)). The *Verestar* court reviewed Delaware law and presumed deepening insolvency would not be considered an independent tort or, even if it were, it would equate to a claim for breach of the duty of care. 343 B.R. at 475-76. Here, Texas law applies; fraud by non-disclosure is a well-established cause of action. And fraud by non-disclosure is not subject to exculpation under either ESMG's articles of incorporation or Delaware General Corporations Law § 102(b)(7). Moreover, Trustee does

not allege the fraud merely deepened the AAF's insolvency, but actually caused its failure, a fact pattern *Verestar* does not address.

***The evidence that supported actual reliance at MSJ was presented at trial***. Trustee's prior briefing and cited evidence (which evidence came in at trial), supports a finding of justifiable reliance. ECF 427 ¶¶ 466-67 and ECF 196 at 19-23.

***Ebersol was not faced with any red flags***. The Court noted, "[t]he main red flag here was that all parties knew the league was in dire need of funding to maintain operations." Adv. 22-05077, ECF 171 at 19. The AAF's need for funding says nothing about the condition of Dundon or DCP and is not a red flag for Ebersol. Defendants assert the Term Sheet negates reliance. ECF 428 ¶ 381. However, (1) Dundon expressly told Ebersol the Term Sheet was the first part of the Oral Agreement [ECF 427 ¶¶ 129-130] and (2) the Term Sheet is not inconsistent with the Oral Agreement. *See* ECF 427 ¶ 660.

***Trustee adequately disclosed the damages sought in this case***. Defendants' re-urged argument regarding insufficient disclosure [ECF 428 ¶¶ 334-345[18]] should be rejected based on the same arguments (incorporated herein) and for the same reasons the Court ruled at trial. *See* **Day 14, 47:25-60:9** (arguing (1) Ms. Desai's report was timely served and fully disclosed the bases for her opinions, (2) she was deposed, and (3) opposing expert offered a rebuttal).[19]

***Defendants waived objection to other damages evidence***. *U.S. v. Maddox*, 492 F.2d 104, 107 (5th Cir. 1974). For instance, evidence was admitted without objection that proves Defendants' failure to fund even $70 million. *See* ECF 427 ¶¶ 337 (deemed investment), 338

---

[18] Defendants concede Trustee adequately disclosed expectancy damages and one of Ms. Desai's enterprise value measures but not the other. ECF 428 ¶¶ 334-345.

[19] ***Supplementation of disclosures was not required***; "the additional or corrective information was otherwise made known to the other parties during the discovery process or in writing[.]" FED. R. CIV. P. 26(e)(1)(A).

(PwC costs), 341 (Bracewell Costs).

**Defendants waived any Daubert challenges to Ms. Desai's testimony** by failing to make bring such a challenge per the scheduling order. *Great Am. Ins. Co. of New York v. Midland Chin Baptist Church*, No. MO:20-CV-25, 2022 WL 18046718, at *3 (W.D. Tex. Feb. 3, 2022).

**Proving causation does not require Ms. Desai's testimony**. *Beard Research, Inc. v. Kates*, 8 A.3d 573, 613–14 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010) (damages expert generally not responsible for proving causation); *see also Delashaw v. Seattle Times Co.*, No. C18-0537JLR, 2020 WL 6375878, at *2 and n. 3 (W.D. Wash. Oct. 30, 2020) (where expert was designated only for damages, not excluded on causation issues). Defendants' argument Ms. Desai improperly failed to consider causation is not supportable. ECF 428 ¶ 217 (citing no legal authority). The trial record shows the AAF failed because Dundon ensured the AAF would never receive the funding it needed to continue operation, whether from Dundon or any other funding source. ECF 427 ¶¶ 291-98 (despite AAF projections clearly showing needs for funds in excess of $70 million), 346-351, 355 (Dundon refused to provide even relatively small amounts to preserve going-concern value in chapter 11), and 316-331 (Dundon refused other investments and shutdown revenue sources like "FANchises").

**Trustee was not required to establish the AAF would have been better off if Dundon had not involved himself**. *Contra* ECF 428 ¶ 217. Dundon did not save the AAF.[20] But even if he had, Defendants offer no authority for the proposition that, once he had done so, he became immune from liability for then destroying it himself. Defendants provided no valuation evidence

---

[20] The testimony consistently shows that, pre-Dundon, the AAF had options for investment capital and loans, including for emergency needs like the one on February 13-14, 2019, other than Dundon. ECF 427 ¶ 103.

whatsoever.

***Ms. Desai was not required to parse damages by defendant because their tortious acts produced an indivisible injury and thus should be held jointly and severally liable***. *Landers v. E. Tex. Salt Water Disposal Co.*, 248 S.W.2d 731, 734 (1952); *see also, e.g.*, *Basho Techs. Holdco B, LLC v. Georgetown Basho Inv'rs, LLC*, No. CV 11802-VCL, 2018 WL 3326693, at *45, 50-51 (Del. Ch. July 6, 2018), *aff'd sub nom. Davenport v. Basho Techs. Holdco B, LLC*, 221 A.3d 100 (Del. 2019) (awarding joint and several recovery for breaches of fiduciary duty).

***Whether an amount is classed as debt or equity was not material to the determination of enterprise value***.[21] Defendants complain that Ms. Desai included certain equity amounts as "debt" in her calculation of enterprise value because certain types of equity often appear as debt on balance sheets. ECF 428 ¶ 224. But Ms. Desai also testified "enterprise value" is the equity value of a business plus its debt (minus cash on hand). *See* ECF 427 ¶ 80. Because debt and equity are added to determine enterprise value, whether an amount is counted as debt or equity should not impact the business's value.

***Use of subject-company transactions for the "market approach" analysis was appropriate***. These transactions were the best available source of information for the value of the AAF as of February 13, 2019, as startups like the AAF are "inherently difficult to find comparables for." *See* ECF 427 ¶¶ 42, 45; *Huff Fund Inv. P'ship v. CKx, Inc.*, No. CV 6844-VCG, 2013 WL 5878807, at *11 (Del. Ch. Nov. 1, 2013) ("In the absence of comparable companies or transactions to guide a comparable companies analysis or a comparable

---

[21] Even if the Court were persuaded that some portion of the debt should not have been counted, the Court has the necessary information to avoid any potential overcompensation by simply not counting the entire portion attributed to debt, thereby avoiding any excess compensation and resulting in damages equal to the equity value of $115 million. ECF 427 ¶¶ 58, 82.

transactions analysis . . . [the Court relies] on the merger price as the best and most reliable indication of CKx's value.").

The 32 Equity term sheet—one of two transactions Ms. Desai weighted in her February 13, 2019 value—was a binding agreement. ECF 427 ¶¶ 58, 82. The AAF, on the one hand, and 32 Equity, LLC, on the other, agreed that as of the date of January 30, 2019, AAF shares were worth what they had been valued under the Fowler Term Sheet, reflecting a pre-money valuation of $115 million. *See* ECF 427 ¶ 82. Whether shares were purchased does not support Defendants' criticism of Ms. Desai's reliance on the agreement. *See* ECF 428 ¶ 223 (citing no authority). Experts appropriately use even unsigned agreements and unaccepted offers for valuation purposes, especially where the offeror is "identified" and "sophisticated" and has the type of qualifications one would expect of someone valuing the thing to be acquired. *See Levy v. United States*, 402 Fed. Appx. 979, 982 (5th Cir. 2010). And here, the 32 Equity transaction adopted the same value as the other subject-company transaction Ms. Desai weighted (Fowler). *See* ECF 427 ¶ 82.

Defendants' criticism of the Fowler agreement as unreliable due to alleged changes between November 2018 and February 2019 [ECF 428 ¶ 223] ignores evidence of other third-party valuations that continued to show a high market value. **Day 14, 71:10-82:24, Tr. Ex. 600d.0005**. Indeed, Ms. Desai considered these other valuations (dated before and after the Dundon agreement), finding they supported a $115 million valuation (even if ultimately not weighted). **Day 14, 94:8-20** (*e.g.*, bona fide offer with $165 million valuation after the valuation date). Ms. Desai's February 13, 2019 valuation was appropriately supported. *See Huff Fund Inv.*

*P'ship*, 2013 WL 5878807 at *11 (relying on single merger price as evidence of value).[22]

***Ms. Desai's reliance on AAF projections for her April 2, 2019 valuation was proper***. The AAF's projections were in an early state of development and natural flux, but Ms. Desai relied on an iteration that had been developed with heavy input from Defendants. **Day 14, 226:19-227:4.** Defendants' authorities that attack reliance on projections that have inherent (and proven) unreliability[23] are therefore distinguishable, as Defendants helped design the projections and Defendants killed the league before the projections could be fully vetted or tested.

***Trustee's damages do not need to be proved with precision***. Trustee need only present sufficient evidence to provide a "reasonable basis for estimating" or a "[r]esponsible estimate[]" of the damages. *Hindman v. Tex. Lime Co.*, 305 S.W.2d 947, 953 (1957) (reasonable basis); *In re TransCare Corp.*, No. 20-CV-06274 (LAK), 2021 WL 4459733, at *12 (S.D.N.Y. Sept. 29, 2021), *aff'd*, 81 F.4th 37 (2d Cir. 2023) (responsible estimate).

***Punitive damages <u>are</u> available for breach of fiduciary duty under Delaware law.*** Chancery court does not award punitive damages in Delaware because it is a court of pure equity. This Court is not. The court in *Extended Stay* answers in the affirmative the question of whether a bankruptcy trustee, before a court sitting in both law and equity, can seek fiduciary duty damages under Delaware law. *See In re Extended Stay, Inc.*, No. 09-13764-JLG, 2020 WL 10762310, at *121 (Bankr. S.D.N.Y. Aug. 8, 2020); *c.f. In re Calhoun*, 92 B.R. 686, 687 (Bankr. W.D. Tex. 1987) (bankruptcy courts sit in law and equity).

---

[22] Defendants' argument that Ms. Desai should have used the implicit valuation reflected in the Term Sheet [ECF 428 ¶ 223] fails; what Dundon and the AAF agreed to was in dispute. *See* ECF 427 ¶ 46.

[23] ECF 428 ¶ 355 (citing, *e.g.*, *In re Nine Sys. CorporationShareholders Litig.*, No. CIV.A. 3940-VCN, 2014 WL 4383127, at *42 (Del. Ch. Sept. 4, 2014), *aff'd sub nom. Fuchs v. Wren Holdings, LLC*, 129 A.3d 882 (Del. 2015)).

Dated: July 21, 2025　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Katharine Battaia Clark*
　　　　　　　　　　　　　　　　　　　**Nicole L. Williams** (SBN 24041784)
　　　　　　　　　　　　　　　　　　　**Katharine Battaia Clark** (SBN 24046712)
　　　　　　　　　　　　　　　　　　　**THOMPSON COBURN LLP**
　　　　　　　　　　　　　　　　　　　2100 Ross Avenue, Suite 3200
　　　　　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　　　　　Phone: (972) 629-7100
　　　　　　　　　　　　　　　　　　　Fax: (972) 629-7171
　　　　　　　　　　　　　　　　　　　nwilliams@thompsoncoburn.com
　　　　　　　　　　　　　　　　　　　kclark@thompsoncoburn.com

　　　　　　　　　　　　　　　　　　　- and -

　　　　　　　　　　　　　　　　　　　**Boris Treyzon** (CA SBN 18893)
　　　　　　　　　　　　　　　　　　　Admitted *Pro Hac Vice*
　　　　　　　　　　　　　　　　　　　**Jonathon Farahi** (CA SBN 324316)
　　　　　　　　　　　　　　　　　　　Admitted *Pro Hac Vice*
　　　　　　　　　　　　　　　　　　　**ABIR COHEN TREYZON SALO, LLP**
　　　　　　　　　　　　　　　　　　　16001 Ventura Boulevard, Suite 200
　　　　　　　　　　　　　　　　　　　Encino, California 91436
　　　　　　　　　　　　　　　　　　　Phone: (424) 288-4367
　　　　　　　　　　　　　　　　　　　Fax: (424-288-4368
　　　　　　　　　　　　　　　　　　　btreyzon@actslaw.com
　　　　　　　　　　　　　　　　　　　jfarahi@actslaw.com

　　　　　　　　　　　　　　　　　　　- and -

　　　　　　　　　　　　　　　　　　　**Brian S. Engel** (SBN 00789279)
　　　　　　　　　　　　　　　　　　　**Steve P. Turner** (SBN: 20341700)
　　　　　　　　　　　　　　　　　　　**BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP**
　　　　　　　　　　　　　　　　　　　580 La Ventana Blvd.
　　　　　　　　　　　　　　　　　　　Driftwood, Texas 78619
　　　　　　　　　　　　　　　　　　　Phone: (512) 687-2503
　　　　　　　　　　　　　　　　　　　Fax: (512) 477-0008
　　　　　　　　　　　　　　　　　　　brianen@bdfgroup.com
　　　　　　　　　　　　　　　　　　　stevet@bdfgroup.com

　　　　　　　　　　　　　　　　　　　**ATTORNEYS FOR PLAINTIFF**
　　　　　　　　　　　　　　　　　　　**RANDOLPH N. OSHEROW,**
　　　　　　　　　　　　　　　　　　　**CHAPTER 7 TRUSTEE, DEBTORS' ESTATE**

## CERTIFICATE OF SERVICE

      I hereby certify that, on July 21, 2025, a true and correct copy of the foregoing document was served to the below listed parties via electronic means as listed on the Court's ECF noticing system or by electronic mail.

***VIA EMAIL***
Brent D. Hockaday
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
brent.hockaday@klgates.com

***VIA EMAIL***
Jeffrey S. Lowenstein
Beverly A. Whitley
Gwen I. Walraven
Brent A. Turman
Laura K. Lavernia
**BELL NUNNALLY & MARTIN LLP**
2323 Ross Ave., Suite 1900
Dallas, TX 75201
jlowenstein@bellnunnally.com
bwhitley@bellnunnally.com
gwalraven@bellnunnally.com
bturman@bellnunnally.com
llavernia@bellnunnally.com

**ATTORNEYS FOR DEFENDANTS**

                        */s/ Katharine Battaia Clark*
                        Katharine Battaia Clark