

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 23, 2025.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 19-50900-cag |
| LEGENDARY FIELD EXHIBITIONS, | § | |
| LLC, et al., | § | Chapter 7 |
| Debtors. | § | |

| | | |
|---|---|---|
| RANDOLPH N. OSHEROW, Chapter 7 | § | |
| Trustee for the Bankruptcy Estates of | § | |
| Legendary Field Exhibitions, LLC, et al., | § | |
| | § | |
| Plaintiff, | § | Adversary No. 22-05078-cag |
| | § | |
| v. | § | |
| | § | |
| THOMAS DUNDON; JOHN ZUTTER; | § | |
| and DUNDON CAPITAL PARTNERS, LLC | § | |
| | § | |
| Defendants. | § | |

### ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF DENIAL OF MOTION TO STRIKE CERTAIN TESTIMONY OF DEFENDANTS' EXPERT ERICA BRAMER (ECF NO. 399)

Came on to be considered Plaintiff Randolph N. Osherow's ("Trustee" or the "chapter 7 trustee") Motion for Reconsideration of Denial of Motion to Strike Certain Testimony of

1

Defendants' Expert Erica Bramer (ECF No. 399) ("Motion") and Defendants Thomas Dundon, John Zutter, and Dundon Capital Partners, LLC's Response ("Response") (ECF No. 425).[1] Trial on Plaintiff's First Amended Complaint (ECF No. 56) and the consolidated bankruptcy estates of Legendary Field Exhibitions, LLC ("LFE"); AAF Players, LLC ("AAF Players"); AAF Properties, LLC ("AAF Properties"); Ebersol Sports Media Group, Inc. ("ESMG"); LFE 2, LLC ("LFE 2"); and We Are Realtime, LLC ("Realtime") (collectively "Debtors" ) was heard on April 14, 15, 16, 17, 21, 22, 23, 24, 29, and 30; May 1, 28, 29, and 30; and June 2, 3, 4, 5, and 6, 2025.

During the trial, Trustee objected to certain components of Defendants' expert witness testimony of Erica Bramer ("Bramer") because Trustee argues that Bramer's testimony exceeded the scope of her Rule 26(a) disclosures and that her testimony exceeded what she was designated to provide expert testimony. Trustee notes that on June 6, 2025, the last day of presentation of evidence in the trial of this matter, Defendants offered testimony from their expert Erica Bramer. Trustee argues that Ms. Bramer testified to the matters on which she had not been disclosed and offered testimony on matters on which she had only been disclosed as an expert in another case. Also, Bramer included in her testimony new facts, figures, and opinions based on information gleaned after her deposition, but which was never disclosed to Trustee. Trustee argues this testimony on previously undisclosed matters should be stricken.

The Court addressed these arguments during trial, finding that the Trustee had sufficient notice about Ms. Bramer's testimony and that under the Federal Rules of Civil Procedure, the objections were not well taken. Trustee asserts some of the same arguments herein and adds additional authority supporting Trustee's contentions that the Court should reconsider its prior

---

[1] "ECF" denotes electronic filing docket number in Adversary No. 22-05078-cag unless otherwise indicated. Unless otherwise indicated, Defendants refers to Thomas Dundon, John Zutter, and Dundon Capital Partners, LLC ("DCP").

ruling and strike parts of Ms. Bramer's testimony. The Court has carefully considered Trustee's arguments (again) and for the reasons stated herein, the Court **DENIES** the Motion.

## JURISDICTION

This Court has subject matter jurisdiction over the First Amended Complaint pursuant to 28 U.S.C. § 1334(b). Trustee's claims are core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (C), (H), and (K). Venue is proper under 28 U.S.C. §§ 1408 and 1409. Plaintiff and Defendants consent to a final order or judgment in this Adversary Proceeding.[2] This matter is referred to this Court pursuant to the District Court's Order of Reference.

## BACKGROUND

This case arises from the creation and dissolution of an alternative professional football league called the Alliance of American Football ("AAF"). According to Plaintiff's First Amended Complaint, the idea for the AAF was first conceived in 2017 by Charles "Charlie" Ebersol and others as a developmental football league for highly touted collegiate players and former NFL players to gain exposure and garner interest from NFL teams.

Initially, the AAF had financial backing from Reginald Fowler, a former part owner of the Minnesota Vikings of the NFL. During the pendency of the AAF's first season, Fowler's investment commitment fell through because of accusations of financial crimes against him. In the market for new investors, Ebersol, on behalf of the AAF engaged Erik Anderson[3] about potential investment. The First Amended Complaint alleges that Anderson, instead of investing in AAF himself, told Thomas Dundon[4] about the investment opportunity. Dundon called Ebersol to discuss

---

[2] Joint Pre-Trial Order (ECF No. 300 ¶ 9).
[3] According to the Complaint, Erik Anderson owned a large stake in Top Golf with Defendant Dundon. (ECF No. 1 ¶¶ 50–51).
[4] Dundon has had several successful business ventures such as Santander, Top Golf, and Carvana; but he is now known for his ownership of a NHL hockey team, the Carolina Hurricanes.

the details of a potential Dundon investment in AAF.

The First Amended Complaint alleges that Ebersol and Dundon agreed that Dundon would provide $250 million to fund the AAF for the rest of the first season and beyond. There is no written document evidencing that both parties entered a term sheet; only Ebersol's signature appears on any of the versions of the term sheet that formed the basis of the Dundon commitment and investment. Plaintiffs allege that Dundon made several public statements confirming his intention to invest $250 million in the AAF for the first year and beyond.

Throughout the following weeks, Dundon—as sole manager of DDFS Partnership, LP— wired a total of $69,719,190 to the AAF. The First Amended Complaint states that this amount was not sufficient to keep the AAF operating, and that the success of the league was dependent on the full $250 million commitment from Dundon. Despite this, Dundon purportedly received calls from interested investors, but declined to accept new funding. Dundon was allegedly unhappy with how the AAF operated and began implementing cost-saving measures. After purportedly laying off employees and declining to fund marketing efforts, Dundon allegedly directed his business associate John Zutter to engage bankruptcy counsel for the AAF.

The AAF and its associated debtor corporate entities filed for chapter 7 bankruptcy protection on April 17, 2019. All the entities' bankruptcy cases were consolidated. Randolph Osherow was appointed the Trustee to administer the consolidated debtors' estates. This adversary was initiated on November 14, 2022, with the filing of the Original Complaint. (ECF No. 1).

### PROCEDURAL HISTORY

After the bankruptcy cases were filed on April 17, 2019, a Motion for Substantive Consolidation was filed on May 9, 2019.[5] During the initial stages of the consolidated cases, the

---

[5] (Bankruptcy No. 19-50900-cag, ECF No. 34). An Order substantively consolidating the bankruptcy cases was entered on July 8, 2019. (ECF No. 150).

Trustee had the difficult task or locating, storing, and selling personal property. The AAF teams (there were eight teams) were owned by the AAF and its investors; as such, any equipment, uniforms, big screen tvs, and cameras were league owned and had to be collected and organized for liquidation.[6] Accounting and management functions were controlled by the AAF. As such, AAF conducted team operations and was responsible for all facets of a team's operations.

### *Dundon Capital Partners v. Charles Ebersol,* **Adversary No. 22-05077-cag**

Tom Dundon and his entities, the chapter 7 trustee, and Charlie Ebersol initiated litigation against one another. In Adversary No. 22-05077-cag, DCP asserted that Ebersol made material representations to DCP to induce DCP to invest in the AAF and omitted materials facts regarding the AAF's finances. DCP pled claims for fraudulent inducement; violations of the Texas Securities Act; and violations of the Texas Business and Commerce Code for false promises and representations. When the instant adversary (22-05078-cag) was filed, the parties recognized that many of the operative facts for both adversaries were the same. As such, the parties worked collaboratively to conduct discovery for both adversary proceedings. Both adversary proceedings tracked through the same litigation process using the same scheduling order in both cases.[7] The parties then agreed to consolidate Adversary Nos. 22-05077-cag and 22-05078-cag for a joint trial.[8]

Defendant Ebersol moved for summary judgment in Adversary No. 22-05077-cag arguing that DCP lacked standing to pursue claims against Ebersol because (1) DCP did not loan the money

---

[6] Bankruptcy No. 19-50900-cag, App. to Employ Robert Parker as Collector, (ECF No. 36) and Order approving same (ECF No. 80); App. to Employ Liquidator FLS Auction, Inc. to Sell Football Equipment (ECF No. 45) and Order approving same (ECF No. 82). Trustee's Report of Sale stated that the football equipment sold for $455,000.00. (ECF No. 156).

[7] *See Dundon Cap. Part. v. Charles Ebersol* Adversary No. 22-05077-cag, Agreed Scheduling Order (ECF No. 50) and Modified Agreed Scheduling Order (ECF No. 57).

[8] Adversary No. 22-05077-cag, Joint Mot. to Consolidate Actions for Joint Trial (ECF No. 85) and Ct.'s Order Granting (ECF No. 88)

to ESMG and did not suffer an injury in fact; (2) that DCP did not suffer any damages because of Ebersol's alleged misconduct because DDFS loaned the money to ESMG; (3) that there are no statutory and securities fraud claims because no stock was sold or conveyed to DCP; and (4) that there was no competent summary judgment evidence to support DCP's fraud claims.[9] Based on the competent summary judgment evidence or lack thereof, the Court found that under Delaware law, DCP's failure to sign the term sheet resulted in no binding written contract such that DCP had no standing to pursue this case.[10] Second, there was insufficient evidence to raise an issue of material fact on the issue of injury in fact for consideration of DCP's standing at trial. Rather, the uncontradicted evidence shows DDFSP paid ESMG and DDFSP took the loss, not DCP. Therefore, the Court found DCP lacked an injury in fact under Article III of the Constitution.[11]

## PROCEDURAL HISTORY–ADVERSARY NO. 22-05078

The Trustee filed his original complaint on November 14, 2022, alleging 17 claims for relief.[12] Defendants filed their motion to dismiss, seeking dismissal of all claims.[13] After extensive briefing, the Court granted in part, and denied in part, Defendants' Motion to Dismiss.[14] Trustee then filed his First Amended Complaint on November 27, 2023.[15] Defendants timely filed their First Amended Answer and affirmative defenses on December 22, 2023.[16] There were multiple discovery disputes and requests for protective orders to preclude publishing alleged sensitive or confidential information during the discovery period.

---

[9] (ECF No. 101).
[10] (ECF No. 71, at 7–13).
[11] (ECF No. 71, at 15–16).
[12] (ECF No. 1).
[13] (ECF No. 18).
[14] (ECF No. 54). The Court denied the motion to dismiss as to some claims, allowed repleading on other claims, and dismissed one count with prejudice. As to the claims that were subject to further amendment, the Court granted Plaintiffs 14 days to replead or those claims would be dismissed with prejudice.
[15] (ECF No. 56).
[16] (ECF No. 63).

In late 2024, at the close of discovery and dispositive motions, Defendants timely filed their motions for summary judgment.[17] Additionally, the parties objected to each other's summary judgment evidence. After disposing of all the objections to each party's summary judgment evidence, the Court held a hearing on Defendants' summary judgment motions on February 4, 2025. The Court denied both motions.[18] After roughly two and a half years from the filing of the original complaint, dozens of pretrial motions filed and considered, and several summary judgment motions considered and denied, this Adversary Proceeding proceeded to trial on April 14, 2025; taking 21 days to try and argue over a period of 78 calendar days.

### THE DISCOVERY PROCESS

Plaintiff's expert disclosures were due in both matters on December 2, 2024.[19] Defendants' disclosures were due on December 31, 2024.[20] On December 2, 2024, Dundon Capital Partners LLC ("DCP") served its expert disclosures in the 5077 Matter (the "5077 Disclosures") via an email with the subject line: "Adversary No.; 22-05077-cag-7; *In Re: Legendary Field Exhibitions, LLC; Dundon Capital Partners LLC v Charles Ebersol*."[21] Trustee states that while the 5077 Disclosures were served on counsel of record for both Adversary Proceedings (22-05077-cag and 22-05078-cag), these disclosures were only made with respect to the 5077 Matter, with a header referring only to that matter.[22] Trustee's counsel believed that the 5077 Disclosures, including the attached December 2, 2024 report of Erica Bramer (the "5077 Report"), were only for the 5077 Matter.[23]

Defendants DCP, Dundon, and Zutter made their expert disclosures (the "5078

---

[17] Dundon and DCP filed their motion jointly. (ECF No. 173). Zutter filed his individually. (ECF No. 175).
[18] (ECF Nos. 292 & 281).
[19] (ECF No. 165-1, at 2).
[20] *Id*.
[21] Decl. of B. Engel, (ECF No. 399, Ex. A, ¶ 2).
[22] The 5077 Disclosures, (ECF No. 399, Ex. A-2).
[23] (ECF No. 399, Ex. A, ¶¶ 2–4; Ex. A-2).

Disclosures") on December 31, 2024.[24] Trustee maintains that these disclosures were for rebuttal experts and did not attach the 5077 Report. Moreover, these were the first (and only) expert disclosures made by Defendants in the 5078 Matter.[25] Trustee states that the 5078 Report does not contain the opinions included in the 5077 Report, although Trustee admits that the 5078 Report briefly refers to the earlier report.[26] That said, Trustee posits that the 5078 Report does not state that Ms. Bramer is incorporating the 5077 Report and addresses different topics. Trustee observes the 5078 Disclosures (but not the 5078 Report) contain a footnote purporting to incorporate by reference the 5077 Report only on behalf of DCP; however, the earlier report was not served with the 5078 Disclosures, did not rebut opinions rendered by Ms. Desai (Plaintiffs' expert), and gave no indication of or basis for a late-served disclosure of an affirmative expert witness for Defendants in the 5078 Matter.[27]

In addition, Trustee disputes Defendants' assertion that Ms. Bramer did not have access to the Debtors' QuickBooks files sufficiently before her February 19, 2025, deposition.[28] In fact, Trustee argues Defendants had full access to QuickBooks as of January 21, 2025, and digital records confirm Defendants immediately accessed the files, which was several weeks before Ms. Bramer's deposition.[29] On February 17, 2025, two days before Ms. Bramer was deposed, Defendants indicated their access to the QuickBooks materials had been interrupted.[30] Counsel for Trustee identified the problem and restored access to Defendants on that same day.[31] Trustee argues that at no time prior to trial did Defendants supplement their Initial Disclosures or their

---

[24] (ECF No. 399, Ex. A-3).

[25] (ECF No. 399, Ex. A-3). Defendants' 5078 Disclosures included Ms. Bramer's December 31, 2024, Report.

[26] *Compare* Ex. A-3 (Exhibit 1) *with* Ex. A-2 (Exhibit A).

[27] (ECF No. 399, Ex. A-3). Footnote 2 states that "Dundon Capital Partners, LLC also expressly incorporates by reference the Expert Report of Erica Bramer, CFA, CVA, CIRA dated December 2, 2024."

[28] Excerpts of Trial Test. from June 6, 2025, (ECF No. 399, Ex. B lns. 26:11–27:21).

[29] (ECF No. 399, Ex. A, ¶ 13).

[30] (ECF No. 399, Ex. A, ¶ 14).

[31] *Id.*

expert designations.

## DISCUSSION

Rule 26(a)(2)(B) requires that a party offering testimony from a retained expert must disclose "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B). Rule 26(e)(1)(A) requires that a party must supplement disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete . . . ." FED. R. CIV. P. 26(e)(1)(A). If the Court finds that Rule 26 was not complied with, then, under Rule 37, the Court should "strike the evidence 'unless the failure was substantially justified or is harmless.'" *Fracalossi v. MoneyGram Pension Plan*, No. 3:17-CV-00336, 2021 WL 5505604, at *13 (N.D. Tex. Nov.24, 2021); *see also* FED. R. CIV. P. 37(c)(1). The "Court looks to four factors in deciding whether to exercise its discretion" to exclude an expert witness for failure to comply with Rule 26(a)(2): "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Fracalossi*, 2021 WL 5505604, at *13. "Generally, the burden of proving substantial justification or harmlessness is on the nondisclosing party." *La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844, 2024 WL 4344471, at *6 (W.D. Tex. Apr. 29, 2024) (quoting *Hovanec v. Miller*, 331 F.R.D. 624, 637 (W.D. Tex. 2019)).

In determining whether Defendants complied with Rule 26 as to the 5077 Report, the Trustee says the Court must determine if (1) serving a copy of the report as an exhibit to expert disclosures only offered in the 5077 Matter (to which Trustee and Defendants Dundon and Zutter were not parties) via an email referring only to the 5077 Matter, and (2) purporting to incorporate

that 5077 Report via footnote into its 5078 Disclosures (i) after the affirmative expert deadline in the 5078 Matter, (ii) not in rebuttal to Ms. Desai's opinions, and (iii) without attaching the 5077 Report, constitutes a proper disclosure of expert testimony under Rule 26.

Further, Trustee argues Defendants had unrestricted access to AAF's QuickBooks files by January 21, 2025.[32] Trustee's counsel affirmed that Defendants accessed those files that same day.[33] Previously, Trustee had provided relevant reports and information pulled from the QuickBooks account in discovery; rather than contest whether full and unrestricted access to the QuickBooks account was overbroad, Trustee provided such access to Defendants when it was requested.[34]

Defendants' argue that because Trustee knew that Ms. Bramer had the QuickBooks materials and was reviewing them, Defendants were not required to timely disclose any new testimony based on that information. This is inconsistent with the law. Moreover, Defendants might have had a reasonable excuse for failing to supplement Ms. Bramer's opinions and testimony after the close of discovery if Defendants had promptly disclosed any new testimony following Ms. Bramer's QuickBooks review. That said, Trustee argues Defendants did not disclose that testimony until Ms. Bramer was on the stand at trial, four and a half months after she had received the information that formed the basis of this new testimony. Therefore, Ms. Bramer disclosures were not timely supplemented. As to the 5077 Report, the Trustee was denied the opportunity to designate and prepare rebuttal opinion testimony in the 5078 Matter.

As to both the 5077 Report and the QuickBooks testimony, Trustee's counsel argues that they did not come to trial prepared to examine Ms. Desai or cross-examine Ms. Bramer on these

---

[32] (ECF No. 399, Ex. A ¶ 13.5).
[33] *Id.* ¶ 13.
[34] *Id.*

matters.[35] Trustee's counsel was therefore unfairly surprised by the testimony. The Trustee argues that this unfair surprise is prejudicial under Rule 37. ***Nichols v. United States***, No. MO:19-CV-001, 2020 WL 6597538, at *3 (W.D. Tex. Apr. 8, 2020) (finding inadequate disclosure that affected trial preparations of other party was prejudicial); ***Hernandez v. Swift Transp. Co., Inc.***, No. SA-09-CV-855, 2010 WL 2545597, at *3 (W.D. Tex. June 22, 2010) (holding late disclosure that would undermine expert rebuttals based on prior report was prejudicial).

Defendants note in their Response that Trustee's deadline to file *Daubert* motions was January 13, 2025.[36] During trial on June 6, 2025, the Trustee made two separate oral motions to strike Bramer's testimony related to (1) the undisclosed league liabilities as of February 13, 2019, and (2) information obtained from QuickBooks.[37] The Court denied both motions.[38] The Court permitted the Trustee to submit briefing on the QuickBooks issue to preserve it for the record.[39] The Trustee did not take any action prior to trial to raise these issues. Instead, Defendants argue the Trustee waited until Bramer's testimony at trial to make a motion and now seeks reconsideration of that motion. Defendants state that both the oral motions and this Motion are untimely pursuant to the Parties' Stipulation and should be denied.[40]

The Trustee argues that Bramer disclosed her opinions regarding her calculation of the AAF's liabilities as of February 13, 2019, in Adversary Proceeding No. 19-05078 as a rebuttal expert witness.[41] In support of this argument, Trustee incorrectly states that Adversary Proceeding Nos. 19-05078 and 22-05077 "have at all times remained substantively separate."[42] Defendants

---

[35] (ECF No. 399, Ex. A ¶¶ 11, 16).
[36] (ECF No. 165-1 at 2).
[37] (ECF No. 425, Ex. F lns. 6:22–16:2; 50:13–21.1).
[38] (ECF No. 425, Ex. F lns. 16:3–8; 52:7–10).
[39] (ECF No. 425, Ex. G lns. 6:19–8:8.2).
[40] (ECF No. 165-1).
[41] (ECF No. 399 at 2–3).
[42] *Id.* at 1.

argue the Joint Agreed Motion to Enter Scheduling Order dated January 31, 2024 in Adversary Proceeding Nos. 19-05078 and 22-05077 consolidated the cases for pre-trial purposes.[43] The Scheduling Order states that the Parties "conferred in good faith and reached an agreement concerning the coordinated conduct of pretrial proceedings" and agreed to "consolidate the pretrial discovery" as to the two Adversary Proceedings.[44] Therefore, the parties conducted discovery in a consolidated manner. All witnesses were deposed simultaneously by all parties in both Adversary Proceedings. Discovery responses were always served on counsel for all parties in both Adversary Proceedings. The Trustee's contention that pre-trial matters were "substantively separate" is inaccurate as to how discovery was conducted.

Defendants state on December 31, 2024, Defendants also designated Bramer as a rebuttal expert witness pursuant to Rule 26 and served Bramer's expert rebuttal report, dated December 30, 2024. In the December 31 designations, Defendants designated Bramer as an expert witness opining on the flaws in Sonia Desai's and Joseph Petrucelli's reports.[45] Notably, Bramer incorporates the findings of her December 2 report in her December 30 report. In her December 30 report, Bramer explicitly references her December 2 report and summarizes her findings from the December 2 report relating to the undisclosed liabilities that existed as of February 13, 2019.[46] Defendants argue that they properly disclosed Bramer as an expert witness that would proffer affirmative testimony as to Defendants' fraud defense.

In addition, Defendants note that Bramer's December 2 and December 30 reports include both Adversary Proceeding case styles on the first page. Both were served to all parties in both matters, including the Trustee. On February 19, 2025, Bramer was deposed in both Adversary

---

[43] (ECF No. 66).
[44] (ECF No. 66-1 at 1).
[45] (ECF No. 425, Ex. B at 3–4).
[46] (ECF No. 425, Ex. C ¶ 1).

Proceedings at the same time. During the deposition, the Trustee's counsel extensively questioned Bramer. Bramer was questioned about both of her reports.[47] Defendants argue Trustee was aware of Bramer's affirmative and rebuttal designations, as well as the opinions in both of her reports, and had adequate opportunity to question her regarding those opinions.

The Court finds that Bramer is also included, without objection, in the Parties' Joint Pretrial Order. Her proposed testimony is described as follows:

> Concise statement of proposed testimony: Ms. Bramer is the Managing Partner of BVA Group, a business consulting advisory firm. Ms. Bramer will testify in rebuttal to Ms. Desi and Mr. Petrucelli relating to their opinions on the value of the League, the calculation of damages related to the alleged breach by DCP of the Term Sheet, and Dundon's ability to fund the alleged $250 million oral agreement. Ms. Bramer will also testify concerning the financial obligations of the league as of February 13, 2019, and the impossibility of $70 million being sufficient to complete the 2019 season following DCP's investment.[48]

During the June 6, 2025, day of trial, the Court recognized that the description of Bramer's proposed testimony referenced both her affirmative opinions as to Defendants' fraud defense (*i.e.,* "the financial obligations of the League as of February 13, 2019, and the impossibility of $70 million being sufficient") and her rebuttal opinions (*i.e.,* "in rebuttal to Ms. Desai and Mr. Petrucelli relating to their opinions on the value of the League"). Defendants argue that they sufficiently disclosed Bramer in both Adversary Proceedings as to her opinions in both the December 2 and December 30 reports. Based on these disclosures, the Court concluded during the trial on June 6, 2025, that there was no prejudice or surprise to Trustee in allowing Bramer's testimony at trial concerning the AAF's liabilities on February 13, 2019.

In her December 30 report, Bramer also refers to QuickBooks access in rebuttal to Desai's opinion that $37.8 million should be added to the value for the February 13, 2019, valuation of the

---

[47] (ECF No. 425, Ex. H at 3–4).
[48] (ECF No. 300 at 142).

AAF. Specifically, Bramer states that "Ms. Desai's sole support is an obscure reference to a QuickBooks file" and reiterates that QuickBooks "has been inaccessible [to Defendants] in discovery thus far."[49] Defendants maintain that as of December 31, 2024, the Trustee knew that Bramer and Defendants still did not have access to QuickBooks and that Bramer intended to incorporate QuickBooks data into her analyses when and if she was given access. Additionally, and importantly, Desai admitted at trial that she was aware the $37.8 million in "debt" that she relied upon, which came from QuickBooks, was not, in fact, entirely debt but also inappropriately included equity.[50]

The Trustee argues that Defendants' failure to supplement Bramer's disclosures as it relates to QuickBooks caused Trustee substantial prejudice.[51] The Court agrees with Defendants that Trustee had notice that Bramer would utilize QuickBooks if she had access over a month prior to her deposition in February 2025. In fact, the Trustee's counsel fully deposed Bramer on the topic of QuickBooks.[52] The Court also agrees that the record supports Defendants' assertion that the first time Bramer had the opportunity to substantively access QuickBooks was after her deposition in late February.[53] The Trustee had its opportunity to cross-examine Bramer at trial as to whether any of her opinions had changed or been supplemented after she ultimately gained access to QuickBooks. The Trustee has not suffered any prejudice.

Lastly, Trustee and its experts had access to all the information Bramer relied. Bramer did not supplement her opinions based on undisclosed or newly disclosed data. The Trustee had access to all the data and information contained in the QuickBooks files. The Trustee first provided access

---

[49] (ECF No. 425, Ex. D ¶ 15).
[50] (ECF No. 425, Ex. E lns. 213:23–217:12).
[51] (ECF No. 399 at 9).
[52] (ECF No. 399, Ex. E) (highlighted excerpts).
[53] (ECF No. 425, Ex. F at 25:14–26:2).

to Bramer shortly before her deposition for a brief period and then that access was quickly lost.[54] Bramer was then not given access for any meaningful amount of time until after her deposition in late February 2025. The Court finds that Trustee knew Bramer intended to analyze QuickBooks and to rely on QuickBooks data in her testimony. The Trustee took no action prior to trial to object to or challenge that testimony. The Trustee cannot claim unfair prejudice or surprise by Bramer's testimony concerning her factual observations concerning what she discovered in QuickBooks. The Court agrees that Trustee has not suffered any prejudice.

### CONCLUSION

The Court carefully examined the record in this matter. In doing so, the Court agrees with Defendants that Defendants' disclosures were sufficient under Rule 26 and did not require further supplementation. Moreover, the Pre-Trial Order is clear on the subjects Ms. Bramer was going to testify, putting the Trustee on notice about Bramer's testimony including the matters the Trustee objected to at trial.

It is therefore **ORDERED** that Trustee's Motion to Reconsider is **DENIED**.

# # #

---

[54] *Id.* lns. 25:9–26:2; 33:5–34:1.