**EXHIBIT "A"**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 19-50900-cag |
| | § | |
| LEGENDARY FIELD | § | |
| EXHIBITIONS, LLC, et al., | § | |
| | § | Chapter 7 |
| Debtors. | § | |
| _____ | § | |
| | § | |
| RANDOLPH N. OSHEROW, | § | |
| Chapter 7 Trustee, and the Bankruptcy | § | |
| Estates of Legendary Field Exhibitions, LLC; | § | |
| AAF Players, LLC; AAF Properties, LLC; | § | |
| Ebersol Sports Media Group, Inc.; | § | |
| LFE 2, LLC; and We Are Realtime, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Adversary No. 22-05078-cag |
| | § | |
| THOMAS DUNDON; JOHN ZUTTER; | § | |
| and DUNDON CAPITAL PARTNERS, LLC, | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF RANDOLPH N. OSHEROW IN SUPPORT OF TRUSTEE'S MOTION TO ALTER OR AMEND JUDGMENT TO ADJUDGE AND AWARD COSTS**

Randolph N. Osherow declares and states:

My name is Randolph N. Osherow. I am a Texas citizen. I reside in Bexar County, Texas.

I am a licensed attorney in the state of Texas. For more than 40 years I have served as a Chapter 7 panel trustee for the bankruptcy courts of the Western District of Texas. During that time, I have presided over the administration of thousands of bankruptcy estates both large and small. I have also served by appointment as trustee in Chapter 11 cases.

On or about April 17, 2019, I was appointed to serve as Chapter 7 trustee of the bankruptcy estates of Ebersol Sports Media Group, Inc.("ESMG") and five subsidiaries. Upon my

appointment I began the usual work Chapter 7 trustees engage in to learn about the debtor and the case.

I engaged general counsel for the estate to obtain information and materials and provide other legal services needed to aid me in administering the estate. The Court entered an order approving the general counsel's retention.

The Court substantively consolidated the debtors' bankruptcy estates into in re Legendary Field Exhibitions, LLC No. 19-50900 by order entered July 8, 2019 (Docket No. 150), and the case has generally been referred to as the "AAF Bankruptcy." I conducted a 341 meeting on May 24, 2019.

Administering the AAF Bankruptcy in many ways followed a familiar course. I analyzed the schedules, interacted with creditors, collected and sold physical estate assets, engaged special litigation counsel to pursue avoidance and preference actions, worked through disputes with analyzed claims and objected to or sought to recharacterize improper proofs of claim. Other circumstances complicated administration.

Among these, the AAF Bankruptcy was filed without making provision for the AAF's PEO to issue W2 and other tax forms. This created an inordinate amount of work for me and the estate's general counsel to secure their issuance to more than 400 players. At the time of filing, the AAF had just been served with a class action case initiated by players on April 10, 2019, in California state court arising out of the decision to shut down league operations on April 2, 2019. That case sought hundreds of millions from the AAF.

The estate's general counsel had class action experience and was ultimately able to settle the case with the plaintiffs. I know the Court is familiar with those proceedings and the hourly

expenses associated with both litigating the class certification issues and litigating the class action settlement, to which Mr. Dundon and DCP objected.

Throughout the case, as counsel and I were completing all this necessary work, the Court approved, and the estate paid out attorney fees and trustee commissions as follows:

| Date | Docket No. | Payee | Amount |
| --- | --- | --- | --- |
| 8//26/19 | 224 | Trustee commission (Approving Docket No. 189) | $13,250.00 |
| 6/18/20 | 280 | Trustee commission (Approving Docket No. 277) | $5,528.93 |
| 2/19/21 | 320 | General Counsel fees (Approving 300) | Fees $451,060.00<br>Costs $1,379.47 |
| 3/19/21 | 321 | Trustee commission (Approving Docket No. 301) | $22,626.97 |
| 6/3/21 | 401 | Special Lit. Counsel (avoidance fees (Approving 384) | Fees $457,188.50<br>Costs $25,144.79 |
| 7/23/21 | 416 | Trustee commission (Approving Docket No. 402) | $20,552.00 |
| 2/11/22 | 459 | Special Lit. Counsel (avoidance fees (Approving 458) | Fees $304,215.95<br>Costs $5,060.88 |
| 1/30/23 | 547 | General Counsel fees (Approving 566) | Fees $204,675.00<br>Costs $24,395.72 |

No person ever objected to these estate payments and the Court approved and ordered each payment.

The Court also approved partial distributions to 436 players pursuant to the class action litigation settlement, distributions to the IRS for employment taxes, the trustee's commissions, and class counsel fees as follows:

| Date and Docket No. | Item Detail | Amount |
|---|---|---|
| 7/15/22 Docket No. 483 (Approving 480) | Players Gross Wages | $1,993,719.00 |
| | Payroll Taxes (to IRS) | $984,342.38 |
| | Class Counsel Fees | $981,981.00 |

No person objected to these estate payments and the Court approved and ordered each payment.

During the course of the class action litigation and other administration activities, general counsel periodically updated me regarding the nature of the dispute, efforts to collect documents from cloud service providers, professionals and from Mr. Dundon and DCP and what those documents showed.

Through general counsel's updates, I became aware of Thomas Dundon's many public and private, oral and written statements that he had committed to fund $250 million to AAF and that Mr. Dundon had not, in fact, funded according to those commitments. When Mr. Dundon was deposed in the class action case, I became aware that he admitted that he gave sworn testimony that he had committed $250 million.

After discussion with counsel, I assessed that there was a reasonable possibility that the estate could establish a cause of action against Dundon or DCP. I ultimately engaged litigation counsel and authorized filing a Complaint, which was filed on November 22, 2022. I believed then, and I believe now, that as the representative of an estate with more than $100 million in claims by more than 700 allowed creditors, I had a duty to prosecute the cause of action against the defendants consistent with my responsibility under 28 U.S.C. § 704 to make reasonable efforts to maximize the estate for the benefit of the creditors.

Pursuing estate causes of action provides a substantial public benefit and supports the bankruptcy framework that Congress designed and intended to protect creditors.

I also authorized litigation to object as improper to the proofs of claim Dundon and DCP filed repetitively in each of the debtors' bankruptcy cases, each seeking to recover more than $70 million from the estates. I believed then, and I believe now, that there was a duty to object to these claims.

I followed the litigation as it was ongoing and the trial. Nothing in that experience prompted a view that continuing to pursue the litigation was anything other than a prudent decision. The Court did award the estate significant financial relief by sustaining objections to the defendants' proofs of claim; the court also found breaches of fiduciary duty and that an oral contract formed, although for less than $250 million.

The estate currently has limited financial resources. It contains $163,033.98. In my view, the Court's 199-page opinion establishes the questions were close and difficult. They were certainly important to the estate, and I believe to the bankruptcy system as a whole. The estate prevailed in part.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 19, 2025.

/s/ *Randolph N. Osherow*
Randolph N. Osherow