

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: February 24, 2026.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-50900-CAG |
| | § | |
| LEGENDARY FIELD EXHIBITIONS, LLC, et al., | § § § | |
| | § | |
| Debtors. | § | CHAPTER 7 |

| | | |
|---|---|---|
| RANDOLPH N. OSHEROW, | § | |
| Chapter 7 Trustee for the Bankruptcy Estates of Legendary Field Exhibits, LLC, et al., | § § § | |
| | § | |
| Plaintiffs. | § § | |
| | § | ADV. NO. 22-05078-CAG |
| v. | § § | |
| | § | |
| THOMAS DUNDON, JOHN ZUTTER, and DUNDON CAPITAL PARTNERS, LLC, | § § § | |
| | § | |
| Defendants. | § | |

### ORDER DENYING TRUSTEE'S MOTION TO AMEND FINDINGS OF FACT AND MEMORANDUM OPINION (ECF NO. 444)

Came to be considered Chapter 7 Trustee's Motion to Amend Findings of Fact and

Memorandum Opinion (ECF No. 444) and Defendants' Response to the Motion to Amend

1

Findings of Fact and Memorandum Opinion (ECF No. 455). Plaintiff Randolph N. Osherow ("Trustee"), in his capacity as Chapter 7 Trustee of the consolidated bankruptcy estates of Legendary Field Exhibitions, LLC; AAF Players, LLC; AAF Properties, LLC; Ebersol Sports Media Group, Inc. ("ESMG"); LFE 2, LLC; and We Are Realtime, LLC (collectively "Plaintiffs") filed Chapter 7 Trustee's Motion to Amend Findings of Fact and Memorandum Opinion. Defendants Thomas Dundon, John Zutter, and Dundon Capital Partners, LLC (collectively "Defendants") filed Defendants' Response to the Motion to Amend Findings of Fact and Memorandum Opinion. The Court **DENIES** Chapter 7 Trustee's Motion to Amend Findings of Fact and Memorandum Opinion.

## JURISDICTION

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409. Plaintiffs and Defendants consent to a final order or judgment in this Adversary Proceeding.[1] This matter is referred to this Court pursuant to the District Court's Order of Reference.

## BACKGROUND

This case arises from the creation and dissolution of the Alliance of American Football ("AAF" or the "League"), an alternative professional football league. After over two years of several pretrial motions, this Adversary Proceeding advanced to trial on April 14, 2025. This Court conducted a twenty-one-day trial before taking matters under advisement.

On November 25, 2025, the Court entered its Memorandum Opinion and Order Regarding Plaintiff's First Amended Complaint. (ECF No. 437). On December 19, 2025, Trustee filed his Motion to Amend Findings of Fact and Memorandum Opinion Pursuant to Fed. R. Bankr. P. 7052

---

[1] Joint Pre-Trial Order, ECF No. 300, ¶ 9.

and 9023. (ECF No. 444). On January 16, 2026, Defendants filed their Response to the Motion to Amend Findings of Fact and Memorandum Opinion. (ECF No. 455).

## LEGAL STANDARD

Trustee brings his claims under Rules 7052 and 9023 under the Federal Rules of Bankruptcy Procedure, specifically through Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure. (ECF No. 444 at 4). Rule 7052 incorporates Fed. R. Civ. P. 52(b) in bankruptcy adversary proceedings. *See* Fed. R. Bankr. P. 7052 ("Fed. R. Civ. P. 52 applies in an adversary proceeding . . . ."). Rule 52(b) provides in part, "On a party's motion filed . . . after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). "The purpose of [Rule 52(b) motions] is to correct manifest errors of law or fact, in some limited situations, to present newly discovered evidence." ***Fontenot v. Mesa Petroleum Co.***, 791 F.2d 1207, 1219 (5th Cir. 1986) (citations omitted). Such a motion should not be "employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure rehearing on the merits." *Id.* at 1219–20.

Similar to Rule 7052's incorporation of Rule 52(b), Rule 9023 incorporates Rule 59(e) in bankruptcy cases. *See* Fed. R. Bankr. P. 9023 ("Fed. R. Civ. P. 59 applies in a bankruptcy case."). Rule 59(e) allows a party to file "[a] motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). A Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." ***Schiller v. Physicians Res. Grp. Inc.***, 342 F.3d 563, 567 (5th Cir. 2003) (citation modified). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." ***Templet v. HydroChem Inc.***, 367 F.3d 473,

3

479 (5th Cir. 2004). "The Rule 59(e) standard favors the denial of motions to alter or amend a judgment." *Willbern v. Bayview Loan Servicing, L.L.C.*, 842 F. App'x 865, 869 (5th Cir. 2021).

## DISCUSSION

### I. The Court will not amend the findings of fact or Memorandum Opinion.

The Court will not amend the findings of fact or Memorandum Opinion.[2] It finds no manifest error of law or fact. Trustee makes many arguments asking this Court to amend its findings, make additional findings, and delete some findings. Trustee organizes his arguments largely into four categories: (1) The Court must reconcile its findings across the Memorandum Opinion; (2) the Court must amend or alter its findings to accurately reflect the record; (3) the Court must amend or alter findings that are not supported by the record; (4) the Court must add findings to reflect undisputed facts in the record. (ECF No. 444 at 2–3). Trustee's arguments are unavailing.

#### A. The Court's findings need no reconciliation.

The Court's findings need no reconciliation. Trustee raises several claimed inconsistencies within the Memorandum Opinion. First, Trustee argues the Court's findings on the Term Sheet—specifically Findings of Fact ("FOF") 107, 110, 114, and 172—are inconsistent. Second, Trustee argues the Court's findings on Dundon's public statements regarding the $250 million figure, including FOF 151, must be "harmonize[d]." Third, Trustee argues the Court is inconsistent in its discussion of who had control over ESMG. These findings are not manifest errors of law or fact and need no amendment.

1. *FOF 107, 110, 114, and 172 do not constitute manifest errors of law or fact and need no amendment.*

FOF 107, 110, 114, and 172 are not manifest errors of law or fact and need no amendment.

---

[2] Nothing in this order shall be construed to alter or amend the Memorandum Opinion. (ECF No. 437).

Trustee first claims FOF 107 and 114 of the Memorandum Opinion are inconsistent. FOF 107 provides in relevant part, "Zutter . . . directed that the Term Sheet . . . cover only $70 million of investment over several months, rather than $250 million and multiple years as Ebersol and Dundon had agreed." (ECF No. 437 at 69). FOF 114 states in relevant part, "The Term Sheet contains the only agreement that any of the parties reached for an investment in the League." (*Id.* at 71). Trustee argues, "These findings cannot simultaneously be true as written because FOF 107 contains an agreement predicate ('had agreed') regarding $250 and multiple years that cannot be squared with FOF 114 ('only agreement')." (ECF No. 444 at 6). Therefore, Trustee asks the Court to "amend FOF 114 so as to not suggest the Term sheet was the 'only agreement'" based on FOF 107. (*Id.* at 8).

The word "agreed" or "agreement" is used to describe mutual understandings of varying degrees of certainty and enforceability. Any ambiguity should be resolved with the Court's finding in FOF 172: "Dundon and Ebersol did not reach an oral agreement regarding a $250 million investment by Dundon or any entity that Dundon owned or controlled. All discussions between Ebersol and Dundon prior to the execution of the Term Sheet constituted negotiations." (ECF No. 437 at 86). FOF 173 then elaborates on what Dundon and Ebersol failed to agree on regarding a $250 million oral agreement. (*Id.* at 86–87). In the context of the whole Memorandum Opinion, FOF 107 and 114 are not inconsistent. The Court does not find manifest error of law or fact.

Trustee next claims there is inconsistency between FOF 114 and the Court's finding that the Term Sheet is not the ultimate governing document. (ECF No. 444 at 6). FOF 114 provides, "The Term Sheet contains the only agreement that any of the parties reached for an investment in the League." (ECF No. 437 at 71). The Court also found, "There is no question that a contract exists in this case, but the Term Sheet is not the ultimate governing document." (*Id.* at 115). Trustee

5

is apparently pointing to the Court's finding of an oral contract in the Memorandum Opinion. Trustee states, "FOF 114 must be amended so as to not suggest the Term Sheet was the 'only agreement' because that phrase would erase the Court's own contract-versus-Term-Sheet distinction." (ECF No. 444 at 7).

The Court will not amend FOF 114 on this basis either. The Court's findings of fact must be read in context. *See* **Sw. Airlines Co. v. Saxon**, 596 U.S. 450, 455 (2022) ("To discern that ordinary meaning, those words must be read and interpreted in their context, not in isolation.") (citation modified); **Biden v. Nebraska**, 600 U.S. 477, 511 (2023) (Barrett, J., concurring) ("To strip a word from its context is to strip that word of its meaning."). "Context also includes common sense." *Id.* Read with common sense, FOF 114 does not constitute manifest error of law or fact based on the Court's separate finding of an oral contract. FOF 114 again provides, "The Term Sheet contains the only agreement that any of the parties reached an investment in the League." (ECF No. 437 at 71). This finding of fact is used to demonstrate that the Term Sheet contained the only agreement between the parties for an investment in the League and that there was no separate agreement, such as a $250 million contract. It is not to say the Court's finding of an oral contract, largely based on the unsigned Term Sheet and the conduct of the parties, is invalid. The Court's finding of an oral contract in the Memorandum Opinion does not render FOF 114 as a manifest error of law or fact.

Trustee next argues there is inconsistency between FOF 110 and 172. (ECF No. 444 at 7–8). FOF 110 provides in relevant part, "Dundon stated he had not seen the document and that while the Term Sheet was part of the deal, it did not encompass the entirety of their agreement, reaffirming that Ebersol had 'a deal' directly with him." (ECF No. 437 at 70). FOF 172 provides, "Dundon and Ebersol did not reach an oral agreement regarding a $250 million investment by

6

Dundon or any entity that Dundon owned or controlled. All discussions between Ebersol and Dundon prior to the execution of the Term Sheet constituted negotiations." (*Id.* at 86). Claiming the two findings are inconsistent, Trustee requests the Court delete the last sentence of FOF 172 and add a sentence to FOF 110 stating "Dundon contemporaneously represented that the Term Sheet did not capture the entirety of the framework being discussed between him and Ebersol." (ECF No. 444 at 7).

The Court will not amend FOF 110 or 172. FOF 110 is the Court's finding of what Dundon communicated to Ebersol, evidenced by the words "Dundon stated." (ECF No. 437 at 10). In FOF 172, despite Dundon's statements, the Court found Dundon and Ebersol did not reach an oral agreement regarding a $250 million investment and that their discussions ultimately constituted negotiations. In FOF 173, the Court outlined what Dundon and Ebersol failed to agree on during those negotiations.[3] (ECF No. 437 at 86–87). For these reasons, FOF 110 and 172 are not manifest errors of law or fact.

> 2. *The Memorandum Opinion's findings regarding Dundon's public statements are not manifest errors of law or fact.*

Second, Trustee argues the Court's findings on Dundon's public statements regarding the $250 million figure, including FOF 151, must be "harmonize[d]." (ECF No. 444 at 8–9). The Memorandum Opinion's findings regarding Dundon's public statements are not manifest errors of law or fact. Trustee first argues that "once the Court has rejected both [Dundon's] 'marketing scheme' story and the 'puffery/semantics' defense, the remaining record framing should not treat the $250 million narrative as something less than an intentional representation of future funding." (ECF No. 444 at 8). It is unclear what record framing Trustee points to as a manifest error of law

---

[3] Examples of what the parties failed to agree upon during negotiations include: the parties to the alleged $250 million agreement, the timeframe the $250 million would be invested, and the form of investment (e.g. debt or equity). (ECF No. 437 at 86–87).

7

or fact. Trustee also requests a "clarifying finding" that "describe[s] Dundon's repeated $250 million commitment narrative as intentional representations he chose to make and direct . . . ." (*Id.* at 9). The Court finds no reason to make such an additional finding. The Court finds no manifest error of law or fact.

Trustee next takes issue with FOF 151. (*Id.*). The finding provides in relevant part, "While the amount of $250 million as a commitment or commitment to invest is stated, there are no statements to the media that corroborate any terms of an agreement or provide any other circumstantial support for a $250 million oral contract other than the amount." (ECF No. 437 at 81). Trustee points to FOF 163 and 164 as evidence that there are statements to the media that corroborate terms or provide circumstantial support for a $250 million oral contract other than the amount. (ECF No. 444 at 9). FOF 163 and 164 reference an interview between Rich Eisen and Dundon on February 28, 2019. (ECF No. 437 at 84 n.189, 190). FOF 164 states, "Dundon further stated in the interview: 'I took control of the League'; 'I'll put up the money, and I get to make the decisions'; and 'Like we don't have to talk about the money anymore.'" (*Id.* at 84). During the interview, the interviewer, Eisen, mentioned the $250 million figure. (Tr. Ex. 1002 at 0012). Reading this together, Trustee argues that the Court should amend its findings to state that "some statements included terms or at least representations about control and funding expectations, not merely the number '250.'" (ECF No. 444 at 9).

The Court finds no manifest error of law or fact in FOF 151 and will not amend it. In accordance with FOF 151, the Eisen interview contains no statements by Dundon that corroborate any terms or provide any circumstantial support for a $250 million oral contract other than the amount, if at all. During the Eisen interview, Eisen asked, "AAF comes on the air . . . . You're just sitting there watching it with your two kids . . . you had no idea you were going to commit a quarter

8

of a billion dollars to that league two weeks later, at all?" (Tr. Ex. 1002 at 0012). Dundon responds, "None. Wednesday morning at breakfast after the first game was the first time I even heard anything about it." (*Id.*). Dundon did not specifically address the $250 million figure nor correct Eisen, likely because he had been telling the media that he was committed to $250 million. (ECF No. 437 at 81).

There is no indication Dundon's other statements to Eisen about taking control of the League corroborate or provide circumstantial evidence of a separate $250 million oral contract. Note at the time of the interview, on February 28, 2019, the parties to the Term Sheet had already taken some actions consistent with the Term Sheet's provisions. On February 14, 2019, DCP caused DDFSP, an entity owned by Dundon, to fund the Initial Funding amount of $5.1 million.[4] (*Id.* at 71–72). On February 24, 2019, Dundon and Zutter became the sole voting board members of ESMG. (*Id.*). These events were consistent with what the Term Sheet required, and the Term Sheet contemplated $70 million, not $250 million. (*Id.*) Therefore, when Dundon told Eisen things like "I took control of the League" and "I'll put up the money, and I get to make the decisions," the Court cannot conclude these statements are evidence of a separate $250 million oral contract. Rather, it appears Dundon did not specifically address Eisen's characterization of the commitment as $250 million—likely because Dundon had been telling the media he was committed to $250 million—then made other statements about control that were consistent with the Term Sheet. FOF 151 is not manifest error of law or fact.

        3. *The Court's analysis regarding control is not manifest error of law or fact.*

The Court's analysis regarding control is not manifest error of law or fact. It is difficult to understand what Trustee is arguing in this section. (*See* ECF No. 444 at 9–12). Trustee appears to

---

[4] The Term Sheet provides, "The Investor will invest $5,100,000 (the '**Initial Funding Amount**') by 1:30pm PST on February 14, 2019." (Tr. Ex. 0007 at 0001).

make many different arguments, most of which appear to be related to control. Trustee concludes, "The Trustee therefore requests narrow Rule 52(b) amendments and Rule 59(e) supplementations that brings these portions of the Memorandum Opinion into alignment." (ECF No. 444 at 12). Trustee's request is unclear.

One of Trustee's arguments states the Court is inconsistent in answering the following question: "who had the operative approval power after February 14?" (*Id.* at 10). Trustee may be implying that the approval of a $70 million contract was tainted because the board and shareholder meetings occurred after Dundon and Zutter assumed actual control of the League. The Court explicitly rejected this idea in the Memorandum Opinion:

> Nevertheless, Trustee asserts that Dundon orchestrated and directed approval of the parties' $70 million because the board and shareholder meetings occurred after Dundon and Zutter assumed actual control of the League. Trustee's argument insinuates that the approval of $70 million was somehow wrongful or tainted. Ebersol, however, convened a meeting of the ESMG board to the exclusion of Dundon and Zutter to ratify $70 million.

(ECF No. 437 at 127–28). The Court also rejected Trustee's assertion "that it was Dundon and Zutter's duty to issue the stock." (*Id.* at 135). Trustee further cites bits and pieces of the Court's findings to argue the Court is inconsistent, but Trustee's arguments are not entirely clear. (*See* ECF No. 444 at 9–11).

In the latter half of this section, Trustee argues, "The record also contains direct testimony that Ebersol did not believe he had the ability to issue ESMG stock after February 14, 2019, which makes the page-135 'could have issued' sentence particularly in need of a limiting clarification to avoid a speculative premise inconsistent with the record." (*Id.* at 11). But the Court's "could have issued" statement pertains to ESMG. (ECF No. 437 at 135). In contrast, Ebersol states he "personally did not have the ability to issue the shares of stock." (ECF No. 327 at 75). Even if the Court's finding and Ebersol's testimony were contradictory, the Court did not find Ebersol to be

10

completely credible. (*See* ECF No. 437 at 16) ("Ebersol's testimony over multiple days was inconsistent at times and questionable regarding operative facts."). The Court finds no manifest error of law or fact.

In sum, some of Trustee's arguments appear to suggest theories of control the Court explicitly rejected in its Memorandum Opinion. One argument appears to be an attempt to overturn the Court's findings based on an incorrect characterization of a statement made by a witness, whom the Court did not find completely credible. Some arguments are not clear. The Court finds no manifest error of law or fact.

### B. The Court's findings accurately reflect record evidence.

The Court's findings accurately reflect record evidence. Trustee makes four arguments stating the Court's findings do not accurately reflect record evidence: (1) FOF 150 and 151 contradict admitted exhibits and the Court's other findings; (2) the Court's "only person/no one else questioned" phrasing on page 122 of the Memorandum Opinion contradicts the record; (3) FOF 111 contradicts the record; (4) FOF 167 contradicts the record. (ECF No. 444 at 12–19). Trustee's arguments are unavailing.

*1. FOF 150 and 151 do not constitute manifest error of law or fact and accurately reflect record evidence.*

FOF 150 and 151 do not constitute manifest error of law or fact and accurately reflect record evidence. FOF 150 states in relevant part, "*None* of the communications is between DCP or Dundon and ESMG. *None* of the communications between the parties is contemporaneous with the initial discussions . . . ." (ECF No. 437 at 81) (emphasis added). Trustee first appears to argue that because the record shows a February 21 email chain between Dundon and *Zutter* referencing "250," there was communication between Dundon and *ESMG* referencing "250." (ECF No. 444 at 12–13). Therefore, Trustee argues the Court should amend FOF 150 to exclude the categorical

11

"none" phrasing. (*Id.* at 15). In other words, Trustee appears to reason that because Zutter became a decisionmaker of ESMG, Zutter was ESMG. Therefore, an email chain between Dundon and *Zutter* would be an email chain between Dundon and *ESMG*.

Trustee is incorrect. *Zutter* does not mean *ESMG* in this context. Zutter had worked for Dundon and the Dundon family or related entities since 2015. (ECF No. 437 at 46). On February 14, 2019, DCP caused DDFSP, an entity owned by Dundon, to fund the initial funding amount of $5.1 million. (*Id.* at 72). After February 14, 2019, Dundon and Zutter acted, and were treated by ESMG personnel and former board members, as though they were completely in charge of AAF. (*Id.* at 73). Following Trustee's logic, it is unclear why Dundon is considered a representative of DCP instead of ESMG; Dundon, like Zutter, was also treated as though he was completely in charge of ESMG. It makes no sense. *Zutter* does not mean *ESMG* in this context. Earlier in FOF 150, the Court already found that "there are references to $250 million in emails involving Dundon or other DCP personnel." (*Id.* at 81). FOF 150 does not constitute a manifest error of law or fact.

In addition to Trustee's argument regarding FOF 150, Trustee argues FOF 151 requires amendment for a number of reasons. Trustee first takes issue with the following sentence of FOF 151: "The only other evidence of the $250 million deal was statements Dundon made to the press after Ebersol had signed the Term Sheet." (ECF No. 444 at 13). Trustee claims the phrase "only other evidence of the $250 million deal was statements Dundon made to the press" does not reflect the trial record. (*Id.*). Trustee claims this phrase ignores the following four pieces of evidence.

First, Trustee points to Trustee's Exhibit 266. Trustee's Exhibit 266 is an email between Jeff Vanderbilt, Chief Financial Officer of DCP, and a Hub International representative. It references the $250 million figure. It is unclear why Trustee points to this exhibit as evidence the

12

Court ignored undisputed evidence. In FOF 151, the Court found, "The *only other evidence* of the $250 million deal was statements . . . ." (ECF No. 437 at 81) (emphasis added). The words "only other evidence" would imply the Court discussed evidence of the $250 million deal in other parts of its opinion aside from its discussion in FOF 151. One need only look at FOF 150 to find that this is true. In FOF 150, the Court found that "there are references to $250 million in emails involving Dundon or other DCP personnel." (*Id.* at 81). Trustee's Exhibit 266 is exactly that: an email involving DCP personnel, Jeff Vanderbilt, that references $250 million. The Court finds no manifest error of law or fact in FOF 151.

Second, Trustee points to an email titled "Media Opps" between Dundon and Megan Hanson which appears to be an email about statements to the media. (ECF No. 444 at 13). It is unclear why Trustee points to this as evidence the Court ignored undisputed evidence. In FOF 150, the Court found that "there are references to $250 million in emails involving Dundon or other DCP personnel." (ECF No. 437 at 81). The Court finds no manifest error of law or fact in FOF 151.

Third, Trustee argues, "Across 17 review opportunities, neither Dundon nor anyone on his team questioned, changed, or removed the $250 million commitment figure from drafts of the official press release." (ECF No. 444 at 13). It must be true no one removed the $250 million figure from drafts of the official press release. That is why the Court found that Dundon made statements to the press about the $250 million in FOF 151. If the $250 million figure was removed, the Court would not have found that Dundon made statements to the press about a $250 million amount. The Court finds no manifest error of law or fact in FOF 151.

Fourth, Trustee argues the Court ignored the following: "Internal communications to employees distributed the $250 narrative, and non-media communications to personnel described Dundon's $250 commitment." (*Id.* at 14). This claim does not render FOF 151 a manifest error of

13

law or fact. Among other findings, in FOF 150, the Court found, "League middle-management testified that, even if they had heard discussions of the $250 million figure, they had not seen such an agreement and were unaware of its terms." (ECF No. 437 at 80–81). FOF 150 also provides "there are references to $250 million in emails involving Dundon or other DCP personnel." (*Id.* at 81). The Court finds no manifest error of law or fact in FOF 151. Trustee's arguments fail.

Trustee next takes issue with the following sentence of FOF 151: "While the amount of $250 million as a commitment or commitment to invest is stated, there are no statements to the media that corroborate any terms of an agreement or provide any other circumstantial support for a $250 million oral contract other than the amount." (ECF No. 437 at 81; ECF No. 444 at 14). Trustee argues that, contrary to FOF 151, the following statements Dundon made to the media corroborate terms or provide circumstantial evidence for a $250 million oral contract beyond the amount: "Five years, something like that," "need any capital," "We have the capital to do whatever we need to do," "I can fund this league." (ECF No. 444 at 14). Trustee argues that these phrases are "duration-and-sufficiency representations" and therefore contradict FOF 151. (*Id.*) Trustee similarly argues Dundon's "series infinity" statement contradicts FOF 151. (*Id.*). These statements do not render FOF 151 a manifest error of fact or law.

The statements "need any capital," "We have the capital to do whatever we need to do," "I can fund this league," and "series infinity" on its face do not corroborate any terms for a $250 million oral contract other than the amount, if at all. Trustee's argument regarding Dundon's "Five years, something like that" statement warrants more attention. A USA TODAY article reported:

> Do the math. After getting a new $250 million commitment this week, the new Alliance of American Football isn't going away for a while, if it ever leaves.
>
> Just ask the guy who is making that investment – Tom Dundon, the billionaire investor and owner of the NHL's Carolina Hurricanes. Even with the expected bumps that come with a startup pro football league, how much time does that buy?

> *"Five years, something like that,"* Dundon told USA TODAY Sports Thursday.

Tr. Ex. 380 at 0001. (emphasis added). The Court does not find Dundon's answer is a statement that corroborates any terms of an agreement or provides any other circumstantial support for a $250 million oral contract other than the amount, if at all. This is different than if Dundon had made an official press release stating that he would invest $250 million in ESMG over the next five years for 75% of ESMG stock. This was Dundon *responding* to a question from the media about the $250 million figure he had mentioned before. One would not walk away reading Dundon's answer thinking "Five years, something like that" means there is a formal agreement for $250 million over five years for a certain percentage of ESMG. Therefore, the Court finds no manifest error of law or fact in FOF 151.

> 2. *The Court's only person/no one else questioned phrasing on page 122 of the opinion is not a manifest error of law or fact and does not contradict the record.*

Trustee argues the Court's "only person/no one else questioned" phrasing on page 122 of the Memorandum Opinion contradicts the record. (ECF No. 444 at 16). The Court finds this phrasing is not manifest error of law or fact and does not contradict the record. It is important to examine the Court's words in context. On page 121 and 122 of the Memorandum Opinion, the Court found:

> The conduct of the parties militates against finding that the parties reached a meeting of the minds for the entirety of the $250 million. In particular, the pertinent individuals to the contract always operated under the belief that $70 million was the maximum investment. *It appears to the Court that Ebersol was the only person who asked why the Term Sheet only listed $70 million. No one else questioned Dundon about the larger number* when ESMG's board and shareholders both recognized $70 million as the price under the contract, especially after Dundon repeatedly announced to the public that he was investing $250 million. In fact, ESMG's lawyers drafted amendments and waivers to outstanding promissory notes and, although these documents were not executed, they only referenced a default relating to a $70 million contract.

15

(ECF No. 437 at 121–22) (emphasis added). Trustee claims the "absolute phrasing" of the Court's words of "only person" and "[n]o one else questioned" are contradicted by the record. (ECF No. 444 at 16). As evidence, Trustee first cites Trustee's Exhibit 266 where a Hub International representative tells Jeff Vanderbilt he will need more information about "when additional contributions are expected and when the formal agreement regarding the $250M commitment is going to be executed." (*Id.*; Tr. Ex. 266 at 0002). Trustee also cites an email between a PwC representative and Zutter. (ECF No. 444 at 16). The PwC representative tells Zutter, "We're struggling a little to connect the dots on the $250M number in the press. Is this in addition to the $70M commitment signed a few weeks ago?" (Tr. Ex. 173). Therefore, Trustee argues the Court should amend its absolute phrasing as there are people who ask about the $250 million figure and how it relates to the $70 million Term Sheet. (ECF No. 444 at 16).

The evidence Trustee presents is not inconsistent with the Court's findings when properly read in context. The two sentences before the Court's findings on "only person" and "[n]o one else questioned" provide, "The conduct of *the parties* militates against finding that the parties reached a meeting of the minds for the entirety of the $250 million. In particular, the *pertinent individuals* to the contract always operated under the belief that $70 million was the maximum investment." (ECF No. 437 at 121–122) (emphasis added). The Court then goes onto state, "Ebersol was the only person" and "No one else questioned." (*Id.* at 122). Phrases such as "only person" and "no one else" may be characterized by surrounding words and sentences. Here, the words "conduct of *the parties*" and "*pertinent individuals*" characterize how the words "only person" and "no one else" should be read. Words must be read in context. The Court finds no manifest error of law or fact.

*3. FOF 111 does not need to be altered or amended.*

Trustee next argues FOF 111 must be amended. (ECF No. 444 at 16–18). FOF 111 does not need to be altered or amended. FOF 111 provides:

> Except for Jordan Roberts, all other individuals involved in the negotiations testified. *Only Ebersol recalls a discussion of $250 million being the Dundon investment.* Besides Ebersol's trial testimony, Trustee offered no evidence that anyone objected when the Term Sheet reflected the $70 million maximum cumulative commitment language.

(ECF No. 437 at 70) (emphasis added). Trustee takes issue with "Only Ebersol recalls a discussion of $250 million being the Dundon investment." (ECF No. 444 at 16). Trustee states, "Even if the Court intended a narrower point—such as that only Ebersol testified that $250 million was a binding, negotiated contract term—the finding as written is broader. It speaks categorically to whether anyone other than Ebersol 'recalls a discussion' of $250 million being Dundon's investment." (*Id.*).

When read in isolation, a reader might conclude Ebersol was the only one who testified about a discussion of the $250 million figure as a potential investment at all. As evidenced by the Court's findings, this is not true. The Court found:

> "On the other hand, Dundon testified that he was only willing to invest $250 million under certain conditions, but he could not clarify such conditions." (ECF No. 437 at 121 n.324).

> "To support his position, Dundon explained at trial that he did not wish to delve into the conditions of his $250 million investment in the press . . . ." (*Id.* at 173).

> "From Dundon's perspective, he would only invest $250 million once various conditions were met, and the parties clearly did not reach an agreement on those conditions." (*Id.* at 174).

> "The Court believes the parties likely discussed $250 million as the total investment figure, but finds that Ebersol and Dundon agreed only on $70 million." (*Id.* at 121).

With this context in mind, it is true "[o]nly Ebersol recall[ed] a discussion of $250 million being

17

the Dundon investment." (*Id.* at 70). This finding is a part of the Findings of Fact section that discusses the Term Sheet. (*Id.* at 67–70). The Term Sheet listed a maximum cumulative commitment of $70 million and provided "Investor will own 75% of the Company's fully diluted capital stock." (*Id.* at 71). Ebersol signed the Term Sheet. (*Id.* at 88). But "according to Ebersol's testimony, the deal consisted of Dundon's agreement to invest $250 million in exchange for a 75% equity interest in the League." (*Id.* at 66). Therefore, FOF 111 is correct to state, "Only Ebersol recall[ed] a discussion of $250 million being the Dundon investment." (*Id.* at 70). When read in proper context, FOF 111 does not constitute manifest error of law or fact.

    *4. FOF 167 is not manifest error of law or fact and does not contradict the record.*

Trustee argues FOF 167 must be amended. (ECF No. 444 at 18–19). FOF 167 is not manifest error of law or fact and does not contradict the record. FOF 167 provides in part, "there were no new statements from Dundon or Ebersol about a $250 million deal." (ECF No. 427 at 85). Trustee argues that the Rich Eisen interview on February 28 contradicts this finding. (ECF No. 444 at 18–19). For the reasons stated in Section I.A.2 ¶¶ 2–4, FOF 167 is not manifest error of law or fact.

    **C. The Court's findings are supported by record evidence.**

Trustee next argues that the Court should amend or alter certain findings that are not supported by record evidence. (*Id.* at 19–20). In particular, Trustee states the Court was mistaken to find "Dundon consistently maintained that he was only making an initial investment in AAF for $70 million and that any commitment to invest up to $250 million was contingent on several unspecified conditions." (*Id.* at 19; ECF No. 437 at 19). Trustee then points to the trial record stating that there is a contradiction. But the Court found, "*Before trial*, Dundon consistently maintained that . . . ." (ECF No. 437 at 19–20) (emphasis added). The Court's characterization of

18

Dundon's acts and statements *before trial* are not contradicted by what Dundon testified *at trial*. There is no manifest error of law or fact.

### D. The Court will not make additional findings of fact.

The Court will not make additional findings of fact. Trustee asks the Court "to acknowledge—expressly and in a confined way—the record evidence showing that '250' was used as an operational input in ownership/dilution calculations (including in calculations with CBS), without treating that usage as proof of an enforceable $250 million contract." (ECF No. 444 at 20). The Court finds no reason to make additional findings of fact.

### CONCLUSION

The Court will not amend or alter the Memorandum Opinion and the judgment. Trustee requests the Court to make a number of amendments, deletions, and additional findings. But the Court finds no reason to do so and finds no manifest error of law or fact.

IT IS THEREFORE ORDERED that Chapter 7 Trustee's Motion to Amend Findings of Fact and Memorandum Opinion Pursuant to Fed. R. Bankr. P. 7052 and 9023 (ECF No. 444) is **DENIED**.

# # #