

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: February 27, 2026.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-50900-CAG |
| | § | |
| LEGENDARY FIELD EXHIBITIONS, | § | |
| LLC, et al., | § | |
| | § | |
| Debtors. | § | CHAPTER 7 |

| | | |
|---|---|---|
| RANDOLPH N. OSHEROW, | § | |
| Chapter 7 Trustee for the Bankruptcy Estates | § | |
| Of Legendary Field Exhibits, LLC, et al., | § | |
| | § | |
| Plaintiff, | § | |
| | § | ADV. NO. 22-05078-CAG |
| v. | § | |
| | § | |
| THOMAS DUNDON, JOHN ZUTTER, | § | |
| and DUNDON CAPITAL PARTNERS, LLC, | § | |
| | § | |
| Defendants. | § | |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS THOMAS DUNDON AND JOHN ZUTTER'S AMENDED MOTION FOR ATTORNEYS' FEES (ECF NO. 459)

## INTRODUCTION

Came on to be considered Defendants Thomas Dundon and John Zutter's Amended Motion for Attorneys' Fees ("Motion for Attorneys' Fees"), Trustee's Amended Response in Opposition to Defendants' Amended Motion for Attorneys' Fees ("Response"), and Defendants' Reply in Support of Amended Motion for Attorneys' Fees ("Reply"). (ECF Nos. 459, 471, 472).[1] Upon consideration thereof, the Court finds that the Motion for Attorneys' Fees is granted in part and denied in part.

For the reasons stated herein, the Court finds that the Motion for Attorneys' Fees is procedurally proper and not barred by res judicata or delay. The Court further finds that Zutter is entitled to attorneys' fees for his successful defense of Trustee's breach of fiduciary duty claim. Additionally, the Court finds that Dundon is not entitled to such fees, resulting in a 50% reduction, on a pro rata basis, of the jointly sought fees. Finally, the Court declines to award conditional or prospective fees.

## BACKGROUND

This decision is the latest chapter in an adversary proceeding filed by a bankrupt spring football league in 2022. Trustee initiated this adversary proceeding by filing his Original Complaint on November 14, 2022, alleging seventeen claims for relief. (ECF No. 1). After extensive briefing, the Court dismissed some claims, and Trustee then filed his First Amended Complaint on November 27, 2023. (ECF No. 56). After the Court denied Defendants Dundon, Zutter, and DCP's motions for summary judgment, this adversary proceeding advanced to trial on April 14, 2025.[2] The trial concluded on June 30, 2025, and the Court took matters under advisement.

---

[1] "ECF" denotes electronic filing docket number in Adversary No. 22-05078-cag unless otherwise indicated.
[2] See ECF No. 437 for a detailed summary of this case's extensive procedural history and background.

The Court issued its Memorandum Opinion and Order Regarding Trustee's First Amended Complaint (the "Memorandum Opinion") on November 25, 2025. (ECF No. 437). The Court awarded a take-nothing judgment against Trustee on all claims except the breach of fiduciary duty claim against Dundon, for which it awarded nominal damages. (*Id.*). The Court also found that Defendants may seek their attorneys' fees and costs as permitted under Fed. R. Bankr. P. 7054 and Local Rule 7054-1. (*Id.* at 198).

Thereafter, Trustee filed two post-judgment motions: a Motion to Alter, Amend, or Correct Judgment to Adjudge and Award Costs and a Motion to Amend Findings of Fact and Memorandum Opinion Pursuant to Fed. R. Bankr. P. 7052 and 9023. (ECF Nos. 443, 444). After careful consideration of the motions, along with Defendants' responses to each, the Court denied both motions. (ECF Nos. 464, 473).

Now, before the Court is Defendants' Motion for Attorneys' Fees, requesting $3,747,949.09 in attorneys' fees for litigating this adversary proceeding, $1,260,624.36 in expenses already incurred, $225,000 in conditional fees to defend post-judgment motions, and $750,000 in conditional fees for appeal. (ECF No. 459 at 11).

## LEGAL STANDARD

Under Federal Rule of Bankruptcy Procedure 7054, a claim for attorney's fees must specify "the statute, rule, or other grounds entitling the movant to the award." Fed. R. Bankr. P. 7054(b)(2)(A) (incorporating Fed. R. Civ. P. 54(d)(2)(B)(ii)). Local Rule 7054-1 provides that a movant seeking payment of attorney's fees "shall include reference to the statutory authorization

or other authority for the request." L. Rule 7054-1.[3] Additionally, Bankruptcy Rule 7054(b)(2)(A) applies Federal Rule of Civil Procedure 54(d)(2)(A) to adversary proceedings. Fed. R. Bankr. P. 7054(b)(2)(A). Rule 54(d)(2)(A) mandates that "a claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A).

When a bankruptcy court adjudicates a state law claim, the court applies state law to decide whether to award attorneys' fees on the claim. *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 415 (5th Cir. 2005) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)); *see also* Restatement (Third) of Conflict of Laws § 5.16(b) (A.L.I., Tentative Draft No. 5, 2024) ("The law that governs a prevailing party's claim determines whether attorneys' fees will be awarded to the prevailing party to encourage the bringing of the claim or to enhance recovery for that claim."). Here, Delaware law governs Trustee's breach of fiduciary duty claims against Defendants Dundon and Zutter. (ECF No. 437 at 138). Therefore, the Court must apply Delaware law to determine whether Defendants should be awarded attorneys' fees.

Delaware follows the American Rule as the default principle governing attorneys' fees in litigation. "Under the American Rule, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007) (citation modified). The American Rule, however, may be overcome by a fee-shifting statute or contract. *Id.*; *see also In re Delaware Pub. Schs. Litig.*,

---

[3] Local Rule 7054(a)(1) also states that "Counsel for the parties shall meet and confer for the purposes of resoling all disputed issues related to attorney's fees before making the application. . . . If no agreement is reached, the applicant shall certify the specific reason(s) why the matter could not be resolved by agreement." L. Rule 7054(a)(1). Counsel has certified that they "attempted to confer with counsel for Trustee regarding the relief requested" and "Trustee is opposed." (ECF No. 459 at 12).

312 A.3d 703, 716 (Del. 2024) (en banc) (providing examples of Delaware's exceptions to the American Rule).

**ANALYSIS**

Delaware courts have long recognized the mandatory indemnification rights granted by section 145(c) of the Delaware Code, and a Delaware corporation's ability to provide mandatory indemnification rights in its bylaws.[4] But the application of the standard to claims arising under this Delaware statute has not previously been addressed by a bankruptcy court for the purposes of awarding fees under Rule 54(d). The following analysis details the applicable legal framework and the Court's reasoning, as a matter of first impression.

## I. Defendants' Motion for Attorneys' Fees

As a preliminary issue, the Court finds that Defendants satisfy the requirement of Fed R. Civ. P. 54(d)(2)(B)(ii). Dundon and Zutter claim the right to indemnification under section 145 of the Delaware Code and ESMG's 2017 bylaws. (ECF No. 459 at 2). Both constitute statutory exceptions to the American Rule.

Dundon and Zutter request their attorneys' fees pursuant to Bankruptcy Rule 7054(b)(2) and Local Rule 7054-1(a). (ECF No. 459 at 1). As the prevailing party at trial, Defendants seek indemnification of their attorneys' fees and related nontaxable expenses pursuant to Del. Code. Ann. tit. 8, § 145(c)(1) for fees and expenses incurred in connection with defending Trustee's breach of fiduciary duty claims against them. (*Id.* at 4). Defendants also claim indemnification pursuant to Article VI of ESMG's bylaws. (*Id.* at 2).

In response, Trustee opposes Defendants' Motion principally based on procedural grounds. (ECF No. 471). First, Trustee argues that Defendants improperly filed their Motion pursuant to

---

[4] "Section 145" refers to Del. Code. Ann. tit. 8, § 145 (West 2022) unless otherwise indicated.

Bankruptcy Rule 7054 and Rule 54(d)(2)(A). (*Id.* at 2). Specifically, Trustee argues that indemnification of attorneys' fees in this context requires pleading, trial, and proof of damages. (*Id.*). Second, Trustee argues that Dundon is barred from seeking indemnification by res judicata, and Zutter is barred because he failed to make an affirmative claim for fees in this case. (*Id.*). Third, Trustee argues that the indemnification claims are "premature" because there is no final, non-appealable disposition. (*Id.*). Last, Trustee argues that Defendants' allocation of fees does not meet the good-faith standard imposed by Delaware law. (*Id.*).

The Court will first address Trustee's procedural arguments. The Court will then address whether Dundon and Zutter are entitled to their attorneys' fees and nontaxable expenses under Delaware law or ESMG's bylaws. After determining entitlement to indemnification of fees, the Court will then examine whether the fees sought are reasonable.

*A.  Rule 54 does not bar Defendants' Motion for Attorneys' Fees.*

Defendants' post-trial Motion for Attorneys' Fees is the appropriate vehicle by which Defendants may seek their fees. Trustee does not challenge Defendants' position that they are entitled to attorneys' fees under Delaware's indemnification statute. Rather, Trustee argues that Defendants must bring a separate cause of action for indemnity, and Rule 54 is not the proper vehicle for Defendants to seek their attorneys' fees in this case. The Court disagrees.

Rule 54(d)(2)(A) mandates that a "claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). Rule 54(d)(2)(A) "does not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract." Fed. R. Civ. P. 54(d) advisory committee's note to 1993 amendment. The Court acknowledges that "indemnification is essentially a contractual right" because the Delaware statute incorporates

the corporate contract. ***Stifel v. Fin. Corp. v. Cochran***, 809 A.2d 555, 559 (Del. 2002). But the Advisory Committee notes also explain that "such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." Fed. R. Civ. P. 54(d) advisory committee's note to 1993 amendment.

"Delaware law *permits* a party seeking indemnification to bring a separate cause of action," but "it does not always and universally *require* it." ***Xcoal Energy & Res. v. Bluestone Energy Sales Corp.***, No. 18-813, 2021 WL 4319224, at *2 (D. Del. Sept. 23, 2021) (collecting cases), *aff'd on other grounds*, 2022 WL 2870153 (3d. Cir. July 21, 2022). Some cases may have "specific circumstances" where the request for attorneys' fees is not a "typical" damages claim. ***Xcoal Energy***, 2021 WL 4319224, at *3. Because there was no jury trial in this case, Defendants' claim for attorneys' fees does not involve issues to be resolved by a jury. Delaware courts' "typical practice—sans jury—allows a party to submit a[n] . . . affidavit to resolve the amount of fees after its entitlement to fees as a general matter is shown." ***ITG Brands LLC v. Reynolds Am., Inc.***, No. 2017-0129, 2023 WL 6383240, at *16 n.139 (Del. Ch. Oct. 2, 2023) (distinguishing cases requiring proof of fees in jury trials), *aff'd*, 2025 WL 3646459 (Del. Dec. 15, 2025). Defendants are neither required to bring a separate cause of action for indemnification of their attorneys' fees, nor are they required to prove them at trial as an element of damages. ***Xcoal Energy***, 2021 WL 4319224, at *2; ***ITG Brands***, 2023 WL 6383240, at *16. Accordingly, the Court finds that, based on the specific circumstances in this case, the post-trial Motion for Attorneys' Fees is the appropriate vehicle for Defendants to seek fees.

*B. Defendants' fee claim is not barred by res judicata or delay.*

Trustee argues that Dundon's fee claim is barred by res judicata because the "record already contains the finding that disposes of the Motion." (ECF No. 471 at 6). Trustee also argues that Zutter's request is too late. (*Id.* at 7–8).

1. Dundon's fee claim is not barred by res judicata.

Res judicata does not apply to Defendants' Motion for Attorneys' Fees. "Res judicata bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 344 (5th Cir. 2023) (citation modified). The doctrine of res judicata applies when "(1) the parties are identical in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Murphy v. Nania*, No. 25-20253, 2025 WL 3657601, at *1 (5th Cir. Dec. 17, 2025) (per curiam) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 20005)). Critically, a claim cannot be barred by res judicata if it did not exist at the time of the prior proceeding. *Cf. D-1 Enters., Inc. v. Com. State Bank*, 864 F.2d 36, 40 (5th Cir. 1989) (finding res judicata does not apply "where the claim sought to be barred could not effectively have been litigated"); *Osherow v. Ernst & Young (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 389 (5th Cir. 2000) (noting the Fifth Circuit applies the "transactional test" to determine whether "two actions under consideration are based on the same nucleus of operative facts" (citation modified)).

First, Defendants' request for attorneys' fees is not a "subsequent suit." *Bank of Lafayette v. Baudoin (Matter of Baudoin)*, 981 F.2d 736, 740 (5th Cir. 1993). Defendants' Motion for Attorneys' Fees is "ancillary to or a continuation of the original suit." *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 78 (5th Cir. 1970). Res judicata applies to two separate suits or actions.

8

*Sacks*, 83 F.4th at 344. While courts have acknowledged that contested matters may qualify as a separate action from an adversary proceeding, Trustee's objection to Dundon's claim was brought by virtue of this adversary proceeding. (ECF No. 437 at 188–191); *see* **Howe v. Vaughan (Matter of Howe)**, 913 F.2d 1138, 114 (5th Cir. 1990) (stating the procedural context of the earlier claim might serve as "an important factor in determining whether the claim could or should have been effectively litigated in the earlier proceeding"). Here, Trustee's objection to Dundon's claim was covered in this adversary pursuant to Federal Rules of Bankruptcy Procedure 3007(b) and 7001. Fed. R. Bankr. P. 3007(b), 7001. It was not a separate suit.

Second, Trustee seeks to bar Defendants' claim for indemnification of his attorneys' fees that could not effectively have been litigated at trial. The Court disallowed Dundon's claim after finding that the "evidence adduced at trial does not support Dundon's assertion that he is entitled to indemnification or recission," and there were "no counterclaims regarding indemnification or recission." (ECF No. 437 at 191). While this was an adjudication on the proof of claim, it did not constitute a determination that no indemnification right could *ever* exist. *Cf.* **In re Mid-Am. Waste Sys., Inc.**, 228 B.R. 816, 823 (Bankr. D. Del. 1999) ("The mandatory indemnification requirement of § 145(c) of the DGCL only springs into existence when the officer or director has been 'successful on the merits or otherwise in defense' of the action.").

Starting with the statute, its use of the present-perfect tense "has been successful" indicates that success is a condition precedent to the statutory indemnification obligation under section 145(c). *See* **Hewitt v. United States**, 606 U.S. 419, 428–29 (2025) (5-4 decision) (explaining a present-perfect tense "denotes an act, state, or condition" that is "now completed," and, when used in a statutory context, addresses whether something has "current relevance"). In other words, Dundon's proof of claim and his request for attorneys' fees are two different claims

that accrue at different times. *See Shareholder Rep. Servs. LLC v. Alexion Pharms.*, No. 2020-1069, 2021 WL 3925937, at *5 n.35 (Del. Ch. Sept. 1, 2021) (collecting cases and explaining that Delaware courts find claims for indemnification have not ripened until they have accrued). Thus, Dundon could not have brought the section 145 indemnification claim in the adversary proceeding because it did not exist.[5] The adversary proceeding had not concluded, success had not been achieved, the condition was not satisfied, and the statutory right had not accrued.

The Court did not previously rule on whether Dundon is entitled to recover his attorneys' fees, nor did Dundon have the "opportunity to litigate" this claim for attorneys' fees "effectively" at trial. *In re Intelogic Trace, Inc.*, 200 F.3d at 389; *see also Singh*, 428 F.3d (applying the transactional test to determine whether a subsequent claim was previously litigated). Because res judicata does not bar claims that did not exist at the time of the prior adjudication, the Court's finding that Dundon failed to prove general indemnification in the bankruptcy claim does not preclude his separate, distinct claim for fees incurred in successfully defending post-petition litigation that had not yet concluded.

2. Zutter's fee claim is not barred by delay.

Trustee asserts that "Zutter has not pleaded a claim for fees or indemnification in this bankruptcy, and any claim would now be late." (ECF No. 471 at 2).

In the Joint Pre-Trial Order, the parties "agreed to bifurcate the issue of whether and how much attorneys' fees or costs should be awarded." (ECF No. 300 at 122, ¶ 699). The parties indicated that they agreed to "defer presenting any evidence and asking for any resolution on the issue of whether and how much attorneys' fees or costs should be awarded until after the liability and non-attorneys' fees damage claims are decided." (*Id.*). Trustee never objected to this

---

[5] Dundon also seeks indemnification pursuant to ESMG's bylaws, which also condition indemnification upon success or adjudication of good faith and best interests. *See* discussion *infra* Section II.B.

procedure, and the Court has planned to follow this procedure to resolve any claim for attorneys' fees and costs post-trial. The Court concluded its Memorandum Opinion with "Defendants may request their attorney's fees and costs as permitted under Fed. R. Bankr. P. 7054 and Local Rule 7054-1." (ECF No. 437 at 198).

The parties' "conduct in the litigation has consistently, throughout, manifested a mutual understanding" that any claim for attorneys' fees and costs "could and would be resolved" post-trial. *Xcoal Energy*, 2021 WL 4319224, at *4. There is "nothing in the statutory provisions or the Advisory Committee notes that would preclude" Dundon and Zutter's recovery of attorneys' fees through the procedures used in this case. *Xcoal Energy*, 2021 WL 4319224, at *3; *cf. Dreisbach v. Walton*, No. N12C-09-121, 2014 WL 5426868, at *8 (Del. Super. Ct. Oct. 27, 2014) (finding it "reasonable to hold that attorney's fees, like costs, need not be pled in the original pleadings" and are "not barred if not asserted as counterclaims").

Additionally, it would be "fundamentally unfair" to allow Trustee to "change course at this late stage and prevail on an untimely objection." *Id.* at *4. The Court does not believe that Defendants' failure to plead the claim and to prove damages at trial is fatal to their claim because the parties stipulated to bifurcation of the issue. (ECF No. 300 at 122, ¶ 699). The Court is additionally mindful of judicial efficiency, and that denying Defendants' Motion on purely procedural grounds would "unduly extend the parties' already lengthy litigation" in this Court, "waste a substantial portion of the Court's efforts that have been devoted to resolving the parties' disputes," and further drive up the parties' fees and expenses. *Xcoal Energy*, 2021 WL 4319224, at *4. Therefore, Zutter's request for attorneys' fees is not barred by delay.

### C. The Motion for Attorneys' Fees is not premature.

Defendants' request for fees is not premature. Trustee's prematurity argument rests on Delaware authorities holding that indemnification claims are generally premature if they are filed in a separate proceeding while the underlying litigation remains pending. *See **Paolino v. Mace Sec. Int'l, Inc.**,* 985 A.2d 392, 397 (Del. Ch. 2009) (finding the indemnification claim was not ripe because the parties were participating in arbitration); ***Sun-Times Media Grp., Inc. v. Black**,* 954 A.2d 380, 397 (Del. Ch. 2008) (finding "final disposition" mentioned in section 145(e) for advancement claims means that there must be a final, non-appealable conclusion); *see also **Huff v. Longview Energy Co.**,* No. 8456, 2013 WL 4084077, at *2 (Del. Ch. Aug. 12, 2013) (dismissing without prejudice indemnification claims filed in the Chancery Court while the Texas judgment was still on appeal). The policy rationale underlying these decisions is straightforward: when a party files a separate indemnification action in a different court before the underlying litigation concludes, that court cannot know who ultimately prevailed. That rationale has no application here. This Court is not a separate tribunal tasked with adjudicating indemnification rights while the underlying case proceeds elsewhere. There is no ongoing uncertainty about the outcome that the prematurity doctrine is designed to protect against.

Trustee's prematurity argument also depends on reading a "final, non-appealable judgment" requirement into section 145(c) or ESMG's bylaws. But that requirement appears nowhere in either sections 145(c) or (b), nor in ESMG's bylaws. Del. Code. Ann. tit. 8, §§ 145(b),(c) (West 2022); Def's Ex. 1. The Delaware General Assembly knew how to condition a right on "final disposition" of a proceeding; it did so in section 145(e), which authorizes advancement of expenses "in advance of the final disposition of such action, suit or proceeding." Del. Code. Ann. tit. 8, § 145(e) (West 2022); *see also **Russello v. United States**,* 464 U.S. 16, 23

(1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation modified)). Section 145(c) contains no such language; it vests the right to indemnification when a director "has been successful on the merits or otherwise in defense of any action, suit or proceeding." Del. Code. Ann. tit. 8, § 145(c) (West 2022). Additionally, section 145(b) further grants the corporation the power to indemnify a director who is "a party to any threatened, pending or completed action," further demonstrating that the "final disposition" phrase was intentionally included only for the advancement of expenses. *Id.* § 145(b).

In ***Beekhuis***, the United States District Court of Delaware explicitly held that "regardless of what happens on appeal or whether appeal is taken at all, the disposition of a claim that is final enough to be appealed is final enough to satisfy the requirements of § 145(c)." ***Witco Corp. v. Beekhuis***, No. 92-301, 1993 WL 749596, at *4 (D. Del. Oct. 22, 1993), *aff'd on other grounds*, 38 F.3d 682 (3d Cir. 1994). This Court has entered final judgment in this case. That judgment is final enough to be appealed. The judgment is therefore final enough to satisfy section 145(c) or (b) of the Delaware Code, regardless of whether Trustee chooses to appeal.

## II. Dundon and Zutter's Indemnification Rights

The Court has determined that Defendants' Motion for Attorneys' Fees is procedurally proper. The issue, then, is whether Dundon and Zutter meet the statutory conditions set forth in section 145 of the Delaware Code. The Court finds that Zutter meets the statutory conditions of section 145(c) because he was successful in defending the fiduciary duty claim brought against him. The Court, however, finds that Dundon neither meets the statutory conditions of

section 145(c) because he was unsuccessful in his defense, nor section 145(b) because he was adjudged liable to the estate. The following analysis details the Court's reasoning.

A.  *Zutter is entitled to indemnification under section 145(c).*

"Section 145(c) allows corporate officials to defend themselves in legal proceedings secure in the knowledge that, if vindicated, the corporation will bear the expenses of the litigation." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005). A director has "an absolute right to indemnification" if he meets the requirements of section 145(c):

> To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.

Del. Code. Ann. tit. 8, § 145(c)(1) (West 2022); *Perconti v. Thornton Oil Corp.*, No. 18630, 2002 WL 982419, at *3 (Del. Ch. May 3, 2002). A director seeking mandatory indemnification pursuant to section 145(c) "must demonstrate two key elements": (1) that they were involved in a proceeding defined by section 145(a) or (b); and (2) that they were "successful on the merits or otherwise." *Perconti*, 2002 WL 982419, at *3; *FGC Holdings Ltd. v. Teltronics, Inc.*, No. 883, 2007 WL 241384, at *10 (Del. Ch. Jan. 22, 2007). Subsections (a) and (b) are incorporated by reference to "define the type of action, suit or proceeding covered by each section and not the subsequent qualification required for indemnification." *Green v. Westcap Corp. of Del.*, 492 A.2d 260, 265 (Del. Super. Ct. 1985) (citation modified). In other words, a director who was successful on the merits or otherwise is entitled to indemnification "regardless of whether or not he acted in good faith or in what he perceived to be the best interests of the corporation." *Perconti*, 2002 WL 982419, at *3. Additionally, Trustee bears the burden of proving that Dundon and Zutter are not entitled to indemnification. *See Horne v. OptimisCorp*, No. 12268, 2017 WL 838814, at *3 (Del.

Ch. Mar. 3, 2017) ("[T]he ultimate burden of proof is on the . . . corporation to prove that the indemnitee is not entitled to indemnification.").

    1.   Trustee brought claims against Dundon and Zutter in the right of the corporation by reason of the fact that they were directors of ESMG.

Subsection 145(b) provides that corporations have the power to indemnify any person who has been sued "by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was a director, officer, employee or agent of the corporation." Del. Code. Ann. tit. 8, § 145(b) (West 2022). This adversary proceeding falls under subsection 145(b) because Trustee brought the claims "in the right of the corporation" against Dundon and Zutter as directors of ESMG. (ECF No. 437 at 167–68). Courts have consistently held that a bankruptcy trustee "stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Pereria v. Farace*, 413 F.3d 330, 342 (2d Cir. 2005) (collecting cases). Unlike traditional derivative suits, where shareholders must make a demand on the board or demonstrate futility, "in the context of a chapter 7 proceeding, the trustee is the sole representative of the estate with the authority to sue and be sued." *In re USDigital, Inc.*, 443 B.R. 22, 43 (Bankr. D. Del. 2011) (citing 11 U.S.C. § 323). Therefore, Trustee brought this adversary proceeding against Dundon and Zutter in the right of the corporation.

"By reason of the fact" means that there is "a nexus between the legal proceeding with respect to which indemnification is sought, and the indemnification recipient's status as a present or past director and officer of the entity that is asked to indemnify." *Aldephia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.)*, 323 B.R. 345, 377 (Bankr. S.D.N.Y. 2005) (interpreting section 145). Trustee sued Dundon and Zutter in their official capacity as directors of ESMG. (ECF No. 56 at 49). Trustee asserted that Dundon and Zutter breached their fiduciary duties owed to

ESMG based on decisions made and actions taken during their tenure as directors of ESMG. (*Id.*). It is evident that Trustee's claims against Dundon and Trustee "arise by virtue of" their activities as directors of ESMG. ***Witco Corp. v. Beekhuis***, 38 F.3d 682, 693 (3d Cir. 1994); *see also **O'Brien v. IAC/Interactive Corp. (O'Brien I)***, No. 3892, 2010 WL 3385798, at *13 (Del. Ch. Aug. 27, 2010) ("A lawsuit alleging that a director breached his fiduciary duty to his corporation . . . exemplifies an action for which a defendant is a party 'by reason of the fact' he was a director of the corporation.").

Therefore, the Court finds there is a nexus between the adversary proceeding with respect to which indemnification is sought, and Dundon's and Zutter's statuses as past directors of ESMG. ***In re Adelphia Commc'ns Corp.***, 323 B.R. at 377. Accordingly, subsection 145(c) could mandate indemnification for Dundon and Zutter upon a showing that they were successful in defense of the action, claim, issue, or matter therein. ***Spira Footwear, Inc. v. Lebow***, No. 08-CV-0055, 2008 WL 11334098, at *13 (W.D. Tex. Aug. 29, 2008).

2.   Only Zutter was successful on the merits in defense of Trustee's claims.

The second requirement for mandatory indemnification under ESMG's bylaws and section 145(c) is a successful outcome. ***Evans v. Avande***, No. 2018-0454, 2021 WL 4344020, at *4 (Del. Ch. Sept. 23, 2021); ***Beekhuis***, 38 F.3d at 691 ("[I]ndemnification is available . . . as a matter of law under section 145 when the corporate agent has successfully defended the action against him."). "In determining whether a party is 'successful' under section 145(c), the party need only prevail—in a strictly legal sense—in terms of the outcome of the proceeding." ***InterMune, Inc. v. Harkonen***, No. 2021-0694, 2024 WL 3619692, at *17 (Del. Ch. Aug. 1, 2024) (citation modified).

Here, the Court reaches different conclusions regarding Dundon and Zutter. The Court found that Zutter was not liable for breach of fiduciary duty in his capacity as a director of ESMG. (ECF No. 437 at 198). Thus, as a matter of law, Zutter is entitled to indemnification for his attorneys' fees accrued in connection with his defense of that claim.

Dundon, on the other hand, was vindicated on all the claims brought against him in this adversary proceeding, except one: breach of fiduciary duty. (ECF No. 437 at 198). Section 145(c) requires "mandatory indemnification where the officer or director is partially successful in that litigation." *In re Adelphia Commc'ns Corp.*, 323 B.R. at 380. While the Court viewed the case as a whole to determine whether Defendants were the prevailing party for the purposes of awarding costs under Bankruptcy Rule 7054, Delaware law requires a claim-by-claim analysis for indemnification pursuant to section 145(c).[6] *Brown v. Rite Aid Corp.*, No. 2017-0480, 2019 WL 2244738, at *8 (Del. Ch. May 24, 2019).

Recently, in *Evans*, the Delaware Chancery Court evaluated how "partial success should be measured." *Evans*, 2021 WL 4344020, at *4. In that case, the court found that aside from a few challenged transactions, the director had engaged in self-dealing and acted in bad faith. *Id.* at 2. Post-trial, the director argued that, because he prevailed on all claims brought against him except one, he was entitled to partial indemnification. *Id.* Specifically, he argued that because the plaintiffs were only awarded 1.2% of the damages sought, he should have been indemnified for the proportional amount of his defense expenses under section 145(c). *Id.* at *5 ("[H]e believes that because [the corporation] was awarded 1.2% of the damages it sought (or roughly $65.5 thousand of $5.4 million) he should be deemed indemnified for 98.8% of his defense costs."). The court explained that, while the concept of "proportional indemnification" applies in

---

[6] The Bill of Costs is deemed allowed. (ECF No. 456); *see* (ECF No. 464 at 18–19) (discussing L. Rule 7054-1(b)(2)).

17

civil cases, it is measured on a claim-by-claim basis. *Id.* In other words, "partial success" is not assessed or apportioned based on the proportion of damages sought versus awarded against the indemnitee. *Id.* The court clarified:

> Of course, [the corporation] did not prevail on all aspects of the duty of loyalty claim against [the director]. For example, [the corporation] failed to prove that certain challenged transactions constituted waste and, as to two transactions, [he] was found not to have breached his fiduciary duties. But on the "claim, issue or matter" of whether Evans breached his duty of loyalty, he did not prevail. I therefore cannot find that he is entitled, as a matter of law, to indemnification for a portion of the expenses he incurred in defending against that claim.

*Id.* at *6. To do so would have been "untethered from the policy at the root" of section 145(c), which is "to encourage capable persons to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve." *Id.* (citation modified). The Chancery Court held that a director adjudged to breach his duty of loyalty "can hardly assert that he is entitled to indemnification for a claim where that integrity was found lacking." *Id.* at *6.

Here, Dundon did not succeed in defending Trustee's breach of fiduciary duty *claim* (Count V). (ECF No. 437 at 198). Dundon argues that "with the exception of a single breach of fiduciary duty claim against Dundon, Dundon and Zutter acted in good faith and with sound business judgment and were not otherwise liable for any of the other claims asserted." (ECF No. 459 at 9). This argument misinterprets the Court's findings. The Court considered a single claim for breach of fiduciary duty encompassing multiple challenged transactions and decisions. (ECF No. 437 at 145). The Court's methodical examination of each transaction individually does not suggest a piecemeal victory for Dundon on the overall claim for breach of fiduciary duty. Notably, the Court determined that Dundon's self-interested transactions indeed constituted a breach of fiduciary duty, thereby affirming Dundon's liability on the claim as a whole, regardless of the amount of damages awarded. (*Id.* at 163). The Court found that Trustee failed to rebut the

18

business judgment standard for Dundon and Zutter's decision to cut spending, allocate funds elsewhere from the players' contracts, and file for bankruptcy. (*Id.* at 145–56). Dundon, however, did not prevail on all aspects of the "claim, issue, or matter" of whether he breached his duty of loyalty; the Court found that Dundon failed to prove his self-dealing advertisement deals were entirely fair. (*Id.* at 157–63). Therefore, the Court cannot find that Dundon is entitled, as a matter of law, to indemnification for a portion of the attorneys' fees incurred in defending against that claim.[7]

### B. Dundon is not entitled to indemnification under ESMG's bylaws or section 145(b).

Because the Court finds that only Zutter is entitled to attorneys' fees under section 145(c), the issue becomes whether Dundon is entitled to attorneys' fees under ESMG's bylaws. ESMG is a Delaware corporation whose 2017 bylaws provide for indemnification of officers and directors. (Def's Ex. 1 at 5750). Under subsection 145(f), Delaware corporations may provide for mandatory indemnification in their bylaws. *See* Del. Code. Ann. tit. 8, § 145(f) (West 2022) (stating indemnification provided by the statute "shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any bylaw"); ***Waltuch v. Conticommodity Servs., Inc.***, 88 F.3d 87, 94 (2d Cir. 1996). ("For example, indemnification agreements or bylaws could provide for mandatory indemnification unless prohibited by statute." (citation modified)). The "bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation." Del. Code. Ann. tit. 8, § 109(b) (West 2022).

---

[7] Defendants do not seek attorneys' fees in relation to defending other claims and agree that "the breach of contract, promissory estoppel and fraud claims against Dundon . . . did not relate to Dundon or Zutter's service as directors." (ECF No. at 10). Thus, the Court need not address whether those claims were brought by reason of Dundon's status as a director. *Cf. Evans*, 2021 WL 4344020, at *6 (finding other declaratory and conversion claims were brought by reason of the defendant's status as a director, but the tortious interference and defamation claims did not arise from the defendant's director status).

Defendants assert that Section 6.1 of ESMG's bylaws "largely follows form with subsection (b)." (ECF No. 459 at 4). The Court agrees.[8] Article VI, Section 6.1 outlines ESMG's policy for indemnification:

> Each person who was or is made a party to . . . or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative, . . . by reason of the fact that such person . . . is or was a member of the Board or officer of the Corporation . . . , *shall* be indemnified and held harmless by the Corporation *to the fullest extent permitted by applicable law* . . . , against all expenses, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such Indemnitee in connection therewith, provided that such Indemnitee acted in good faith *and* in a manner that the Indemnitee reasonably believed to be in or not opposed to the best interests of the Corporation . . . .

(*Id.*) (emphases added).[9] ESMG's indemnification provision largely tracks the statutory predicate of subsection 145(b):

> A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by the person in connection with the defense or settlement of such action or suit if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation . . . .

---

[8] "General rules of contract interpretation apply when construing the provisions of a company's charter or bylaws." ***GB-SP Holdings, LLC v. Walker***, No. 9413, 2024 WL 4799490, at *52 (Del. Ch. Nov. 15, 2024) (quoting ***Krauss v. 180 Life Scis. Corp.***, No. 2021-0714, 2022 WL 665323 at *3 (Del. Ch. Mar. 7, 2022)).

[9] Both ESMG's bylaws and certificate of incorporation provide for indemnification "to the fullest extent permitted by applicable law":

> To the fullest extent permitted by applicable law, the Corporation is authorized to provide indemnification of (and advancement of expenses to) directors, officers and agents of the Corporation (and any other persons to which General Corporation Law permits the Corporation to provide indemnification) through Bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by Section 145 of the General Corporation Law.

Def's Ex. 22 at 26.

Del. Code. Ann. tit. 8, § 145(b) (West 2022); *see generally* **FGC Holdings**, 2007 WL 241384, at *8 (finding the corporation's bylaws "track the statutory predicate"). The Court finds that the indemnification provision is consistent with current Delaware law.

Subsection 145(b) grants the corporation the "power" to indemnify directors *if* they "acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the corporation." Del. Code. Ann. tit. 8, § 145(b) (West 2022). This subsection is "permissive in the sense that a corporation may exercise less than its full power to grant the indemnification." *Waltuch*, 88 F.3d at 92. A corporation's grant of indemnification rights may go beyond the rights provided in section 145(b). *Id.* at 91. "By using the phrase 'shall indemnify,' the bylaw not only mandates indemnification; it also effectively places the burden on [the estate] to demonstrate that the indemnification mandated is *not* required." **VonFeldt v. Stifel Fin. Corp.**, No. 15688, 1999 WL 413393, at *3 (Del. Ch. June 11, 1999) (emphasis added).

ESMG provides mandatory indemnification rights beyond the permissive indemnification rights provided by section 145(b), which are consistent with the substantive portion of section 145(b), such as the requirement of good faith. **Waltuch**, 88 F.3d at 92; **In re Am. Plumbing & Mechanical, Inc.**, 327 B.R. 273, 296 (Bankr. W.D. Tex. 2005). Thus, ESMG's bylaws permissibly mandate indemnification for Dundon provided that he (1) was made a party to a proceeding by reason of the fact that he was a director of ESMG; (2) actually and reasonably incurred expenses in connection with such proceeding; and (3) acted in good faith and in a manner that he reasonably believed to be or not opposed to the best interests of ESMG.

The Court found Dundon liable for breaching his duty of loyalty to ESMG by engaging in self-dealing transactions. (ECF No. 437 at 158, 163); *see* **Berteau v. Glazek**, No. 2020-0873, 2021 WL 2711678, at *19 (Del. Ch. June 30, 2021) ("When directors of a Delaware corporation

are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain." (quoting *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983)). Therefore, Dundon is not entitled to the mandatory indemnification rights provided by ESMG's bylaws.

Additionally, ESMG's bylaws provide for indemnification "to the fullest extent permitted by applicable law." (Def's Ex. 1 at 5750). Corporate bylaws may not authorize indemnification rights "contrary to the limitations or prohibitions set forth in other section 145 subsections, other statutes, court decisions, or public policy." *Sun-Times Media Grp.*, 954 A.2d at 404 n.93 (quoting *Cochran v. Stifel Fin. Corp.*, No. 17350, 2000 WL 286722, at *18 (Del. Ch. Mar. 8, 2000), *rev'd on other grounds*, 809 A.2d 555 (Del. 2002)). Subsection 145(b) provides that:

> [N]o indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the corporation unless and only to the extent that the Court of Chancery or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery or such other court shall deem proper.

Del. Code. Ann. tit. 8, § 145(b) (West 2022). The Court found Dundon liable for breaching his duty of loyalty to ESMG by using ESMG property for the benefit of third parties. (ECF No. 437 at 162). Thus, Dundon's request for attorneys' fees pursuant to the bylaws is prohibited by section 145(b), unless and only to the extent that the Court determines that, in view of all the circumstances of the case, Dundon is fairly and reasonably entitled to indemnity for such expenses. Del. Code. Ann. tit. 8, § 145(b) (West 2022).

Dundon argues that he should be awarded attorneys' fees, notwithstanding the Court's determination that he breached his fiduciary duty. (ECF No. 459 at 4). Specifically, Dundon highlights the Court's determination that he served as a director of ESMG "in good faith and within his informed business judgment as to all other claims asserted against him as a director." (*Id.*). As

the Court has explained herein, despite the Court's transaction-specific analysis, Dundon did not successfully defend the breach of fiduciary duty claim brought against him. Additionally, Dundon does not cite, nor is the Court aware of any court that has awarded indemnification to a director who was adjudged liable in the relevant proceeding. *But see **Stephanis v. Yiannatsis***, No. 1508, 1994 WL 198711, at *3 (Del. Ch. May 9, 1994) (finding the director who was held liable for usurping corporate opportunity was not fairly or reasonably entitled to indemnification), *aff'd*, 653 A.2d 275 (Del.). Additionally, Dundon has not offered any compelling argument as to why the Court would deem indemnification in this circumstance proper. *Cf. **In re Am. Plumbing & Mech.***, 327 B.R. at 296 (explaining section 145's "statutory language is circumscribed by public policy").

In view of all the circumstances of the case, the Court declines to extend indemnity to Dundon for his attorneys' fees incurred in this case. Dundon does not qualify for the mandatory indemnification rights granted through ESMG's bylaws or section 145(b).

## III. Good-Faith Estimate

Counsel provides a good-faith estimate of the fees incurred. "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." ***Mathis***, 302 F.3d at 461. This Court, therefore, conducts a reasonableness determination under Delaware law to determine the award of attorneys' fees in this case.

Zutter bears the burden of justifying the amount he seeks. ***Danenberg v. Fitracks, Inc.***, 58 A.3d 991, 995 (Del. Ch. 2012). "When counsel has exercised good faith professional judgment, a court will not second-guess the specific time entries that counsel have logged for particular tasks." ***In re Delaware Pub. Schs. Litig.***, 317 A.3d 251, 281 (Del. Ch. 2024). Delaware courts do not determine a reasonable fee award by examining "individually each time entry and

disbursement." *Id.* (quoting *Aveta Inc. v. Bengoa*, No. 3598, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010)). "Analyzing specific time entries typically 'would neither be useful nor practicable.'" *Id.* at 281–82 (quoting *Weichert Co. of Pa. v. Young*, No. 2223, 2008 WL 1914309, at *2 (Del. Ch. May 1, 2008)). But when partial indemnification is sought, as in this case, the party seeking partial indemnification must meet "[his] burden of submitting 'a good faith estimate' of [his] claim for indemnification." *May*, 838 A.2d at 290. Failure to segregate fees does not preclude their award. *Keller v. Steep Hill, Inc.*, No. 2022-0098, 2023 WL 5624215, at *13 (Del. Ch. Aug. 31, 2023). Rather, the burden is on Zutter to submit a "good faith estimate of expenses incurred relating to" the fiduciary duty claims. *May v. Bigmar*, Inc., 838 A.2d 285, 289 (Del. Ch. 2003), *aff'd*, 854 A.2d 1158 (Del. 2004); *Danenberg*, 58 A.2d at 995.

The segregation of time spent on the fiduciary duty issue was likely difficult in this case. The time records kept by Bell Nunnally & Martin LLP ("Bell Nunnally") and K&L Gates LLP ("K&L Gates") were "not kept in a way that permits easy segregation of time spent on the successful issue from time spent on losing issues." *May*, 838 A.2d at 290. Counsel attempted to retroactively segregate time entries for unindemnifiable claims. (ECF No. 459, Exs. A, A-1, B, B-1). Additionally, counsel took a voluntary reduction of the fees "for which segregation was not possible to provide a good faith estimate." (*Id.*).

With that said, the Court "is not persuaded that the failure to keep better records should lead to the disallowance of the claim." *May*, 838 A.2d at 290. Here, the 15% discretionary deduction suggests that Defendants are aware that the billing records commingled time spent on different claims. Counsel identified and voluntarily excluded fees that represent time entries unrelated to the fiduciary claims. (ECF No. 459 at 6–7). Additionally, because Defendants could not have been certain that they would have been able to shift their expenses at the time the expenses

were incurred, the prospect that Defendants would have to bear their own expenses "provide[d] sufficient incentive to monitor [their] counsel's work and ensure that counsel [did] not engage in excessive or unnecessary efforts." ***Danengberg***, 58 A.3d at 997 (quoting ***Aveta Inc. v. Bengoa***, No. 3598, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010)); *see also* ***In re Del. Public Schs. Litig.***, 317 A.3d at 282 (explaining opportunity costs incentivize counsel to make reasonable judgments about tasks to pursue and the amount of time to spend on them); ***Cigna Grp. V. XL Specialty Ins. Co.***, No. N23C-03-009, 2025 WL 29695559, at *3 (Del. Super. Oct. 7, 2025) ("Notably, determining reasonableness does not require the Court to assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic." (citation modified)).

The Court finds no reason to question counsel's good faith professional judgment to second-guess billing entries.[10] Trustee's demand for claim-by-claim precision misreads the governing standard, and the remedy for an imperfect allocation is judicial adjustment, not complete denial. *May*, 838 A.2d at 291–92. The Court finds no reason to believe that counsel did not exercise their good faith professional judgment in segregating the time allocated for the indemnifiable claims from the rest to provide a good faith estimate. Therefore, the Court finds that Zutter's counsel provides a good-faith estimate of the fees incurred.

## IV. Reasonableness of Fees

The requested fees and expenses are reasonable under Delaware law. Under section 145(c), the Court must award Zutter his "actually and reasonably incurred" fees. 8 Del. Code § 145(c). Zutter requests attorneys' fees under a fee-shifting statute.[11] In determining the reasonableness of

---

[10] Counsel used the lodestar method to demonstrate the reasonable number of hours worked at a reasonable hourly rate. (ECF No. 459 at Exs. A, B).

[11] To prove reasonableness, Zutter cites Delaware Lawyers' Rule of Professional Conduct 1.5(a). (ECF No. 459 at 5). But Delaware courts use Rule 1.5(a) factors "to determine a reasonable fee under a *contractual* fee-shifting provision."

fees in the mandatory indemnification context as the one here, Delaware courts look to the three-part *Delphi* test: (1) "were the expenses actually paid or incurred;" (2) "were the services that were rendered thought prudent and appropriate in the good faith professional judgment of competent counsel"; and (3) "were charges for those services made at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances." *Delphi Easter Partners Ltd. P'ship v. Spectacular Partners, Inc.*, No. 12409, 1993 WL 328079, at *9 (Del. Ch. Aug. 6, 1993); *see O'Brien I*, 2010 WL 3385798, at *5 (applying the *Delphi* factors to a party's request for attorneys' fees under section 145). While "the burden rests on the party from whom indemnification is sought to prove that indemnification is not required," the party seeking indemnification "must prove that the amount of indemnification sought is reasonable." *O'Brien I*, 2010 WL 3385798, at *5 (quoting *Stockman v. Heartland Indus. Partners, L.P.*, Nos. 4227, 4427, 2009 WL 2096213, at *13 (Del.Ch. July 14, 2009)). Therefore, Zutter bears the burden of showing the fees of his counsel are reasonable under the three-part *Delphi* test..

A.  *The fees and expenses were actually paid or incurred.*

Zutter's fees were actually incurred. *Delphi*, 1993 WL 328079, at *9. Delaware courts define "incur" in the section 145 context as "to become liable and subject to" and "to suffer or bring oneself (a liability or expense)." *Creel v. Ecolab*, No. 12917, 2018 WL 5733382, at *5 (Del. Ch. Oct. 31, 2018) (citation modified) (collecting cases). "Thus, a party incurs an expense once he becomes liable for that expense." *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1040 (Del. Ch. 2014). Here, Zutter actually incurred fees in defending against the fiduciary duty claims because he became liable for such expenses. *See, e.g.*, (ECF No. 459, Ex. A) ("Defendants Thomas Dundon *and* John Zutter began incurring attorneys' fees in this case on January 4, 2023.").

---

*Danenberg v. Fitracks*, 58 A.3d 991, 996 (Del. Ch. 2012) (emphasis added) (citing *Mahani v. EDIX Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007)).

Trustee argues that, under **Levy**, Zutter lacks standing to seek indemnity because he has not shown out-of-pocket losses through billing statements, engagement agreements, internal agreements, invoices, checks, or any other payment records. (ECF No. 471 at 9). **Levy**'s rule has no application here.[12] The problem in **Levy** was that the directors never incurred the settlement obligation because the litigation fund had assumed it prior to litigation. **Levy v. HLI Operating Co.**, 924 A.2d 210, 224 (Del. Ch. 2007). The directors, therefore, were not liable for the settlement amounts for which they sought indemnification. **Id.** Here, Zutter incurred attorneys' fees as a co-defendant in the adversary proceeding; the source of payment does not negate incurrence.

Delaware courts do "not allow the purported indemnitor to shirk its obligations because of the efforts of a volunteer." **Creel**, 2018 WL 5733382, at *8. To embrace Trustee's argument "would provide a perverse incentive" because if an indemnitee "could find an affluent aunt, best friend, or other third party to front her defense costs, she would thereby forfeit her right to seek recompense from the party that should have been" indemnifying those expenses "on the grounds that she was not 'out of pocket' herself even though she was obliged to repay her benefactor." **DeLucca v. KKAT Mgmt., L.L.C.**, No. 1384, 2006 WL 224058, at *9 (Del. Ch. Jan. 23, 2006). The Court, therefore, declines to read section 145(c)'s "incurred" language narrowly and "in a manner that would nullify" Zutter's mandatory indemnification rights. **Keller**, 2023 WL 5624215,

---

[12] Notably, ten months after issuing his ruling in **Levy**, then-Vice Chancellor Lamb issued his ruling in **Schoon**, echoing the prior holding in **DeLucca** by refusing to provide a "perverse incentive" to companies when a third party "voluntarily under[takes] to pay fees and expenses without obligation." **Schoon v. Troy Corp.**, 948 A.2d 1157, 1175 (Del. Ch. 2008), *superseded on other grounds by statute*, 77 Del. Laws ch. 14, § 3 (2009), *as recognized in*, **Marino v. Patriot Rail Co.**, 131 A.3d 325 (Del. Ch. 2016). While **DeLucca** and **Schoon** arose in the advancement context, Delaware courts have applied the same reasoning in the indemnification context. *See Creel*, 2018 WL 5733382, at *8 (finding no justification "why Delaware policy should not prevent a corporation from shirking its indemnification obligation when a third party advances payment without a pre-existing obligation"); **Meyers v. Quiz-DIA LLC**, No. 9878, 2018 WL 1363307, at *8 (Del. Ch. Mar. 16, 2018) (applying the same reasoning "for purposes of a director or officer's right to ultimate indemnification" because indemnification obligations should not be "reduced merely because a volunteer advances or indemnifies the relevant expenses"). See **Pontone**, 100 A.3d 1023, for an in-depth discussion of **Levy**'s, **Schoon**'s, and **DeLucca**'s case-specific applications.

at *11. "Delaware law recommends against such an interpretation." *Id.* (collecting cases). The Court, therefore, finds that Zutter's fees incurred in defending against the fiduciary duty claims were actually incurred for purposes of section 145(c).

The legal defense of Zutter (and Dundon and DCP) "took several years, was a difficult undertaking, and achieved, for [Zutter], remarkable success." ***O'Brien I***, 2010 WL 3385798, at *6. Defendants both obtained Bell Nunnally to represent them throughout the pre-trial, trial, and post-trial phases of this adversary proceeding. (ECF No. 459 at 9–10). The fee arrangement involved discounted rates. (*Id.*, Ex. A, at 6). In January 2023, the firm began drafting the motion to dismiss. (*Id.*, Ex. A-1). Bell Nunnally provided legal services in this matter through the contributions of eighteen attorneys. (*Id.* Ex. A, at 3–4). After the Court entered its Order regarding the motion to dismiss, Bell Nunnally's role and fees in the adversary increased substantially. (*Id.*, Ex. A-1). A year later, on December 13, 2024, Zutter filed his motion for summary judgment. (ECF No. 175).

Zutter has provided the Court with a report of all billing records, identifying the fees incurred in connection with the indemnifiable claim, along with the Declaration of Jeffrey S. Lowenstein, demonstrating that the fees and expenses at Bell Nunnally were actually incurred. (ECF No. 459, Exs. A, A-1). According to the report, Bell Nunnally billed $4,575,872.01 in legal fees for time spent by attorneys and staff from January 4, 2023, to November 30, 2025. (ECF No. 459, Exs. A, A-1). The firm has applied a $323,459.05 deduction to time entries reflecting work on unrelated claims, including breach-of-contract and fraud claims. (*Id.* at 10). Additionally, Bell Nunnally applied a 25% deduction of $47,706.00 to account for the expert's services provided in the Ebersol Adversary. (*Id.* at 6). Bell Nunnally received and applied $625,142.09 in insurance payments, which further reduced the balance before the firm applied a discount during the course of the proceedings, resulting in a balance of $3,459,495.38 in amounts sought. (*Id.*). Lastly, Bell

Nunnally applied a 15% discretionary discount, resulting in a final balance of $2,940,571.07. (*Id.* at 7). Therefore, the Court finds that the Bell Nunnally expenses were actually incurred.

K&L Gates began representing Zutter when Brent D. Hockaday joined K&L Gates from Bell Nunnally. (ECF No. 459, Ex. B, at 1). The fee arrangement between Defendants and K&L Gates attorneys was also set at a discounted rate. (*Id.*). According to the K&L Gates billing report, the firm billed $1,021,146.00 for legal services provided from March 1, 2024, to November 30, 2025. (*Id.* at 6). The firm has applied a $54,972.50 deduction on time entries reflecting work on unrelated claims. (*Id.* at 7, 10). Additionally, K&L Gates applied a 25% deduction of $16,317.00 to account for the expert's services provided in the Ebersol Adversary. (*Id.* at 7). After these initial deductions, K&L Gates attorneys' fees amounted to $949,856.50. (*Id.*). K&L Gates further reduced the balance by applying a discretionary discount, resulting in a fee balance of $807,378.03. (*Id.*). Therefore, the Court finds that the K&L Gates expenses were actually incurred.

### B. The services rendered were thought prudent and appropriate in the good faith professional judgment of competent counsel.

Zutter's counsel rendered services "thought prudent and appropriate in the good faith professional judgment of competent counsel." ***Delphi***, 1993 WL 328079, at *9. The litigation team for Zutter consisted of competent lawyers led by Jeffrey Lowenstein, who has more than twenty-seven years of experience. (ECF No. 459, Ex. A). He has the knowledge and competence to exercise good faith professional judgment regarding tasks that were prudent and appropriate for this litigation. (*Id.*). The Court finds the same to be true of Brent Hockaday, who has more than thirteen years of experience. (*Id.*, Ex. B). There is no evidence that Zutter's counsel provided any services in bad faith or that specific services resulted in excessive or duplicative fees. Therefore, the Court finds that Zutter has satisfied ***Delphi***'s second prong.

    *C. The basis on which Zutter's counsel charged fees was generally comparable to that for other clients.*

Bell Nunnally and K&L Gates's charges were made at rates or on a basis charged to other clients for the same or similar services under comparable circumstances. ***Delphi***, 1993 WL 328079, at *9. "In this context, it is appropriate to focus on what is customary for each specific law firm involved." ***O'Brien I***, 2010 WL 3385798, at *10.

To establish hourly rates for Defendants' attorneys, Defendants submitted affidavits from Lowenstein and Hockaday, experienced Texas attorneys and partners at Bell Nunnally and K&L Gates. (ECF No. 459, Exs. A, B). Additionally, Defendants provided two tables listing the standard hourly rates for each firm's attorneys, along with the discounted rate billed to Defendants for legal services performed for the adversary proceeding.[13] (ECF No. 459).

Lowenstein opined that his rates, ranging from $700 to $785, constituted a reasonable increase given the passage of time since his initial engagement. (*Id.*, Ex. A). Lowenstein believes his rate and those of the other attorneys who worked on this case at Bell Nunally were reasonable and customary for attorneys of similar skill in this Court. (*Id.*). Hockaday also opines that his rate of $555 to $650 is reasonable. (*Id.* at Ex. B). Hockaday believes his rate and those of the other K&L Gates attorneys are reasonable and customary for attorneys of similar skill in this Court. (*Id.*). Both Lowenstein and Hockaday are familiar with the rates charged in Bexar County and the Western District of Texas for similar types of litigation by attorneys of comparable skill. (*Id.*). The Court finds that the rates are fair and reasonable for the work performed in this case and would be fair and reasonable rates for similar work performed by attorneys of similar training and experience practicing in Bexar County and the Western District of Texas.

---

[13] Defendants also included rates for legal staff. (ECF No. 459).

"The court should not discount the community rates to reflect what underprivileged individuals might be able to pay." *In re Delaware Pub. Schs. Litig.*, 317 A.3d 251, 283 (Del. Ch. 2024). The Court agrees with Defendants that the issues in this case were complex, including the fiduciary duty claims. The Court further notes that both firms charged Defendants discounted rates. *See* (ECF No. 459, Exs. A, B) (providing fee tables to demonstrate the discounted rates set in this case). Thus, the Court finds that the fees charged by Bell Nunnally and K&L Gates were not excessive relative to the hours worked or to the standard base rates they normally charge other clients, especially given that the attorneys provided their legal services at a discounted rate.

Accordingly, the fees sought in the Motion are reasonable under Delaware law. The Court must now allocate and reduce the fees to reflect the Court's finding that Dundon is not entitled to fees under Delaware law.

## V. Judicial Allocation

The fees attributable to Dundon's defense should be cut from the award. The Court has found that Dundon is not entitled to his attorneys' fees in this case, and the Court has acknowledged that Defendants did not neatly segregate billing records for each defendant.[14] Accordingly, the issue is how the Court should allocate Zutter's attorneys' fees against the estate, given that some of those fees may have been incurred in connection with Dundon's defense. In other words, the Court must determine to what extent the legal fees and expenses requested by both Dundon and Zutter, which overlap significantly in the billing and accounting records, should be reduced to account for the denial of Dundon's indemnification.

---

[14] As the Court discusses herein, Dundon is not entitled to mandatory indemnification of his expenses under section 145(c) because he was not successful on the merits of the claim. *See* discussion *supra* Section II.A.2. Additionally, Dundon does not qualify for the indemnification rights granted through ESMG's bylaws or section 145(b) because he was adjudged liable to ESMG. *See* discussion *supra* Section II.B.

The Chancery Court has held that "purported co-indemnitees who retained joint counsel are responsible for their pro rata share" of fees and expenses. ***Movora LLC v. Gendreau***, 345 A.3d 997, 1029 (Del. Super. Ct. 2025) (citation modified). Dundon and Zutter jointly defended the fiduciary duty claims. Parsing through Bell Nunnally and K&L Gates's billing records is "unduly burdensome," and "there is no doubt their defense was, by and large, jointly conducted." ***Id.*** (quoting ***Valeant Pharm. Int'l v. Jerney***, 921 A.2d 732, 755 (Del. Ch. 2007)). Therefore, rather than parsing through the billing records to apportion fees between Bell Nunnally and K&L Gates, the Court finds that a proportional allocation based on Zutter's indemnified status is a fair outcome and should be applied. In other words, Zutter is entitled to the amount jointly requested by Defendants, less a 50% pro rata reduction based on Dundon's unsuccessful defense to the breach of fiduciary duty claim. *See* ***Boeing Co. v. Spirit Aerosystems, Inc.***, No. N14C-12-055, 2017 WL 6021423, at *3 (Del. Super. Ct. Dec. 5, 2017) ("The Court is not required to conduct a line-item review of the fees" when adjusting a fee award under Delaware law).

Defendants collectively seek $4,043,442.99 in attorneys' fees and expert fees billed through Bell Nunnally, and $965,130.47 billed by K&L Gates. (ECF No. 459 at 8). The cumulative amount of fees and expenses sought by Dundon and Zutter is $5,008,573.36. (ECF No. 459 at 8). The Court has determined that the amount sought is a reasonable, good-faith estimate of the indemnifiable claims, but that Dundon is not entitled to indemnification of these fees and expenses under Delaware law. After the 50% reduction attributable to Dundon's half, the Court finds that Zutter shall be awarded $2,504,286.68.

Rather than applying an equal reduction to each firm's request, the Court allocates this to the recovery pool of $2,504,286.68 on a pro rata basis, reflecting each firm's proportional contribution to the total compensation sought. Bell Nunnally's combined request of $4,043,442.99

represents 80.72% of the combined request of $5,008,573.36. K&L Gates's request of $965,130.47 represents 19.28% of the total. Applying these proportions to the 50% recovery pool, Bell Nunnally receives $2,021,766.84 ($1,470,012.87 in fees and $551,753.97 in expenses), and K&L Gates receives $482,519.84 ($403,575.56 in fees and $78,944.28 in expenses). This allocation method is consistent with Delaware's approach to apportioning costs and fees among multiple parties with differential recovery rights. *See, e.g.*, **Movora**, 345 A.3d at 1028 (dividing jointly requested fees and costs in half). Weighing all of the circumstances, the Court finds that this proportionate allocation is a reasonable and fair outcome. In total, Zutter is entitled to an award of $2,504,286.68.

## VI.    Set Off

Trustee is entitled to set off. Zutter has already excluded taxable costs recovered through his Bill of Costs. (ECF No. 459 at 8). Allowing Zutter to recover twice for the same expenses "would yield unwarranted windfall recovery." **O'Brien I**, 2010 WL 3385798, at *118. Thus, the Court finds that Zutter may not recover duplicate expenses that the Court already deemed allowed through his Bill of Costs.

## VII.    Conditional and Forward-Looking Fees

The Court declines to award conditional or prospective fees. Defendants seek $225,000 in "conditional fees" to defend post-judgment motions and "forward-looking attorneys' fees" for the possibility of appeal. (ECF No. 459 at 11). Trustee asserts that Delaware law does not provide for conditional fees. (ECF No. 472 at 8 n.4).

*A.    Defendants may not recover conditional fees for Trustee's post-judgment motions.*

Defendants seek an award for attorneys' fees purportedly incurred in defending Trustee's post-judgment motion for reconsideration. (ECF Nos. 443, 444). This request fails for two reasons:

(1) Trustee's motions for reconsideration did not concern the fiduciary duty claims against Defendants, which severed the statutory nexus; and (2) Defendants have not submitted any evidence that fees were actually incurred in connection with the post-judgment motions. Accordingly, the Court denies Defendants' request for post-judgment fees.

Fees incurred relating to post-judgment motions are "in connection with" the defense of the underlying action when they are part of the same proceeding and represent the opposing party's attempt to undo a successful defense. *Cf. Sun-Times Media Grp.*, 954 A.2d at 398 (finding appeals of the underlying covered proceeding are in connection with the defense because they are "necessarily part of the same dispute"). The critical inquiry, then, is whether any fees incurred in defending the post-judgment motions were "incurred in connection with" defending the fiduciary duty claim. *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 595 (Del. Ch. 1994).

Trustee's motions for reconsideration did not implicate the fiduciary duty claims asserted against Defendants. *See* (ECF No. 443) (requesting the Court to alter or amend the judgment awarding costs to Defendants as the prevailing party); (ECF No. 443) (requesting the Court to amend its Findings of Fact). Trustee's motions addressed issues in the Court's Memorandum Opinion that are wholly unrelated to the fiduciary duty claims asserted against Defendants. In one motion, Trustee sought the Court's reconsideration of its legal determination that Defendants were the prevailing party for purposes of Bankruptcy Rule 7054. (ECF No. 443). In the other motion, Trustee requested the Court alter its findings of fact to correct what Trustee argued were "inconsistencies." (ECF No. 444 at 19). Neither of Trustee's post-judgment motions sought to disturb the Court's rulings on the fiduciary duty claim, which is the only claim that triggered Zutter's right to indemnification under section 145(c). Any fees incurred in monitoring or

responding to Trustee's post-judgment motions were not incurred "in connection with" the defense

of the indemnifiable claim.

Additionally, Zutter has failed to provide billing records or supplemental documentation

of the fees and expenses incurred in defending post-judgment motions. A bare demand with no

breakdown of hours worked is facially deficient under Local Rule 7054:

> The motion shall include a supporting document organized chronologically by
> activity or project, project, listing attorney name, date, and hours expended on the
> particular activity or project, as well as an affidavit certifying (1) that the hours
> expended were actually expended on the topics stated, and (2) that the hours
> expended, rate claimed were reasonable. Such application shall also be
> accompanied by a brief memo explaining how the fees were computed, with
> sufficient citation of authority to permit the reviewing court the opportunity to
> determine whether such computation is correct.

L. Rule 7054(a)(1).

The Court further notes that Section 6.2 of ESMG's bylaws provides for mandatory and

conditional advancement of fees:

> The Corporation shall pay all expenses (including attorneys' fees) incurred by such
> an Indemnitee in defending any such Proceeding as they are incurred in advance of
> its final disposition; provided, however, that (a) if the DGCL then so requires, the
> payment of such expenses incurred by such an Indemnitee in advance of the final
> disposition of such Proceeding shall be made only upon delivery to the Corporation
> of an undertaking, by or on behalf of such Indemnitee, to repay all amounts so
> advanced if it should be determined ultimately by final judicial decision from which
> there is no appeal that such Indemnitee is not entitled to be indemnified under this
> Article VT or otherwise; and (b) the Corporation shall not be required to advance
> any expenses to a person against whom the Corporation directly brings a claim, in
> a Proceeding, alleging that such person has breached such person's duty of loyalty
> to the Corporation, committed an act or omission not in good faith or that involves
> intentional misconduct or a knowing violation of law, or derived an improper
> personal benefit from a transaction.

(Def's Ex. 1 at 5750–51); *see generally **Homestore, Inc. v. Tafeen**, 888 A.2d 204 (Del. 2005)

(explaining the legal difference between advancement and indemnification rights). Therefore, to

the extent that Defendants seek advancement of expenses in the Motion for Attorneys' Fees, the

Court finds that the estate is not required to advance fees to persons against whom Trustee directly brought a claim for breach of loyalty. (*Id.*).

Accordingly, the Court finds that Defendants do not satisfy their burden in establishing compensable "conditional fees." While Defendants attribute $225,000 as "conditional attorneys' fees to defend post-judgment motions," the Court finds these amounts to be unindemnifiable. Zutter is not entitled to fees and expenses incurred relating to Trustee's post-judgment motions.

### B.  Defendants may not recover "fees on fees."

The Court does not award fees relating to the preparation of this Motion. Because Delaware's indemnification statute is "remedial in nature," Zutter's counsel is "entitled to compensation for time spent preparing the fee petition." *Cochran*, 809 A.2d at 561 (first citing *Digiacomo v. Bd. of Pub. Educ. in Wilmington*, 507 A.2d 542, 547 (Del. 1986); and then citing *Bagby v. Beal*, 606 F.2d 411, 415–16 (3d Cir. 1979)). But Zutter still bears the burden of proving the amount of fees on fees to which he is entitled. *Danenberg*, 58 A.3d at 995.

"Allowing indemnification for the expenses incurred by a director in pursuing his indemnification rights gives recognition to the reality that the corporation itself is responsible for putting the director through the process of litigation." *Cochran*, 809 A.2d at 561. A bylaw requiring indemnification "to the fullest extent permitted" by Delaware law encompasses fees on fees awards. *Fasciana v. Elec. Data Sys. Corp.*, 829 A.3d 178, 182 (Del. Ch. 2003) (citing *Cochran*, 809 A.2d at 561–62).  ESMG's bylaws include such language. *See* (Def's Ex. 1) (mandating indemnification "to the fullest extent permitted by applicable law").

Awarding Zutter's fees on fees, in this case, "necessarily involves a discretionary judgment that is not mathematically precise." *Fasciana*, 829 A.3d at 188. To properly calculate the portion of the fee award relating to hours spent in processing the Motion for Attorneys' Fees, the hours of

compensable service must be multiplied by a reasonable hourly rate. ***Bagby***, 606 F.2d at 416. In their Motion for Attorneys' Fees, Defendants "reserve[d] their right to file supplemental motions or petitions to reflect any additional fees, costs, and expenses they incurred and/or will incur from December 1, 2025, relating to, among other things, any pleadings, briefing, or an appeal filed by the Trustee." (ECF No. 459 at 11). But Defendants filed their Motion for Attorneys' Fees on January 22, 2026. (*Id.*). Defendants' submission demonstrates documentation of reasonable hours and rates, but counsel did not include hours expended in drafting and submitting this Motion.

Accordingly, the Court does not award fees on fees. Zutter has not met his burden in establishing the hours of compensable service to properly calculate the fees relating to this Motion. The base fee award of $1,873,588.43 encompasses only the work expended in the underlying matter and does not include Motion-related fees.

### C. Defendants may not recover forward-looking fees for appeal.

Defendants seek $750,000 in "forward-looking" fees for appeal but provide no statutory authority to support their request. Section 145(c) does not authorize prospective fee awards for a hypothetical appeal. *See* Del. Code. Ann. tit. 8, § 145(c) (West 2022) (mandating indemnification for expenses actually incurred); *see also **Gilbreth Int'l Corp. v. Lionel Leisure, Inc.***, 622 F. Supp. 478, 483 (E.D. Penn. 1985) ("Aside from the fact that an award of an estimated fee for a potential future appeal would be speculative, to say the least, any modification on appeal of this Court's Order . . . might render an award of appeal fees improper."), *aff'd*, 802 F.2d 469 (Fed. Cir. 1986). Additionally, Defendants' $750,000 estimate of prospective attorneys' fees for appeal is arbitrary and lacks documentary support other than counsel's estimation. Therefore, the Court finds that Defendants do not satisfy their burden in establishing compensable "forward-looking" fees for an appeal.

## VIII.     Pre-Judgment and Post-Judgment Interest

*A.  Zutter is not entitled to pre-judgment interest under Delaware law.*

Zutter is not entitled to recover pre-judgment interest on his award of fees. State law governs the award of pre-judgment interest. ***Harris v. Mickel***, 15 F.3d 428, 431 n.4 (5th Cir. 1994). Under Delaware law, pre-judgment interest does not attach to indemnification claims of attorneys' fees in the absence of any contractual provision granting such interest. ***Boeing***, 2017 WL 6021423, at *5–6. Here, Zutter's fee award is based on statutory authority, and ESMG's bylaws do not grant pre-judgment interest. Therefore, pre-judgment interest does not attach to the Court's award of Zutter's indemnifiable fees under section 145(c) of the Delaware Code.

*B.  Zutter is entitled to post-judgment interest under federal law.*

"Federal law governs post-judgment interest." ***Meaux Surface Prot., Inc. v. Fogleman***, 607 F/3d 161, 173 (5th Cir. 2010). Under 28 U.S.C. § 1961(a), "[p]ost-judgment interest is awarded as a matter of course." ***Id.***; *see also **Matter of Imperial Petrol. Recovery Corp.***, 84 F.4th 264, 271 (5th Cir. 2023) (holding § 1961 applies to adversary proceedings in bankruptcy).

Accordingly, the Court awards post-judgment interest, which runs "from the date of the entry of judgment." ***Kaiser Aluminum Chem. Corp. v. Bonjorno***, 494 U.S. 827, 835 (1990). Post-judgment interest compounds annually from the judgment date. 28 U.S.C. § 1961(b). The post-judgment interest rate is the rate of the "weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." § 1961(a). According to the H.15 report compiled by the Federal Reserve, the 1-year Treasury constant maturities weekly average for the week preceding

February 23, 2026, is 3.72%.[15] The judgment of $2,504,286.68 will therefore accrue post-judgment interest at a rate of 3.72% a year, compounded annually until the judgment is fully paid.

## CONCLUSION

For the reasons set forth in this Order, the Court finds that Dundon is not entitled to indemnification either under ESMG's bylaws or Delaware law. Zutter, however, is entitled to indemnification under section 145(c)(1) of the Delaware Code for successfully defending the fiduciary claim brought against him by reason of the fact that he was a director of ESMG. The fees and expenses jointly requested in Defendants' Motion for Attorneys' Fees shall be reduced by 50% of the amount requested and allocated on a pro rata basis, as set forth herein. The estate is entitled to set off any amounts received through the Bill of Costs, and the Court declines to award conditional or forward-looking fees to Defendants. Lastly, the Court declines to award pre-judgment interest under Delaware law, and post-judgment interest shall accrue from the date of judgment.

IT IS THEREFORE ORDERED that Defendants' Motion for Attorneys' Fees (ECF No. 459) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Zutter is awarded $1,873,588.43 in fees and $630,698.25 in expenses, totaling $2,504,286.68.

IT IS FURTHER ORDERED that the judgment shall accrue post-judgment interest at a rate of 3.72% per year, simple interest.

All other relief not expressly granted is DENIED.

# # #

---

[15] *Selected Interest Rates (Daily)* – H.15, BD. OF GOVS. OF THE FED. RSRV. SYS., https://www.federalreserve.gov/releases/h15/ [https://perma.cc/CYD7-3YLX] (last visited Feb. 23, 2026).